ACCEPTED
04-15-00066-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
2/10/2015 1:57:24 PM
KEITH HOTTLE
CLERK

04-15-00066-CV

**No. _____**

# In the Court of Appeals
# for the Fourth Judicial District of Texas
# San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
02/10/2015 1:57:24 PM
KEITH E. HOTTLE
Clerk

CONOCOPHILLIPS COMPANY,

*Petitioner,*

v.

VAQUILLAS UNPROVEN MINERALS, LTD.,

*Respondent.*

From Cause No. 2014 CVQ000 438 D4
406th Judicial District Court, Webb County, Texas
Honorable Oscar J. Hale, Jr., Presiding Judge

## Unopposed Petition for Permission to Appeal

Michael V. Powell
  State Bar No. 16204400
  Email: mpowell@lockelord.com
Cynthia K. Timms
  State Bar No. 11161450
  Email: ctimms@lockelord.com
Elizabeth L. Tiblets
  State Bar No. 24066194
  Email: etiblets@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Tel:   214-740-8520
Fax:   214-740-8800

Adolfo Campero
  State Bar No. 00793454
  Email: acampero@camperolaw.com
Campero & Associates, P.C.
315 Calle Del Norte, Suite 207
Laredo, Texas 78041
Tel:   956-796-0330
Fax:   956-796-0399

ATTORNEYS FOR PETITIONER
CONOCOPHILLIPS COMPANY

# IDENTITY OF PARTIES AND COUNSEL

| *Petitioner:* | *Counsel for Petitioners:* |
|---|---|
| ConocoPhillips Company | Michael V. Powell<br>  State Bar No. 16204400<br>  Email: mpowell@lockelord.com<br>Cynthia K. Timms<br>  State Bar No. 11161450<br>  Email: ctimms@lockelord.com<br>Elizabeth L. Tiblets<br>  State Bar No. 24066194<br>  Email: etiblets@lockelord.com<br>Locke Lord LLP<br>2200 Ross Avenue, Suite 2200<br>Dallas, Texas 75201-6776<br>Tel: 214-740-8520<br>Fax: 214-740-8800<br><br>Adolfo Campero<br>  State Bar No. 00793454<br>  Email: acampero@camperolaw.com<br>Campero & Associates, P.C.<br>315 Calle Del Norte, Suite 207<br>Laredo, Texas 78041<br>Tel: 956-796-0330<br>Fax: 956-796-0399 |
| *Respondent:* | *Counsel for Respondent:* |
| Vaquillas Unproven Minerals, Ltd. | Gregg Owens<br>  State Bar No. 15383500<br>  Email: gregg.owens@haysowens.com<br>Robert G. Hargrove<br>  State Bar No. 09303300<br>  Email: rob.hargrove@haysowens.com<br>Hays & Owens L.L.P.<br>807 Brazos Street, Suite 500<br>Austin, Texas   78701<br>Tel: 512-472-3993<br>Fax: 512-472-3883 |

|  | A. Michael Jung |
|  | State Bar No. 11054600 |
|  | Email: michael.jung@strasburger.com |
|  | Strasburger & Price, LLP |
|  | 901 Main Street, Suite 4400 |
|  | Dallas, Texas 75202-3794 |
|  | Tel: 214-651-4724 |
|  | Fax: 214-651-4330 (main) |
|  | Fax: 214-659-4022 (direct) |
|  |  |
|  | Armando X. Lopez |
|  | State Bar No. 12562400 |
|  | Email: mandox@rio.bravo.net |
|  | Law Offices of Armando X. Lopez |
|  | 1510 Calle Del Norte, Suite 16 |
|  | Laredo, Texas  78041 |
|  | Tel:  956-726-0722 |
|  | Fax:  956-726-6049 |
|  |  |
|  | Raul Leal |
|  | State Bar No. 24032657 |
|  | Email: rleal@rl-lawfirm.com |
|  | Raul Leal Incorporated |
|  | 5810 San Bernardo, Suite 390 |
|  | Laredo, Texas 78041 |
|  | Tel: 956-727-0039 |
|  | Fax: 956-727-0369 |

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ..........................................................i

TABLE OF CONTENTS.............................................................................. iii

INDEX OF AUTHORITIES...........................................................................v

INFORMATION REQUIRED BY TEXAS
    RULE OF APPELLATE PROCEDURE 25.1(d)........................................vi

STATEMENT OF THE CASE....................................................................... vii

ISSUE PRESENTED ................................................................................ viii

STATEMENT OF FACTS ............................................................................1

    A.    The Two Leases Contain Retained Acreage Clauses............................1

    B.    The Railroad Commission Adopted Field Rules. ................................3

    C.    This Action. ..............................................................................4

ARGUMENT AND AUTHORITIES.................................................................5

    A.    The proper interpretation of the leases is a "controlling
        question of law."........................................................................5

    B.    There is a substantial ground for a difference of opinion. ....................7

    C.    An immediate appeal from the Amended Order may
        materially advance the ultimate termination of the
        litigation.................................................................................8

PRAYER ................................................................................................9

CERTIFICATE OF CONFERENCE................................................................11

CERTIFICATE OF COMPLIANCE................................................................11

CERTIFICATE OF SERVICE .......................................................................12

APPENDIX:

Amended Order On Cross-Motions For Summary Judgment ..........................TAB 1

Defendant's Motion For Summary Judgment ...................................................TAB 2

Plaintiff's Cross-Motion For Partial Summary Judgment And
    Response To Defendant's Motion For Summary Judgment ........................TAB 3

Plaintiff's Original Petition ............................................................................TAB 4

# INDEX OF AUTHORITIES

Page(s)

**CASES**

*Johnson v. Burken*,
930 F.2d 1202 (7th Cir. 1991) ...............................................................6

*Jones v. Killingsworth*,
403 S.W.2d 325 (Tex. 1965) ...................................................................7

**RULES AND STATUTES**

28 U.S.C. § 1292(b) ...................................................................................5

TEX. CIV. PRAC. & REM. CODE § 51.014(Vernon Supp. 2014).................. vi, vii, 5, 6

Tex. R. of App. P. 25.1 ............................................................................vi

Tex. R. of App. P. 28.3 ............................................................................vi

Tex. R. of App. P. 28.4 ........................................................................... vii

**LAW REVIEWS AND TREATISES**

16 Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice &
Procedure* § 3930 (3d ed. 2012) .................................................................6, 7

19 James Wm. Moore, *Moore's Federal Practice & Procedure* §203.31[3]
(3d ed. 2014) .............................................................................................8

TO THE HONORABLE COURT OF APPEALS:

ConocoPhillips Company ("ConocoPhillips"), Defendant below, files this Unopposed Petition for Permission to Appeal regarding an order signed on January 27, 2015 on the parties' cross-motions for summary judgment. Because the underlying lawsuit was filed after September 1, 2011, this appeal is governed by the 2011 amended version of Section 51.014(d)-(f) of the Texas Civil Practice and Remedies Code and by Rule 28.3 of the Texas Rules of Appellate Procedure.

Respondent Vaquillas Unproven Minerals, Ltd. ("Vaquillas"), Plaintiff below, did not oppose Petitioners' Motion for Interlocutory Appeal filed in the district court and has agreed to the relief requested in this Petition.

## INFORMATION REQUIRED BY TEXAS
## RULE OF APPELLATE PROCEDURE 25.1(d)

In accordance with Texas Rule of Appellate Procedure 28.3(e)(1), Petitioners provide the following information required by Texas Rule of Appellate Procedure 25.1(d):

(1) Trial court, style, and case number:

- 406th Judicial District Court, Webb County, Texas,

- *Vaquillas Unproven Minerals, Ltd., Plaintiff v. ConocoPhillips Company, Defendant*

- Case Number: 2014 CVQ000 438 D4.

(2) ConocoPhillips Company desires to appeal the Amended Order on Motions for Summary Judgment signed by the district court on January 27, 2015. That Amended Order is attached at Tab 1.

(3) This appeal is taken to the Court of Appeals for the Fourth Judicial District, San Antonio, Texas.

(4) This Petition for Permission to Appeal is filed by ConocoPhillips Company.

(5) This Petition is filed in accordance with Texas Civil Practice & Remedies Code § 51.014(d) & (f) (Vernon Supp. 2014). If the Court accepts this appeal, it will be accelerated and governed by Texas Rules of Appellate Procedure for pursuing an accelerated appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(f) (Vernon Supp. 2014). This is not a parental termination or child protection case, as defined in Texas Rule of Appellate Procedure 28.4.

## STATEMENT OF THE CASE

Plaintiff Vaquillas is the lessor on two oil, gas, and mineral leases with ConocoPhillips. One of the leases encompasses 26,622.79 acres and the other includes 6,740 acres, both in Webb County. Both leases contain a retained acreage clause, which the parties interpret differently. The leases provide the lessee (ConocoPhillips) may retain at least 640 acres for each producing or shut-in gas well, but Vaquillas argues the Railroad Commission's Field Rules apply under the leases to limit the retained acreage to 40-acre units for each gas well. Vaquillas

claims that ConocoPhillips must release 15,351 acres in addition to the nearly 9,700 acres it has already released so that ConocoPhillips would be retaining 8,320 acres out of the original 33,362.79.

The parties' dispute turns on the proper interpretation of the retained acreage clause in connection with the Field Rules adopted by the Railroad Commission for the particular field included in the leases. Vaquillas argues the Field Rules dictate that the retained acreage for each well (all of which are gas wells) is only 40 acres per well. ConocoPhillips argues that the Field Rules do not alter the lease's provision that the retained acreage is 640 acres per well.

No material fact necessary to address the legal questions is disputed. The district court, on cross motions for summary judgment, held that Vaquillas' proposed lease interpretation was correct. At the same time, the district court ruled that ConocoPhillips' lease interpretation was incorrect.

## ISSUE PRESENTED

The issue in this case is "what is the proper interpretation of the leases' retained acreage clause?" More specifically, the question is whether the leases' retained acreage clause permits ConocoPhillips to retain only 40 acres per each producing or shut-in gas well it has drilled on the two leases or whether ConocoPhillips is allowed to retain 640 acres for each of those same gas wells.

**STATEMENT OF FACTS**

Vaquillas alleged that ConocoPhillips breached the leases by failing to release additional acreage under the retained acreage clause. The basic, undisputed facts on which the district court ruled are summarized as follows:

**A.      The Two Leases Contain Retained Acreage Clauses.**

This case involves two oil, gas, and mineral leases on which Vaquillas is the lessor and ConocoPhillips is the lessee. The first lease includes 26,622.79 acres (the "26,000-acre lease") and the second lease covers 6,740 acres (the "6,700-acre lease"). Defendant ConocoPhillips' Motion for Summary Judgment ("D's MSJ"), Tab 2, Exhibits A & B. As lessee under these two leases, ConocoPhillips drilled 208 gas wells prior to the time it ended its continuous program. *Id.* Exhibits C & D; Plaintiff Vaquillas' Cross-Motion for Partial Summary Judgment and Response to Defendant's Motion for Summary Judgment ("P's MSJ"), Tab 3, at 4.

The two leases contain retained acreage clauses, both of which read essentially identically: [1]

> On November 1, 1990, Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease

---

[1]   This quotation is from the 26,000-acre lease. D's MSJ, Tab 2, Exhibit A, ¶ 18  The only difference between this language in the two leases is that the second lease, the 6,700-acre Lease, starts with: "At the end of the primary term hereof, Lessee covenants and agrees . . . ." D's MSJ, Tab 2, Exhibit B, ¶ 18.

provides for a spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned.

There is no dispute that ConocoPhillips conducted a continuous drilling program and that the 90 days following the end of that program occurred no later than June 30, 2012.[2] Plaintiff's Original Petition, Tab 4, ¶ 11; D's MSJ, Tab 2, at 3. The expiration of the 90 days triggered the retained acreage clause.

ConocoPhillips released acreage in accordance with its interpretation of the retained acreage provision. ConocoPhillips retained 23,671.63 acres, having released 9,691.16 acres. P's MSJ, Tab 3, at 6. Vaquillas asserts that ConocoPhillips should have released all but 8,320 acres, claiming that ConocoPhillips has retained 15,351.63 acres that also should be released. *Id.* The parties' differing interpretation of the retained acreage clause lies at the heart of the parties' contradictory positions in this case.

---

[2] The retained acreage clause provides a time for releasing acreage: "provided, however, that if at such date lessee is engaged in drilling or reworking operations the date for the execution and delivery of such release shall be postponed and the entire lease shall remain in force so long as operations on said well or wells are prosecuted with reasonable diligence, and if, after the completion or abandonment of any such well Lessee commences the drilling of an additional well within Ninety (90) days from the completion or abandonment of the preceding well, or continuously conducts drilling operations in good faith and with reasonable diligence on said lease without any cessation for longer than Ninety (90) days, said lease shall remain in full force and effect during such drilling operations and until the end of Ninety (90) days after the completion or abandonment of the final well, at which time Lessee shall execute and deliver to Lessor said written release, releasing all portions of the lease not then so developed." D's MSJ, Tab 2, Exhibit A, ¶ 18.

**B.      The Railroad Commission Adopted Field Rules.**

The explanation for the differing interpretations of the retained acreage clause arises out of the Railroad Commission's adoption of Field Rules for this field.  Those Field Rules provide:

> RULE 2: No well shall hereafter be drilled nearer than FOUR HUNDRED SIXTY SEVEN (467) feet to any property line, lease line or subdivision line and no well shall be drilled nearer than ONE THOUSAND TWO HUNDRED (1,200) feet to any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract. Provided, however, there is no minimum between-well spacing requirement between a well being permitted at least 660 feet from the nearest property line, lease line or subdivision line, and the other wells permitted, drilled or completed on the same lease, pooled unit or unitized tract. A well being permitted at a distance less than SIX HUNDRED SIXTY (660) feet from the nearest property line, lease line or subdivision line must be a minimum of ONE THOUSAND TWO HUNDRED (1,200) feet from any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract, or an exception to Rule 37 must be obtained.

> The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the other rules to follow are for the purpose of permitting only one well to each drilling and proration unit. Provided however, that the Commission will grant exceptions to permit drilling within shorter distances and drilling more wells than herein prescribed whenever the Commission shall have determined that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exception to these rules is desired, application therefore shall be filed and will be acted upon in accordance with the provisions of Commission Statewide Rule 37 and 38, which applicable provisions of said rule are incorporated herein by reference. Provided however, that persons who are presumed to be affected by a request for an exception to the between-well spacing requirement

3

shall be limited to the operators and owners/lessees of tracts, lease or units within one mile or less of the proposed well.

Final Order Amending Field Rules For The Vaquillas Ranch (Lobo Cons.) Field Webb County Texas (amended November 2, 2010), D's MSJ, Tab 2, at Tab 2.

These Field Rules are the source of the parties' disagreement. Vaquillas contends the Field Rules triggered the exception to the parties' basic agreement, which would otherwise allow ConocoPhillips to retain 640 acres for gas wells. Plaintiff's Original Petition, Tab 4, ¶¶ 13-14. Vaquillas contends the Field Rules "established different units of acreage per well,"—specifically, only 40-acre units for gas wells. *See Id.* ¶¶ 14, 17, 18, 19.

## C.   This Action.

Vaquillas filed this action in March, 2014. ConocoPhillips moved for summary judgment on the entire case and Vaquillas cross-moved for partial summary judgment on liability. On November 25, 2014, the district court initially granted Vaquillas' motion for partial summary judgment and denied ConocoPhillips' motion for summary judgment on the entire case. Subsequently, however, the district court amended its order to grant the parties permission to file an interlocutory appeal. That Amended Order, attached as Tab 1, was signed on January 27, 2015.

**ARGUMENT AND AUTHORITIES**

A party may take an interlocutory appeal under section 51.014(d), if the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation. TEX. CIV. PRAC. & REM. CODE § 51.014(d)(1) & (2). The district court properly certified the order that is the subject of this Petition for interlocutory appeal under section 51.014(d).

Case law construing section 51.014(d) is limited. The requirements for certifying an interlocutory appeal under section 51.014(d), however, are substantially identical to those under the federal rule permitting interlocutory appeals – 28 U.S.C. § 1292(b) – thus, case law interpreting section 1292(b) is instructive.

**A.    The proper interpretation of the leases is a "controlling question of law."**

First, the parties agree that the interpretation of the oil, gas, and mineral leases at issue involves a pure question of law. Neither party has pleaded or argued that the provisions are ambiguous.

Second, there can be no doubt that the construction of the retained acreage provision is a *controlling* question of law in this case within the meaning of section 51.014(d)(1). It is *the* question on which the case turns. If ConocoPhillips is right, judgment should be rendered against Vaquillas. If Vaquillas' interpretation is

5

correct, ConocoPhillips will have to release many thousands of additional mineral acres.

Texas courts have not attempted to give the word "controlling" a precise definition in section 51.014(d). However, there is no reason to conclude the word has anything other than its usual meaning. "'Controlling' means serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (internal citations omitted). "There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district-court proceedings." 16 Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* ("Wright & Miller") § 3930 at 496 (3d ed. 2012). In this case, if the district court were to enter judgment based on an erroneous interpretation of the retained acreage provision, reversal would be required. Accordingly, determination of the proper legal interpretation of the retained acreage provision is a "controlling question of law."

Further, a question of law is "controlling" if its resolution could determine the outcome or future course of the litigation. *See Johnson*, 930 F.2d at 1206. Questions also are controlling if "interlocutory reversal might save time for the district court, and time and expense for the litigants." *Id.*; *see also* Wright & Miller § 3930 at 499. Here, an interlocutory appeal of the decisive issue before

6

this Court would allow either a final decision of this case or allow the case to go forward in a manner that will not generate a new set of title issues between the parties.

The district court properly concluded the issues determined in the Amended Order present a controlling question of law.

**B.     There is a substantial ground for a difference of opinion.**

There is little direct legal guidance concerning the proper interpretation of the retained acreage clause in the context of its language and the particular Railroad Commission Field Rules. Both parties cite to the Texas Supreme Court's opinion in *Jones v. Killingsworth*, 403 S.W.2d 325 (Tex. 1965), and both sides claim the case supports their side of the argument. That case drew differences between the words "permitted" and "prescribed" as used in the Railroad Commission Field Rules and in the leases at issue.

Here, the issue is whether the Railroad Commission's Field Rules "established" units for gas wells of a different size than 640 acres. ConocoPhillips advocated that the Field Rules merely *permitted* the creation of gas units of fewer than 640 acres. Hence, it argued the Field Rules allow operators to drill wells on a minimum of 40 acres, but the rules did not "establish" 40 acre units. Vaquillas, on the other hand, emphasizes a different portion of the retained acreage clause. It argued the clause allowed for the Field Rules to "establish" units of a different size

through the spacing provisions, and that the particular Field Rules established 40-acre units through its spacing provisions.

The answer to the issue presented requires a careful analysis of the lease language vis-à-vis the particular words used in the Field Rules. Accordingly, there is substantial ground for a difference of opinion, as determined by the district court.

## C.  An immediate appeal from the Amended Order may materially advance the ultimate termination of the litigation.

Determination of whether a legal issue is "controlling" goes hand-in-hand with the question whether an interlocutory appeal of an order deciding that issue "may advance the ultimate termination of the litigation." 19 James Wm. Moore, *Moore's Federal Practice & Procedure* §203.31[3] at 203-120 (3d ed. 2014).

An immediate appeal of the district court's Amended order will materially advance the ultimate termination of this litigation. The question how to interpret the retained acreage provision is *the* liability issue in this case. However, unlike many cases where damages can be easily tried, that is not true in this case. We can start with the relief Vaquillas is seeking. Vaquillas is requesting that ConocoPhillips release over 15,000 additional mineral acres to Vaquillas, which Vaquillas would then be free to develop or to lease to a third party oil and gas producer. This will create chaos if a judgment in Vaquillas favor is reversed on appeal. Further, even an assessment of damages will prove to be complicated. At

8

issue are tracts of land scattered throughout a field in which damages, if any, would have to be assessed in accordance with, among other things, those tracts' size and location. It is a far better approach to finally determine the liability issue before embarking on implementing remedies that are complicated and difficult to unwind.

## PRAYER

ConocoPhillips Company requests the Court to grant permission to take an interlocutory appeal of the district court's Amended Order granting summary judgment for Respondent and denying the summary judgment filed by Petitioner ConocoPhillips, and for such other relief as they may show themselves entitled.

Respectfully submitted,

LOCKE LORD LLP

/s/ Michael V. Powell
Michael V. Powell
  State Bar No. 16204400
  Email: mpowell@lockelord.com
Cynthia K. Timms
  State Bar No. 11161450
  Email: ctimms@lockelord.com
Elizabeth L. Tiblets
  State Bar No. 24066194
  Email: etiblets@lockelord.com
Locke Lord LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Tel: 214-740-8520
Fax: 214-740-8800

Adolfo Campero
  State Bar No. 00793454
  Email: acampero@camperolaw.com
Campero & Associates, P.C.
315 Calle Del Norte, Suite 207
Laredo, Texas 78041
Tel: 956-796-0330
Fax: 956-796-0399

**ATTORNEYS FOR PETITIONER
CONOCOPHILLIPS COMPANY**

10

**CERTIFICATE OF CONFERENCE**

I hereby certify that on February 8, 2015, counsel for ConocoPhillips conferred with Mr. Michael Jung, counsel for plaintiff / respondent Vaquillas in this case, regarding this Petition. Mr. Jung stated that Vaquillas does not oppose this Petition for Permission to Appeal and has agreed to the relief requested in this Petition.

/s/ Michael V. Powell
Michael V. Powell

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), as amended effective December 1, 2012, the undersigned certifies that this Petition complies with the length limitations of Rule 28.3(g) (which the undersigned understands now to be stated in Rule 9.4(i)) and the typeface requirements of Rule 9.4(e).

1.      Exclusive of the contents excluded by Rule 9.4(i)(1), this Brief contains 2,221 words as counted by the Word Count function (including textboxes, footnotes, and endnotes) of Microsoft Office Word 2010.

2.      This Brief has been prepared in proportionally spaced typeface using:

Software Name and Version:  Microsoft Office Word 2010
Typeface Name:  Times New Roman
Font Size:  14 point

/s/ Michael V. Powell
Michael V. Powell

# CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February 2015, a true and correct copy of Agreed Petition for Permission to Appeal, with Exhibits, was served by File&ServeXpress and/or pdf or Certified Mail, Return Receipt Requested on Respondent through its counsel of record listed below:

Gregg Owens
Email: gregg.owens@haysowens.com
Robert G. Hargrove
Email: rob.hargrove@haysowens.com
Hays & Owens L.L.P.
807 Brazos Street, Suite 500
Austin, Texas   78701
Tel: 512.472.3993
Fax: 512.472.3883

Raul Leal
  State Bar No. 24032657
   Email: rleal@rl-lawfirm.com
Raul Leal Incorporated
5810 San Bernardo, Suite 390
Laredo, Texas 78041
Tel: 956-727-0039
Fax: 956-727-0369

A. Michael Jung
  State Bar No. 11054600
   Email: michael.jung@strasburger.com
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Tel: 214-651-4724
Fax: 214-651-4330 (main)
Fax: 214-659-4022 (direct)

Armando X. Lopez
  State Bar No. 12562400
   Email: mandox@rio.bravo.net
Law Offices of Armando X. Lopez
1510 Calle Del Norte, Suite 16
Laredo, Texas  78041
Tel:  956-726-0722
Fax:  956-726-6049

*Counsel for Vaquillas Unproven Minerals, Ltd.*

/s/ Michael V. Powell
Michael V. Powell

No. _____

# In the Court of Appeals
# for the Fourth Judicial District of Texas
# San Antonio, Texas

CONOCOPHILLIPS COMPANY,

*Petitioner,*

v.

VAQUILLAS UNPROVEN MINERALS, LTD.,

*Respondent.*

From Cause No. 2014 CVQ000 438 D4
406th Judicial District Court, Webb County, Texas
Honorable Oscar J. Hale, Jr., Presiding Judge

# Appendix

Amended Order On Cross-Motions For Summary Judgment .........................TAB 1

Defendant's Motion For Summary Judgment ....................................................TAB 2

Plaintiff's Cross-Motion For Partial Summary Judgment And
    Response To Defendant's Motion For Summary Judgment .......................TAB 3

Plaintiff's Original Petition..........................................................................TAB 4

# Tab 1

CAUSE NO. 2014CVQ000438 D4

| VAQUILLAS UNPROVEN MINERALS, LTD, | § | IN THE DISTRICT COURT |
|---|---|---|
| Plaintiff, | § § § § | |
| v. | § | WEBB COUNTY, TEXAS |
| CONOCOPHILLIPS COMPANY, | § § § | |
| Defendant. | § | 406TH JUDICIAL DISTRICT |

## AMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

On October 30, 2014, Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment were heard. The Court, having reviewed the motion, briefs, responses, competent summary judgment evidence, and argument of counsel, rules on these motions as follows.

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Cross-Motion for Partial Summary Judgment is **GRANTED**. The Court **DECLARES** that Defendant has breached the 26,622.79-acre Lease and the 6,740-acre Lease by failing to release all acreage in excess of 40 acres for each producing and shut-in natural gas well capable of producing in paying quantities.

This Order of the Court decides the central question in this case, which is the number of acres under two oil and gas leases that Defendant ConocoPhillips Company retains under the "retained acreage" clauses of the leases at the conclusion of ConocoPhillips' continuous drilling operations. The Court finds that the question decided by this order is a controlling question of

law as to which there is a substantial ground for difference of opinion. The Court also finds that immediate appeal of the order will materially advance the ultimate termination of this litigation.

This Court's Order, and the underlying controlling question of law, involve the parties' competing legal interpretations of the language of the "retained acreage" clauses and certain Field Rules adopted by the Railroad Commission of Texas. Although the Court has ruled in favor of the Plaintiff lessor, Vaquillas Unproven Minerals, Ltd., the Court concludes there are substantial grounds for difference of opinion regarding whether the leases allow ConocoPhillips to retain 40 acres per well, as Plaintiff contends, or 640 acres, as ConocoPhillips contends.

An immediate appeal from this Court's Order will materially advance the final conclusion of litigation. Plaintiff seeks judgment ordering ConocoPhillips to execute releases of over 15,000 acres described in the leases, as well as possible direct and consequential damages flowing from ConocoPhillips' alleged breach of the "retained acreage" clauses of the leases. If ConocoPhillips is forced to release the acreage but later wins an appeal determining that ConocoPhillips' original interpretation is correct, significant problems could develop. On the other hand, the lessor, Vaquillas Unproven Minerals, Ltd. is interested in having the release of acreage as soon as possible. Furthermore, the Court and the parties anticipate that a determination of Plaintiff's damages, if any, will be costly and time-consuming.

ConocoPhillips desires to take an interlocutory appeal. The Court rules that such appeal shall be defined by the lease interpretation question addressed in the parties' cross-motions for summary judgment. More specifically, the question is whether the leases' retained acreage clause allows ConocoPhillips Company to retain only 40 acres per each producing or shut-in gas well it has drilled on the two leases, or whether ConocoPhillips is allowed to retain 640 acres (plus 10% tolerance) for each wells.

**AMENDED ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**          **PAGE 2**

IT IS HEREBY ORDERED that, pursuant to Texas Civil Practice & Remedies Code §

51.014(d) (West. Supp. 2014) an interlocutory appeal is ALLOWED from this Order.

IT IS FURTHER ORDERED that trial of this action is stayed pending the interlocutory

appeal. The Court's Pre-Trial Guideline Order and Scheduling Order are hereby VACATED.

The parties may proceed with discovery and pretrial proceedings by agreement or with leave of

Court.

SIGNED this ___27___ day of _____, 2015.

Hon. Oscar J. Hale, Jr.
Judge Presiding

APPROVED AS TO FORM:

Michael V. Powell
  State Bar No. 16204400
  Email: mpowell@lockelord.com
Elizabeth L. Tiblets
  State Bar No. 24066194
  Email: etiblets@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Tel: 214-740-8520
Fax: 214-740-8800

Adolfo Campero
  State Bar No. 00793454
  Email: acampero@camperolaw.com
CAMPERO & ASSOCIATES, P.C.
315 Calle Del Norte, Suite 207
Laredo, Texas 78041
Tel: 956-796-0330
Fax: 956-796-0399

**ATTORNEYS FOR DEFENDANT
CONOCOPHILLIPS COMPANY**

APPROVED AS TO FORM:


/s/ P. Michael Jung
P. Michael Jung
  State Bar No. 11054600
  Email: michael.jung@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Tel: 214-651-4724
Fax: 214-651-4330 (main)
Fax: 214-659-4022 (direct)

Gregg Owens
  State Bar No. 15383500
  Email: gregg.owens@haysowens.com
Robert G. Hargrove
  State Bar No. 09303300
  Email: rob.hargrove@haysowens.com
HAYS & OWENS L.L.P.
807 Brazos Street, Suite 500
Austin, Texas   78701
Tel: 512-472-3993
Fax: 512-472-3883

Armando X. Lopez
  State Bar No. 12562400
  Email: mandox@rio.bravo.net
LAW OFFICES OF ARMANDO X. LOPEZ
1510 Calle Del Norte, Suite 16
Laredo, Texas  78041
Tel: 956-726-0722
Fax: 956-726-6049

Raul Leal
  State Bar No. 24032657
  Email: rleal@rl-lawfirm.com
RAUL LEAL INCORPORATED
5810 San Bernardo, Suite 390
Laredo, Texas 78041
Tel: 956-727-0039
Fax: 956-727-0369

**ATTORNEYS FOR VAQUILLAS
UNPROVEN MINERALS, LTD.**

# Tab 2

Filed
7/30/2014 12:03:15 PM
Esther Degollado
District Clerk
Webb District
2014CVQ000438 D4

## CAUSE NO. 2014CVQ000438 D4

| | | |
|---|---|---|
| VAQUILLAS UNPROVEN MINERALS, LTD, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | WEBB COUNTY, TEXAS |
| CONOCOPHILLIPS COMPANY, | § § § | |
| Defendant. | § | 406TH JUDICIAL DISTRICT |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant ConocoPhillips Company ("ConocoPhillips") moves, pursuant to Tex. R. Civ. P. 166a(b), for summary judgment that Plaintiff Vaquillas Unproven Minerals, Ltd. ("Vaquillas") take nothing by this action. There are no genuine issues of material fact, and ConocoPhillips is entitled to judgment as a matter of law.

### I. INTRODUCTION: VAQUILLAS' SUIT PRESENTS ONE ISSUE ABOUT THE PROPER INTERPRETATION OF TWO OIL AND GAS LEASES

This action turns on the proper interpretation of certain language found in two Oil, Gas, and Mineral Leases under which Vaquillas claims to be the sole current "Lessor," and ConocoPhillips is the current Lessee. (*See* Plaintiff's Original Petition ¶ 9). Vaquillas has described the two Leases in paragraph 8 of its Original Petition as the "26,622.79 Acre Lease" and the "6,740 Acre Lease," and ConocoPhillips has attached true and correct copies of those two Leases (without amendments not pertinent here) as Exhibits A and B to the Declaration of Dana C. Huebner attached at **Tab 1** to this Motion for Summary Judgment (the "Leases").

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**          **PAGE 1**

Although all of the language in the Leases is important,[1] Vaquillas bases all of its claims in this lawsuit on the following language from Paragraph 18 of both Leases.[2] (ConocoPhillips will indent and number the sentences and separate phrases quoted from Paragraph 18 in order to facilitate later discussion of them.)[3]

**Sentence (1):** On November 1, 1990, Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well <u>and 640 acres for each producing or shut-in gas well,</u>

**Sentence (2):** except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease provides for a spacing or proration <u>establishing different units of acreage per well, then such established different acreages</u> shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned;

**Sentence (3):** provided, however, that if at such date lessee is engaged in drilling or reworking operations the date for the date for execution and delivery of such release shall be postponed and the entire lease shall remain in force so long

---

[1]When interpreting an oil and gas lease, the Court must "examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined." *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

[2]Each of the alleged causes of action in Plaintiff's Original Petition is based on Vaquillas' erroneous interpretation of Paragraph 18. *See* Plaintiff's Original Petition ¶¶ 17-20. This Motion for Summary Judgment explains why Vaquillas' interpretation is wrong as a matter of law. Consequently, this motion seeks summary judgment on the entire case.

[3]This quotation is from the "26,622.79 Acre Lease," as described in Paragraph 8 of Vaquillas' Petition. The only difference between this language in the two Leases is that the second lease, the "6,740 Acre Lease" described by Vaquillas starts with: "At the end of the primary term, Lessee covenants and agrees . . . ."

as operations on said well or wells are prosecuted with reasonable diligence, and if, after the completion or abandonment of any such well Lessee commences the drilling of an additional well within Ninety (90) days from the completion or the abandonment of the preceding well, or continuously conducts drilling operations in good faith and with reasonable diligence on said lease without any cessation for longer than Ninety (90) days, said lease shall remain in full force and effect during such drilling operations and until the end of Ninety (90) days after the completion or abandonment of the final well, at which time Lessee shall execute and deliver to Lessor said written release, releasing all portions of the lease not then so developed.

**Sentence (4)**: Each retained unit shall contain at least one (1) well producing or capable of producing oil or gas in paying quantities, and the acreage within a unit shall be contiguous.

*See* Petition ¶¶ 11, 13; Huebner Declaration, Exhs. A & B (emphasis added).

The wells on the Leases produce gas, so the relevant "development" obligation and the retained acreage size to which the parties agreed in Sentence (1), quoted above, is 640 acres. There is no dispute between the parties that ConocoPhillips maintained the 26,622.79 Acre Lease in full force and effect for many years after November 1, 1990, and the 6,740 Acre Lease in full force and effect for many years after its primary term by continuous drilling. There is no dispute that ConocoPhillips' continuous drilling operations ended at or about the time Vaquillas states in Paragraph 11 of its Original Petition. Due to the end of continuous drilling operations, COPC filed the Releases of Acreage that it believed were due to Vaquillas as stated in the final phrase of Sentence (3) and in Sentence (4), copies of which are attached as Exhibits C and D to the

Huebner Declaration, filed herewith. ConocoPhillips' Releases of Acreage retained 640-acre units around producing gas wells, as agreed in Sentence (1).

The sole dispute between the parties to this case turns the proper interpretation of Sentence (2), quoted above. There is no disagreement that the Railroad Commission of Texas (the "Commission") has adopted Field Rules for the Vaquillas Ranch (Lobo Cons.) Field, Webb County, Texas. Those Field Rules apply to the wells at issue in this case. Those Field Rules, originally effective February 24, 1998, were amended into their current form effective November 2, 2010. The Field Rules for the Vaquillas Ranch (Lobo Cons.) Field, as amended, are attached as **Tab 2** to this Motion. The Court may take judicial notice of these Field Rules adopted by the Commission, and ConocoPhillips requests it to do so. TEX. R. EVID. 201.

Vaquillas contends the Field Rules triggered the exception in Sentence (2) to the parties' basic agreement of Sentence (1), which was that ConocoPhillips would retain 640 acres for gas wells. (Plaintiff's Original Petition ¶¶ 13-14). Vaquillas contends that the Field Rules "established different units of acreage per well," specifically only 40-acre units for gas wells, and that consequently, COPC must forfeit, because of Paragraph 18, a great deal more acreage from the two Leases than it already has released to Vaquillas. (*See* Plaintiff's Original Petition ¶¶ 14, 17, 18, 19).

For the reasons explained below, Vaquillas' contentions are wrong  Under the straightforward, plain meaning of Paragraph 18, the Commission's Field Rules do not "establish" different units of acreage per well. Those Rules state only that no well may be drilled on <u>less than</u> 40 acres, which is exactly the same <u>minimum</u> density that applied under the Commission's Statewide Rules in effect for these Leases before the Commission adopted Field Rules. The Field Rules say nothing about any <u>maximum</u> acreage that may be assigned to gas wells.

Consequently, nothing in the Field Rules is inconsistent with, or overrides, the parties' basic agreement that gas wells retain 640 acres. Nothing about those Field Rules "establishes" any unit different from 640 acres.[4]

## II. PERTINENT PROVISIONS OF THE TWO LEASES

As Texas oil and gas leases, the two Leases actually are conveyances by which the Lessor granted a fee simple determinable in the minerals in and under the land described in the Leases to the Lessee, who is more properly referred to as a "Grantee." *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003); *accord Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). By the first Lease, Vaquillas and its predecessors granted to ConocoPhillips' predecessor the mineral estate in and under 26,622.79 acres of Webb County land for "five years (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder." By the second Lease, Vaquillas and its predecessors did the same for an additional 6,740 acres of Webb County land, except the term of that Lease was for "three years . . . and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled . . . ."

"An oil, gas and mineral lease is indivisible by its nature. Production from any part of the lease keeps the lease in effect during the primary term and for long as oil, gas and other minerals are being produced as to all lands described in the instrument." *Shown v. Getty Oil Co.*, 645 S.W.2d 555, 560 (Tex. App.—San Antonio 1982, writ ref'd). *Accord, Matthews v. Sun Oil*

---

[4]There are field rules that do "establish" maximum acreages. As one example, **Tab 3** to this Motion is a copy of the Final Order Adopting Temporary Rules and Regulations for the Big Reef (Edwards) Field, Webb County. Rule 3 of that Field Rule establishes standard drilling and proration units to be 160 acres. Those rules provide that "no proration unit shall consist of more than ONE HUNDRED SIXTY (160) acres, plus a 10% tolerance. ConocoPhillips' point is that the Field Rules for the Vaquillas Ranch (Lobo Cons.) Field do not establish any such "maximum" units.

*Co.*, 425 S.W.2d 330, 333 (Tex. 1968); *Humphrey v. Seale*, 716 S.W.2d 620, 622 (Tex. App.—Corpus Christi 1986, no writ).

Accordingly, ConocoPhillips' extensive production from the two Leases entitles ConocoPhillips to maintain the Leases in full force and effect as to all of the land covered by the Leases until one of two events came to pass, both of which are "limitations on the grant." The first limitation on the grant is found in the habendum clauses of the two Leases and is cessation of production in paying quantities, an event that has not occurred. Under Vaquillas' arguments, the second limitation on the grant is the requirement to deliver releases of undeveloped acreage that is contained in Paragraph 18. Consequently, the question posed by Vaquillas' Petition is whether by virtue of a second limitation on the grant contained in the two Leases, ConocoPhillips must release thousands of additional acres it has earned by extensive drilling and would continue to hold under the habendum clauses because Sentence (2) of Paragraph 18 means it may retain only 40, rather than the agreed 640, acres around producing wells?

Note that both Leases expressly authorized ConocoPhillips to assign acreage <u>up to</u> 640-acres (plus a tolerance of 10 percent) to gas wells. Paragraph 4 of both Leases grants optional pooling authority to the Lessee and says:

> . . . units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of ten percent (10%) thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, for the drilling or operation of a well at a regular location or for obtaining maximum allowable from any well to be drilled, drilling or already drilled, units thereafter may conform substantially in size with those prescribed or permitted by governmental regulations.

Paragraph 16 of both Leases created an additional limitation on the Lessee's pooling authority by restricting the option to pool to leases covering land belonging to Vaquillas or in which Vaquillas owned an interest, but that restriction is not pertinent here.

Accordingly, the normal and completely authorized block of acreage under these Leases for gas wells is 640 acres. As noted above, that acreage for gas wells was expressly authorized by the pooling clause. Under Sentence (1) of Paragraph 18, that was the parties' agreement for "retained acreage" around gas wells at the time Paragraph 18 came into play as an active limitation on the grant of a fee simple determinable to ConocoPhillips "as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled . . . ." (Leases ¶2).

### III. THE FIELD RULES

The Field Rules do not, on their face, say anything about a minimum density, or minimum acreage around wells. (*See* Tab 2 to this Motion). The Field Rules state (with an important exception) that wells must be at least 467 feet from property and lease boundaries ("lease line spacing") and at least 1,200 feet apart if they are drilled to the "same reservoir on the same lease, pooled unit, or unitized tract" ("between well spacing"). The exception added by the 2010 amendment to the Field Rules is that there is no between well spacing for wells drilled at least 660 feet from the nearest property or lease boundary.

The minimum distances of 467 feet for lease line spacing and 1,200 feet for between well spacing are the very same minimum distances set forth by Statewide Spacing Rule 37, which governed wells on these Leases before the Commission adopted Field Rules. *See* 16 T.A.C. § 3.37(a)(1) (stating the Statewide Spacing Rule as follows: "No well for . . . gas . . . shall hereafter be drilled nearer than 1,200 feet to any well completed in or drilling to the same horizon on the same tract or farm, and no well shall be drilled nearer than 467 feet to any property line, lease line, or subdivision line."). So, the Field Rules did not adopt any "different"

spacing rules from the Statewide Rules already in effect before the Commission promulgated those Field Rules.

When, as here, a Field Rule of the Commission does not contain a well <u>density</u> requirement, which is the minimum amount of acreage needed to drill a well, but does prescribe minimum spacing requirements, one looks to the Commission's Statewide Rule 38, titled "Well Densities," to ascertain <u>minimum</u> densities. 16 T.A.C. § 3.38. "Rule 38 establishes the minimum number of acres to be assigned to each well in a given reservoir." 2 E. Smith & J. Weaver, TEXAS LAW OF OIL AND GAS ¶ 9.3(B) (2013). Statewide Rule 38(b)(2)(A) provides that for spacing rules requiring a minimum 467 feet lease line spacing and 1,200 feet between-wells spacing (which is the case for both the Statewide Spacing Rule 37 and the Field Rules for the Vaquillas Ranch (Lobo Cons.) Field), the <u>minimum</u> number of acres that must be assigned to each well is 40 acres. There is no <u>maximum</u> number of acres that may be assigned to each well. Except for the requirement that there must be at least 40 acres, Rule 38 does not require acreages of any particular size to be assigned to gas wells.[5]

The only relevant <u>prohibition</u> in Rule 38 is that "[n]o well shall be drilled on substandard acreage," which means in this case, no well shall be drilled on <u>less than</u> 40-acre units. 16 T.A.C. §3.38(b)(1). None of the applicable Commission rules prohibits drilling on, or retention of, units larger than 40 acres per well. As stated above, neither the Field Rules nor Statewide Rule 38

---

[5]Proper interpretation of the Commission's Field Rules is, of course, a question of law for the Court. *See, e.g., State v. Bilbo,* 392 S.W.2d 121, 122 (Tex. 1965) (interpretation of certificate issued by the Commission presents a question of law).

establishes any maximum acreage per well.[6] Consequently, these parties' agreement that ConocoPhillips may retain 640 acres of retained acreage around gas wells complies in every respect with the Field Rules for the Vaquillas Ranch (Lobo Cons.) Field and Statewide Rule 38. As a matter of common sense, blocks of 640 acres plainly satisfy the requirement that there must be <u>at least</u> 40 acres assigned.

As will be discussed in greater detail below, nothing in the Field Rules for the Vaquillas Ranch (Lobo Cons.) Field requires, mandates, or—important here--"establishes" any units of less than 640 acres.

Rule 3 of the Field Rules addresses proration. There is no factor in the proration formula for the Vaquillas Ranch (Lobo Cons.) Field for the amount of acreage assigned to wells. Other field rules do employ acreages as a factor for proration, but these Field Rules do not.

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Word the Parties Chose for Paragraph 18:  "Establish."

In order to decide this case, the Court must closely analyze the specific language these parties chose to use for Paragraph 18 of these Leases. The operative words from the exception in Sentence (2), quoted above, are: "in case any rule adopted by the [Commission] for any field on this lease provides for a spacing or proration *establishing* <u>different units of acreage per well, then</u> <u>such</u> *established* <u>different units shall be held under this lease by such production, in lieu of the . .</u> <u>. 640-acre units above mentioned</u>."

The leading Texas Supreme Court opinion on this type of language—which ConocoPhillips says compels a decision in its favor—is *Jones v. Killingsworth*, 403 S.W.2d 325

---

[6]As noted above, the maximum acreage limitation for the wells at issue here is set forth in Paragraph 4 of the Leases. Paragraph 4 prohibits ConocoPhillips from assigning more than 640 acres (plus a 10 percent tolerance) to each gas well.

(Tex. 1965). In *Jones*, the Court was called upon to construe a pooling provision in an oil and gas lease that provided, in pertinent part, as follows:

> Units pooled for oil hereunder shall not substantially exceed 40 acres each in area, and units pooled for gas hereunder shall not substantially exceed 640 acres each plus a tolerance of 10% thereof, provided that should governmental authority having jurisdiction *prescribe or permit* the creation of units larger than those specified, units thereafter created may conform substantially in size with those *prescribed* by governmental regulations.

*Id.* at 327 (emphasis added). The Railroad Commission promulgated Field Rules for the field covered by the *Jones* lease, and those Field Rules *required* operators to assign a minimum of 80 acres to oil wells, but went further to permit them also to assign an additional 80 acres, for a total of 160 acres to oil wells. *Id.*

The dispute before the Supreme Court was that the lessor, Jones, contended the language of her lease authorized the lessee, Killingsworth, to unitize only 80 acres around oil wells. Killingsworth, the lessee, contended the Field Rules permitted him to create units that conformed substantially to the maximum acreage of 160 acres that was permitted for oil wells by the applicable Field Rules. The Supreme Court decided the case for Jones by focusing on the difference between two specific words—"prescribed" and "permitted"—that the parties had employed in the Jones-to-Killingsworth lease. The Court held as follows:

> The lessors did not consent to enlarge an oil proration unit to any size *permitted* by governmental regulations. They gave their consent to enlarge a unit of substantially 40 acres, but only to the extent of the size of units *prescribed* by the regulatory authority. The fact that the Railroad Commission may permit a much larger unit cannot be read into the lease contract when, as here, the authority create larger units is expressly limited to units of the size prescribed by the Railroad Commission. The Commission *prescribed* a unit of 80 acres. [The field rules clearly say that there *must* be a proration unit of at least 80 acres, and there *may* be larger units of not more than 160 acres]. * * *
>
> The parties obviously knew when the lease contract was executed that a *permitted* oil proration unit could conceivably be much larger in area than one *prescribed* by governmental authority. To say that a lessee can pool lessors' land

with units of any size *permitted* by the Railroad Commission would defeat the intention of the parties to restrict the size of the units to the size *prescribed* by governmental authority.

*Id.* at 328 (emphasis in original).

The same analysis is applicable here. Before the exception in Sentence (2) of the Vaquillas Leases, quoted above, comes into play, the Railroad Commission must "<u>establish</u>" units for gas wells of a different size than 640 acres. The parties used the word "establish" twice, saying first "establishing different units of acreage," and second, referring to "established different units." The parties did <u>not</u> say the exception in Sentence (2) comes into play if the Railroad Commission adopts a Field Rule that merely "<u>permits</u>" the creation of gas units of fewer than 640 acres, and that is all the Field Rules for the Vaquillas Ranch (Lobo Cons.) Field do. They permit operators to drill wells on a <u>minimum</u> of 40 acres, but they do not "establish" 40 acre units.

Unless words are specifically defined in oil and gas leases, Texas courts give those words their "plain, ordinary, and generally accepted meaning." *Heritage Resources*, 939 S.W.2d at 121. The ordinary meaning of the word "establish" is "to settle, make, or fix firmly." BLACK'S LEGAL DICTIONARY at 626 (9th ed. 2009). Similarly, an old Texas case says "established" means "[m]ake steadfast, firm, or stable, to settle on a firm or permanent basis." *Rowley v. Braley*, 286 S.W. 241, 245 (Tex. Civ. App.—Amarillo 1926, writ dism'd). WEBSTER'S THIRD NEW INTERNATIONAL UNABRIDGED DICTIONARY (1993) says "establish" means either "to make firm or stable," or to "settle or fix after consideration by enactment or agreement." *Id.* at 778. Using those definitions, it is flatly incorrect for Vaquillas to argue that the Field Rules in question "settle" or "fix firmly" that there must be only 40 acre units of acreage for gas wells. Those Rules clearly do not. Those Rules provide nothing more than that gas wells must have a

minimum of 40 acres, and ConocoPhillips' retained acreage blocks of 640 acres clearly meet that minimum limit.

ConocoPhillips was well within its authority under the Vaquillas Leases' pooling clauses to assign 640 acres to gas wells, and nothing in the Field Rules "established" or in any way compelled ConocoPhillips to reduce its units to any different size.

In order for the Court to give Sentence (2) the meaning for which Vaquillas contends, the Court would have to rewrite that sentence in both Vaquillas Leases to say something like: "in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease provides for a spacing or proration [*permitting*] different units of acreage per well, then such [*permitted*] different units shall be held under this lease by such production, in lieu of the . . . 640-acre units above mentioned." But this Court may not rewrite the Vaquillas Leases in the guise of interpreting them. *E.g., EOG Resources, Inc. v. Killam Oil Co., Ltd.*, 239 S.W.3d 293, 300 (Tex. App.—San Antonio 2007, pet. denied). And that is precisely the interpretation the Supreme Court rejected in *Jones*.[7] "Prescribe" does not mean "permit," and "establish" does not mean "permit."

## B.    The Presumption Against a "Limitation on the Grant."

For the reasons explained above, there is no room for doubt about the proper meaning of Sentence (2). As explained above, "establish" does not mean "permit." Indeed, "establish" means "to settle, make, or fix firmly," which is a far cry from "permit" or "allow." But even if there were some possible doubt or ambiguity in Paragraph 18, the Court would be required to interpret Paragraph 18 as ConocoPhillips contends because of the long-standing, very strong,

---

[7]The Supreme Court decided *Jones v. Killingsworth* in 1965, several years before either of the Vaquillas Leases was executed. With knowledge of the Court's interpretation in Jones, there can be little doubt that if these parties intended for Sentence (2) to apply when the Railroad Commission merely *permitted* smaller units, they would have said so.

rule in Texas law that "the language used by the parties to an oil and gas lease will not be held to impose a special limitation on the grant unless it is clear and precise and so unequivocal that it can reasonably be given no other meaning." *Rogers v. Ricane Enterprises, Inc.*, 773 S.W.2d 76, 79 (Tex. 1989). *Accord, Anadarko Petroleum Corp. v. Thompson,* 94 S.W.3d 550, 554 (Tex. 2002); *Fox v. Thoreson,* 398 S.W.2d 88, 92 (Tex. 1966); *Knight v. Chicago Corp.*, 188 S.W.2d 564, 566 (Tex. 1945).

Vaquillas wants the Court to interpret Sentence (2) of Paragraph 18 as a limitation on the lessors' grant to ConocoPhillips of a fee simple determinable in the mineral estate in and under all land described in the Vaquillas Leases. Although ConocoPhillips disagrees, Vaquillas even describes Paragraph 18 as an automatic, <u>self-executing</u> limitation on Vaquillas' grant to ConocoPhillips. Paragraph 11 of Plaintiff's Original Petition alleges: "Under Paragraph 18 of both oil and gas leases, un-earned acreage reverted to Vaquillas 90 days after Conoco ceased drilling wells under the continuous drilling clause." Vaquillas even describes the additional acreage it contends ConocoPhillips must release as the "Reverted Minerals." (Plaintiff's Original Petition ¶ 14). Accordingly, Vaquillas wants the Court to interpret Sentence (2) to result in ConocoPhillips' loss of an additional thousands of acres of leasehold estate, *i.e.,* Vaquillas seeks a ruling from this Court that ConocoPhillips forfeited the thousands of acres Vaquillas calls the "Reverted Minerals," which are those acres included within the 640-acre "Retained Units" that ConocoPhillips retained when it executed releases to Vaquillas under Paragraph 18, but would not be within the only 40-acre blocks Vaquillas claims Sentence (2) allowed ConocoPhillips to retain.

When the word "establish" in Sentence (2) is given its proper, ordinary meaning, Vaquillas' interpretation of Sentence (2) is not a permissible—or even reasonable—

interpretation. That is especially true in view of the Texas Supreme Court's strong presumption against construing lease provisions as limitations on the grant, which is what Vaquillas contends Sentence (2) of Paragraph 18 is. Vaquillas' interpretation should be rejected as a matter of law.

## V. THE SUMMARY JUDGMENT RECORD

The summary judgment record that ConocoPhillips places before the Court consists of:

1. The Declaration of Dana C. Huebner, attached as Tab 1, which authenticates copies of the two Leases and the Partial Releases of Oil and Gas Leases that ConocoPhillips has already filed of record releasing acreage from the two Leases, but retaining 640-acre blocks of acreage around producing gas wells.

2. The Field Rules for the Vaquillas Ranch (Lobo Cons.) Field, Webb County, Texas, as amended, attached at Tab 2.

3. ConocoPhillips relies on Plaintiff's Original Petition to show what Plaintiff contends in this case and for certain admissions therein that demonstrate that certain facts are undisputed. ConocoPhillips has generally denied the allegations in Plaintiff's Original Petition. If this Motion for Summary Judgment is denied, ConocoPhillips reserves all rights to contest the allegations in the Petition.

## VI. PRAYER FOR RELIEF

Defendant ConocoPhillips Company prays that this Motion for Summary Judgment will be granted and that final judgment be entered that Plaintiff Vaquillas Unproven Minerals, Ltd., take nothing by this action. ConocoPhillips also prays for recovery of its costs and for all other relief to which it is entitled.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Motion for Summary Judgment was served via email on the following counsel of record for Plaintiff as stated on this 30th day of July 2014:

Gregg Owens
Email: gregg.owens@haysowens.com
Robert G. Hargrove
Email: rob.hargrove@haysowens.com
Hays & Owens L.L.P.
807 Brazos Street, Suite 500
Austin, Texas 78701
Tel:    512.472.3993
Fax:    512.472.3883

Michael Jung
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Tel:    214.651.4724
Fax:    214.651.4330 (main)
Fax:    214.659.4022 (direct)
Email: michael.jung@strasburger.com

Raul Leal
Raul Leal Incorporated
5810 San Bernardo, Suite 390
Laredo, Texas 78041
Tel:    956.727.0039
Fax:    956.727.0369
Email: rleal@rl-lawfirm.com

Armando X. Lopez
1510 Calle Del Norte, Suite 16
Laredo, Texas 78041
Tel: (956) 726-0722
Fax: (956) 726-6049
mandox@rio.bravo.net

*Counsel for Vaquillas Unproven Minerals, Ltd.*

_____
Michael V. Powell

Dated: July 30, 2014

Respectfully submitted,

Michael V. Powell
  State Bar No. 16204400
Email: mpowell@lockelord.com
Elizabeth L. Tiblets
  State Bar No. 24066194
Email: etiblets@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Tel:   214-740-8520
Fax:   214-740-8800

Adolfo Campero
  State Bar No. 00793454
CAMPERO & ASSOCIATES, P.C.
315 Calle Del Norte, Suite 207
Laredo, Texas 78041
Tel:   956-796-0330
Fax:   956-796-0399
Email: acampero@camperolaw.com

**ATTORNEYS FOR DEFENDANT
CONOCOPHILLIPS COMPANY**

# TAB 1

## DECLARATION OF DANA C. HUEBNER

1.      My name is Dana C. Huebner, and my date of birth is __12-15-1988__.

My business address is at ConocoPhillips Company, 600 North Dairy Ashford Road, Houston, Texas 77079. I am employed as a Landman by ConocoPhillips Company, and I currently provide land support to ConocoPhillips' South Texas operations. I have been employed by ConocoPhillips Company since June 2013. I hold a B.B.A. degree from the University of Houston.

2.      In my capacity as a landman, I have access to ConocoPhillips' land records, including oil and gas leases and releases of oil and gas leases. I have examined those leases and can and do testify as follows:

A.      The document attached at Exhibit A to this Declaration is a true and correct copy of the Oil, Gas and Mineral Lease, as amended November 1, 1987, from Vaquillas Ranch Company, Ltd., and others to Conoco, Inc., covering 26,622.79 acres of land, more or less, in Webb County, Texas, as more fully described on Exhibit "A" attached thereto, without subsequent amendments.

B.      The document attached at Exhibit B to this Declaration is a true and correct copy of the Oil, Gas and Mineral Lease dated November 1, 1987, from Vaquillas Ranch Company, Ltd., and others to Conoco, Inc., covering 6,740 acres of land, more or less, in Webb County, Texas, as more fully described on Exhibit "A" attached thereto, without subsequent amendments.

C.      The document attached as Exhibit C to this Declaration is a true and correct copy of a Partial Release of Oil and Gas Lease, executed February 17, 2014, that is shown to be recorded in Volume 3577, Pages 454-530 of the public records of Webb County,

1

Texas. This Partial Release pertains to the 26,622.79-acre lease described in subparagraph A, above.

D.     The document attached as Exhibit D to this Declaration is a true and correct copy of a Partial Release of Oil and Gas Lease, executed February 17, 2014, that is shown to be recorded in Volume 3577, Pages 440-453 of the public records of Webb County, Texas. This Partial Release pertains to the 6,740-acre lease described in subparagraph B, above.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Houston, Harris County, Texas, on the _29th_ day of July 2014.

_Dana C. Huebner_
Dana C. Huebner

2

# EXHIBIT A

Producers 88 (7-66)
With 640 Acres Pooling Provision
Pof Printing & Stationery Co., Houston, Texas

## OIL, GAS AND MINERAL LEASE AMENDING OIL, GAS AND MINERAL
## LEASE DATED JUNE 15, 1974 (AS AMENDED) BETWEEN LESSOR AND LESSEE HEREIN

THIS AGREEMENT made this_____1_____day of____November____19 87, between

Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven Mineral Trust; acting by and through its general partners, J. O. Walker, Jr., E. Walker Quiros, Gene S. Walker and Evan B. Quiros.

Lessor (whether one or more), whose address is:___P. O. Box 1086, Laredo, Texas   78040

and___Conoco Inc., P. O. Box 2197, Houston, Texas   77252____, Lessee, WITNESSETH:

1. Lessor in consideration of____Ten Dollars and Other Good and Valuable Consideration____Dollars

($  10.00  ), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, conducting exploration, geologic and geophysical surveys by seismograph, core test, gravity and magnetic methods, injecting gas, water and other fluids, and air into subsurface strata, laying pipe lines, building roads, tanks, power stations, telephone lines and other structures thereon and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto, to produce, save, take care of, treat, transport and own said products, and housing its employees, the following described land in____Webb____County, Texas, to-wit:

26,622.79 acres of land, more or less, situated in Webb County, Texas more fully described in Exhibit "A" attached hereto and made a part of this Lease for all relevant purposes, including limitations upon warranty as specifically set out therein.

~~This lease also covers and includes all land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not included within the boundaries of the land particularly described above.~~ For the purpose of calculating the rental payments hereinafter provided for, said land is estimated to comprise____26,622.79____acres, whether it actually comprises more or less.

2. Subject to the other provisions herein contained, this lease shall be for a term of ~~ten~~ **five** years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.

**where the term one-eight is used in this paragraph it is changed to one-sixth**

3. The royalties to be paid by Lessee are (a) on oil, one-eighth of that produced and saved from said land the same to be delivered at the wells or to the credit of Lessor into the pipelines to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) ~~on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale;~~ while there is a gas well on this lease or on acreage pooled therewith but gas is not being sold or used, Lessee may pay as royalty, on or before ninety (90) days after the date on which (1) said well is shut in, or (2) the land covered hereby or any portion thereof is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein, whichever is the later date, and thereafter at annual intervals on or before the anniversary of the date the first payment is made, a sum equal to the amount of the annual rental payable in lieu of drilling operations during the primary term on the number of acres subject to this lease at the time such payment is made, and if such payment is made or tendered, this lease shall not terminate, and it will be considered that gas is being produced from this lease in paying quantities; and (c) on all other minerals mined and marketed, one-tenth either in kind or value at the well of mine, at Lessee's election, except that on sulphur mined and marketed the royalty shall be fifty cents (50¢) per long ton. Lessee shall have free use of oil, gas, coal, and water from said land, except water from Lessor's wells, for all operations hereunder, and the royalty on oil, ~~gas~~ and ~~coal~~ shall be computed after deducting any so used. **and tanks, gas**

4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof as to oil and gas, and/or either of them, with any other land covered by this lease, and/or with any other land, lease or leases in the immediate vicinity thereof to the extent hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. Units pooled for oil hereunder shall not substantially exceed 40 acres each in area, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of ten percent (10%) thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, for the drilling or operation of a well at a regular location or for obtaining maximum allowable from any well to be drilled, drilling or already drilled, units thereafter created may conform substantially in size with those prescribed or permitted by governmental regulations. Lessee under the provisions hereof may pool or combine acreage covered by this lease or any portion thereof as above provided as to oil in any one or more strata and as to gas in any one or more strata. The units formed by pooling as to any stratum or strata need not conform in size or area with the unit or units into which the lease is pooled or combined as to any other stratum or strata, and oil units need not conform as to area with gas units. The pooling in one or more instances shall not exhaust the rights of the Lessee hereunder to pool this lease or portions thereof into other units. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit, and upon such recordation the unit shall be effective as to all parties hereto, their heirs, successors, and assigns, irrespective of whether or not the unit is likewise effective as to all other owners of surface, mineral, royalty, or other rights in land included in such unit. Lessee may at its election exercise its pooling option before or after commencing operations for or completing an oil or gas well on the leased premises, and the pooled unit may include, but it is not required to include, land or leases upon which a well capable of producing oil or gas in paying quantities has theretofore been completed or upon which operations for the drilling of a well for oil or gas have theretofore been commenced. In the event of operations for drilling on or production of oil or gas from any part of a pooled unit which includes all or a portion of the land covered by this lease, regardless of whether such operations for drilling were commenced or such production was secured before or after the execution of this instrument or the instrument designating the pooled unit, such operations shall be considered as operations for drilling on or production of oil or gas from land covered by this lease whether or not the well or wells be located on the premises covered by this lease and in such event operations for drilling shall be deemed to have been commenced on said land within the meaning of paragraph 6 of this lease; and the entire acreage constituting such unit or units, as to oil and gas, or either of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease. For the purpose of computing the royalties to which owners of royalties and payments out of production and each of them shall be entitled on production of oil and gas, or either of them, from the pooled unit, there shall be allocated to the land covered by this lease and included in said unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) a pro rata portion of the oil and gas, or either of them, produced from the pooled unit after deducting that used for operations on the pooled unit. Such allocation shall be on an acreage basis—that is to say, there shall be allocated to the acreage covered by this lease and included in the pooled unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that pro rata portion of the oil and gas, or either of them, produced from the pooled unit which the number of surface acres covered by this lease (or in each such separate tract) and included in the pooled unit bears to the total number of surface acres covered by this lease. Royalties hereunder shall be computed on the portion of such production, whether it be oil and gas, or either of them, so allocated to the land covered by this lease and included in the unit just as though such production were from such land. The production from an oil well will be considered as production from the lease or oil pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit. The formation of any unit hereunder shall not have the effect of changing the ownership of any delay rental or shut-in production royalty which may become payable under this lease. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interest as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but Lessee shall nevertheless have the right to pool as provided above with consequent allocation of production as above provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender (or shall make a bona fide attempt to pay or tender, as hereinafter stated) to Lessor or to the credit of Lessor in____South Texas National Bank

~~Bank~~ at____Laredo____, Texas, (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of____Forty-Eight Thousand Eight Hundred Eleven and 26/100____Dollars (  48,811.26  ), (herein called rentals), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental under this paragraph and of royalty under paragraph 3 on any gas well from which gas is not being sold or used may be made by the check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment. If such bank (or any successor bank) should fail, liquidate or, be succeeded by another bank, or for any reason fail or refuse to accept rental, Lessee shall not be held in default for failure to make such payment or tender of rental until thirty (30) days after Lessor shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payments or tenders. If Lessee shall, on or before any anniversary date, make a bona fide attempt to pay or deposit rental to a Lessor entitled thereto according to Lessee's records or to a Lessor, who, prior to such attempted payment or deposit, has given Lessee notice, in accordance with subsequent provisions of this lease, of his right to receive rental, and if such payment or deposit shall be ineffective or erroneous in any regard, Lessee shall be unconditionally obligated to pay to such Lessor the rental properly payable for the rental period involved, and this lease shall not terminate but shall be maintained in the same manner as if such erroneous or ineffective rental payment or deposit had been properly made, provided that the erroneous or ineffective rental payment or deposit be corrected within 30 days after receipt by Lessee of written notice from such Lessor of such error accompanied by such instruments as are necessary to enable Lessee to make proper payment. The down cash payment is consideration for this lease according to its terms and shall not be allocated as a mere rental for a period. Lessee may at any time and from time to time execute and deliver to Lessor or to the depository above named or place of record a release or releases of this lease as to all or any part of the above-described premises, or of any mineral or horizon under all or any part thereof, and thereby be relieved of all obligations as to the released land or interest. If this lease is released as to all minerals and horizons under a portion of the land covered by this lease, the rentals and other payments computed in accordance therewith shall thereupon be reduced in the proportion that the number of surface acres within such released portion bears to the total number of surface acres which was covered by this lease immediately prior to such release.

Original Lease 199129-001    DMI JUL 18 88    199129-001

COP.00:2145

6. If prior to discovery and production of oil, gas or other mineral on said land or on acreage pooled therewith, Lessee should drill a dry hole or holes thereon, or if after discovery and production of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter or if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days from date of completion of dry hole or cessation of production. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep the lease in force during the remainder of the primary term. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith. Any pooled unit designated by Lessee in accordance with the terms hereof may be dissolved by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within three hundred thirty (330) feet of and draining the leased premises, or acreage pooled therewith, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

8. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U. S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to rentals hereunder, Lessee may pay or tender such rentals to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualification of an executor or administrator of the estate, or if there be none, then until Lessee is furnished with evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more persons be entitled to participate in the rental payable hereunder, Lessee may pay or tender said rental jointly to such persons or to their joint credit in the depository named herein; or, at Lessee's election, the proportionate part of said rentals to which each participant is entitled may be paid or tendered to him separately or to his separate credit in said depository; ... In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination ... are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, ...

10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and in event Lessee does so, it shall be subrogated to such lien with right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties ... which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. Should any one or more of the parties named above as Lessors fail to execute this lease, it shall nevertheless be binding upon the party or parties executing the same. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of force majeure, any Federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises; and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

The attached addendum dated November 1, 1987, is attached hereto and made a part hereof for all intents and purposes.

STATE OF..................................... }

COUNTY OF....................................

**TEXAS SINGLE ACKNOWLEDGMENT**

Before me, the undersigned authority, a Notary Public in and for said County and State, on this day

personally appeared.....................................................................................................................

known to me to be the person ... whose name.............................subscribed to the foregoing instrument, and acknowledged to me that ...he... executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this the.............day of.........................................., A. D. 19..........

Notary Public in and for.........................County, .........................

STATE OF..................................... }

COUNTY OF....................................

**TEXAS JOINT ACKNOWLEDGMENT**

Before me, the undersigned, a Notary Public in and for said County and State, on this day personally

appeared.....................................and.....................................
husband and wife, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed. And the said wife, having been examined by me privily and apart from her husband, and having had said instrument fully explained to her, she, the said wife, acknowledged the same to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office, this the.............day of.........................................., A. D. 19..........

Notary Public in and for.........................County, .........................

Pound Printing & Stationery Co., Houston, Texas

Oil, Gas and Mineral Lease

No.

FROM

TO

No. Acres

Dated

This instrument was filed for record on the .......... day of .......... 19.... at ......o'clock ...... M., and duly recorded in Book .......... Page .......... of the .......... records of this office.

When recorded return to

County Clerk

By .......... Deputy

Producers 88 (7-69)
With 640 Acre Pooling Provisions

12. Should Lessee be prevented from complying with covenants of this lease by reason of conditions or acts set forth in Paragraph '11' hereof, then Lessee agrees annually to pay to Lessor an amount equal to the delay rentals herein provided for during such period of prevention, whether same be during or subsequent to the primary term, and such payment shall be made at the end of each year of prevention either to Lessor or to the depository above named for credit to the account of Lessor.

13. This lease does not cover or include any right or privilege of hunting or fishing on any part of the above described land, and Lessee agrees with Lessor that neither he nor his assigns or agents or employees of his assigns, will bring firearms or dogs upon the leased premises, and should this provision against hunting and fishing be violated by any agents, servants, employees or contractors of Lessee's assigns, any such person so violating same shall have no further right to enter upon the leased premises, and such person shall be regarded as and shall be a trespasser on the premises of Lessor and be subject to the penalties imposed upon trespassers under the laws of the State of Texas.

14. It is expressly agreed and understood that after production of oil and gas in commercial quantities is obtained from the leased premises, the minimum annual income to Lessor from payment of rentals, shut-in royalty and royalty on production shall be sum of not less than Two ($2.00) Dollars per acre on the total acreage retained and then covered by this lease, but this provision shall not impair the right and privilege of Lessee, his successors and assigns, to release and surrender any part of the above described leased premises as herein provided. Lessee, his successors and assigns, shall determine within 90 days from the expiration of any lease year during which royalties have been paid on actual production the amount of any deficiency, and shall within said 90-day period pay such deficiency to Lessor or deposit same to Lessor's credit at

COP 0012146

-1-

GWB2/dm 130(1)

the depository hereinabove designated. Default in the payment of such deficiency shall not operate to terminate this lease or any part hereof, but Lessee, his successors and assigns, agrees to personally pay such deficiency to Lessor at Laredo in Webb County, Texas, together with any reasonable cost, including attorney's fees, incurred by Lessor in collecting such deficiency if not paid within the 90-day period hereinabove provided for.

15. Nothwithstanding any other provision herein contained, this oil, gas and mineral lease is limited to oil, gas and sulphur and minerals produced with oil and gas, and does not include minerals other than oil, gas and sulphur and minerals produced with oil and gas, as Lessor herein excludes from the leasehold estate herein granted, and reserves unto himself, his heirs and assigns, all minerals other than oil, gas and sulphur and minerals that may be produced with oil and gas, but it is expressly agreed that 'gas' as used herein includes gas, condensate, distillate or any other gaseous substance or any other mineral produced with oil and gas, including sulphur.

16. The right to pool under Paragraph '4' of this oil, gas and mineral lease shall be limited to lease or leases on land belonging to Lessor herein, or in which Lessor owns an interest in the oil, gas and other minerals.

17. For the purposes of the annual rental payments due under paragraph 5, Lessor and Lessee agree that said payments have been timely paid and received, and that this Lease is perpetuated, without the necessity of further delay rental payments, until the expiration of the primary term.

18. On November 1, 1990, Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease provides for a

-2-

|COP 0012147 |

GWB2/dm 130(1)

spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned; provided, however, that if at such date lessee is engaged in drilling or reworking operations the date for the execution and delivery of such release shall be postponed and the entire lease shall remain in force so long as operations on said well or wells are prosecuted with reasonable diligence, and if, after the completion or abandonment of any such well Lessee commences the drilling of an additional well within Ninety (90) days from the completion or abandonment of the preceding well, or continuously conducts drilling operations in good faith and with reasonable diligence on said lease without any cessation for longer than Ninety (90) days, said lease shall remain in full force and effect during such drilling operations and until the end of Ninety (90) days after the completion or abandonment of the final well, at which time Lessee shall execute and deliver to Lessor said written release, releasing all portions of the lease not then so developed. Each retained unit shall contain at least one (1) well producing or capable of producing oil or gas in paying quantities, and the acreage within a unit shall be contiguous.

If, after the date the partial release called for under this Paragraph 18 takes affect, all production from a retained unit around a well or wells cease to produce oil or gas in commercial or in paying quantities, Lessee shall have one hundred eighty (180) days thereafter within which to commence operations to establish or re-establish production therein in commercial or paying quantities, whether such production be from the same wellbore or other wellbore. If such operations result in commercial production, then this lease, as it applies to such unit shall continue until such commercial or paying production again ceases. However, if such operations do not result in commercial production, then Lessee shall have ninety (90) days after completion of such operations within which to commence drilling or reworking operations within such unit, and this lease, as it applies to said unit, shall remain in force so long as operations on said well or for drilling or reworking of any additional well therein are prosecuted with no cessation of more than ninety (90) consecutive days, and if they result in the production of oil or gas therein, so long thereafter

|COP 0012148 |

-3-

GWB2/dm 130(1)

as oil or gas is produced from said unit. As to any unit upon which commercial production may periodically terminate, the above right to timely resume operations and continue this lease as to such unit shall be reoccurring right.

The stipulation above as to the size of retained tracts around wells shall never be construed as a satisfaction of Lessee's right, duty and obligation to reasonably develop the leasehold held by Conoco or its successors or assigns. After November 1, 1990, Lessee agrees to drill such additional wells on the leased premises or such portions thereof as may be in force and effect from time to time, as may be necessary to reasonable develop the same for the production of oil and/or gas as a reasonable prudent operator.

19. A portion of paragraph 3 has been deleted and the following is in lieu thereof.

(b) on gas, including casinghead gas or other gaseous substances, produced from said land, the Lessors royalty shall be calculated and paid as follows:

a) Sales To Non-Affiliated Third Parties:
In the event Lessee enters into a gas sales contract with a non-affiliated third party, Lessor's royalty shall be one-sixth (1/6) of the gross proceeds received by Lessee from the sale of such gas.

b) Sales To Related Or Affiliated Entities For Resale:
In the event Lessee enters into a gas sales contract to sell gas to a related or affiliated entity, then Lessor's royalty shall be computed on the greater of the following:
1. One-sixth (1/6) of the gross proceeds received by Lessee or any affiliate or related entity from the sale of such gas to the first non-affiliated entity, or

2. One-sixth (1/6) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the

-4-

|COP 0012149 |

GWB2/dm 130(1)

east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

In this regard, it is understood that the "highest price reasonably obtainable" may be equal to, but is not necessarily, the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

c)  Taking, Selling Or Delivery Of Gas To Lessee Or Its Related Or Affiliated Entities For Use (Not For Resale):

In the event Lessee takes gas for its own use, or sells or transfers gas to a related or affiliated entity for use, then Lessor's royalty shall be computed on the greater of the following:

1.  One-sixth (1/6) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

In this regard, it is understood that the "highest price reasonably obtainable" may be equal to but is not necessarily the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity, or

2.  One-sixth (1/6) of the quarterly weighted average of the prices being paid by "purchasers" (as hereinafter defined) in the east one-fourth of Webb County, Texas, who are purchasing gas of like kind and quality. For the purposes of calculating the average price under this Paragraph c2, prices paid shall be those as reported in the Energy Planning Book publication or as reported to the State of

-5-

| COP 0012150 |

Texas for severence tax purposes. "Purchasers" shall mean the three largest purchasers based on volume of gas purchased for such calendar quarter, in the east one-fourth of Webb County, Texas. For an example of the calculation of the quarterly weighted average of such price, see Exhibit "B".

Lessor and Lessee shall meet within eleven (11) months after the end of each calander year. At least thirty (30) days prior to such meeting, Lessee should furnish to Lessor a statement or other documentation of the basis upon which royalties accrued to Lessor under the terms of the Lease for the previous calender year. Any additional royalties calculated by Lessee to be due, if any, shall be paid at such meeting. Within one (1) year from delivery of the above referred to statement or other documentation, Lessor shall notify Lessee of any discrepancies. Failure to notify Lessee timely of any discrepancies shall constitute final acceptance of royalty payments as covered by such statements or other documentation. The first period for which Lessee shall prepare such statements or other documentation shall begin on April 1, 1988 and end on December 31, 1988. Nothing in this paragraph shall preclude Lessor from claiming any royalty which Lessor is entitled to as a result of mistake in computation, oversight in computation, or error in computation of royalty or which may result from the subsequent disclosure of a discrepancy.

LESSOR'S royalty shall be without deduction for any costs, such as, but not limited to, costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and otherwise making the oil, gas and associated substances ready for sale or use, except for a) severance and related taxes, and b) reasonable transportation expenses which may be necessary to be paid to non-affiliated third parties or entities to get Lessor's gas to a market or point of sale off the leased premises and which sale or sales will result in a net price equal to or higher than if said gas had been sold at the wellhead.

LESSOR'S royalty on all production from depths below the stratigraphic equivalent of the top of the Cretaceous System as seen at 12,810 feet

| COP 0012151 |

-6-

GWB2/dm 130(1)

in the electric log of the Vaquillas #7 Well located 260' FNL and 1,700' FWL of Survey 987, A2061, Webb County, Texas, under the lands now held by Lessee under this Lease shall be one-fifth (1/5) instead of one-sixth (1/6).

LESSEE may submit a copy of a proposed gas sales contract to Lessor which is acceptable to Lessee and request that Lessor approve same for royalty computation purposes. Lessor shall have thirty (30) days after receipt of a gas contract to approve same. If Lessor approves same or does not timely decline to do so, then Lessor's royalty on gas sold under such gas sales contract shall be based on the gross proceeds received under said contract.

GAS contracts with a term in excess of three (3) years shall contain a provision for price redetermination no later than the end of the 3rd year and subsequent price redeterminations thereafter at intervals no greater than two (2) years apart.

20. Lessee agrees to fill all slush pits and level the same when they have ceased to be used and to restore the land to as near its original state as is practicable and to pay for damages to the surface of the land and the improvements, water wells, growing crops and livestock thereon, and to any other personal property of Lessor, Vaquillas Ranch Company, Ltd., occasioned by, arising out of, or resulting from operations by Lessee, his agents, employees or independent contractors on the land hereby leased to Lessee. Lessee also agrees, when requested in writing by Lessor, to divulge to Lessor true and correct information as requested by Lessor as to all drilling, producing and marketing operations conducted under this lease and to furnish to Lessor copies of all electric well logs taken hereunder; provided, however, Lessee shall not be obligated to release such information until it has been released to the industry.

21. Lessee hereby agrees to ensure that the two exit gates on F.M. 2895 (Forest Gate and Reynolds Gate) are guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Lessee and Lessor. As to the exit

-7-

GWB2/dm 130(1)

COP 0012152

gate on the north side of U.S. Highway 59, Lessee agrees to use its best efforts to work out an arrangement with other exploration companies using such gate to ensure that it is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and other times as mutually agreed to by Conoco and Lessor. Further, Lessee agrees to use its best efforts to work out an arrangement with TransAmerican Natural Gas Corporation or its successors or assigns to ensure that the exit gate located 9 miles north of Aguilares, Texas, on F.M. 2895 is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Lessee and Lessor. In regard to gates used by Lessee and other exploration companies, Lessee agrees to pay its share of the cost of guarding such gates when such gate guards are required under this agreement. Lessee shall not be obligated to furnish a gate guard on any gate which has been abandoned or is not being used by Lessee.

22. Lessee agrees that before abandoning any well drilled on said lease for oil or gas purposes, it will notify the owner or the surface estate in person or by telephone of its intention to do so, and it will allow said owner of the surface estate a reasonable time, not exceeding twenty-four (24) hours thereafter, within which to elect to take over the hole for the purpose of attempting to make and complete a water well. Lessee agrees to consult with such surface owner as to the location of a potential water zone, without any liability or warranty for such consultation. Upon the owner of the surface estate election, within the specified time, to attempt to complete the well as a water well and complying with all rules and regulations of the Railroad Commission of Texas and applicable statutes, Lessee will, at its expense, set all plugs to just below the designated water sand as may be required by the Railroad Commission and thereafter deliver the well to said owner of the surface estate, leaving in such well all surface casing and such intermediate casing as may have been run and set to at least the depth of the designated water sand and thereafter the owner of the surface state shall own the well and shall be responsible for all subsequent matters in connection with the well and for compliance with the applicable statutes and regulations of all regulatory agencies having jurisdiction. Lessee shall have no liability to

-8-

|COP 0012153 |

Lessor in connection with any of the operations which may be conducted by the owner of the surface estate who shall thereafter bear all responsibility and liability with respect thereto. It is expressly understood that Lessee shall not be required to furnish any additional casing or other equipment for any well plugged back at the request of the owner of the surface estate under this paragraph. Should the owner of the surface estate elect not to attempt to make a producing water well out of any such hole, Lessee shall plug the well in accordance with all applicable rules, regulations and statutes.

23. It is expressly agreed and understood that for the purposes of this lease the following definitions shall apply:

"Commences" - A well shall be deemed commenced on the date which the drilling bit enters the earth for the drilling of a well.

"Abandoned" - A well shall be deemed abandoned on the day when it is finally plugged as a dry hole.

"Completed" - A well shall be deemed completed thirty (30) days after the day the Lessee sets production casing.

24. Lessor and Lessee agree to limit the commencement of actual drilling during deer hunting season to 1) those wells drilled in areas which would not disturb deer hunting, and 2) offset wells. If Lessee must commence a well during deer hunting season to perpetuate said lease, then Lessor will either a) not object to the drilling of such well during deer hunting season or b) agree to extend the commencement date for such well to a mutually agreeable date after deer hunting season ends. For the purposes of this paragraph "deer hunting season" shall be that period defined by State law.

25. Nothwithstanding anything contained herein to the contrary, the Lessor at any time and from time to time, upon not less than ninety (90) days notice to the holder of this lease, may elect to require the payment of any royalties accruing to such royalty owner under this lease to be made in kind; provided that any expenses incident to the exercise of such election shall be borne by Lessor and such election shall be for periods of not less than twelve (12) months. Lessor shall only be allowed to take in

-9-

|COP 0012154 |

GW82/dm 130(1)

kind when Lessee is producing for his own account. In the event of such an election by Lessor, Lessee shall cooperate fully with Lessor in allowing Lessor to take their royalty in kind, including permitting Lessor to use Lessee's wellhead equipment and, to the extent that Lessee has assignable rights, the use of Lessee's purchaser's transportation facilities in good faith and not to exceed prevailing charges for similar services in the industry at the time if Lessee or its affiliates are transporting the gas, but if Lessee has a third party contract for the transport of said gas, Lessor will be bound by said contract. Should Lessee desire to enter into a gas purchase contract having a term of more than one (1) year, then (a) Lessee shall include in such contract a provision that allows Lessor to elect to take its gas in kind and be released from such contract one hundred twenty (120) days after notice, or (b) Lessor may approve of such contract in writing, in which event, Lessor may elect to take its gas in kind either at the end of such gas contact or one (1) year after notice to Lessee, whichever happens sooner. Any equipment installed by Lessor necessary to take in kind must be approved by Lessee and maintained according to Lessee's specifications.

If Lessee is unable to obtain a more favorable gas contract because of Lessor's reservation of this election to take in kind, then Lessee may elect to give notice of its intention to sign a gas contract acceptable to Lessee and request that Lessor join in signing same, and if Lessor elects to sign same, then Lessor's royalty share of revenue shall be bound by such contract and Lessor may not elect to take its royalty in kind during the term of such gas purchase contract.

26. This Amendment is applicable to only that leasehold interest presently owned and held by Conoco Inc. Nothing contained herein shall in any way inure to the benefit of or be applicable to third parties who hold or claim any interest in said 26,622.79 acre lease or who claim an undivided interest therin either jointly or separately with Conoco. Nothing herein shall in any way prejudice any claim, demand or cause of action which Vaquillas may have or assert against third parties holding any leasehold interests in Vaquillas lands. Nothing herein shall be construed as a release or modification of any right, claim or cause of action which

-10-

COP 0012155

GWB2/dm 130(1)

Vaquillas may have against third parties who claim any interest in said 26,622.79 acre lease or any other Vaquillas lease.

27. Lessor does further RATIFY, CONFIRM and ADOPT all of the terms, provisions and conditions of said June 15, 1974 Lease, as amended and as it applies to those rights held by Conoco Inc. thereunder, and that such lease, as amended and as it applies to Conoco Inc. is in full force and effect as of this date. Further, nothing contained herein shall in any way inure to the benefit of or be applicable to any interest held by third parties in and to the June 15, 1974 Oil and Gas lease.

DATED this _9th_ day of January, 1988.

VAQUILLAS RANCH COMPANY, LTD.

By: _____
J. O. Walker, Jr.

By: _____
E. Walker Quiros

By: _____
Gene S. Walker

By: _____
Evan B. Quiros

VAQUILLAS UNPROVEN MINERAL TRUST

By: _____
J. O. Walker, Jr., Trustee

By: _____
E. Walker Quiros, Trustee

By: _____
Gene S. Walker, Trustee

By: _____
Evan B. Quiros, Trustee

VAQUILLAS PROVEN MINERAL TRUST

By: _____
J. O. Walker, Jr., Trustee

By: _____
E. Walker Quiros, Trustee

By: _____
Gene S. Walker, Trustee

By: _____
Evan B. Quiros, Trustee

CONOCO INC.

By: _____
Attorney-In-Fact

|COP 0012156 |

-11-

GWB2/dm 130(1)

| SURVEY | ABSTRACT | CERTIFICATE | GRANTEE | ACRES |
|---|---|---|---|---|
| 1649 | 1110 | 1158 | CCSD & RGNG | 640.0 |
| 1651 | 1112 | 1159 | CCSD & RGNG | 640.0 |
| 1652 | 2876 | 1159 | W. H. Taylor | 640.0 |
| 1661 | 1122 | 1164 | CCSD & RGNG | 640.0 |
| 1663 | 1123 | 1165 | CCSD & RGNG | 640.0 |
| 1633 | 1323 | 4/808 | GC & SF | 640.0 |
| 1634 | 2252 | 4/808 | GC & SF | 659.96 |
| 1665 | 1124 | 1166 | CCSD & RGNG | 640.0 |
| S.1/2 1666 | 2253 | 1166 | CCSD & RGNG | 328.75 |
| N.1/2 1666 | 3142 | 1166 | CCSD & RGNG | 328.79 |
| 468 | 2255 | 236 | AB & M | 659.14 |
| 467 | 799 | 236 | AB & M | 640.0 |
| 1635 | 1797 | 17 | TC Ry. | 640.0 |
| 865 | 1438 | 12/2541 | H & GN | 640.0 |
| 1683 | 1115 | 1175 | CCSD & RGNG | 640.0 |
| 1691 | 1267 | 5446 | GC & SF | 640.0 |
| 1696 | 2418 | 5448 | GC & SF | 640.0 |
| 1695 | 1268 | 5448 | GC & SF | 640.0 |
| 279 (pt. only) | 1353 | 3702 | GC & SF | 458.2 |
| 1004 | 2421 | 2/105 | J. Poitevent | 634.58 |
| 1692 | 2419 | 5446 | GC & SF | 613.04 |
| 1693 | 1269 | 5447 | GC& SF | 640.0 |
| 2112 | 2420 & 1925 | 631 | B. F. James | 627.12 |
| 276 | 2552 | 3700 | GC & SF | 640.23 |
| 228 | 2550 | 1344 | CCSD & RGNG | 636.93 |
| 227 | 1133 | 1344 | CCSD & RGNG | 640.0 |
| 988 | 2593 | 2/103 | J. Poitevent | 637.10 |
| 987* | 2061 | 2/103 | J. Poitevent | 640.0 |
| 273* | 1141 | 1349 | CCSD & RGNG | 640.0 |
| 275* | 1336 | 3700 | GC & SF | 640.0 |
| 277* | 1337 | 3701 | CCSD & RGNG | 640.0 |
| S.1/2 31, Block 2 | 1043 | 453 | CCSD & RGNG | 320.0 |
| 25, Block 2 | 1042 | 452 | CCSD & RGNG | 640.0 |
| 232* | 2148 | 1346 | CCSD & RGNG | 462.70 |
| 233* | 1117 | 1347 | CCSD & RGNG | 455.9 |
| N.1/2 51, Block 2 | 1045 | 460 | CCSD & RGNG | 320.0 |
| 259 (pt. only) | 1137 | 1074 | CCSD & RGNG | 600.0 |
| 1955 | 1328 | 4526 | GC & SF | 640.0 |
| 2057 | 985 | 302 | CCSD & RGNG | 652.25 |
| 2060 (pt. only) | 3329-30 | 303 | CT & M | 440.0 |
| E.1/2 2059 | 984 | 303 | CT& M | 320.0 |
| E.1/2 1953* | 1329 | 4527 | GC& SF | 320.0 |
| 1627 (pt. only) | 1324 | 4683 | GC & SF | 160.0 |
| 1629 (pt. only) | 1275 | 4682 | GC & SF | 292.65 |
| W.1/2 1662 | 2230 | 1164 | CCSD & RGNG | 329.31 |
| E.1/2 1648 | 2441 | 1157 | CCSD & RGNG | 325.75 |
| W.1/2 1648 | 3301 | 1157 | CCSD & RGNG | 325.75 |
| 26, Block 2* | | 452 | R. O. Barnsley | 640.0 |
| 2335 | 3025 | School | W. Brown | 27.3 |
| E.1/2 1956* | 2560 | 4526 | GC & SF | 327.34 |

Lessor's warranty hereunder as to all of Surveys 987, 273, 275, 277, 26, the E.1/2 of 1953, E.1/2 of 1956 and 401.9 acres out of Survey 233 (all except 54 acres out of SW corner of said Sur. 233) is expressly limited to 1/2 of the executive rights in the oil and gas rights in and under said lands, and as to all of Survey 232 is expressly limited to 4/5 of the executive rights in the oil and gas rights.

The following parts of surveys are expressly excluded herefrom, viz.:

(1) The SE 1/4 of SW 1/4, SW 1/4 of NE 1/4 (80 acs.) and N 1/2 of SW 1/4 and SW 1/4 of SW 1/4 (120 acs.) of CT&M Survey 2060.

(2) The W. 3/4 of GC&SF Survey 1627 described in O&G Lse. to Daniel A. Pedrotti dated September 24, 1973, as amended.

(3) Any part of a survey listed herein not included within any specific fractional reference preceding the survey reference.

(4) The NE 160 acres of GC&SF Survey 279.

(5) Block 11 as per the E.D.Claggett Subdivision of record 2 Plat Records 29, Webb County, containing 40 acres, being the NW 1/4 of SE 1/4 of CCSD & RGNG Survey 259.

(6) All of the W. 320 acres of Survey 1629 described and included in O&G Lse. to Daniel A. Pedrotti dated September 24, 1973, as amended.

CBP 0012157

Calculation of royalty to be paid on gas delivered to Lessee or Affiliates for use (and not for resale) in accordance with paragraph 19.

Principal: Pay Lessor royalty based on the greater of the weighted average price paid by the three largest volumetric purchasers for the calendar quarter in the east quarter of Webb County or the weighted average of the prices used by the Lessor for royalty payment purposes:

Calculation: Determine additional royalty payments, if any.

Data Source: Energy Planning Book publication or as reported to the State of Texas for severence tax purposes.

Step 1. Calculate the weighted average price for the month for each of the three largest volume purchases for the quarter from the tax records.

### Month-January 1988

| Purchases from Company A | MCFD | $/MCF | $ |
|---|---|---|---|
| Lease 1 | 100,000 | 2.00 | 200,863 |
| Unit 16 | 80,000 | 1.51 | 120,800 |
| **Purchases from Company B** | | | |
| Well 42 | 180,821 | 1.62 | 291,733 |
| TOTAL United Texas Transmission | 360,821 | Calculate | 613,396 |

Monthly Weighted Average Price    613,396/360,821 = $1.70/MMBtu

Repeat procedure for remaining two months for this purchaser and for remaining two purchasers.

Step 2. Calculate the weighted average price of the three largest volumetric purchasers for the quarter using monthly values from Step 1.

| Purchaser | Month-January 1988 | | | Month - February 1988 | | | Month - March 1988 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| United Texas Transmission | 360,821 | 1.70 | 613,396 | 397,130 | 1.58 | 627,465 | 320,306 | 1.58 | 506,083 |
| UTRADE | 400,223 | 1.55 | 620,346 | 350,723 | 1.60 | 561,157 | 500,126 | 1.55 | 775,195 |
| South Gulf | 375,000 | 1.60 | 600,000 | 299,156 | 1.62 | 484,633 | 301,000 | 1.58 | 475,580 |
| Totals | 1,136,044 | ·· | 1,833,742 | 1,047,009 | ·· | 1,673,255 | 1,121,432 | ·· | 1,756,858 |

| | Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|---|
| Totals | 3,304,485 | 5,263,855 | 1.59 |

Step 3. Calculate weighted average price used by Lessee to calculate royalty payments on gas delivered to Lessee or affiliates and not for resale.

| Month-January 1988 | | | Month-February 1988 | | | Month-March 1988 | | |
|---|---|---|---|---|---|---|---|---|
| Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| 155,000 | 1.60 | 248,000 | 140,000 | 1.62 | 226,800 | 155,000 | 1.58 | 244,900 |

| Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|
| 450,000 | 719,700 | 1.60 |

Step 4. Compare weighted average price calculated in Step 2 to the weighted average Lessee price calculated in Step 3.

$1.60/MCF is greater than $1.59/MCF so no additional royalty payments are required for this quarter.

Note: Volumes and prices used in this example are used for illustration and may not be reflective of actual conditions.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by J. O. WALKER, JR., General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by E. WALKER QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by GENE S. WALKER, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by EVAN B. QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.

-12-

GWB2/dm 130(1)

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by J. O. WALKER, JR., Trustee for The Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires: 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by E. WALKER QUIROS, Trustee for the Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires: 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by GENE S. WALKER, Trustee of the Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.


-13-

GWB2/dm 130(1)

THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the ___9 th___ day of
January, 1988, by J. O. WALKER, JR., Trustee of Vaquillas Proven Mineral
Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the ___9 th___ day of
January, 1988, by E. WALKER QUIROS, Trustee of Vaquillas Proven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the ___9 th___ day of
January, 1988, by GENE S. WALKER, Trustee of Vaquillas Proven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the ___9 th___ day of
January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Proven Mineral
Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.

-14-

GWB2/dm 130(1)

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

    This instrument was acknowledged before me on the ___8th___ day of January, 1988, by ___H. C. Sager___, Attorney-in-Fact for CONOCO INC., a Delaware corporation, on behalf of said corporation.

DELLA MARKERT
Notary Public, State of Texas
My Commission Expires Sep. 18, 1988.

_Della Markert_
Notary Public in and for
The State of Texas
My Commission Expires: _9-18-88_

_Della Markert_
Printed/stamped name of Notary.

GWB2/dm 130(1)

# EXHIBIT B

Producers 88 (7-69)
With 640 Acres Pooling Provision


P... Printing & Stationery Co., Houston, Texas

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this __1st__ day of __November__ 19__87__, between

Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven
Mineral Trust; acting by and through its general partners, J. O. Walker, Jr.,
E. Walker Quiros, Gene S. Walker and Evan B. Quiros.

Lessor (whether one or more), whose address is: __P. O. Box 1086, Laredo Texas   78040__
and __Conoco Inc., P. O. Box 2197, Houston, Texas   77252__, Lessee, WITNESSETH:

1. Lessor in consideration of __Ten Dollars and Other Good and Valuable Consideration__ Dollars
($__10.00__), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, conducting exploration, geologic and geophysical surveys by seismograph, core test, gravity and magnetic methods, injecting gas, water and other fluids, and air into subsurface strata, laying pipe lines, building roads, tanks, power stations, telephone lines and other structures thereon and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto, to produce, save, take care of, treat, transport and own said products, and housing its employees, the following described land in __Webb__ County, Texas, to-wit:

6,740 acres of land, more or less, situated in Webb County, Texas, more fully
described in Exhibit "A" attached hereto and made a part of this Lease for all
relevant purposes, including limitations upon warranty as specifically set out
therein.

For the purpose of calculating the rental payments hereinafter provided for, said land is estimated to comprise __6,740__ acres, whether it actually comprises more or less.

2. Subject to the other provisions herein contained, this lease shall be for a term of __three__ years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder. Where the term one-eight is used in this paragraph 3, it is changed to one-fifth.

3. The royalties to be paid by Lessee are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipelines to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) ... while there is a gas well on this lease or on acreage pooled therewith but gas is not being sold or used, Lessee may pay as royalty, on or before ninety (90) days after the date on which (1) said well is shut in, or (2) the land covered hereby or any portion thereof is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein, whichever is the later date, and thereafter at annual intervals on or before the anniversary of the date the first payment is made, a sum equal to the amount of the annual rental payable in lieu of drilling operations during the primary term on the number of acres subject to this lease at the time such payment is made, and if such payment is made or tendered, this lease shall not terminate, and it will be considered that gas is being produced from this lease in paying quantities; and (c) on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined and marketed the royalty shall be fifty cents (50¢) per long ton. Lessee shall have free use of oil, gas, coal, and water from said land, except water from Lessor's wells, for all operations hereunder, and the royalty on oil, gas and __and tanks__ __gas__ shall be computed after deducting any so used.

4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof as to oil and gas, or either of them, with any other land covered by this lease, and/or with any other land, lease or leases in the immediate vicinity thereof to the extent hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas in and under that may be produced from said premises. Units pooled for oil hereunder shall not substantially exceed 40 acres each in area, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of ten percent (10%) thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, for the drilling or operation of a well at a regular location or for obtaining maximum allowable from any well to be drilled, drilling or already drilled, units thereafter created may conform substantially in size with those prescribed or permitted by governmental regulations. Lessee under the provisions hereof may pool or combine acreage covered by this lease or any portion thereof as above provided as to oil in any one or more strata and as to gas in any one or more strata. The units formed by pooling as to any stratum or strata need not conform in size or area with the unit or units into which the lease is pooled or combined as to any other stratum or strata, and oil units need not conform as to area with gas units. The pooling in one or more instances shall not exhaust the rights of the Lessee hereunder to pool this lease or portions thereof into other units. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit; and upon such recordation the unit shall be effective as to all parties hereto, their heirs, successors, and assigns, irrespective of whether or not the unit is likewise effective as to all other owners of surface, mineral, royalty, or other rights in such unit. Lessee may, at its election exercise its pooling option before or after commencing operations for or completing an oil or gas well on the leased premises, and the pooled unit may include, but it is not required to include, land or leases upon which a well capable of producing oil or gas in paying quantities has theretofore been completed or upon which operations for the drilling of a well for oil or gas have theretofore been commenced. In the event of operations for drilling on or production of oil or gas from any part of a pooled unit which include all or a portion of the land covered by this lease, regardless of whether such operations for drilling were commenced or such production was secured before or after the execution of this instrument or the instrument designating the pooled unit, such operations shall be considered as operations for drilling on or production of oil or gas from land covered by this lease whether or not the well or wells be located on the premises covered by this lease and in such event operations for drilling shall be deemed to have been commenced on said land within the meaning of paragraph 5 of this lease; and the entire acreage constituting such unit or units, as to oil and gas, or either of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease. For the purpose of computing the royalties to which owners of royalties and payments out of production and each of them shall be entitled on production of oil and gas, or either of them, from the pooled unit, there shall be allocated to the land covered by this lease and included in said unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) a pro rata portion of the oil and gas, or either of them, produced from the pooled unit after deducting that used for operations on the pooled unit. Such allocation shall be on an acreage basis—that is to say, there shall be allocated to the acreage covered by this lease and included in the pooled unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that pro rata portion of the oil and gas, or either of them, produced from the pooled unit which the number of surface acres covered by this lease (or in each such separate tract) and included in the pooled unit bears to the total number of surface acres included in the pooled unit. Royalties hereunder shall be computed on the portion of such production, whether it be oil and gas, or either of them, so allocated to the land covered by this lease and included in the unit just as though such production were from such land. The production from an oil well will be considered as production from the lease or oil pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit. The formation of any unit hereunder shall not have the effect of changing the ownership of any delay rental or shut-in production royalty which may become payable under this lease. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interest as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but Lessee shall nevertheless have the right to pool as provided above with consequent allocation of production as above provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender (or shall make a bona fide attempt to pay or tender, as hereinafter stated) to Lessor or to the credit of Lessor in __South Texas National Bank__ Bank at __Laredo__, Texas, (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of __Thirteen__ Thousand __Four Hundred Eighty and NO/100__ Dollars ($__13,480.00__), (herein called rentals), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental under this paragraph and of royalty under paragraph 3 on any gas well from which gas is not being sold or used may be made by the check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment. If such bank (or any successor bank) should fail, liquidate or be succeeded by another bank, or for any reason fail or refuse to accept rental, Lessee shall not be held in default for failure to make such payment or tender of rental until thirty (30) days after Lessor shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payments or tenders. If Lessee shall, on or before any anniversary date, make a bona fide attempt to pay or deposit rental to a Lessor entitled thereto according to Lessee's records or to a Lessor, who, prior to such attempted payment or deposit, has given Lessee notice, in accordance with subsequent provisions of this lease, of his right to receive rental, and if such payment or deposit shall be ineffective or erroneous in any regard, Lessee shall be unconditionally obligated to pay to such Lessor the rental properly payable for the rental period involved, and this lease shall not terminate but shall be maintained in the same manner as if such erroneous or ineffective rental payment or deposit had been properly made, provided that the erroneous or ineffective rental payment or deposit be corrected within 30 days after receipt by Lessee of written notice from such Lessor of such error accompanied by such instruments as are necessary to enable Lessee to make proper payment. The down cash payment is consideration for this lease according to its terms and shall not be allocated as a mere rental for a period. Lessee may at any time or times execute and deliver to Lessor or to the depository above named or place of record a release or releases of this lease as to all or any part of the above-described premises, or of any mineral or horizon under all or any part thereof, and thereby be relieved of all obligations as to the released land or interest. If this lease is released as to all minerals and horizons under a portion of the land covered by this lease, the rentals and other payments computed in accordance therewith shall thereupon be reduced in the proportion that the number of surface acres within such released portion bears to the total number of surface acres which was covered by this lease immediately prior to such release.

25757-001   DML JUL 1 4 '88

6. If prior to discovery and production of oil, gas or other mineral on said land or on acreage pooled therewith, Lessee should drill a dry hole or holes thereon, or if after discovery and production of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter or if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days from date of completion of dry hole or cessation of production. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep the lease in force during the remainder of the primary term. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith. Any pooled unit designated by Lessee in accordance with the terms hereof may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within three hundred thirty (330) feet of and draining the leased premises or acreage pooled therewith, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

8. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U. S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to rentals hereunder, Lessee may pay or tender such rentals to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualification of an executor or administrator of the estate, or if there be none, than until Lessee is furnished with evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more persons be entitled to participate in the rental payable hereunder, Lessee may pay or tender said rental jointly to such persons or to their joint credit in the depository named herein; or, at Lessee's election, the proportionate part of said rentals to which each participant is entitled may be paid or tendered to him separately or to his separate credit in said depository; and payment or tender to any participant of his portion of the rentals hereunder shall maintain this lease as to such participants. In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, but in discharging this obligation it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil in paying quantities and one well per six hundred forty (640) acres plus an acreage tolerance not to exceed 10% of 640 acres of the area retained hereunder and capable of producing gas or other mineral in paying quantities.

10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and in event Lessee does so, it shall be subrogated to such lien with right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties, delay rental and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease; bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. Should any one or more of the parties named above as Lessors fail to execute this lease, it shall nevertheless be binding upon the party or parties executing the same. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of force majeure, any Federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises; and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

The attached addendum dated November 1, 1987, is attached hereto and made a part hereof for all intents and purposes.

STATE OF_____ }   TEXAS SINGLE ACKNOWLEDGMENT

COUNTY OF_____ }   Before me, the undersigned authority, a Notary Public in and for said County and State, on this day

personally appeared_____

Known to me to be the person whose name_____subscribed to the foregoing instrument, and acknowledged to me that ___he___ executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this the_____day of_____, A. D. 19_____

Notary Public in and for_____County, _____

STATE OF_____ }   TEXAS JOINT ACKNOWLEDGMENT

COUNTY OF_____ }   Before me, the undersigned, a Notary Public in and for said County and State, on this day personally

appeared_____and_____
husband and wife, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed. And the said wife, having been examined by me privily and apart from her husband, and having had said instrument fully explained to her, she, the said wife, acknowledged the same to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office, this the_____day of_____, A. D. 19_____

Notary Public in and for_____County, _____

Oil, Gas and Mineral Lease

ADDENDUM TO OIL AND GAS LEASE

From Vaquillas Ranch Co., Ltd. et al

To Conoco Inc., Dated November 1, 1987

12. Should Lessee be prevented from complying with covenants of this lease by reason of conditions or acts set forth in Paragraph '11' hereof, then Lessee agrees annually to pay to Lessor an amount equal to the delay rentals herein provided for during such period of prevention, whether same be during or subsequent to the primary term, and such payment shall be made at the end of each year of prevention either to Lessor or to the depository above named for credit to the account of Lessor.

13. This lease does not cover or include any right or privilege of hunting or fishing on any part of the above described land, and Lessee agrees with Lessor that neither he nor his assigns or agents or employees of his assigns, will bring firearms or dogs upon the leased premises, and should this provision against hunting and fishing be violated by any agents, servants, employees or contractors of Lessee's assigns, any such person so violating same shall have no further right to enter upon the leased premises, and such person shall be regarded as and shall be a trespasser on the premises of Lessor and be subject to the penalties imposed upon trespassers under the laws of the State of Texas.

14. It is expressly agreed and understood that after production of oil and gas in commercial quantities is obtained from the leased premises, the minimum annual income to Lessor from payment of rentals, shut-in royalty and royalty on production shall be sum of not less than Two ($2.00) Dollars per acre on the total acreage retained and then covered by this lease, but this provision shall not impair the right and privilege of Lessee, his successors and assigns, to release and surrender any part of the above described leased premises as herein provided. Lessee, his successors and assigns, shall determine within 90 days from the expiration of any lease year during which royalties have been paid on actual production the amount of any deficiency, and shall within said 90-day period pay such deficiency to Lessor or deposit same to Lessor's credit at

GWB2/dm 124(7)

the depository hereinabove designated. Default in the payment of such deficiency shall not operate to terminate this lease or any part hereof, but Lessee, his successors and assigns, agrees to personally pay such deficiency to Lessor at Laredo in Webb County, Texas, together with any reasonable cost, including attorney's fees, incurred by Lessor in collecting such deficiency if not paid within the 90-day period hereinabove provided for.

15. Nothwithstanding any other provision herein contained, this oil, gas and mineral lease is limited to oil, gas and sulphur and minerals produced with oil and gas, and does not include minerals other than oil, gas and sulphur and minerals produced with oil and gas, as Lessor herein excludes from the leasehold estate herein granted, and reserves unto himself, his heirs and assigns, all minerals other than oil, gas and sulphur and minerals that may be produced with oil and gas, but it is expressly agreed that 'gas' as used herein includes gas, condensate, distillate or any other gaseous substance or any other mineral produced with oil and gas, including sulphur.

16. The right to pool under Paragraph '4' of this oil, gas and mineral lease shall be limited to lease or leases on land belonging to Lessor herein, or in which Lessor owns an interest in the oil, gas and other minerals.

17. For the purposes of the annual rental payments due under paragraph 5, Lessor and Lessee agree that said payments have been timely paid and received, and that this Lease is perpetuated, without the necessity of further delay rental payments, until the expiration of the primary term.

18. At the end of the primary term hereof, Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this

lease provides for a spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned; provided, however, that if at such date lessee is engaged in drilling or reworking operations the date for the execution and delivery of such release shall be postponed and the entire lease shall remain in force so long as operations on said well or wells are prosecuted with reasonable diligence, and if, after the completion or abandonment of any such well Lessee commences the drilling of an additional well within Ninety (90) days from the completion or abandonment of the preceding well, or continuously conducts drilling operations in good faith and with reasonable diligence on said lease without any cessation for longer than Ninety (90) days, said lease shall remain in full force and effect during such drilling operations and until the end of Ninety (90) days after the completion or abandonment of the final well, at which time Lessee shall execute and deliver to Lessor said written release, releasing all portions of the lease not then so developed. Each retained unit shall contain at least one (1) well producing or capable of producing oil or gas in paying quantities, and the acreage within a unit shall be contiguous.

If, after the date the partial release called for under this Paragraph 18 takes affect, all production from a retained unit around a well or wells cease to produce oil or gas in commercial or in paying quantities, Lessee shall have one hundred eighty (180) days thereafter within which to commence operations to establish or re-establish production therein in commercial or paying quantities, whether such production be from the same wellbore or other wellbore. If such operations result in commercial production, then this lease, as it applies to such unit shall continue until such commercial or paying production again ceases. However, if such operations do not result in commercial production, then Lessee shall have ninety (90) days after completion of such operations within which to commence drilling or reworking operations within such unit, and this lease, as it applies to said unit, shall remain in force so long as operations on said well or for drilling or reworking of any additional well therein are prosecuted with no cessation of more than ninety (90) consecutive days, and if they result in the production of oil or gas therein, so long thereafter

GWB2/dm 124(7)

as oil or gas is produced from said unit. As to any unit upon which commercial production may periodically terminate, the above right to timely resume operations and continue this lease as to such unit shall be reoccurring right.

The stipulation above as to the size of retained tracts around wells shall never be construed as a satisfaction of Lessee's right, duty and obligation to reasonably develop the leasehold held by Conoco or its successors or assigns. After November 1, 1990, Lessee agrees to drill such additional wells on the leased premises or such portions thereof as may be in force and effect from time to time, as may be necessary to reasonable develop the same for the production of oil and/or gas as a reasonable prudent operator.

19. A portion of paragraph 3 has been deleted and the following is in lieu thereof.

(b) on gas, including casinghead gas or other gaseous substances, produced from said land, the Lessors royalty shall be calculated and paid as follows:

a) Sales To Non-Affiliated Third Parties:
In the event Lessee enters into a gas sales contract with a non-affiliated third party, Lessor's royalty shall be one-fifth (1/5) of the gross proceeds received by Lessee from the sale of such gas.

b) Sales To Related Or Affiliated Entities For Resale:
In the event Lessee enters into a gas sales contract to sell gas to a related or affiliated entity, then Lessor's royalty shall be computed on the greater of the following:
1. One-fifth (1/5) of the gross proceeds received by Lessee or any affiliate or related entity from the sale of such gas to the first non-affiliated entity, or

2. One-fifth (1/5) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the

-4-

east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

In this regard, it is understood that the "highest price reasonably obtainable" may be equal to, but is not necessarily, the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

c)  Taking, Selling Or Delivery Of Gas To Lessee Or Its Related Or Affiliated Entities For Use (Not For Resale):

In the event Lessee takes gas for its own use, or sells or transfers gas to a related or affiliated entity for use, then Lessor's royalty shall be computed on the greater of the following:

1.  One-fifth (1/5) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

    In this regard, it is understood that the "highest price reasonably obtainable" may be equal to but is not necessarily the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity, or

2.  One-fifth (1/5) of the quarterly weighted average of the prices being paid by "purchasers" (as hereinafter defined) in the east one-fourth of Webb County, Texas, who are purchasing gas of like kind and quality. For the purposes of calculating the average price under this Paragraph c2, prices paid shall be those as reported in the Energy Planning Book publication or as reported to the State of

-5-

GWB2/dm 124(7)

Texas for severence tax purposes. "Purchasers" shall mean the three largest purchasers based on volume of gas purchased for such calendar quarter, in the east one-fourth of Webb County, Texas. For an example of the calculation of the quarterly weighted average of such price, see Exhibit "B".

Lessor and Lessee shall meet within eleven (11) months after the end of each calander year. At least thirty (30) days prior to such meeting, Lessee should furnish to Lessor a statement or other documentation of the basis upon which royalties accrued to Lessor under the terms of the Lease for the previous calender year. Any additional royalties calculated by Lessee to be due, if any, shall be paid at such meeting. Within one (1) year from delivery of the above referred to statement or other documentation, Lessor shall notify Lessee of any discrepancies. Failure to notify Lessee timely of any discrepancies shall constitute final acceptance of royalty payments as covered by such statements or other documentation. The first period for which Lessee shall prepare such statements or other documentation shall begin on April 1, 1988 and end on December 31, 1988. Nothing in this paragraph shall preclude Lessor from claiming any royalty which Lessor is entitled to as a result of mistake in computation, oversight in computation, or error in computation of royalty or which may result from the subsequent disclosure of a discrepancy.

LESSOR'S royalty shall be without deduction for any costs, such as, but not limited to, costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and otherwise making the oil, gas and associated substances ready for sale or use, except for a) severance and related taxes, and b) reasonable transportation expenses which may be necessary to be paid to non-affiliated third parties or entities to get Lessor's gas to a market or point of sale off the leased premises and which sale or sales will result in a net price equal to or higher than if said gas had been sold at the wellhead.

LESSEE may submit a copy of a proposed gas sales contract to Lessor which is acceptable to Lessee and request that Lessor approve same for

royalty computation purposes. Lessor shall have thirty (30) days after receipt of a gas contract to approve same. If Lessor approves same or does not timely decline to do so, then Lessor's royalty on gas sold under such gas sales contract shall be based on the gross proceeds received under said contract.

GAS contracts with a term in excess of three (3) years shall contain a provision for price redetermination no later than the end of the 3rd year and subsequent price redeterminations thereafter at intervals no greater than two (2) years apart.

20. Lessee agrees to fill all slush pits and level the same when they have ceased to be used and to restore the land to as near its original state as is practicable and to pay for damages to the surface of the land and the improvements, water wells, growing crops and livestock thereon, and to any other personal property of Lessor, Vaquillas Ranch Company, Ltd., occasioned by, arising out of, or resulting from operations by Lessee, his agents, employees or independent contractors on the land hereby leased to Lessee. Lessee also agrees, when requested in writing by Lessor, to divulge to Lessor true and correct information as requested by Lessor as to all drilling, producing and marketing operations conducted under this lease and to furnish to Lessor copies of all electric well logs taken hereunder; provided, however, Lessee shall not be obligated to release such information until it has been released to the industry.

21. Lessee hereby agrees to ensure that the two exit gates on F.M. 2895 (Forest Gate and Reynolds Gate) are guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Lessee and Lessor. As to the exit gate on the north side of U.S. Highway 59, Lessee agrees to use its best efforts to work out an arrangement with other exploration companies using such gate to ensure that it is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and other times as mutually agreed to by Lessee and Lessor. Further, Lessee agrees to use its best efforts to work out an arrangement with TransAmerican Natural Gas Corporation or its successors or assigns to ensure that the exit gate

-7-

located 9 miles north of Aguilares, Texas, on F.M. 2895 is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Conoco and Lessor. In regard to gates used by Lessee and other exploration companies, Lessee agrees to pay its share of the cost of guarding such gates when such gate guards are required under this agreement. Lessee shall not be obligated to furnish a gate guard on any gate which has been abandoned or is not being used by Lessee.

22. Lessee agrees that before abandoning any well drilled on said lease for oil or gas purposes, it will notify the owner or the surface estate in person or by telephone of its intention to do so, and it will allow said owner of the surface estate a reasonable time, not exceeding twenty-four (24) hours thereafter, within which to elect to take over the hole for the purpose of attempting to make and complete a water well. Lessee agrees to consult with such surface owner as to the location of a potential water zone, without any liability or warranty for such consultation. Upon the owner of the surface estate election, within the specified time, to attempt to complete the well as a water well and complying with all rules and regulations of the Railroad Commission of Texas and applicable statutes, Lessee will, at its expense, set all plugs to just below the designated water sand as may be required by the Railroad Commission and thereafter deliver the well to said owner of the surface estate, leaving in such well all surface casing and such intermediate casing as may have been run and set to at least the depth of the designated water sand and thereafter the owner of the surface state shall own the well and shall be responsible for all subsequent matters in connection with the well and for compliance with the applicable statutes and regulations of all regulatory agencies having jurisdiction. Lessee shall have no liability to Lessor in connection with any of the operations which may be conducted by the owner of the surface estate who shall thereafter bear all responsibility and liability with respect thereto. It is expressly understood that Lessee shall not be required to furnish any additional casing or other equipment for any well plugged back at the request of the owner of the surface estate under this paragraph. Should the owner of the surface estate elect not to attempt to make a producing water well out of

GWB2/dm 124(7)

any such hole, Lessee shall plug the well in accordance with all applicable rules, regulations and statutes.

23. It is expressly agreed and understood that for the purposes of this lease the following definitions shall apply:

"Commences" - A well shall be deemed commenced on the date which the drilling bit enters the earth for the drilling of a well.

"Abandoned" - A well shall be deemed abandoned on the day when it is finally plugged as a dry hole.

"Completed" - A well shall be deemed completed thirty (30) days after the day the Lessee sets production casing.

24. Lessor and Lessee agree to limit the commencement of actual AO2 drilling during deer hunting season to 1) those wells drilled in areas which would not disturb deer hunting, and 2) offset wells. If Lessee must commence a well during deer hunting season to perpetuate said lease, then Lessor will either a) not object to the drilling of such well during deer hunting season or b) agree to extend the commencement date for such well to a mutually agreeable date after deer hunting season ends. For the purposes of this paragraph "deer hunting season" shall be that period defined by State law.

25. Nothwithstanding anything contained herein to the contrary, the Lessor at any time and from time to time, upon not less than ninety (90) days notice to the holder of this lease, may elect to require the payment of any royalties accruing to such royalty owner under this lease to be made in kind; provided that any expenses incident to the exercise of such election shall be borne by Lessor and such election shall be for periods of not less than twelve (12) months. Lessor shall only be allowed to take in kind when Lessee is producing for his own account. In the event of such an election by Lessor, Lessee shall cooperate fully with Lessor in allowing Lessor to take their royalty in kind, including permitting Lessor to use Lessee's wellhead equipment and, to the extent that Lessee has assignable rights, the use of Lessee's purchaser's transportation facilities in good faith and not to exceed prevailing charges for similar services in the industry at the time if Lessee or its affiliates are transporting the gas,

GWB2/dm 124(7)

but if Lessee has a third party contract for the transport of said gas, Lessor will be bound by said contract. Should Lessee desire to enter into a gas purchase contract having a term of more than one (1) year, then (a) Lessee shall include in such contract a provision that allows Lessor to elect to take its gas in kind and be released from such contract one hundred twenty (120) days after notice, or (b) Lessor may approve of such contract in writing, in which event, Lessor may elect to take its gas in kind either at the end of such gas contact or one (1) year after notice to Lessee, whichever happens sooner. Any equipment installed by Lessor necessary to take in kind must be approved by Lessee and maintained according to Lessee's specifications.

If Lessee is unable to obtain a more favorable gas contract because of Lessor's reservation of this election to take in kind, then Lessee may elect to give notice of its intention to sign a gas contract acceptable to Lessee and request that Lessor join in signing same, and if Lessor elects to sign same, then Lessor's royalty share of revenue shall be bound by such contract and Lessor may not elect to take its royalty in kind during the term of such gas purchase contract.

DATED this _9th_ day of January, 1988.

VAQUILLAS RANCH COMPANY, LTD.

By: _____
    J. O. Walker, Jr.

By: _____
    E. Walker Quiros

By: _____
    Gene S. Walker

By: _____
    Evan B. Quiros

VAQUILLAS UNPROVEN MINERAL TRUST

By: _____
    J. O. Walker, Jr., Trustee

By: _____
    E. Walker Quiros, Trustee

By: _____
    Gene S. Walker, Trustee

By: _____
    Evan B. Quiros, Trustee

-10-

GWB2/dm 124(7)

VAQUILLAS PROVEN MINERAL TRUST                    CONOCO INC.

By: _____          By: _____
     J. O. Walker, Jr., Trustee              Attorney-In-Fact

By: _____
     E. Walker Quiros, Trustee

By: _____
     Gene S. Walker, Trustee

By: _____
     Evan B. Quiros, Trustee

-11-

| SURVEY | | ABSTRACT | CERTIFICATE | GRANTEE | ACRES |
|--------|--|----------|-------------|---------|-------|
| 1652 | | 2876 | 1159 | W. H. TAYLOR | 640.0 |
| 1661 | | 1122 | 1164 | CCSD & RGNG | 640.0 |
| 1663 | | 1123 | 1165 | CCSD & RGNG | 640.0 |
| 1633 | | 1323 | 4/808 | GC & SF | 640.0 |
| 1634 | | 2252 | 4/808 | GC & SF | 659.96 |
| 1665 | | 1124 | 1166 | CCSD & RGNG | 640.0 |
| 1635 | | 1797 | 17 | TC RY. | 640.0 |
| 2060 | (SE/4 only) | 3329-30 | 303 | CT & M | 160.0 |
| 1953 | (E 1/2) | 1329 | 4527 | GC & SF | 320.0 |
| 1627 | (pt. only) | 1324 | 4683 | GC & SF | 160.0 |
| 1629 | (pt. only) | 1275 | 4682 | GC & SF | 264.65 |
| 1662 | (W 1/2) | 2230 | 1164 | CCSD & RGNG | 329.31 |
| 1648 | (E 1/2) | 2441 | 1157 | CCSD &- RGNG | 325.75 |
| 1648 | (W 1/2) | 3301 | 1157 | CCSD & RGNG | 325.75 |
| 2335 | | 3025 | SCHOOL | W. BROWN | 27.3 |
| 1956 | (E 1/2) | 2560 | 4526 | GC & SF | 327.34 |

The following parts of surveys are expressly excluded herefrom, viz.:

(1)   The SE 1/4 of SW 1/4,  SW 1/4 of NE 1/4 (80 acs.) and N 1/2 of SW 1/4 and SW 1/4 of SW 1/4 (120 acs.) of CT & M Survey 2060.

(2)   The W. 3/4 of GC & SF Survey 1627 described in O&G Lease to Daniel A. Pedrotti dated September 24, 1973, as amended.

(3)   All  of  the W.  320 acres of Survey 1629  described  and included in O&G Lease to Daniel A.  Pedrotti dated September 24, 1973, as amended.

Calculation of royalty to be paid on gas delivered to Lessee or Affiliates for use (and not for resale) in accordance with paragraph 19.

Principal: Pay Lessor royalty based on the greater of the weighted average price paid by the three largest volumetric purchasers for the calendar quarter in the east quarter of Webb County or the weighted average of the prices used by the Lessor for royalty payment purposes;

Calculation: Determine additional royalty payments, if any.

Data Source: Energy Planning Book publication or as reported to the State of Texas for severence tax purposes.

Step 1. Calculate the weighted average price for the month for each of the three largest volume purchases for the quarter from the tax records.

### Month-January 1988

| Purchases from Company A | MCFD | $/MCF | $ |
|---|---|---|---|
| Lease 1 | 100,000 | 2.00 | 200,863 |
| Unit 14 | 80,000 | 1.51 | 120,800 |

| Purchases from Company B | | | |
|---|---|---|---|
| Well 42 | 180,821 | 1.62 | 291,733 |

| TOTAL United Texas Transmission | 360,821 | Calculate | 613,396 |
|---|---|---|---|

Monthly Weighted Average Price     613,396/360,821 = $1.70/MMBtu

Repeat procedure for remaining two months for this purchaser and for remaining two purchasers.

Step 2. Calculate the weighted average price of the three largest volumetric purchasers for the quarter using monthly values from Step 1.

| Purchaser | Month-January 1988 | | | Month - February 1988 | | | Month - March 1988 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| United Texas Transmission | 360,821 | 1.70 | 613,396 | 397,130 | 1.58 | 627,465 | 320,306 | 1.58 | 506,083 |
| UTRADE | 400,223 | 1.55 | 620,346 | 350,723 | 1.60 | 561,157 | 500,126 | 1.35 | 775,195 |
| South Gulf | 375,000 | 1.60 | 600,000 | 299,156 | 1.62 | 484,633 | 301,000 | 1.58 | 475,580 |
| Totals | 1,136,044 | ·· | 1,833,742 | 1,047,009 | ·· | 1,673,255 | 1,121,432 | ·· | 1,756,858 |

| | Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|---|
| Totals | 3,304,485 | 5,263,855 | 1.59 |

Step 3. Calculate weighted average price used by Lessee to calculate royalty payments on gas delivered to Lessee or affiliates and not for resale.

| Month-January 1988 | | | Month-February 1988 | | | Month-March 1988 | | |
|---|---|---|---|---|---|---|---|---|
| Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| 155,000 | 1.60 | 248,000 | 140,000 | 1.62 | 226,800 | 155,000 | 1.58 | 244,900 |

| Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|
| 650,000 | 719,700 | 1.60 |

Step 4. Compare weighted average price calculated in Step 2 to the weighted average Lessee price calculated in Step 3.

$1.60/MCF is greater than $1.59/MCF so no additional royalty payments are required for this quarter.

Note: Volumes and prices used in this example are used for illustration and may not be reflective of actual conditions.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by J. O. WALKER, JR., General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.



_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by E. WALKER QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by GENE S. WALKER, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by EVAN B. QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.

GWB2/dm 130(1)

-12-



THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by J. O. WALKER, JR., Trustee for The Vaquillas Unproven Mineral Trust.



_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by E. WALKER QUIROS, Trustee for the Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by GENE S. WALKER, Trustee of the Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


-13-

GWB2/dm 130(1)



THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the _____9th_____ day of
January, 1988, by J. O. WALKER, JR., Trustee of Vaquillas Proven Mineral
Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA  BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the _____9th_____ day of
January, 1988, by E. WALKER QUIROS, Trustee of Vaquillas Proven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA  BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the _____9th_____ day of
January, 1988, by GENE S.WALKER, Trustee of Vaquillas Proven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA  BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

This instrument was acknowledged before me on the _____9th_____ day of
January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Proven Mineral
Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA  BALLEW_
Printed/stamped name of Notary.

-14-

GWB2/dm 130(1)









THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the *8th.* day of January, 1988, by *H. C. Sager* , Attorney-in-Fact for CONOCO INC., a Delaware corporation, on behalf of said corporation.



*Della Markert*
Notary Public in and for
The State of Texas
My Commission Expires: *9-18-88*

*Della Markert*
Printed/stamped name of Notary.

DELLA MARKERT
Notary Public, State of Texas
My Commission Expires Sep. 18, 1988.

-15-

# EXHIBIT C

# PARTIAL RELEASE OF OIL AND GAS LEASE

STATE OF TEXAS      §
                      §
COUNTY OF WEBB     §

WHEREAS on June 15, 1974, Vaquillas Ranch Company, Ltd., a limited partnership acting therein through its general partners, J.O. Walker, Jr., Gene S. Walker, Evan B. Quiros and E. Walker Quiros, as Lessors, and Continental Oil Company, as Lessee, entered into an Oil and Gas Lease, recorded in Volume 460, Page 324 of the Deed Records of Webb County, Texas, covering 26,622.79 acres of land, more or less, hereinafter referred to as "the Lease," and;

WHEREAS the Lease was revised, more particularly described in that certain Oil, Gas and Mineral Lease Amending Oil, Gas and Mineral Lease dated November 1, 1987, as evidenced by said Memorandum of Amendment to Oil and Gas Lease, dated June 16, 1988; recorded in Volume 1303, Page 879 in the Real Property Records of Webb County, Texas.

WHEREAS the Lease has also been amended from time to time, as reflected in the Public Records of Webb County, Texas, and all references to the Lease herein shall be to the Lease as amended.

NOW THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, **ConocoPhillips Company**, does hereby **RELEASE, RELINQUISH and SURRENDER** unto the Lessor, all of its right, title and interest and estate in the Lease **SAVE AND EXCEPT THOSE LANDS AS MORE PARTICULARLY DESCRIBED ON THE EXHIBIT "A," AND FURTHER DESCRIBED ON EXHIBITS A-1 THROUGH A-36 ATTACHED HERETO AND MADE A PART HEREOF.**

Provided, however, Lessee shall have and retain full rights of access and all easements of ingress and egress over and across those lands covered by the Lease, including the lands which are hereby released, for the production of oil and gas and operations in the acreage not hereby released, and Lessee shall not be required to remove or relocate any pipelines, utilities, roads, tank batteries, or other surface equipment or installations from any portion of the Lease or lands herein released for so long as same continues to be used for the exploration, development or operation of such portions of the Lease that continue in force and effect.

This instrument is binding upon and inures to the benefit of the parties hereto, their heirs, successors and assigns.

Executed this ___17th___ day of ___February___, 2014.

LESSEE:

ConocoPhillips Company

By: _____
Michael P. Rose
Attorney-In-Fact

Volume: 3577 Page: 454 - 530
Doc # 1194188
Doc Type: PARTIAL RELEASE OF OIL & GAS LEASE
Record Date: 2/25/2014 11:28:17 AM Record By: MIC
Fees $330.00
Margie Ramírez Ibarra, Webb County Clerk

199129-001

L-199129-001

## ACKNOWLEDGEMENT

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

ACKNOWLEDGED BEFORE ME, this __17th__ day of __February_____, 2014, by Michael P. Rose, Attorney-in-Fact for ConocoPhillips Company, a Delaware Corporation, on behalf of said corporation.



_____
Notary Public in and for the State of Texas

199129-001



# OVERALL EXHIBIT "A"

### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH RETAINED TRACTS 1-36
### CONTAINING A TOTAL OF 21,291.86 ACRES

NORTH

A-1
640.00
Acres

A-2
640.00
Acres

A-3
515.26
Acres

A-5
640.00
Acres

A-6
620.58
Acres

A-7
639.48
Acres

A-9
635.23
Acres

A-8
640.00
Acres

A-4
640.00
Acres

A-13
636.53
Acres

A-14
640.00
Acres

A-15
541.82
Acres

A-10
640.00
Acres

A-11
640.00
Acres

A-16
558.74
Acres

A-12
640.00 Acres

A-18
615.92
Acres

A-17
635.73
Acres

A-34
608.84
Acres

A-35
640.00
Acres

A-19
640.00
Acres

A-20
502.31
Acres

A-21
648.05 Acres,
Less & Except
40.00 Ac.

A-23
639.04
Acres

A-22
612.33
Acres

A-24
633.38
Acres

A-28
640.00
Acres

A-30
323.87
Acres

A-25
640.00
Acres

A-29
618.16 Acres

A-31
567.81 Acres

A-26
635.36
Acres

A-27
614.74
Acres

A-36
367.60
Acres

A-32
460.44
Acres

A-33
382.64
Acres

GRAPHIC SCALE

5000    0   2500 5000    10000         20000

( IN FEET )
1 inch = 10000FT

## HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH RETAINED
### TRACTS BASE MAP
### LEASE 199129-001
WEBB COUNTY, TEXAS

| FIELD DATE | BOOK | PAGE(s) | Revision | Date | |
|---|---|---|---|---|---|
| N/A | N/A | N/A | 1 | 10-11-13 | DRAWN BY: L.A.F./S.I.M. |
| | | | | | CHECKED BY: J.S. |
| | | | | | JOB No. 22131-13 |
| | | | | | SHEET: 1 OF 1 |



**HOWLAND**
ENGINEERING AND SURVEYING CO.

EXHIBIT "A-1"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 1
(VAQUILLAS RANCH WELLS A-3 No. 61, No. 67, No. 199, No. 200, & No. 203)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1955, G.C. & S.F. R.R. CO., Abstract 1328, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a found ½" iron rod next to a fence corner, which bears N 56°51'30" W, a distance of 886.46 feet, from the Vaquillas Ranch A 3 No. 199 Well;

THENCE, N 89°04'24" E, along an existing fence line, a distance of 392.77 FEET, to a point for a deflection right;

THENCE, N 89°17'59" E, continuing along said existing fence line, a distance of 1,379.80 FEET, to a point for a deflection right;

THENCE, N 89°42'30" E, continuing along said existing fence line, a distance of 695.33 FEET, to a found 1 ½" pipe at fence corner, for the Northeast corner hereof;

THENCE, S 00°20'36" E, along an existing fence line, a distance of 2,533.32 FEET, to a point for a deflection right;

THENCE, S 00°19'10" E, continuing along said existing fence line, a distance of 2,829.52 FEET, to a point for a deflection left;

THENCE, S 00°20'17" E, continuing along said existing fence line, a distance of 2,697.58 FEET, to a point, for the Southeast corner hereof;

THENCE, S 89°39'43" W, a distance of 4,334.37 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°38'14" W, a distance of 4,273.09 FEET, to a point under an existing fence line, for an exterior corner hereof;

THENCE, N 89°20'19" E, along an existing fence line, a distance of 1,910.21 FEET, to a found ½" iron rod at fence corner, for an interior corner hereof;

THENCE, N 00°39'19" W, along an existing fence line, a distance of 3,668.08 FEET, to a point for a deflection right;

THENCE, N 00°33'14" W, continuing along said existing fence line, a distance of 96.40 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.1-13\22131.1-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue  ꞁ  P.O. Box 451128 (78045)  ꞁ  Laredo, TX 78041 P. 956.722.4411  ꞁ  F. 956.722.5414
TBPE Firm Registration No. F-4097  ꞁ  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-1"

## CONOCO PHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 1
### (VAQUILLAS RANCH A-3 WELLS No. 61, No. 67, No. 199, No. 200, & No. 203)
### 640.00 ACRES
WEBB COUNTY, TEXAS

SURVEY 294
ABSTRACT 2227

POINT OF BEGINNING

N 89°04'24" E 392.77'  N 89°17'59" E 1,379.80'  N 89°42'30" E 695.33'

SURVEY 2414
W.R. NICHOLSON
ABSTRACT 3308

Found 1/2" Iron Rod — Fence Corner
N 00°33'14" W 96.40'

Found 1 ½" Pipe — Fence Corner

VAQUILLAS RANCH A-3 No. 199 (BHL)

VAQUILLAS RANCH A-3 No. 199 (SHL)

737'

SURVEY 2096
D. C. FANNING
ABSTRACT 2228

N 00°39'19" W ~ 3,668.08'

VAQUILLAS RANCH A-3 No. 61 (SHL)

VAQUILLAS RANCH A-3 No. 61 (BHL)

S 00°20'36" E ~ 2,633.32'

NORTH

SURVEY 1955
G.C. & S.F. R.R. CO.
ABSTRACT 1328
WEBB COUNTY, TEXAS

S 00°19'10" E ~ 2,829.52'

WEST 1/2
SURVEY 1844
P.K. CONNOWAY
ABSTRACT 2188

N 89°20'19" E ~ 1,910.21'

Found 1/2" Iron Rod — Fence Corner

VAQUILLAS RANCH A-3 No. 67

VAQUILLAS RANCH No. 211

SURVEY 1956
H. E. BROCK
ABSTRACT 2560

N 00°38'14" W ~ 4,273.09'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH A-3 No. 200 (BHL)

VAQUILLAS RANCH A-3 No. 200 (SHL)

VAQUILLAS RANCH A-3 No. 203 (BHL)

VAQUILLAS RANCH A-3 No. 203 (SHL)

S 00°20'17" E ~ 2,697.58'

S 89°39'43" W ~ 4,334.37'

GRAPHIC SCALE
500  0  250  500  1000  2000
( IN FEET )
1 inch = 1000 FT.

SURVEY 2058
C.T. & M.C. R.R. CO.
ABSTRACT 2880

SURVEY 851
S.B. TURNER
ABSTRACT 1842

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### LEGEND

| Symbol | Meaning |
|---|---|
| | = HORIZONTAL WELL SURFACE LOCATION |
| | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| - - - - | = TIES |
| — - — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-05-13 |
| 2 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.1-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-2"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 2
(VAQUILLAS RANCH A-5 WELLS No. 126, No. 166, No. 205, & No. 230)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 2057, C.T. & M.C. R.R. CO., Abstract 985, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a found fence corner post, which bears N 38°52'07" W, a distance of 2,936.16 feet, from the Vaquillas Ranch A-5 No. 205 Well;

THENCE, N 89°22'34" E, along an existing fence line, a distance of 3,669.76 FEET, to a found 60 D nail at fence corner, for a deflection right;

THENCE, N 89°35'52" E, along an existing fence line, a distance of 1,477.59 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°37'35" E, a distance of 5,425.18 FEET, to a point, for the Southeast corner hereof;

THENCE, WEST, a distance of 5,187.42 FEET, to a point for the Southwest corner hereof;

THENCE, NORTH, a distance of 3,634.94 FEET, to a found ½" iron rod at fence corner, for a deflection left;

THENCE, N 00°37'32" W, along an existing fence line, a distance of 1,739.69 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

**SHEET 1 OF 2**

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.2-13\22131.2-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue  I  P.O. Box 451128 (78045)  r  Laredo, TX 78041 P. 956.722.4411  i  F. 956.722.5414
TBPE Firm Registration No. F-4097  ;  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-2"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 2
### (VAQUILLAS RANCH A-5 WELLS No. 126, No. 166, No. 205, & No. 230)
### 640.00 ACRES
WEBB COUNTY, TEXAS

NORTH

SURVEY 1954
D. C. FANNING
ABSTRACT 2226

SURVEY 1956
D. C. FANNING
ABSTRACT 2591

SURVEY 1956
H. E. BROCK
ABSTRACT 2560

POINT OF BEGINNING
Found Fence Corner Post

Found 60 D Nail
Fence Corner

N 89°22'34" E ~ 3,689.76'

N 89°35'52" E
1,477.59'

N 00°37'32" W
1,739.69'

N 39°52'07" W ~ 2,936.16'

2,305'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 840.00 ACRE UNIT

S 00°37'35" E ~ 5,425.18'

Found ½" Iron Rod
Fence Corner

1,824'

VAQUILLAS RANCH
A-5 No. 205
(SHL)

VAQUILLAS RANCH
A-5 No. 205
(BHL)

VAQUILLAS RANCH
A-5 No. 166

VAQUILLAS RANCH
A-5 No. 230
(BHL)

VAQUILLAS RANCH
A-5 No. 230
(SHL)

SURVEY 2057
C.T. & M.C. R.R. CO.
ABSTRACT 985
WEBB COUNTY, TEXAS

SURVEY 1953
G.C. & S.F. R.R. CO.
ABSTRACT 1329

NORTH ~ 3,654.94'

VAQUILLAS RANCH
A-5 No. 126

SURVEY 2058
C.T. & M.C. R.R. CO.
ABSTRACT 2880

WEST ~ 5,187.42'

VAQUILLAS RANCH
A-5 No. 118

VAQUILLAS
A-5 No. 101

SURVEY 2060
L.F. UPDEGROVE
ABSTRACT 3330

SURVEY 2060
S.A. SNYDER
ABSTRACT 2941

SW 1/4 OF
NE 1/4
SURVEY 2060
R.D. GUINN
ABSTRACT 3331

VAQUILLAS RANCH
A-5 No. 40

### GRAPHIC SCALE
500   0   250 500   1000        2000
( IN FEET )
1 inch = 1000 FT.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097   TBPLS Firm Registration No. 100484-00
7615 N. Bartlett Avenue   Laredo, TX. 78041   P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| ——— | = UNIT LINE |
| —x— | = FENCE LINE |
| – – – | = TIES |
| — - — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.2-13
SHEET: 2 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.2-13\22131.2-13.dwg, 1/8/2014 10:38:54 AM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

### EXHIBIT "A-3"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 3
### (VAQUILLAS RANCH A-5 WELLS No. 40, No. 97, No. 101, No. 108,
### No. 110, No. 113, & No. 118)
### 515.26 ACRES

A TRACT OF LAND CONTAINING 515.26 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 2059, C.T. & M.C. R.R. CO., Abstract 984, and Survey 2060, L.F. Updegrove, Abstract 3330, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 11°25'37" W, a distance of 2,799.89 feet, from the Vaquillas Ranch A-5 No. 108 Well;

THENCE, EAST, a distance of 6,540.37 FEET, to a point for the Northeast corner hereof;

THENCE, S 01°14'46" E, a distance of 1,214.36 FEET, to a point for an exterior corner hereof;

THENCE, S 88°51'20" W, a distance of 1,363.69 FEET, to a point for an interior corner hereof;

THENCE, S 00°34'04" E, a distance of 1,364.74 FEET, to a point for an exterior corner hereof;

THENCE, S 89°54'17" W, a distance of 2,712.87 FEET, to a point for an interior corner hereof;

THENCE, S 00°23'37" E, a distance of 24.86 FEET, to a point for a deflection left;

THENCE, S 00°33'33" E, a distance of 2,796.79 FEET, to a point under an existing fence line, for the Southeast corner hereof;

THENCE, S 89°25'42" W, along an existing fence line, a distance of 2,494.30 FEET, to a point for a deflection right;

THENCE, S 89°37'21" W, continuing along said existing fence line, a distance of 60.97 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°14'54" E, a distance of 5,457.34 FEET, to the POINT OF BEGINNING, containing 515.26 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

### SHEET 1 OF 2

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) ; Laredo, TX 78041 P. 956.722.4411 ; F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-3"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 3
(VAQUILLAS RANCH A-5 WELLS No. 40, No. 97, No. 101,
No. 108, No. 110, No. 113, & No. 118)
### 515.26 ACRES
WEBB COUNTY, TEXAS

SURVEY 1953
G.C. & S.F. R.R. CO.
ABSTRACT 1329

SURVEY 2057
C.T. & M.C. R.R. CO.
ABSTRACT 985

NORTH

VAQUILLAS
RANCH
A-5 No. 126

POINT OF
BEGINNING

EAST ~ 6,540.37'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 515.26 ACRE UNIT

VAQUILLAS
RANCH
A-5 No. 118

VAQUILLAS
A-5 No. 101

S 01°14'45" E
1,214.35'

SURVEY 2060
L.F. UPDEGROVE
ABSTRACT 3330

N 11°25'37" W ~ 2,799.86'
2,744'

VAQUILLAS
RANCH
A-5 No. 40

S 88°51'20" W
1,363.69'

SURVEY 2060
S.A. SNYDER
ABSTRACT 2941

SURVEY 2059
C.T. & M.C. R.R. CO.
ABSTRACT 984
WEBB COUNTY, TEXAS

S 00°34'04" E
1,384.74'

SW 1/4 OF
NE 1/4
SURVEY 2060
R.D. GUINN
ABSTRACT 3331

N 00°14'54" E ~ 5,457.34'

567'

VAQUILLAS
RANCH
A-5 No. 108

SEE
DETAIL

S 89°54'17" W ~ 2,712.87'

VAQUILLAS RANCH
L-4 No. 95
(SHL)

VAQUILLAS RANCH
L-4 No. 95
(BHL)

SURVEY 2060
R.D. GUINN
ABSTRACT 3332

VAQUILLAS
RANCH
A-5 No. 113

S 00°33'33" E ~ 2,798.79'

SURVEY 2060
C.C. MARSHALL
ABSTRACT 3329

VAQUILLAS
RANCH
A-5 No. 97

SE 1/4 OF
SW 1/4
SURVEY 2060
R.D. GUINN
ABSTRACT 3331

VAQUILLAS RANCH
L-4 No. 105

VAQUILLAS
RANCH
A-5 No. 110

S 89°25'42" W ~ 2,494.30'

S 89°37'21" W
80.97'

DETAIL: N.T.S.

S 00°23'37" E
24.66'

NORTH HALF SURVEY 1838
P.K. CONNOWAY
ABSTRACT 2187

## GRAPHIC SCALE

500   0   250  500      1000                2000

( IN FEET )
1 inch = 1000 FT

# HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —— X —— | = FENCE LINE |
| | = TIES |
| | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.3-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-4"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 4
(VAQUILLAS RANCH CO., LTD. WELLS No. 11,
No. 20, No. 30 & VAQUILLAS STATE G.U. No. 5)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 468, N.B. Gossett, Abstract 2255; and Survey 1634, N.B. Gossett, Abstract 2252, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 15°06'54" E, a distance of 1,098.65 feet, from the Vaquillas Ranch State G.U. No. 5 Well;

THENCE, S 00°31'13" E, a distance of 1,549.69 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°43'43" W, a distance of 10,925.96 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°12'49" W, a distance of 3,536.51 FEET, to a point for the Northwest corner hereof;

THENCE, N 89°52'00" E, a distance of 5,489.79 FEET, to a point for an exterior corner hereof;

THENCE, S 00°22'48" E, a distance of 1,945.34 FEET, to a point for an interior corner hereof;

THENCE, S 89°58'23" E, a distance of 5,422.26 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.4-13\22131.4-13.doc

**www.howlandcompanies.com**

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00



SURVEY 1633
G.C. & S.F. R.R. CO.
ABSTRACT 1323

N 89°52'00" E ~ 5,489.79'

SURVEY 467
A.B. & M.
ABSTRTACT 799

SURVEY 1684
G.T. BLACK
ABSTRACT 2698

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

S 00°22'48" E ~ 1,945.34'

VAQUILLAS RANCH
STATE G.U. No. 1-R

POINT OF
BEGINNING

N 00°12'48" W ~ 3,536.51'

S 89°58'23" E ~ 5,422.26'

SURVEY 1634
N.B. GOSSETT
ABSTRACT 2252
WEBB COUNTY, TEXAS

VAQUILLAS RANCH
CO. LTD. No. 20

VAQUILLAS
RANCH CO.
LTD. No. 30

VAQUILLAS
RANCH CO.
LTD. No. 11

1,061'

N 15°06'54" E
1,098.65'

S 00°31'13" E
1,549.69'

296'

VAQUILLAS RANCH
STATE G.U. No. 5

S 89°43'43" W ~ 10,925.96'

VAQUILLAS RANCH
CO. LTD. No. 73

SURVEY 468
N.B. GOSSETT
ABSTRTACT 2255

VAQUILLAS
RANCH CO.
LTD. No. 24

GRAPHIC SCALE

500    0    250  500    1000                    2000

( IN FEET )
1 inch = 1000 FT.

VAQUILLAS RANCH
CO. LTD. No. 59

## HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4007   TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

## EXHIBIT "A-4"
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 4
(VAQUILLAS RANCH CO., LTD. WELLS No. 11, No. 20,
No. 30, & VAQUILLAS STATE G.U. No. 5)
640.00 ACRES
WEBB COUNTY, TEXAS

| LEGEND | | |
|---|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION | |
| ☼ | = WELL | |
| | = UNIT LINE | |
| —x— | = FENCE LINE | |
| —··— | = TIES | |
| —···— | = SURVEY LINE | |

| Revision | Date |
|---|---|
| 1 | 10-18-13 |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: | S.I.M. |
|---|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY: | J.S. |
| | | | JOB No. | 22131.4-13 |
| | | | SHEET: | 2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.4-13\22131.4-13.dwg, 1/8/2014 10:56:09 AM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

### EXHIBIT "A-5"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 5
### (VAQUILLAS RANCH CO., LTD. WELLS No. 3, No. 14,
### No. 41, No. 45, & No. 69,)
### 640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 865, H. & G.N. R.R. CO., Abstract 1438, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point under an existing fence line which bears N 24°04'13" W, a distance of 2,161.34 feet, from the Vaquillas Ranch Co., LTD. No. 69 Well;

THENCE, N 89°30'43" E, partially along an existing fence line, a distance of 5,303.50 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°28'34" E, a distance of 2,802.66 FEET, to a point for a deflection right;

THENCE, S 00°09'23" E, a distance of 2,489.65 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°35'00" W, a distance of 5,256.20 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°14'17" W, a distance of 3,677.21 FEET, to a point for an interior corner hereof;

THENCE, S 89°45'43" W, a distance of 44.35 FEET, to a found 1" pipe at fence corner, for an exterior corner hereof;

THENCE, N 00°37'50" W, along an existing fence line, a distance of 1,608.36 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

### SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.5-13\22131.5-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue  .  P.O. Box 451128 (78045)  !  Laredo, TX 78041 P. 956.722.4411  .  F. 956.722.5414
TBPE Firm Registration No. F-4097  :  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-5"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 1N99129-001 ~ RETAINED TRACT 5
### (VAQUILLAS RANCH CO., LTD. WELLS No. 3, No. 14 No. 41, No. 45, & No. 69)
### 640.00 ACRES
#### WEBB COUNTY, TEXAS

SURVEY 2238
P.O. BODE
ABSTRACT 3016

SURVEY 866
FRANCISCO CONTRERAS
ABSTRACT 2085

NORTH

SURVEY 2336
J.E. ANDERSON
ABSTRACT 3183

N 89°30'43" E ~ 5,303.50'

POINT OF BEGINNING

N 00°37'50" W 1,608.35'

N 21°04'13" W ~ 2,161.34'

1,961'

VAQUILLAS RANCH CO. LTD. No. 45

SURVEY 1956
FRANCO CONTERAS
ABSTRACT 2191

S 00°28'34" E ~ 2,802.66'

Found 1" Pipe
⊙ Fence Corner

VAQUILLAS RANCH CO. LTD. No. 69 (BHL)

SEE DETAIL

VAQUILLAS RANCH CO. LTD. No. 14

818'

VAQUILLAS RANCH CO. LTD. No. 69 (SHL)

VAQUILLAS RANCH CO. LTD. No. 41

VAQUILLAS RANCH CO. LTD. No. 56

N 00°14'17" W ~ 3,677.21'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

SURVEY 865
H. & G.N. R.R. CO.
ABSTRACT 1438
WEBB COUNTY, TEXAS

SURVEY 1635
T.C. R.R. CO.
ABSTRACT 1797

S 00°09'23" E ~ 2,489.85'

SURVEY 1955
G.C. & S.F. R.R. CO.
ABSTRACT 1333

VAQUILLAS RANCH CO. LTD. No. 3

S 89°35'00" W ~ 5,256.20'

### DETAIL: N.T.S.

Found 1" Pipe
⊙ Fence Corner

S 89°45'43" W
44.35'

SURVEY 1683
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1115

SURVEY 1700
H.E. BROCK
ABSTRACT 2559

VAQUILLAS RANCH CO. LTD. No. 23

### GRAPHIC SCALE

500   0   250  500   1000          2000

( IN FEET )
1 inch = 1000 ft.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097   TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: C.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### LEGEND

| Symbol | Meaning |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| x | = FENCE LINE |
| - - - - | = TIES |
| — ·· — ·· — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 11-27-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.5-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-6"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 6
(VAQUILLAS RANCH CO., LTD. WELLS No. 31, No. 56 &
W.R. CARR, ET AL No. 1)
620.58 ACRES

A TRACT OF LAND CONTAINING 620.58 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1635, T.C. R.R. CO., Abstract 1797; Survey 865, H. & G.N. R.R. CO., Abstract 1438; and Survey 467, A.B. & M., Abstract 799, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 67°46'35" W, a distance of 4,196.87 feet, from the Vaquillas Ranch Co., LTD. No. 31 Well;

THENCE, N 88°55'14" E, a distance of 2,040.09 FEET, to a point under an existing fence line, for a deflection right;

THENCE, N 89°51'04" E, a distance of 3,989.57 FEET, to a found 1" pipe at fence corner, for a deflection left;

THENCE, N 89°45'43" E, a distance of 44.35 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°14'17" E, a distance of 3,677.21 FEET, to a point for an exterior corner hereof;

THENCE, S 89°35'00" W, a distance of 44.35 FEET, to a point for a deflection right;

THENCE, S 89°54'09" W, a distance of 1,767.82 FEET, to a point for an interior corner hereof;

THENCE, S 00°17'52" E, a distance of 3,432.25 FEET, to a point for a deflection left;

THENCE, S 00°38'54" E, a distance of 54.14 FEET, to a point for the Southeast corner hereof;

THENCE, N 89°49'18" W, a distance of 2,249.93 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°10'41" E, a distance of 54.13 FEET, to a point for a deflection left;

THENCE, N 00°21'54" W, a distance of 1,361.31 FEET, to a found fence corner post, for a deflection left;

THENCE, N 00°30'20" W, along an existing fence line, a distance of 1,631.92 FEET, to a point for a deflection right;

THENCE, N 00°28'47" W, continuing along said existing fence line, a distance of 882.77 FEET, to a point for a deflection left;

THENCE, N 00°29'28" W, continuing along said existing fence line, a distance of 1,092.72 FEET, to a point for an interior corner hereof;

SHEET 1 OF 3

www.howlandcompanies.com

7615 N. Bartlett Avenue   .   P.O. Box 451128 (78045)   ;   Laredo, TX 78041 P. 956.722.4411   :   F. 956.722.5414
TBPE Firm Registration No. F-4097   .   TBPLS Firm Registration No. 100464-00



**ENGINEERING AND SURVEYING CO.**

Continuation

**THENCE, S 88°55'14" W**, a distance of **1,965.93 FEET**, to a point for an exterior corner hereof;

**THENCE, N 01°04'46" W**, a distance of **2,125.56 FEET**, to the **POINT OF BEGINNING**, containing 620.58 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) . Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 ; TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-6"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 6
### (VAQUILLAS RANCH CO., LTD. WELLS No. 31, No. 56 &
### W.R. CARR, ET AL No. 1)
### 620.58 ACRES
WEBB COUNTY, TEXAS

SURVEY 1838
FRANK BARRETT
ABSTRACT 2137

SURVEY 2336
J.E. ANDERSON
ABSTRACT 3183

POINT OF BEGINNING

N 88°55'14" E ~ 2,040.09'

N 89°51'04" E ~ 3,989.57'

SEE DETAIL

VAQUILLAS RANCH CO. LTD. No. 69 (BHL)

Found 1" Pipe @ Fence Corner

VAQUILLAS RANCH CO. LTD. No. 69 (SHL)

N 67°46'35" W ~ 4,196.87'

N 01°04'46" W ~ 2,125.56'

1,831'

VAQUILLAS RANCH CO. LTD. No. 56

W.R. CARR, ET AL No. 1

S 00°14'17" E ~ 3,677.21'

2,195'

VAQUILLAS RANCH CO. LTD. No. 31

SURVEY 865
H. & G.N. R.R. CO.
ABSTRACT 1438

S 88°55'14" W
1,965.93'

N 00°29'28" W
1,092.72'

SURVEY 1635
T.C. R.R. CO.
ABSTRACT 1797
WEBB COUNTY, TEXAS

SURVEY 1632
FRANK BARRETT
ABSTRACT 2140

N 00°28'47" W
882.77'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 620.58 ACRE UNIT

DETAIL:
N.T.S.

N 89°45'43" E
44.35'

N 00°30'20" W
1,631.92'

Found 1" Pipe @ Fence Corner

S 89°54'09" W
1,787.82'

S 89°35'00" W
44.35'

SURVEY 1683
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1115

S 00°17'52" E ~ 3,432.25'

VAQUILLAS RANCH CO. LTD. No. 64

VAQUILLAS RANCH CO. LTD. No. 33 ST (SHL)

Found Fence Corner Post

N 00°21'54" W
1,361.31'

N 00°10'41" E
54.13'

N 89°49'18" W ~ 2,249.93'

S 00°38'54" E
54.14'

SURVEY 467
A. B. & M.
ABSTRTACT 799

VAQUILLAS RANCH CO. LTD. No. 33 ST (BHL)

VAQUILLAS RANCH CO. LTD. No. 71

VAQUILLAS RANCH CO. LTD. No. 53

GRAPHIC SCALE
500 0 250 500 1000 2000
( IN FEET )
1 inch = 1000 FT.

VAQUILLAS RANCH CO. LTD. No. 5

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| | = HORIZONTAL WELL SURFACE LOCATION |
| | = WELL |
| | = UNIT LINE |
| x | = FENCE LINE |
| | = TIES |
| | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 05-17-13 |
| 2 | 06-06-13 |
| 3 | 08-14-13 |
| 4 | 10-18-13 |
| 5 | 11-27-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.6-13
SHEET: 3 OF 3

R:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.6-13\22131.6-13.dwg, 1/8/2014 11:14:42 AM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-7"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 7
(VAQUILLAS RANCH CO., LTD. WELLS No. 5, No. 8,
No. 23, No. 25, No. 33 ST, & No. 64)
639.48 ACRES

A TRACT OF LAND CONTAINING 639.48 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1683, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1115, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 09°35'49" W, a distance of 1,417.68 feet, from the Vaquillas Ranch Co., LTD. No. 64 Well;

THENCE, N 89°54'09" E, a distance of **1,767.82 FEET,** to a point for a deflection left;

THENCE, N 89°35'00" E, a distance of **3,454.97 FEET,** to a point for the Northeast corner hereof;

THENCE, S 00°02'16" W, a distance of **4,514.84 FEET,** to a point for a deflection left;

THENCE, S 00°56'49" E, a distance of **845.79 FEET,** to a point for the Southeast corner hereof;

THENCE, S 89°46'53" W, a distance of **2,479.20 FEET,** to a point for a deflection right;

THENCE, S 89°59'21" W, a distance of **2,715.08 FEET,** to a point for the Southwest corner hereof;

THENCE, N 00°38'54" W, a distance of **1,910.27 FEET,** to a point for a deflection right;

THENCE, N 00°17'52" W, a distance of **3,432.25 FEET,** to the **POINT OF BEGINNING,** containing 639.48 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

**SHEET 1 OF 2**

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.7-13\22131.7-13.doc

**www.howlandcompanies.com**

7615 N. Bartlett Avenue   ⎮   P.O. Box 451128 (78045)   ⦂   Laredo, TX 78041 P. 956.722.4411   ⎮   F. 956.722.5414
TBPE Firm Registration No. F-4097   ⦂   TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-7"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 7
### (VAQUILLAS RANCH CO., LTD. WELLS No. 5, No. 8, No. 23, No. 25, No. 33 ST, & No. 64)
### 639.48 ACRES
WEBB COUNTY, TEXAS

VAQUILLAS RANCH CO. LTD. No. 31

SURVEY 1635
T.C. R.R. CO.
ABSTRACT 1797

SURVEY 865
H. & G.N. R.R. CO.
ABSTRACT 1438

NORTH

VAQUILLAS RANCH CO. LTD. No. 3

POINT OF BEGINNING

N 89°54'09" E ~ 1,767.82'

N 89°35'00" E ~ 3,454.97'

N 09°35'49" W 1,417.68'

1,398'

N 00°17'52" W ~ 3,432.25'

SURVEY 1683
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1115
WEBB COUNTY, TEXAS

VAQUILLAS RANCH CO. LTD. No. 64

229'

VAQUILLAS RANCH CO. LTD. No. 33 ST
(SHL)

VAQUILLAS RANCH CO. LTD. No. 23

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 639.48 ACRE UNIT

S 00°02'18" W ~ 4,514.84'

SURVEY 1700
H.E. BROCK
ABSTRACT 2559

VAQUILLAS RANCH CO. LTD. No. 33 ST (BHL)

VAQUILLAS RANCH CO. LTD. No. 53

N 00°38'54" W ~ 1,810.27'

VAQUILLAS RANCH CO. LTD. No. 5

VAQUILLAS RANCH CO. LTD. No. 25

VAQUILLAS RANCH CO. LTD. No. 8

S 00°56'49" E 845.76'

SURVEY 467
A. B. & M.
ABSTRTACT 799

S 89°59'21" W ~ 2,715.08'

S 89°46'53" W ~ 2,479.20'

SURVEY 1684
D. B. GRACY
ABSTRACT 2910

SURVEY 1684
G.T. BLACK
ABSTRACT 2698

SURVEY 1697
T.M. R.R. CO.
ABSTRACT 1813

## GRAPHIC SCALE

500  0  250  500  1000  2000

( IN FEET )
1 Inch = 1000 FT.

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. LP.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | | Revision | Date |
|---|---|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION | 1 | 04-06-13 |
| ☼ | = WELL | 2 | 05-17-13 |
| —— | = UNIT LINE | 3 | 06-06-13 |
| —x— | = FENCE LINE | 4 | 08-14-13 |
| ——— | = TIES | | |
| — - — | = SURVEY LINE | | |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: L.A.F. |
|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY: J.S. |
| | | | JOB No. 22131.7-13 |
| | | | SHEET: 2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.7-13\22131.7-13.dwg, 1/8/2014 11:17:01 AM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-8"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 8
(VAQUILLAS RANCH CO., LTD. WELLS No. 29 ST, No. 53,
No. 61, No. 71, AND STATE G.U. No. 1-R & No. 15)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the
Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 467,
A.B. & M., Abstract 799, Webb County, Texas, and being more particularly described as
follows:

BEGINNING at a point which bears N 71°42'56" W, a distance of 3,308.04 feet, from
the Vaquillas Ranch Co., LTD. No. 29 ST Well;

THENCE, N 89°34'30" E, a distance of 3,072.45 FEET, to a point for an exterior
corner hereof;

THENCE, S 00°10'42" W, a distance of 54.13 FEET, to a point for an interior corner
hereof;

THENCE, S 89°49'18" E, a distance of 2,249.93 FEET, to a point for the Northeast
corner hereof;

THENCE, S 00°38'54" E, a distance of 1,856.13 FEET, to a point for a deflection right;

THENCE, S 00°10'56" E, a distance of 1,331.92 FEET, to a point for a deflection right;

THENCE, S 00°33'35" W, a distance of 1,995.98 FEET, to a point for the Southeast
corner hereof;

THENCE, N 89°58'23" W, a distance of 5,333.62 FEET, to a point for the Southwest
corner hereof;

THENCE, N 00°22'48" W, a distance of 1,945.34 FEET, to a point for a deflection
right;

THENCE, N 00°19'36" E, a distance of 3,274.41 FEET, to the POINT OF
BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



## www.howlandcompanies.com
7615 N. Bartlett Avenue  ¡  P.O. Box 451128 (78045)  ¦  Laredo, TX 78041 P. 956.722.4411  ¡  F. 956.722.5414
TBPE Firm Registration No. F-4097  ¡  TBPLS Firm Registration No. 100464-00



# EXHIBIT "A-8"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 8
### (VAQUILLAS RANCH CO., LTD. WELLS No. 29 ST, No. 53, No. 61, No. 71, AND STATE G.U. No. 1-R & No. 15)
### 640.00 ACRES
WEBB COUNTY, TEXAS

SURVEY 1632
FRANK BARRETT
ABSTRACT 2140

SURVEY 1635
T.C. R.R. CO.
ABSTRACT 1797

VAQUILLAS RANCH
No. 33 ST
(SHL)

POINT OF BEGINNING

N 89°34'30" E ~ 3,072.45'

S 89°49'18" E ~ 2,249.93'

S 00°10'42" W 54.13'

SURVEY 1633
G.C. & S.F. R.R. CO.
ABSTRACT 1323

N 00°19'36" E ~ 3,274.41'

N 71°42'56" W ~ 3,308.04'

VAQUILLAS RANCH
CO. LTD. No. 71

1,006'

VAQUILLAS RANCH
CO. LTD. No. 53

S 00°38'54" E ~ 1,856.13'

SURVEY 1683
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1115

2,192'

VAQUILLAS RANCH
CO. LTD. No. 29 ST
(SHL)

VAQUILLAS RANCH
CO. LTD. No. 29 ST
(BHL)

VAQUILLAS
RANCH
STATE G.U.
No. 15
(BHL)

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH
CO. LTD. No. 61

VAQUILLAS
RANCH
STATE G.U.
No. 15
(SHL)

S 00°10'56" E 1,331.92'

SURVEY 1684
D.B. GRACY
ABSTRACT 2910

SURVEY 467
A.B. & M.
ABSTRACT 799
WEBB COUNTY, TEXAS

SURVEY 1634
N.B. GOSSETT
ABSTRACT 2252

N 00°22'48" W ~ 1,945.34'

S 00°33'35" W ~ 1,995.98'

SURVEY 1684
G.T. BLACK
ABSTRACT 2898

VAQUILLAS RANCH
STATE G.U. No. 1-R

N 89°58'23" W ~ 5,333.62'

SURVEY 468
N.B. GOSSETT
ABSTRACT 2255

VAQUILLAS RANCH
CO. LTD. No. 20

VAQUILLAS RANCH
CO. LTD. No. 30

VAQUILLAS RANCH
CO. LTD. No. 11

VAQUILLAS RANCH
STATE .G.U.
No. 5

### GRAPHIC SCALE

500    0    250  500    1000              2000

( IN FEET )
1 inch = 1000 ft.

VAQUILLAS RANCH
CO. LTD. No. 59

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4057  TBPLS Firm Registration No. 100484-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| | = TIES |
| ▬ ▬ ▬ | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.8-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-9"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 9
(VAQUILLAS RANCH CO., LTD. WELLS No. 39, No. 40, & No. 46)
635.23 ACRES

A TRACT OF LAND CONTAINING 635.23 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1633, G.C. & S.F. R.R. CO., Abstract 1323; and Survey 467, A.B. & M., Abstract 799,Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 66°46'35" W, a distance of 1,328.20 feet, from the Vaquillas Ranch Co., LTD. No. 40 Well;

THENCE, N 89°30'45" E, a distance of 2,492.56 FEET, to a found fence corner post, for a deflection right;

THENCE, N 89°32'27" E, along an existing fence line, a distance of 1,572.15 FEET, to a point for a deflection left;

THENCE, N 89°29'25" E, continuing along said existing fence line, a distance of 2,016.77 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°33'08" W, a distance of 1,348.09 FEET, to a point to an exterior corner hereof;

THENCE, S 89°34'30" W, a distance of 80.70 FEET, to a point to an interior corner hereof;

THENCE, S 00°19'36" W, a distance of 3,274.41 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°52'00" W, a distance of 5,977.93 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°06'46" E, a distance of 4,585.15 FEET, to the POINT OF BEGINNING, containing 635.23 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

**SHEET 1 OF 2**

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.9-13\22131.9-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-9"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 9
(VAQUILLAS RANCH CO., LTD, WELLS No. 39, No. 40, & No. 46)
### 635.23 ACRES
WEBB COUNTY, TEXAS

SURVEY 1631
G.C. & S.F. R.R. CO.
ABSTRACT 1317

SURVEY 1632
FRANK BARRETT
ABSTRACT 2140

**NORTH**

POINT OF
BEGINNING

N 89°30'45" E ~ 2,492.56'

N 89°32'27" E
1,572.15'

N 89°29'25" E
2,016.77'

N 66°46'35" W
1,328.20'

534'

S 00°33'08" W
1,348.09'

Found Fence
Corner Post

1,222'

VAQUILLAS RANCH
CO. LTD. No. 40

SURVEY 1633
G.C. & S.F. R.R. CO.
ABSTRACT 1323
WEBB COUNTY, TEXAS

SURVEY 136
JACINTO JUAREZ
ABSTRACT 2322

N 00°06'46" E ~ 4,585.16'

VAQUILLAS RANCH
CO. LTD. No. 39

S 89°34'30" W
80.70'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 635.23 ACRE UNIT

S 00°18'36" W ~ 3,274.41'

VAQUILLAS RANCH
CO. LTD. No. 46

SURVEY 135
T. & N.O. R.R. CO.
ABSTRACT 1774

SURVEY 467
A.B. & M.
ABSTRACT 799

S 89°52'00" W ~ 5,977.93'

SURVEY 1634
N.B. GOSSETT
ABSTRACT 2252

### GRAPHIC SCALE

500    0    250  500    1000                 2000

( IN FEET )
1 inch = 1000 FT.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### LEGEND

| | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| ———— | = TIES |
| —··— | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.9-13
SHEET: 2 OF 2



ENGINEERING AND SURVEYING CO.

## EXHIBIT "A-10"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 10
### (VAQUILLAS RANCH CO., LTD. WELLS No. 27, No. 43,
### No. 44, No. 59, No. 73, No. 74 & VAQUILLAS RANCH A-2 No. 6)
### 640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 468, N.B. Gossett, Abstract 2255; North ½ of Survey 166, A.C. Goeth, Abstract 3142; and Survey 1634, N.B. Gossett, Abstract 2252, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 29°17'05" E, a distance of 2,149.76 feet, from the Vaquillas Ranch Co. Ltd. No. 44 Well;

THENCE, S 00°31'13" E, a distance of 3,087.94 FEET, to a point for the Southeast corner hereof;

THENCE, WEST, a distance of 7,909.49 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°00'03" W, a distance of 1,852.04 FEET, to a point for an interior corner hereof;

THENCE, S 89°43'42" W, a distance of 3,039.93 FEET, to a point for an exterior corner hereof;

THENCE, N 00°12'49" W, a distance of 1,198.42 FEET, to a point for the Northwest corner hereof;

THENCE, N 89°43'43" E, a distance of 10,925.96 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

## www.howlandcompanies.com
7615 N. Bartlett Avenue ¦ P.O. Box 451128 (78045) ¦ Laredo, TX 78041 P. 956.722.4411 ¦ F. 956.722.5414
TBPE Firm Registration No. F-4097 ¦ TBPLS Firm Registration No. 100464-00



SURVEY 1684
G.T. BLACK
ABSTRACT 2698

VAQUILLAS RANCH
CO. LTD. No. 20

VAQUILLAS RANCH CO. LTD. No. 30

VAQUILLAS RANCH CO. LTD. No. 11

VAQUILLAS RANCH
STATE G.U. No. 5

POINT OF BEGINNING

SURVEY 1634
N.B. GOSSETT
ABSTRACT 2252

N 89°43'43" E ~ 10,925.96'

N 00°12'49" W 1,198.42'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH
CO. LTD. No. 73

VAQUILLAS RANCH
CO. LTD. No. 59

N 29°17'05" E ~ 2,149.76'

1,870'

S 00°31'13" E ~ 3,087.94'

VAQUILLAS RANCH CO. LTD. No. 24

S 89°43'42" W ~ 3,039.93'

VAQUILLAS RANCH
CO. LTD. No. 43

VAQUILLAS RANCH
CO. LTD. No. 74

SURVEY 468
N.B. GOSSETT
ABSTRTACT 2255
WEBB COUNTY, TEXAS

1,069'

VAQUILLAS RANCH
CO. LTD. No. 44

N 00°00'03" W ~ 1,852.04'

NORTH 1/2
SURVEY 1666
A.C. GOETH
ABSTRACT 3142

VAQUILLAS RANCH
A-2 No. 6

VAQUILLAS RANCH
CO. LTD. No. 27

SURVEY 1691
G.C. & S.F. R.R. CO.
ABSTRACT 1267

SURVEY 1665
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1124

VAQUILLAS RANCH
CO. LTD. No. 32

WEST ~ 7,909.49'

VAQUILLAS RANCH
CO. LTD. No. 2

VAQUILLAS RANCH CO. LTD. No. 51

GRAPHIC SCALE

500    0   250  500      1000                    2000

( IN FEET )
1 inch = 1000 FT.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4067  TBPLS Firm Registration No. 100484-00
7815 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

### EXHIBIT "A-10"
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 10
(VAQUILLAS RANCH CO., LTD. WELLS No. 27, No. 43, No. 44,
No. 59, No. 73, No. 74 & VAQUILLAS RANCH A-2 No. 6)
640.00 ACRES
WEBB COUNTY, TEXAS

| LEGEND | | |
|---|---|---|
| ⬡ | = HORIZONTAL WELL SURFACE LOCATION | |
| ✺ | = WELL | |
| | = UNIT LINE | |
| —X— | = FENCE LINE | |
| ------- | = TIES | |
| — - — | = SURVEY LINE | |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |
| 5 | 11-27-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: A.L.C./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.11-13
SHEET: 2 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\2213L11-13\2213L11-13.dwg, 1/8/2014 11:35:47 AM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-11"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 11
(VAQUILLAS RANCH CO., LTD. WELLS No. 7, No. 12, No. 18, No. 22,
No. 24, No. 35, No. 51, No. 65, No. 67, & No. 68)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1691, G.C. & S.F. R.R. CO., Abstract 1267; Survey 1696, G.C. & S.F. R.R. Co., Abstract 2418; North ½ of Survey 1666, A.C. Goeth, Abstract 3142; and South ½ of Survey 1666, N.B. Gossett, Abstract 2253, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 67°14'28" W, a distance of 873.05 feet, from the Vaquillas Ranch Co. LTD. No. 24 Well;

THENCE, N 89°24'40" E, a distance of 5,260.70 FEET, to a point for an exterior corner hereof;

THENCE, S 00°22'59" E, a distance of 1,911.15 FEET, to a point for an interior corner hereof;

THENCE, EAST, a distance of 1,816.67 FEET, to a point for an exterior corner hereof;

THENCE, SOUTH, a distance of 3,271.85 FEET, to a point under an existing fence line, for the Southeast corner hereof;

THENCE, WEST, along an existing fence line, a distance of 4,066.67 FEET, to a point for an interior corner hereof;

THENCE, SOUTH, a distance of 50.64 FEET, to a point for an exterior corner hereof;

THENCE, S 89°32'20" W, a distance of 249.85 FEET, to a point for an exterior corner hereof;

THENCE, NORTH, a distance of 1,930.06 FEET, to a point for an interior corner hereof;

THENCE, WEST, a distance of 2,743.83 FEET, to a point for an exterior corner hereof;

THENCE, N 00°31'13" W, a distance of 3,251.63 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.12-13\22131.12-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue ⋅ P.O. Box 451128 (78045) ¦ Laredo, TX 78041 P. 956.722.4411 ⋮ F. 956.722.5414
TBPE Firm Registration No. F-4097 ⋮ TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-11"

## CONOCOPHILLIPS COMPANY
## VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 11
## (VAQUILLAS RANCH CO., LTD. WELLS No. 7, No. 12, No. 18, No. 22, No. 24, No. 35, No. 51, No. 65, No. 67, & No. 68)
## 640.00 ACRES
WEBB COUNTY, TEXAS

SURVEY 1684
G.T. BLACK
ABSTRACT 2698

VAQUILLAS RANCH
A-1 No. 3

**NORTH**

POINT OF BEGINNING

N 67°14'28" W
873.05'

N 89°24'40" E ~ 5,260.70'

VAQUILLAS RANCH
A-1 No. 214
(BHL)

VAQUILLAS RANCH CO. LTD. No. 24

VAQUILLAS RANCH
A-1 No. 7

VAQUILLAS RANCH CO. LTD. No. 7

SURVEY 468
A.B. & M.
ABSTRACT 2255

VAQUILLAS RANCH CO. LTD. No. 67

VAQUILLAS RANCH
A-1 No. 214
(SHL)

SURVEY 1696
G.C. & S.F. R.R. CO.
ABSTRACT 2418

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH CO. LTD. No. 12

EAST ~ 1,816.67'

SURVEY 1691
G.C. & S.F. R.R. CO.
ABSTRACT 1287
WEBB COUNTY, TEXAS

VAQUILLAS RANCH CO. LTD. No. 51

VAQUILLAS RANCH CO. LTD. No. 18

VAQUILLAS RANCH CO. LTD. No. 65 (SHL)

WEST ~ 2,743.83'

NORTH 1/2 SURVEY 1666
A.C. GOETH
ABSTRACT 3142

VAQUILLAS RANCH CO. LTD. No. 65 (BHL)

VAQUILLAS RANCH CO. LTD. No. 35

SOUTH 1/2
SURVEY 1666
N.B. GOSSETT
ABSTRACT 2253

VAQUILLAS RANCH CO. LTD. No. 68 (BHL)

VAQUILLAS RANCH CO. LTD. No. 68 (SHL)

VAQUILLAS RANCH CO. LTD. No. 22

SOUTH ~ 3,271.85'
SURVEY 1692
ABSTRACT 2419

S 89°32'20" W
249.85'

SOUTH ~ 50.64'

WEST ~ 4,066.67'

SURVEY 1678
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 2495

N 00°31'13" W ~ 3,251.63'

S 00°22'58" E ~ 1,811.15'

NORTH ~ 1,930.06'

### GRAPHIC SCALE

300  0  250  500  1000  2000

( IN FEET )
1 inch = 1000 FT.

# HOWLAND
**ENGINEERING AND SURVEYING CO.**
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.~27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| - - - - | = TIES |
| — - - — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 05-17-13 |
| 2 | 06-06-13 |
| 3 | 08-14-13 |
| 4 | 10-18-13 |
| 5 | 11-27-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.L.M.
CHECKED BY: J.S.
JOB No. 22131.12-13
SHEET: 2 OF 2



**HOW**LAND
ENGINEERING AND SURVEYING CO.

## EXHIBIT "A-12"

## FIELD NOTES
## FOR
## CONOCOPHILLIPS COMPANY
## VAQUILLAS RANCH LEASE 199129-001
## RETAINED TRACT 12
## (VAQUILLAS RANCH A-2 WELLS No. 4, No. 38, No. 68 &
## VAQUILLAS RANCH CO. LTD. No. 2, No. 32)
## 640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 468, N.B. Gossett, Abstract 2255; North 1/2 of Survey 1666, A.C. Goeth, Abstract 3142; and South 1/2 of Survey 1666, N.B. Gossett, Abstract 2253, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 65°04'35" W, a distance of 5,456.00 feet, from the Vaquillas Ranch A-2 No. 38 Well;

THENCE, EAST, a distance of 7,909.49 FEET, to a point for an exterior corner hereof;

THENCE, S 00°31'13" E, a distance of 864.99 FEET, to a point for an interior corner hereof;

THENCE, EAST, a distance of 2,743.83 FEET, to a point for an exterior corner hereof;

THENCE, SOUTH, a distance of 1,930.06 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°32'20" W, a distance of 10,661.34 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°00'13" W, a distance of 2,880.79 FEET, to the POINT OF BEGINNING and containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

## www.howlandcompanies.com

7615 N. Bartlett Avenue . P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 . TBPLS Firm Registration No. 100464-00



**POINT OF BEGINNING**

VAQUILLAS RANCH CO. LTD. No. 74

VAQUILLAS RANCH CO. LTD. No. 44

SURVEY 1691
G.C. & S.F. R.R. CO.
ABSTRACT 1267

VAQUILLAS RANCH CO. LTD. No. 12

VAQUILLAS RANCH CO. LTD. No. 27

EAST ~ 7,909.49'

VAQUILLAS RANCH CO. LTD. No. 32

SURVEY 468
N.B. GOSSETT
ABSTRACT 2255

VAQUILLAS RANCH CO. LTD. No. 2

S 00°31'13" E 864.99'

VAQUILLAS RANCH CO. LTD. No. 51

VAQUILLAS RANCH CO. LTD. No. 18

VAQUILLAS RANCH CO. LTD. No. 65 (SHL)

EAST ~ 2,743.83'

N 65°04'35" W ~ 5,456.00'

N 00°00'13" W ~ 2,880.79'

VAQUILLAS RANCH A-2 No. 68

2,299'

NORTH 1/2 SURVEY 1666
A.C. GOETH, ABSTRACT 3142

VAQUILLAS RANCH CO. LTD. No. 65 (BHL)

VAQUILLAS RANCH CO. LTD. No. 68 (BHL)

VAQUILLAS RANCH A-2 No. 4

VAQUILLAS RANCH A-2 No. 38

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
**RETAINED 640.00 ACRE UNIT**

SOUTH 1/2 SURVEY 1666
N.B. GOSSETT
ABSTRACT 2253
WEBB COUNTY, TEXAS

SOUTH ~ 1,930.06'

VAQUILLAS RANCH CO. LTD. No. 68 (SHL)

4,948'

S 89°32'20" W ~ 10,661.34'

SURVEY 1667
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1125

SURVEY 1677
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1130

SURVEY 1678
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 2495

**GRAPHIC SCALE**

500    0    250  500         1000                    2000

( IN FEET )
1 inch = 1000 ft.

## HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097 TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

## EXHIBIT "A-12"

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 12
(VAQUILLAS RANCH A-2 WELLS No. 4, No. 38, No. 68 &
VAQUILLAS RANCH CO. LTD. No. 2, No. 32)
640.00 ACRES
WEBB COUNTY, TEXAS

**LEGEND**

⬠ = HORIZONTAL WELL SURFACE LOCATION
☼ = WELL
——x—— = FENCE LINE
— · — · — = TIES
— · · — · · — = SURVEY LINE

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |
| 5 | 11-27-13 |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: L.A.F./S.I.M. |
|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY: J.S. |
| | | | JOB No. 22131.13-13 |
| | | | SHEET: 2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2017\22131.13-13\22131.13-13.dwg, 1/8/2014 11:42:06 AM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-13"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 13
(VAQUILLAS RANCH A-1 WELLS No. 3, No. 7, No. 33, No. 144,
No. 156, No. 163, No. 214)
636.53 ACRES

A TRACT OF LAND CONTAINING 636.53 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1696, P.B. Reynolds, Abstract 2418; and Survey 1695, G.C. & S.F. R.R. CO., Abstract 1268, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 53°13'51" W, a distance of 1,137.24 feet, from the Vaquillas Ranch A-1 No. 3 Well;

THENCE, N 89°19'22" E, a distance of 6,735.31 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°58'29" E, a distance of 4,150.50 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°19'59" W, a distance of 11.75 FEET, to a point for a deflection right;

THENCE, N 89°52'06" W, a distance of 4,950.94 FEET, to a point for a deflection left;

THENCE, WEST, a distance of 1,816.67 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°22'59" W, a distance of 1,911.15 FEET, to a point for a deflection right;

THENCE, N 00°21'20" W, a distance of 2,147.98 FEET, to the POINT OF BEGINNING and containing 636.53 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

www.howlandcompanies.com
7615 N. Bartlett Avenue ı P.O. Box 451128 (78045) ! Laredo, TX 78041 P. 956.722.4411 ı F. 956.722.5414
TBPE Firm Registration No. F-4097 ı TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-13"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 13
### (VAQUILLAS RANCH A-1 WELLS No. 3, No. 7, No. 33, No. 144, No. 156, No. 163, No. 214)
### 636.53 ACRES
### WEBB COUNTY, TEXAS





**HOWLAND**
ENGINEERING AND SURVEYING CO.

EXHIBIT "A-14"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 14
(VAQUILLAS RANCH A-1 WELLS No. 18, No. 35,
No. 85, No. 155, No. 185, & No. 240)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1695, G.B. & C.N.G. R.R. CO., Abstract 1268, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a found 2" pipe which bears N 41°50'50" W, a distance of 1,969.80 feet, from the Vaquillas Ranch A-1 No. 35 Well;

THENCE, N 89°21'27" E, a distance of 6,725.49 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°48'50" E, a distance of 1,999.05 FEET, to a point for a deflection right;

THENCE, S 00°39'16" E, a distance of 2,150.00 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°20'44" W, a distance of 6,707.86 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°58'29" W, a distance of 4,150.50 FEET, to the POINT OF BEGINNING and containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.15-13\22131.15-13.doc

www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) . Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-14"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 14
### (VAQUILLAS RANCH A-1 WELLS No. 18, No. 35,
### No. 85, No. 155, No. 185, & No. 240)
### 640.00 ACRES
WEBB COUNTY, TEXAS

**NORTH**

POINT OF BEGINNING
⊙ Found 2" Pipe

SURVEY 1698
T.M. R.R. CO.
ABSTRACT 2592

SURVEY 279
G.C. & S.F. R.R. CO.
ABSTRACT 1353

N 89°21'27" E ~ 6,725.49'

N 41°50'50" W ~ 1,969.80'

1,482'

1,289'

S 00°48'50" E ~ 1,999.05'

N 00°58'29" W ~ 4,150.50'

SURVEY 1696
ABSTRACT 2418

VAQUILLAS RANCH A-1 No. 35

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH A-1 No. 185

SURVEY 1695
G.B. & C.N.G. R.R. CO.
ABSTRACT 1268
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A-1 No. 240

S 00°39'16" E ~ 2,150.00'

VAQUILLAS RANCH A-1 No. 18

VAQUILLAS RANCH A-1 No. 155

VAQUILLAS RANCH A-1 No. 85

S 89°20'44" W ~ 6,707.86'

VAQUILLAS RANCH A-1 No. 215 (BHL)

VAQUILLAS RANCH A-1 No. 215 (SHL)

VAQUILLAS RANCH A-1 No. 193

VAQUILLAS RANCH A-1 No. 191

VAQUILLAS RANCH A-1 No. 11

VAQUILLAS RANCH A-1 No. 241 (BHL)

VAQUILLAS RANCH A-1 No. 241 (SHL)

SURVEY 1004
P.B. REYNOLDS
ABSTRACT 2421

SURVEY 1692
P.B. REYNOLDS
ABSTRACT 2419

VAQUILLAS RANCH A-1 No. 184

SURVEY 2112
P.B. REYNOLDS
ABSTRACT 2420

VAQUILLAS RANCH A-1 No. 130

VAQUILLAS RANCH A-1 No. 73

VAQUILLAS RANCH A-1 No. 186

VAQUILLAS RANCH A-1 No. 212 (BHL)

VAQUILLAS RANCH A-1 No. 15

### GRAPHIC SCALE
500  0  250  500  1000  2000
( IN FEET )
1 inch = 1000 ft.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

**WARNING:** BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

### LEGEND

| Symbol | Description |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| — — | = TIES |
| — · — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.15-13
SHEET: 2 OF 2



ENGINEERING AND SURVEYING CO.

**EXHIBIT "A-15"**

**FIELD NOTES**
**FOR**
**CONOCOPHILLIPS COMPANY**
**VAQUILLAS RANCH LEASE 199129-001**
**RETAINED TRACT 15**
**(VAQUILLAS RANCH A-1 WELLS No. 180 & No. 217)**
**541.82 ACRES**

A TRACT OF LAND CONTAINING 541.82 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 279, G.C. & S.F. R.R. CO., Abstract 1353; and Survey 1004, P.B. Reynolds, Abstract 2421, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears S 54°13'31" E, a distance of 2,749.54 feet, from the Vaquillas Ranch A-1 No. 180 Well;

THENCE, S 89°24'49" W, a distance of 5,281.57 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°46'34" W, a distance of 2,624.47 FEET, to a point for a deflection right;

THENCE, N 00°30'06" W, a distance of 3,119.05 FEET, to a point for the Northwest corner hereof;

THENCE, N 89°45'42" E, a distance of 2,654.31 FEET, to a point for an exterior corner hereof;

THENCE, S 00°28'50" E, a distance of 2,550.31 FEET, to a point for an interior corner hereof;

THENCE, N 89°35'17" E, a distance of 2,653.22 FEET, to a point for an exterior corner hereof;

THENCE, S 00°16'38" E, a distance of 3,169.04 FEET, to the POINT OF BEGINNING, containing 541.82 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

**SHEET 1 OF 2**

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.16-13\22131.16-13.doc

**www.howlandcompanies.com**

7615 N. Bartlett Avenue  .  P.O. Box 451128 (78045)  .  Laredo, TX 78041 P. 956.722.4411  :  F. 956.722.5414
TBPE Firm Registration No. F-4097  i  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-15"

**CONOCOPHILLIPS COMPANY**
**VAQUILLAS RANCH LEASE 199129-001**
**RETAINED TRACT 15**
(VAQUILLAS RANCH A-1 WELLS No. 180 & No. 217)
**541.82 ACRES**
WEBB COUNTY, TEXAS



SURVEY 280
J. LEONARD
ABSTRACT 2634

SURVEY 41
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1039

SURVEY 1698
T.M. R.R. CO.
ABSTRACT 2592

N 89°45'42" E ~ 2,854.31'

S 00°28'50" E ~ 2,550.31'

SURVEY 279
G.C. & S.F. R.R. CO.
ABSTRACT 1353
WEBB COUNTY, TEXAS

N 00°30'08" W ~ 3,119.05'

N 89°35'17" E ~ 2,653.22'

SURVEY 40
C.R. DAVIS
ABSTRACT 2203

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
**RETAINED 541.82 ACRE UNIT**

SURVEY 1695
G.B. & C.N.G. R.R. CO
ABSTRACT 1268

N 00°45'54" W ~ 2,624.47'

VAQUILLAS RANCH
A-1 No. 180

2,223'

S 00°16'38" E ~ 3,169.04'

VAQUILLAS RANCH
A-1 No. 217
(SHL)

S 54°13'31" E
2,749.54'

VAQUILLAS RANCH
A-1 No. 104

1,630'

VAQUILLAS RANCH
A-1 No. 217
(BHL)

VAQUILLAS RANCH
A-1 No. 240

S 89°24'49" W ~ 5,281.57'

**POINT OF
BEGINNING**

VAQUILLAS RANCH
A-1 No. 242
(SHL)

VAQUILLAS RANCH
A-1 No. 242
(BHL)

VAQUILLAS RANCH
A-1 No. 157

SURVEY 1004
P.B. REYNOLDS
ABSTRACT 2421

## GRAPHIC SCALE

500    0   250  500    1000                2000

( IN FEET )
1 inch = 1000 ft.

VAQUILLAS RANCH
A-1 No. 218
(BHL)
VAQUILLAS RANCH
A-1 No. 218 (SHL)

VAQUILLAS RANCH
A-1 No. 216
(BHL)

VAQUILLAS RANCH
A-1 No. 216
(SHL)

## HOWLAND

**ENGINEERING AND SURVEYING CO.**
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100454-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

**WARNING:** BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY. COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| --------- | = TIES |
| — - - — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 07-02-13 |
| | |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: A.L.C./L.A.F.
CHECKED BY: J.S.
JOB No. 22131.16-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

## EXHIBIT "A-16"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 16
### (VAQUILLAS RANCH A-1 WELLS No. 29, No. 44, No. 157,
### No. 212, No. 216, No. 218, & No. 242)
### 558.74 ACRES

**A TRACT OF LAND CONTAINING 558.74 ACRES,** more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1004, P.B. Reynolds, Abstract 2421, Webb County, Texas, and being more particularly described as follows:

**BEGINNING** at a point which bears N 74°36'06" E, a distance of 2,077.33 feet, from the Vaquillas Ranch A-1 No. 242 Well;

**THENCE, S 00°31'16" E,** a distance of **4,612.08 FEET,** to a point for the Southeast corner hereof;

**THENCE, S 89°23'44" W,** a distance of **5,270.83 FEET,** to a point for the Southwest corner hereof;

**THENCE, N 00°39'16" W,** a distance of **4,613.75 FEET,** to a point for the Northwest corner hereof;

**THENCE, N 89°24'49" E,** a distance of **5,281.57 FEET,** to the **POINT OF BEGINNING,** containing 558.74 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



### SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.17-13\22131.17-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-16"

## CONOCO PHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 16
### (VAQUILLAS RANCH A-1 WELLS No. 29, No. 44, No. 157, No. 212, No. 216, No. 218, & No. 242)
### 558.74 ACRES
WEBB COUNTY, TEXAS

SURVEY 1695
G.B. & C.N.G. R.R. CO.
ABSTRACT 1268

SURVEY 279
G.C. & S.F. R.R. CO.
ABSTRACT 1353

VAQUILLAS RANCH A-1 No. 180

VAQUILLAS RANCH A-1 No. 217 (SHL)

VAQUILLAS RANCH A-1 No. 104

VAQUILLAS RANCH A-1 No. 217 (BHL)

N 89°24'49" E ~ 5,281.57'

POINT OF BEGINNING

NORTH

VAQUILLAS RANCH A-1 No. 240

VAQUILLAS RANCH A-1 No. 242 (BHL)

VAQUILLAS RANCH A-1 No. 242 (SHL)

531'

N 74°36'06" E 2,077.33'

2,008'

SURVEY 40
C.R. DAVIS
ABSTRACT 2203

VAQUILLAS RANCH A-1 No. 157

4,613.75'

4,612.08'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 558.74 ACRE UNIT

VAQUILLAS RANCH A-1 No. 191

SURVEY 2112
P.B. REYNOLDS
ABSTRACT 2420

VAQUILLAS RANCH A-1 No. 218 (BHL)

VAQUILLAS RANCH A-1 No. 218 (SHL)

VAQUILLAS RANCH A-1 No. 216 (BHL)

VAQUILLAS RANCH A-1 No. 216 (SHL)

VAQUILLAS RANCH A-1 No. 241 (SHL)

N 00°39'16" W

S 00°31'16" E

SURVEY 1004
P.B. REYNOLDS
ABSTRACT 2421
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A-1 No. 130

VAQUILLAS RANCH A-1 No. 29

VAQUILLAS RANCH A-1 No. 186

VAQUILLAS RANCH A-1 No. 212 (SHL)

SURVEY 37
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1037

VAQUILLAS RANCH A-1 No. 212 (BHL)

VAQUILLAS RANCH A-1 No. 44

S 89°23'44" W ~ 5,270.83'

VAQUILLAS RANCH A-1 No. 239 (SHL)

VAQUILLAS RANCH A-1 No. 187

VAQUILLAS RANCH A-1 No. 239 (BHL)

SURVEY 1003
J. POITEVENT
ABSTRACT 1655

### GRAPHIC SCALE

500  0  250  500  1000          2000

( IN FEET )
1 inch = 1000 FT.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 75041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&C CO. L.P. COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### LEGEND

| Symbol | Description |
|---|---|
| ⬠ | HORIZONTAL WELL SURFACE LOCATION |
| ☼ | WELL |
| ———— | UNIT LINE |
| —x— | FENCE LINE |
| — — — | TIES |
| —··—··— | SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 07-02-13 |
| 5 | 08-14-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F.
CHECKED BY: J.S.
JOB No. 22131.17-13
SHEET: 2 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.17-13\22131.17-13.dwg, 1/8/2014 17:17:55 PM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

## EXHIBIT "A-17"

## FIELD NOTES
## FOR
## CONOCOPHILLIPS COMPANY
## VAQUILLAS RANCH LEASE 199129-001
## RETAINED TRACT 17
## (VAQUILLAS RANCH A-1 WELLS No. 15, No. 71, No. 130,
## No. 145, No. 184, No. 186, No. 187, No. 191, No. 192, No. 193, No. 194,
## No. 239, No. 241, & VAQUILLAS RANCH A No. 89)
## 635.73 ACRES

A TRACT OF LAND CONTAINING 635.73 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 2112, P.B. Reynolds, Abstract 2420, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 41°40'24" W, a distance of 1,866.60 feet, from the Vaquillas Ranch A-1 No. 184 Well;

THENCE, N 89°20'44" E, a distance of 3,399.18 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°39'16" E, a distance of 3,089.17 FEET, to a point for a deflection right;

THENCE, S 00°12'57" E, along an existing fence line, a distance of 3,414.86 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°22'44" W, a distance of 5,109.93 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°20'48" E, a distance of 3,275.75 FEET, to a point for an exterior corner hereof;

THENCE, N 89°26'27" E, a distance of 1,655.49 FEET, to a point for an interior corner hereof;

THENCE, N 00°13'32" W, a distance of 3,228.56 FEET, to the POINT OF BEGINNING, containing 635.73 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

### SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.18-13\22131.18-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 . F. 956.722.5414
TBPE Firm Registration No. F-4097 ¡ TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-17"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 17
(VAQUILLAS RANCH A-1 WELLS No. 15, No. 71, No. 130, No. 145, No. 184, No. 186, No. 187, No. 191, No. 192, No. 193, No. 194, No. 239, No. 241, & VAQUILLAS RANCH A No. 89)
### 635.73 ACRES
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A-1 No. 18

VAQUILLAS RANCH A-1 No. 155

POINT OF BEGINNING

VAQUILLAS RANCH A-1 No. 240

VAQUILLAS RANCH A-1 No. 85

SURVEY 1695
G.B. & C.N.G. R.R. CO.
ABSTRACT 1268

NORTH

N 89°20'44" E ~ 3,399.18'

VAQUILLAS RANCH A-1 No. 215 (SHL)

VAQUILLAS RANCH A-1 No. 193

VAQUILLAS RANCH A-1 No. 215 (BHL)

VAQUILLAS RANCH A-1 No. 11

VAQUILLAS RANCH A-1 No. 191

VAQUILLAS RANCH A-1 No. 241 (BHL)

VAQUILLAS RANCH A-1 No. 241 (SHL)

N 41°40'24" W ~ 1,886.60'

1,408'

S 00°39'16" E ~ 3,088.17'

SURVEY 1004
P.B. REYNOLDS
ABSTRACT 2421

SURVEY 1692
P.B. REYNOLDS
ABSTRACT 2419

N 00°13'32" W ~ 3,228.56'

1,236'

VAQUILLAS RANCH A-1 No. 184

VAQUILLAS RANCH A-1 No. 130

VAQUILLAS RANCH A-1 No. 212 (SHL)

VAQUILLAS RANCH A-1 No. 73

VAQUILLAS RANCH A-1 No. 237 (BHL)

VAQUILLAS RANCH A-1 No. 237 (SHL)

VAQUILLAS RANCH A-1 No. 15

VAQUILLAS RANCH A-1 No. 186

VAQUILLAS RANCH A-1 No. 198 (SHL)

N 89°26'27" E 1,655.49'

VAQUILLAS RANCH A-1 No. 91

VAQUILLAS RANCH A-1 No. 195 (SHL)

VAQUILLAS RANCH A-1 No. 192

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 635.73 ACRE UNIT

VAQUILLAS RANCH A-1 No. 187

VAQUILLAS RANCH A-1 No. 239 (SHL)

VAQUILLAS RANCH A-1 No. 239 (BHL)

VAQUILLAS RANCH A-1 No. 212 (BHL)

N 00°20'46" E ~ 3,276.75'

VAQUILLAS RANCH A-1 No. 194

VAQUILLAS RANCH A No. 89

SURVEY 2112
P.B. REYNOLDS
ABSTRACT 2420
WEBB COUNTY, TEXAS

S 00°12'57" E ~ 3,414.86'

SURVEY 1003
J. POITEVENT
ABSTRACT 1655

SURVEY 1693
G.B. & C.N.G.
R.R. CO.
ABSTRACT 1269

VAQUILLAS RANCH A-1 No. 90

VAQUILLAS RANCH A-1 No. 145

VAQUILLAS RANCH A-1 No. 71

VAQUILLAS RANCH A-1 No. 208

S 89°22'44" W ~ 5,109.93'

SURVEY 2367
F.R. FEILLE
ABSTRACT 3333

SURVEY 278
FRED SPEED
ABSTRACT 2462

### GRAPHIC SCALE
500  0  250  500  1000  2000
( IN FEET )
1 inch = 1000 ft.

**HOWLAND**
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. L.P. COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| ——— | = UNIT LINE |
| —x— | = FENCE LINE |
| – – – | = TIES |
| — · — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 12-05-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F.
CHECKED BY: J.S.
JOB No. 22131.18-13
SHEET: 2 OF 2



**HOWLAND**
ENGINEERING AND SURVEYING CO.

EXHIBIT "A-18"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 18
(VAQUILLAS RANCH A-1 WELLS No. 11, No. 24, No. 72, No. 73,
No. 106, No. 198, No. 215, & No. 237)
615.92 ACRES

A TRACT OF LAND CONTAINING 615.92 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1692, P.B. Reynolds, Abstract 2419, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 77°14'27" E, a distance of 2,088.50 feet, from the Vaquillas Ranch A-1 No. 215 Well;

THENCE, S 00°13'32" E, a distance of 3,228.56 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°26'27" W, a distance of 7,026.24 FEET, to a found fence corner post for a deflection right;

THENCE, S 89°56'25" W, a distance of 1,257.95 FEET, to a point for the Southwest corner hereof;

THENCE, NORTH, a distance of 3,271.85 FEET, to a point for the Northwest corner hereof;

THENCE, S 89°52'06" E, a distance of 4,950.94 FEET, to a point for a deflection left;

THENCE, N 89°20'44" E, a distance of 3,320.43 FEET, to the POINT OF BEGINNING, containing 615.92 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



SHEET 1 OF 2
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.19-13\22131.19-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00



NORTH

SURVEY 1696
P.B. REYNOLDS
ABSTRACT 2418

VAQUILLAS RANCH A-1 No. 156 (SHL)

SURVEY 1695
G.B. & C.N.G. R.R. CO.
ABSTRACT 1268

VAQUILLAS RANCH A-1 No. 18

VAQUILLAS RANCH A-1 No. 155

VAQUILLAS RANCH A-1 No. 85

N 77°14'27" E 2,088.50'

POINT OF BEGINNING

S 89°52'06" E ~ 4,950.94'

N 89°20'44" E ~ 3,320.43'

VAQUILLAS RANCH A-1 No. 215 (BHL)

VAQUILLAS RANCH A-1 No. 215 (SHL)

2,039'

VAQUILLAS RANCH A-1 No. 193

SURVEY 1691
G.C. & S.F. R.R. CO.
ABSTRACT 1267

VAQUILLAS RANCH CO. LTD. No. 65 (SHL)

VAQUILLAS RANCH CO. LTD. No. 35

VAQUILLAS RANCH CO. LTD. No. 68 (BHL)

VAQUILLAS RANCH CO. LTD. No. 68 (SHL)

VAQUILLAS RANCH CO. LTD. No. 22

NORTH ~ 3,271.85'

RANCH ROAD 2895

VAQUILLAS RANCH A-1 No. 72

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 615.92 ACRE UNIT

VAQUILLAS RANCH A-1 No. 73

VAQUILLAS RANCH A-1 No. 11

SURVEY 1692
P.B. REYNOLDS
ABSTRACT 2419
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A-1 No. 237 (BHL)

VAQUILLAS RANCH A-1 No. 184

VAQUILLAS RANCH A-L No. 106 (BHL)

VAQUILLAS RANCH A-1 No. 24

VAQUILLAS RANCH A-L No. 106 (SHL)

VAQUILLAS RANCH A-1 No. 198 (BHL)

VAQUILLAS RANCH A-1 No. 198 (SHL)

VAQUILLAS RANCH A-1 No. 237 (SHL)

VAQUILLAS RANCH A-1 No. 15

Found Fence Corner Post

S 89°58'25" W 1,257.95'

S 89°26'27" W ~ 7,026.24'

S 00°13'32" E ~ 3,228.58'

SURVEY 1678
ABSTRACT 2496

VAQUILLAS RANCH A-1 No. 91

VAQUILLAS RANCH A-1 No. 192

GRAPHIC SCALE

500    0   250  500    1000              2000

( IN FEET )
1 inch = 1000 ft.

VAQUILLAS RANCH A-1 No. 92

VAQUILLAS RANCH A-1 No. 195 (BHL)

VAQUILLAS RANCH A-1 No. 195 (SHL)

SURVEY 2112
P.B. REYNOLDS
ABSTRACT 2420

VAQUILLAS RANCH A No. 89

**HOWLAND**
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

EXHIBIT "A-18"

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 18
(VAQUILLAS RANCH A-1 WELLS No. 11, No. 24, No. 72, No. 73,
No. 106, No. 198, No. 215, & No. 237)
615.92 ACRES
WEBB COUNTY, TEXAS

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☿ | = WELL |
| ——— | = UNIT LINE |
| —x— | = FENCE LINE |
| —··— | = TIES |
| — ·· — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| 2 | 11-27-13 |
| 3 | 12-05-13 |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F.
CHECKED BY: J.S.
JOB No. 22131.19-13
SHEET: 2 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.19-13\22131.19-13.dwg, 1/8/2014 12:24:56 PM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-19"

**FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 19
(VAQUILLAS RANCH A-1 WELLS No. 25, No. 90, No. 91, No. 92,
No. 132, No. 143, No. 195 No. 208, & No. 238)
640.00 ACRES**

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1693, G.B. & C.N.G. R.R. CO., Abstract 1269, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 24°31'42" W, a distance of 1,631.39 feet, from the Vaquillas Ranch A-1 No. 92 Well;

THENCE, N 89°26'27" E, a distance of 5,370.75 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°20'48" W, a distance of 3,275.75 FEET, to a point for a deflection right;

THENCE, S 00°41'52" W, a distance of 862.52 FEET, to a point for a deflection left;

THENCE, S 00°21'12" E, a distance of 1,087.58 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°28'19" W, a distance of 5,311.17 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°23'39" W, a distance of 5,222.38 FEET, to the POINT OF BEGINNING and containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



**SHEET 1 OF 2**
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.21-13\22131.21-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) i Laredo, TX 78041 P. 956.722.4411 , F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-19"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 19
### (VAQUILLAS RANCH A-1 WELLS No. 25, No. 90, No. 91, No. 92, No. 132,
### No. 143, No. 195 No. 208, & No. 238)
### 640.00 ACRES
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A-1 No. 11

SURVEY 1692
P.B. REYNOLDS
ABSTRACT 2419

VAQUILLAS RANCH A-1 No. 73

VAQUILLAS RANCH A-L No. 106 (BHL)

VAQUILLAS RANCH A-1 No. 237 (BHL)

VAQUILLAS RANCH A-1 No. 24

VAQUILLAS RANCH A-1 No. 198 (BHL)

VAQUILLAS RANCH A-1 No. 198 (SHL)

VAQUILLAS RANCH A-1 No. 237 (SHL)

VAQUILLAS RANCH A-1 No. 72

POINT OF BEGINNING

VAQUILLAS RANCH A-L No. 106 (SHL)

N 89°26'27" E ~ 5,370.75'

VAQUILLAS RANCH A-1 No. 91

VAQUILLAS RANCH A-1 No. 192

S 00°20'48" W 3,275.75'

VAQUILLAS RANCH A-1 No. 195 (SHL)

VAQUILLAS RANCH A-1 No. 195 (BHL)

N 24°21'12" W 1,631.38'

1.491'

667'

VAQUILLAS RANCH A-1 No. 92

VAQUILLAS RANCH A-1 No. 194

VAQUILLAS RANCH A-1 No. 238 (BHL)

VAQUILLAS RANCH A-1 No. 238 (SHL)

VAQUILLAS RANCH A-1 No. 25

N 00°23'39" W ~ 5,222.38'

SURVEY 1678
YGNACIO VERGARA JR.
ABSTRACT 2495

SURVEY 2112
P.B. REYNOLDS
ABSTRACT 2420

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH A-1 No. 90

RANCH ROAD 2895

VAQUILLAS RANCH A-1 No. 143

VAQUILLAS RANCH A-1 No. 208

S 00°41'52" W 862.52'

SURVEY 2367
F.R. FEILLE
ABSTRACT 3333

SURVEY 1693
G.B. & C.N.G. R.R. CO.
ABSTRACT 1269
WEBB COUNTY, TEXAS

S 00°21'12" E 1,087.56'

SURVEY 278
FRED SPEED
ABSTRACT 2462

VAQUILLAS RANCH A-1 No. 132

S 89°28'19" W ~ 5,311.17'

SURVEY 1694
FRED SPEED
ABSTRACT 2461

## GRAPHIC SCALE
500  0  250  500  1000  2000

( IN FEET )
1 inch = 1000 FT.

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

**WARNING:** BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| ——— | = UNIT LINE |
| —x— | = FENCE LINE |
| – – – – | = TIES |
| — ·· — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 10-18-13 |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.21-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

### EXHIBIT "A-20"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 20
### (VAQUILLAS RANCH E WELLS No. 31, No. 70,
### No. 82, No. 209, & No. 210 ST)
### 502.31 ACRES

A TRACT OF LAND CONTAINING 502.31 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 277, G.C. & S.F. R.R. CO., Abstract 1337, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 66°41'22" W, a distance of 1,659.92 feet, from the Vaquillas Ranch E No. 31 Well;

THENCE, N 88°50'37" E, a distance of **10,425.89 FEET**, to a found concrete monument under an existing fence line, for the Northeast corner hereof;

THENCE, S 00°36'47" E, along an existing fence line, a distance of **686.92 FEET**, to a point for an exterior corner hereof;

THENCE, S 89°31'31" W, a distance of **5,280.30 FEET**, to a point for an interior corner hereof;

THENCE, S 00°28'29" E, a distance of **2,992.64 FEET**, to a point for an exterior corner hereof;

THENCE, S 89°49'01" W, a distance of **5,164.33 FEET**, to a point for the Southwest corner hereof;

THENCE, N 00°11'12" W, a distance of **3,529.26 FEET**, to the **POINT OF BEGINNING**, containing 502.31 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

### SHEET 1 OF 2

### www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 | F. 956.722.5414
TBPE Firm Registration No. F-4097 | TBPLS Firm Registration No. 100464-00



SURVEY 278
FRED SPEED
ABSTRACT 2462

POINT OF BEGINNING

Found Concrete Monument

N 88°50'37" E ~ 10,425.89'

N 66°41'22" W 1,659.92'

VAQUILLAS RANCH E No. 209

VAQUILLAS RANCH E No. 210 ST (BHL)

697

1,522'

VAQUILLAS RANCH E No. 31

VAQUILLAS RANCH E No. 210 ST (SHL)

S 89°31'31" W ~ 5,280.30'

SURVEY 1694
FRED SPEED
ABSTRACT 2461

SURVEY 277
G.C. & S.F. R.R. CO.
ABSTRACT 1337
WEBB COUNTY, TEXAS

VAQUILLAS RANCH E No. 70

N 00°11'12" W ~ 3,528.26'

S 00°28'29" E ~ 2,992.84'

S 00°36'47" E 686.92'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 502.31 ACRE UNIT

VAQUILLAS RANCH E No. 82

SURVEY 32
C.R. DAVIS
ABSTRACT 2582

S 89°49'01" W ~ 5,164.33'

SURVEY 275
G.C. & S.F. R.R. CO.
ABSTRACT 1336

GRAPHIC SCALE
500    0    250  500      1000                2000

( IN FEET )
1 inch = 1000 FT.

VAQUILLAS RANCH A No. 19

## HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097 TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

EXHIBIT "A-20"

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 20
(VAQUILLAS RANCH E WELLS No. 31, No. 70,
No. 82, No. 209, & No. 210 ST)
502.31 ACRES
WEBB COUNTY, TEXAS

| LEGEND | | Revision | Date |
|---|---|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION | 1 | 04-09-13 |
| ☼ | = WELL | 2 | 05-17-13 |
| ▬▬▬ | = UNIT LINE | 3 | 06-06-13 |
| —X— | = FENCE LINE | 4 | 08-14-13 |
| ------ | = TIES | | |
| ▬ ▬ ▬ | = SURVEY LINE | | |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: | L.A.F. |
|---|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY: | J.S. |
| | | | JOB No. | 22131.22-13 |
| | | | SHEET: | 2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.22-13\22131.22-13.dwg, 1/6/2014 12:30:27 PM, Adobe PDF



**HOWLAND**

ENGINEERING AND SURVEYING CO.

EXHIBIT "A-21"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 21
(VAQUILLAS RANCH A-7 WELL No. 249)
608.05 ACRES

A TRACT OF LAND CONTAINING 648.05 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 259, C.C.S.D. & R.G.N.G. & R.R. CO., Abstract 1137, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 39°24'54" W, a distance of 1,866.66 feet, from the Vaquillas Ranch A-7 No. 249 Well;

THENCE, N 88°53'51" E, a distance of 5,385.00 FEET, to a point for the Northeast corner herof;

THENCE, S 00°35'40" E, a distance of 5,280.00 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°32'20" W, a distance of 5,369.40 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°45'49" W, a distance of 5,219.79 FEET, to the POINT OF BEGINNING and containing 648.05 acres of land, more or less.

LESS AND EXCEPT 40.00 ACRES, described as follows:

BEGINNING at a point which bears S 52°35'23" E, a distance of 1,871.58 feet, from the Vaquillas Ranch A-7 No. 249 Well;

THENCE, N 89°32'20" E, a distance of 1,320.00 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°27'40" E, a distance of 1,320.00 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°32'20" W, a distance of 1,320.00 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°27'40" W, a distance of 1,320.00 FEET, to the POINT OF BEGINNING, containing 40.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.23-13\22131.23-13.doc

www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) ; Laredo, TX 78041 P. 956.722.4411 ; F. 956.722.5414
TBPE Firm Registration No. F-4097 , TBPLS Firm Registration No. 100464-00



# EXHIBIT "A-21"

### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 21
### (VAQUILLAS RANCH A-7 WELL No. 249)
### 608.05 ACRES
WEBB COUNTY, TEXAS

SURVEY 36
C.R. DAVIS
ABSTRACT 2581

SURVEY 35
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1036

SURVEY 18
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 2727

POINT OF BEGINNING

N 85°53'51" E ~ 5,385.00'

N 39°24'54" W 7,366.66'

SURVEY 259
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1137
WEBB COUNTY, TEXAS

SURVEY 264
G.C. &
S.F. R.R. CO.
ABSTRACT 3302

1,465'

VAQUILLAS RANCH
A-7 No. 249
(SHL)

1,166'

VAQUILLAS RANCH
A-7 No. 249
(BHL)

S 52°35'23" E 1,871.58'

POINT OF BEGINNING
for 40.00 acre tract

N 89°32'20" E 1,320.00'

N 00°45'48" W ~ 5,218.79'

N 00°27'40" W 1,320.00'

LESS & EXCEPT
40.00 ACRES

S 00°27'40" E 1,320.00'

S 00°35'40" E ~ 5,280.00'

S 89°32'20" W 1,320.00'

SURVEY 33
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1044

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 608.05 ACRE UNIT

S 89°32'20" W ~ 5,369.40'

NORTH HALF SURVEY 34
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 2816

SURVEY 265
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1142

GRAPHIC SCALE

500   0   250  500      1000              2000

( IN FEET )
1 inch = 1000 FT.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097   TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. L.P.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| ------- | = TIES |
| ▬ ▬ ▬ | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 08-14-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: A.L.C./L.A.F.
CHECKED BY: J.S.
JOB No. 22131.23-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-22"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 22
(VAQUILLAS RANCH A WELLS No. 14, No. 19, No. 20, &
VAQUILLAS RANCH B No. 13)
612.33 ACRES

A TRACT OF LAND CONTAINING 612.33 ACRES, more or less, being out of the
Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 275,
G.C. & S.F. R.R. CO., Abstract 1336, Webb County, Texas, and being more particularly
described as follows:

BEGINNING at a point which bears N 46°23'57" W, a distance of 936.17 feet, from the
Vaquillas Ranch A No. 14 Well;

THENCE, N 89°49'01" E, a distance of 5,164.33 FEET, to a point for the Northeast
corner hereof;

THENCE, S 00°30'14" E, a distance of 5,150.08 FEET, to a point for the Southeast
corner hereof;

THENCE, S 89°49'01" W, a distance of 5,194.07 FEET, to a point for the Southwest
corner hereof;

THENCE, N 00°10'23" W, a distance of 5,150.00 FEET, to the POINT OF
BEGINNING, containing 612.33 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.24-13\22131.24-13.doc

www.howlandcompanies.com

7615 N. Bartlett Avenue  ¡  P.O. Box 451128 (78045)  ¡  Laredo, TX 78041 P. 956.722.4411  ¡  F. 956.722.5414
TBPE Firm Registration No. F-4097  ¡  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-22"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 22
### (VAQUILLAS RANCH A WELLS No. 14, No. 19, No. 20, & VAQUILLAS RANCH B No. 13)
### 612.33 ACRES
WEBB COUNTY, TEXAS

NORTH

VAQUILLAS RANCH E No. 70

SURVEY 277
G.C. & S.F. R.R. CO.
ABSTRACT 1337

VAQUILLAS RANCH E No. 82

POINT OF BEGINNING

N 89°49'01" E ~ 5,164.33'

SURVEY 32
C. R. DAVIS
ABSTRACT 2582

N 46°23'37" W ~ 936.17'
648'
576'

VAQUILLAS RANCH A No. 14

VAQUILLAS RANCH A No. 19

SURVEY 276
G.T. BLACK
ABSTRACT 2552

N 00°10'23" W ~ 5,150.00'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
**RETAINED 612.33 ACRE UNIT**

S 00°30'14" E ~ 5,150.08'

SURVEY 275
G.C. & S.F. R.R. CO.
ABSTRACT 1336
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A No. 20

VAQUILLAS RANCH B No. 13

SURVEY 31
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1043

S 89°49'01" W ~ 5,194.07'

SURVEY 274
G.T. BLACK
ABSTRACT 2551

### GRAPHIC SCALE
500   0   250  500      1000            2000
( IN FEET )
1 inch = 1000 FT.

**HOWLAND**
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097   TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue   Laredo, TX. 78041   P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.O.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. LP.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| ———— | = UNIT LINE |
| —x— | = FENCE LINE |
| --------- | = TIES |
| —··—··— | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-09-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 08-14-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F.
CHECKED BY: J.S.
JOB No. 22131.24-13
SHEET: 2 OF 2



**HOWLAND**
ENGINEERING AND SURVEYING CO.

## EXHIBIT "A-23"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 23
### (VAQUILLAS RANCH A WELLS No. 27, No. 36,
### No. 146, No. 149, & No. 158)
### 639.04 ACRES

**A TRACT OF LAND CONTAINING 639.04 ACRES**, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 276, G.T. Black, Abstract 2552, Webb County, Texas, and being more particularly described as follows:

**BEGINNING** at a found iron rod on the West right-of-way line of Ranch Road 2895, which bears N 52°54'37" W, a distance of 838.32 feet, from the Vaquillas Ranch A No. 36 Well;

**THENCE, N 89°34'02" E**, along as existing fence line, a distance of **5,282.71 FEET**, to a found concrete monument, for the Northeast corner hereof;

**THENCE, S 00°10'23" E**, a distance of **5,279.75 FEET**, to a point for the Southeast corner hereof;

**THENCE, S 89°33'08" W**, a distance of **5,260.79 FEET**, to a found 2" pipe, for the Southwest corner hereof;

**THENCE, N 00°24'40" W**, a distance of **5,281.06 FEET**, to the **POINT OF BEGINNING**, containing 639.04 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



**SHEET 1 OF 2**
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.25-13\22131.25-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) / Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00



# EXHIBIT "A-23"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129–001 ~ RETAINED TRACT 23
### (VAQUILLAS RANCH A WELLS No. 27, No. 36, No. 146, No. 149, & No. 158)
### 639.04 ACRES
WEBB COUNTY, TEXAS

SURVEY 1694
F. SPEED
ABSTRACT 2461

RANCH ROAD 2895

POINT OF BEGINNING
⊙ Found Iron Rod

N 89°34'02" E ~ 5,282.71'

Found Concrete Monument

NORTH

N 52°54'37" W
838.32'

665'
511'

VAQUILLAS RANCH A No. 36

VAQUILLAS RANCH A No. 27

VAQUILLAS RANCH A No. 14

VAQUILLAS RANCH A No. 149

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129–001
26,622.79 ACRES (CALLED)
RETAINED 639.04 ACRE UNIT

N 00°24'40" W ~ 5,281.08'

S 00°10'23" E ~ 5,279.75'

SURVEY 1680
YGNACIO VERGARA JR.
ABSTRACT 2496

VAQUILLAS RANCH A No. 158

SURVEY 276
G.T. BLACK
ABSTRACT 2552
WEBB COUNTY, TEXAS

SURVEY 275
G.C. & S.F. R.R. CO.
ABSTRACT 1336

VAQUILLAS RANCH A No. 146 (BHL)

VAQUILLAS RANCH A No. 146 (SHL)

VAQUILLAS RANCH A No. 20

S 89°33'08" W ~ 5,260.79'

Found 2" Pipe

VAQUILLAS RANCH No. 174

SURVEY 228
G.T. BLACK
ABSTRACT 2550

GRAPHIC SCALE
500   0   250  500   1000            2000
( IN FEET )
1 inch = 1000 ft.

# HOWLAND
## ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4087   TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Control Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. LP.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | | Revision | Date |
|---|---|---|---|
| ⬠ = HORIZONTAL WELL SURFACE LOCATION | | 1 | 04–11–13 |
| ☼ = WELL | | 2 | 05–17–13 |
| —— = UNIT LINE | | 3 | 06–06–13 |
| ―x― = FENCE LINE | | 4 | 08–14–13 |
| – – – = TIES | | 5 | 11–27–13 |
| ▬ ▬ ▬ = SURVEY LINE | | | |

| FIELD DATE | BOOK | PAGE(s) | |
|---|---|---|---|
| N/A | N/A | N/A | DRAWN BY: L.A.F. |
| | | | CHECKED BY: J.S. |
| | | | JOB No. 22131.25-13 |
| | | | SHEET: 2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.25-13\22131.25-13.dwg, 1/8/2014 12:37:03 PM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

### EXHIBIT "A-24"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 24
### (VAQUILLAS RANCH WELLS No. 16, No. 164, No. 174, AND
### VAQUILLAS RANCH A WELLS No. 111, No. 116, & No. 125)
### 633.38 ACRES

A TRACT OF LAND CONTAINING 633.38 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 228, G.T. Black, Abstract 2550, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a found 2" pipe on the West right-of-way line of Ranch Road 2895, which bears N 73°18'04" W, a distance of 2,034.65 feet, from the Vaquillas Ranch No. 174 Well;

THENCE, N 89°33'08" E, a distance of 5,260.79 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°10'58" E, a distance of 5,254.72 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°32'59" W, a distance of 5,240.13 FEET, to a point under an existing fence on the West right-of-way line of said Ranch Road 2895, for the Southwest corner hereof;

THENCE, N 00°24'29" W, a distance of 5,254.89 FEET, to the POINT OF BEGINNING, containing 633.38 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27





# www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) . Laredo, TX 78041 P. 956.722.4411 ı F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-24"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 24
(VAQUILLAS RANCH WELLS No. 16, No. 164, No. 174, AND
VAQUILLAS RANCH A WELLS No. 111, No. 116, & No. 125)
### 633.38 ACRES
WEBB COUNTY, TEXAS

SURVEY 1680
YGNACIO VERGARA JR.
ABSTRACT 2496

SURVEY 276
G.T. BLACK
ABSTRACT 2552

NORTH

VAQUILLAS
RANCH
A No. 20

POINT OF
BEGINNING
Found 2" Pipe

VAQUILLAS
RANCH
A No. 146

N 89°33'08" E ~ 5,260.79'

N 73°18'04" W
2,034.65'

600

VAQUILLAS
RANCH
No. 174

1,945'

SURVEY 274
G.T. BLACK
ABSTRACT 2551

SURVEY 1681
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1139

N 00°24'29" W ~ 5,254.88'

RANCH ROAD 2695

SURVEY 228
G.T. BLACK
ABSTRACT 2550
WEBB COUNTY, TEXAS

VAQUILLAS
RANCH
No. 164

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 633.38 ACRE UNIT

S 00°10'58" E ~ 5,254.72'

VAQUILLAS
RANCH
A No. 125

VAQUILLAS
RANCH
A No. 116

VAQUILLAS
RANCH
No. 16

VAQUILLAS
RANCH
A No. 111

S 89°32'59" W ~ 5,240.13'

VAQUILLAS
RANCH
No. 10

SURVEY 227
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1133

VAQUILLAS
RANCH
No. 12 T

GRAPHIC SCALE

500   0   250  500   1000          2000

( IN FEET )
1 inch = 1000 ft.

VAQUILLAS
RANCH
No. 11

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | Revision | Date |
|---|---|---|
| ⬠ = HORIZONTAL WELL SURFACE LOCATION | 1 | 04-11-13 |
| ☼ = WELL | | |
| = UNIT LINE | | |
| ─x─ = FENCE LINE | | |
| ------- = TIES | | |
| ▬ ▬ ▬ = SURVEY LINE | | |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: L.A.F. |
|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY: J.S. |
| | | | JOB No. 22131.26-13 |
| | | | SHEET: 2 OF 2 |


**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-25"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 25
(VAQUILLAS RANCH WELLS No. 10, No. 11,
No. 12, VAQUILLAS RANCH A No. 80, & No. 99)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 227, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1133; and Survey 273, C.C.S.D. & R.G.N.G. R.R. C.O., Abstract 1141, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 33°34'02" E, a distance of 1,360.57 feet, from the Vaquillas Ranch No. 12 Well;

THENCE, S 00°26'16" E, a distance of 4,991.78 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°36'57" W, a distance of 332.74 FEET, to a point for a deflection left;

THENCE, S 89°36'41" W, a distance of 5,270.89 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°05'03" W, a distance of 4,985.84 FEET, to a point for the Northwest corner hereof;

THENCE, N 89°32'59" E, a distance of 5,572.87 FEET, to the POINT OF BEGINNING and containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.27-13\22131.27-13.doc

www.howlandcompanies.com
7615 N. Bartlett Avenue : P.O. Box 451128 (78045) i Laredo, TX 78041 P. 956.722.4411 J F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-25"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 25
(VAQUILLAS RANCH WELLS No. 10, No. 11, No. 12,
VAQUILLAS RANCH A No. 80, & No. 99)
### 640.00 ACRES
WEBB COUNTY, TEXAS

SURVEY 1681
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1139

SURVEY 228
G.T. BLACK
ABSTRACT 2550

VAQUILLAS RANCH A No. 116

VAQUILLAS RANCH A No. 125

NORTH

VAQUILLAS RANCH No. 16

VAQUILLAS RANCH A No. 111

SURVEY 274
G.T. BLACK
ABSTRACT 2551

N 89°32'59" E ~ 5,572.87'

SURVEY 1682
D. SANCHEZ
ABSTRACT 2668

Ranch Road 2895

N 00°05'03" W ~ 4,985.84'

VAQUILLAS RANCH No. 10

N 35°14'02" E 1,460.57'

1,128'

POINT OF BEGINNING

VAQUILLAS RANCH No. 12

761'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH No. 11

SURVEY 227
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1133
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A No. 99

VAQUILLAS RANCH A No. 80

S 00°26'16" E ~ 4,991.76'

SURVEY 273
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1141

S 89°36'41" W ~ 5,270.89'

VAQUILLAS RANCH No. 18

VAQUILLAS RANCH No. 15 (BHL)

S 89°38'57" W 332.74'

VAQUILLAS RANCH No. 15 (SHL)

VAQUILLAS RANCH A No. 231

SURVEY 987
J. POITEVENT
ABSTRACT 2061

SURVEY 988
J.H. FULLER
ABSTRACT 2593

GRAPHIC SCALE
500  0  250  500  1000  2000
( IN FEET )
1 inch = 1000 Ft.

## HOWLAND
**ENGINEERING AND SURVEYING CO.**
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| x | = FENCE LINE |
| | = TIES |
| | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |
| | | |
| | | |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.27-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

### EXHIBIT "A-26"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 26
### (VAQUILLAS RANCH WELLS No. 15, No. 18, No. 154, No. 177,
### No. 182, AND VAQUILLAS RANCH A No. 175, & No. 231)
### 635.36 ACRES

A TRACT OF LAND CONTAINING 635.36 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 988, J.H. Fuller, Abstract 2593, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 59°15'10" W, a distance of 907.68 feet, from the Vaquillas Ranch No. 18 Well;

THENCE, N 89°36'41" E, a distance of 5,270.89 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°06'58" E, a distance of 5,240.20 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°23'40" W, a distance of 5,272.32 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°06'07" W, a distance of 5,260.16 FEET, to the POINT OF BEGINNING, containing 635.36 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



### SHEET 1 OF 2

## www.howlandcompanies.com

7615 N. Bartlett Avenue  :  P.O. Box 451128 (78045)  :  Laredo, TX 78041 P. 956.722.4411  :  F. 956.722.5414
TBPE Firm Registration No. F-4097  :  TBPLS Firm Registration No. 100464-00



# EXHIBIT "A-26"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 26
(VAQUILLAS RANCH WELLS No. 15, No. 18, No. 154, No. 177,
No. 182, AND VAQUILLAS RANCH A No. 175, & No. 231)
### 635.36 ACRES
WEBB COUNTY, TEXAS

RANCH ROAD 2895

VAQUILLAS RANCH A No. 99

VAQUILLAS RANCH A No. 80

SURVEY 273 C.C.S.D. & R.G.N.G. R.R. CO. ABSTRACT 1141

SURVEY 227
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1133

POINT OF BEGINNING

N 59°15'10" W 907.68'

N 89°36'41" E ~ 5,270.89'

469'

779' — VAQUILLAS RANCH No. 18

VAQUILLAS RANCH No. 15 (BHL)

VAQUILLAS RANCH No. 15 (SHL)

VAQUILLAS RANCH A No. 231

SURVEY 987 J. POITEVENT ABSTRACT 2061

SURVEY 988
J.H. FULLER
ABSTRACT 2593
WEBB COUNTY, TEXAS

SURVEY 1245 H. & O.B. R.R. CO. ABSTRACT 2023

N 00°06'07" W ~ 5,280.16'

S 00°06'58" E ~ 5,240.20'

VAQUILLAS RANCH No. 182

VAQUILLAS RANCH A No. 175

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 635.36 ACRE UNIT

VAQUILLAS RANCH No. 154

VAQUILLAS RANCH No. 177

S 89°23'40" W ~ 5,272.32'

SURVEY 229
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1132

SURVEY 230 W.R. ALLDREDGE ABSTRACT 2523

GRAPHIC SCALE

500    0   250  500    1000         2000

( IN FEET )
1 inch = 1000 ft.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097   TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue   Laredo, TX. 78041   P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. LP.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | HORIZONTAL WELL SURFACE LOCATION |
| ☼ | WELL |
| | UNIT LINE |
| —x— | FENCE LINE |
| ------- | TIES |
| — ▪ ▪ — | SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| | |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F.
CHECKED BY: J.S.
JOB No.  22131.28-13
SHEET:  2 OF 2



**ENGINEERING AND SURVEYING CO.**

### EXHIBIT "A-27"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 27
### (VAQUILLAS RANCH A-12 WELLS No. 168 & No. 202)
### 614.74 ACRES

**A TRACT OF LAND CONTAINING 614.74 ACRES**, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 987, J. Poitevent, Abstract 2061, Webb County, Texas, and being more particularly described as follows:

**BEGINNING** at a point which bears N 13°58'44" E, a distance of 1,605.58 feet, from the Vaquillas A-12 Ranch No. 168 Well;

**THENCE, S 00°30'00" E**, a distance of **5,218.37 FEET**, to a found 8" fence corner post, for the Southeast corner hereof;

**THENCE, S 89°22'22" W**, a distance of **5,138.40 FEET**, to a point for the Southwest corner hereof;

**THENCE, N 00°06'58" W**, a distance of **5,240.20 FEET**, to a point for the Northwest corner hereof;

**THENCE, N 89°36'57" E**, a distance of **5,103.29 FEET**, to the **POINT OF BEGINNING**, containing 614.74 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

### SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.29-13\22131.29-13.doc

## www.howlandcompanies.com
7615 N. Bartlett Avenue  .  P.O. Box 451128 (78045)  ·  Laredo, TX 78041 P. 956.722.4411  ·  F. 956.722.5414
TBPE Firm Registration No. F-4097  /  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-27"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 27
### (VAQUILLAS RANCH A-12 WELLS No. 168 & No. 202)
### 614.74 ACRES
#### WEBB COUNTY, TEXAS

NORTH

SURVEY 273
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1141

SURVEY 227
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1133

POINT OF BEGINNING

VAQUILLAS RANCH
A-4 No. 173

N 89°36'57" E  ~ 5,103.29'

SURVEY 25
C.C.S.D. &
R.G.N.G.R.R. CO.
ABSTRACT 1042
SURVEYED OCTOBER
25, 1879

VAQUILLAS
RANCH
A-12 No. 168
(BHL)

1,555'

N 13°58'44" E
1,603.58'

SURVEY 988
J.H. FULLER
ABSTRACT 2593

SURVEY 987
J. POITEVENT
ABSTRACT 2061
WEBB COUNTY, TEXAS

VAQUILLAS
RANCH
A-12 No. 168
(SHL)

401'

VAQUILLAS RANCH
A-4 No. 121

VAQUILLAS
RANCH
A No. 175

N 00°08'58" W  ~ 5,240.20'

VAQUILLAS
RANCH
A-12 No. 202

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 614.74 ACRE UNIT

S 00°30'00" E  ~ 5,218.37'

SURVEY 232
C. J. BERGSTROM
A-2148

VAQUILLAS
RANCH
C No. 84

S 89°22'22" W  ~ 5,138.40'

Found 8"
Fence Post

SURVEY 230
W.R. ALLDREDGE
ABSTRACT 2523

GRAPHIC SCALE

500    0   250  500      1000                    2000

( IN FEET )
1 inch = 1000 ft.

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. L.P.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | | Revision | Date |
|---|---|---|---|
| ⬠ = HORIZONTAL WELL SURFACE LOCATION | | 1 | 04-09-13 |
| ☿ = WELL | | | |
| = UNIT LINE | | | |
| x = FENCE LINE | | | |
| = TIES | | | |
| = SURVEY LINE | | | |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: L.A.F. |
|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY:  J.S. |
| | | | JOB No.  22131.29-13 |
| | | | SHEET:  2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.29-13\22131.29-13.dwg, 1/8/2014 12:42:40 PM, Adobe PDF



**HOWLAND**
ENGINEERING AND SURVEYING CO.

EXHIBIT "A-28"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 28
(VAQUILLAS RANCH A-6 WELLS No. 41, No. 57, No. 229, VAQUILLAS
RANCH H No. 28, No. 109, VAQUILLAS RANCH H No. 224 A &
VAQUILLAS RANCH H No. 46 C)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the
Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 31,
C.C.S.D. R.G.N.G. R.R. CO., Abstract 1043; and Survey 26, R.O. Barnesley, Abstract
2133, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 58°26'33" W, a distance of 1,644.66 feet, from
the Vaquillas Ranch A-6 No. 41 Well;

THENCE, N 89°29'46" E, a distance of 5,358.90 FEET, to a point for the Northeast
corner hereof;

THENCE, S 00°29'05" E, a distance of 2,525.78 FEET, to a point for a deflection left;

THENCE, S 01°28'37" E, a distance of 2,670.53 FEET, to a point for the Southeast
corner hereof;

THENCE, S 89°32'59" W, a distance of 5,399.74 FEET, to a point for the Southwest
corner hereof;

THENCE, N 00°32'40" W, a distance of 5,190.85 FEET, to the POINT OF
BEGINNING and containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



SHEET 1 OF 2
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.31-13\22131.31-13.doc

www.howlandcompanies.com
7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-28"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 28
(VAQUILLAS RANCH A-6 WELLS No. 41, No. 57, No. 229, VAQUILLAS RANCH H No. 28,
No. 109, VAQUILLAS RANCH H No. 224 A & VAQUILLAS RANCH H No. 46 C)
### 640.00 ACRES
WEBB COUNTY, TEXAS

SURVEY 275
G.C. & S.F. R.R. CO.
ABSTRACT 1336

VAQUILLAS
RANCH
B No. 13

POINT OF
BEGINNING

SURVEY 31
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1043
WEBB COUNTY, TEXAS

NORTH

N 89°29'46" E ~ 5,358.90'

N 58°26'33" W
1,644.66'

873'

1,393'

VAQUILLAS
RANCH
A-6 No. 41

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS
RANCH
A-6 No. 229
(BHL)

VAQUILLAS
RANCH
A-6 No. 229
(SHL)

VAQUILLAS
RANCH
A-6 No. 57

SURVEY 260
ERNEST C. GASSER
ABSTRACT 2607

S 00°29'05" E ~ 2,525.78'

N 00°32'40" W ~ 5,190.85'

SURVEY 274
G.T. BLACK
ABSTRACT 2551

VAQUILLAS
RANCH
H No. 46 C

VAQUILLAS
RANCH
H No. 109

VAQUILLAS
RANCH
H No. 224 A

SURVEY 26
R.O. BARNESLEY
ABSTRACT 2133

VAQUILLAS
RANCH
H No. 28

S 01°28'37" E ~ 2,670.53'

SURVEY 51
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1045

VAQUILLAS
RANCH
A-6 No. 83

S 89°32'59" W ~ 5,399.74'

VAQUILLAS
RANCH
H No. 96

VAQUILLAS
RANCH
H No. 115

VAQUILLAS
RANCH
H No. 162

VAQUILLAS
RANCH
H No. 225

GRAPHIC SCALE
500  0  250  500  1000  2000
( IN FEET )
1 inch = 1000 ft.

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7815 N. Bartlet Avenue  Laredo, TX. 75041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —X— | = FENCE LINE |
| – – – – | = TIES |
| – — – — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(S) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY:  L.A.F./S.I.M.
CHECKED BY:  J.S.
JOB No.  22131.31-13
SHEET:  2 OF 2



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-29"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 29
(VAQUILLAS RANCH H WELLS No. 96, No. 115, No. 162, No. 226,
VAQUILLAS RANCH D No. 117, No. 153, No. 223 &
VAQUILLAS RANCH No. 17)
618.16 ACRES

A TRACT OF LAND CONTAINING 618.16 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 26, R.O. Barnesley, Abstract 2133; and Survey 273, C.C.S.D. & R.G.N.G. R.R. C.O., Abstract 1141, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 33°41'33" E, a distance of 1,796.29 feet, from the Vaquillas Ranch H No. 162 Well;

THENCE, S 01°28'37" E, a distance of 2,576.14 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°10'24" W, a distance of 10,341.47 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°26'16" W, a distance of 2,643.65 FEET, to a point for the Northwest corner hereof;

THENCE, N 89°32'59" E, a distance of 10,294.50 FEET, to the POINT OF BEGINNING and containing 618.16 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



SHEET 1 OF 2
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.32-13\22131.32-13.doc



www.howlandcompanies.com
7615 N. Bartlett Avenue ¦ P.O. Box 451128 (78045) ¦ Laredo, TX 78041 P. 956.722.4411 ¦ F. 956.722.5414
TBPE Firm Registration No. F-4097 ¦ TBPLS Firm Registration No. 100464-00



SURVEY 274
G.T. BLACK
ABSTRACT 2551

VAQUILLAS RANCH A No. 111

VAQUILLAS RANCH H No. 224-A

POINT OF BEGINNING

VAQUILLAS RANCH H No. 28

N 89°32'59" E ~ 10,294.50'

VAQUILLAS RANCH D No. 117

VAQUILLAS RANCH H No. 96

SURVEY 26
R.O. BARNESLEY
ABSTRACT 2133
WEBB COUNTY, TEXAS

N ~ 2,643.65'

N 00°26'16" W

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 618.16 ACRE UNIT

VAQUILLAS RANCH No. 12 T

VAQUILLAS RANCH D No. 223

VAQUILLAS RANCH No. 17 (SHL)

VAQUILLAS RANCH No. 17 (BHL)

VAQUILLAS RANCH D No. 153

VAQUILLAS RANCH H No. 226

VAQUILLAS RANCH H No. 115

VAQUILLAS RANCH H No. 162

1.487'

N 32°41'33" E
1,758.29'

1,035'

S 01°25'37" E ~ 2,576.14'

SURVEY 51
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1045

SURVEY 227
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1133

S 89°10'24" W ~ 10,341.47'

SURVEY/UNIT LINE

VAQUILLAS RANCH A-4 No. 167 (BHL)

VAQUILLAS RANCH A-4 No. 227

VAQUILLAS RANCH A-4 No. 150

SURVEY 273
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1141

VAQUILLAS RANCH A-4 No. 157 (SHL)

SURVEY 25
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1042

SURVEY 24
R.O. BARNESLEY
ABSTRACT 2134

GRAPHIC SCALE
500  0  250 500  1000          2000
( IN FEET )
1 inch = 1000 FL

**HOWLAND**
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7616 N. Bartlett Avenue  Laredo, TX 78041  P. 868.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

EXHIBIT "A-29"
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 29
(VAQUILLAS RANCH H WELLS No. 96, No. 115, No. 162,
No. 226, VAQUILLAS RANCH D No. 117, No. 153, No. 223 &
VAQUILLAS RANCH No. 17)
618.16 ACRES
WEBB COUNTY, TEXAS

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| | = TIES |
| | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 05-17-13 |
| 3 | 08-06-13 |
| 4 | 10-18-13 |
| 5 | 11-27-13 |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: L.A.F./S.I.M. |
|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY: J.S. |
| | | | JOB No. 22131.32-13 |
| | | | SHEET: 2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.32-13\22131.32-13.dwg, 1/8/2014 1:14:08 PM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-30"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 30
(VAQUILLAS RANCH A-6 WELLS No. 30, No. 83, & No. 228)
323.87 ACRES

**A TRACT OF LAND CONTAINING 323.87 ACRES**, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 51, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1045, Webb County, Texas, and being more particularly described as follows:

**BEGINNING** at a point which bears S 60°45'43" W, a distance of 996.74 feet, from the Vaquillas Ranch A-6 No. 83 Well;

**THENCE, N 01°28'38" W**, a distance of 2,622.92 FEET, to a point for the Northwest corner hereof;

**THENCE, N 89°15'20" E**, a distance of 5,375.43 FEET, to a point for the Northeast corner hereof;

**THENCE, S 00°51'59" E**, a distance of 2,640.06 FEET, to a point for the Southeast corner hereof;

**THENCE, S 89°26'29" W**, a distance of 5,347.54 FEET, to the **POINT OF BEGINNING**, containing 323.87 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

**SHEET 1 OF 2**

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.33-13\22131.33-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-30"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 30
### (VAQUILLAS RANCH A-6 WELLS No. 30, No. 83, & No. 228)
### 323.87 ACRES
#### WEBB COUNTY, TEXAS

SURVEY 31
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1043

VAQUILLAS RANCH
A-6 No. 57

NORTH

SURVEY 260
ERNEST C. GASSER
ABSTRACT 2607

SOUTH HALF SURVEY 34
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 2605

N 89°15'20" E ~ 5,375.43'

N 01°28'38" W ~ 2,622.92'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 323.87 ACRE UNIT

VAQUILLAS RANCH
A-6 No. 30

VAQUILLAS RANCH
A-6 No. 83

882'

S 66°45'43" W
996.74'

478'

VAQUILLAS RANCH
A-6 No. 228

S 00°51'59" E ~ 2,640.06'

SURVEY 52
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 2606

SURVEY 26
R.O. BARNESLEY
ABSTRACT 2133

S 89°26'29" W ~ 5,347.54'

POINT OF BEGINNING

VAQUILLAS RANCH
H No. 162

SURVEY 51
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1045
WEBB COUNTY, TEXAS

### GRAPHIC SCALE

500  0  250  500  1000  2000

( IN FEET )
1 Inch = 1000 Ft.

SURVEY 24
R.O. BARNESLEY
ABSTRACT 2134

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4007  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

**WARNING:** BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. LP. COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| — — — | = TIES |
| — ·· — | = SURVEY LINE |

| | Revision | Date |
|---|---|---|
| | 1 | 04-09-13 |
| | | |
| | | |
| | | |

| FIELD DATE | BOOK | PAGE(s) | | |
|---|---|---|---|---|
| N/A | N/A | N/A | DRAWN BY: | L.A.F. |
| | | | CHECKED BY: | J.S. |
| | | | JOB No. | 22131.33-13 |
| | | | SHEET: | 2 OF 2 |



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-31"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 31
(VAQUILLAS RANCH A-4 WELLS No. 150, No. 167 & No. 227)
567.81 ACRES

A TRACT OF LAND CONTAINING 567.81 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 25, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1042; and Survey 273, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1141, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 34°45'22" E, a distance of 820.70 feet, from the Vaquillas Ranch A-4 No. 150 Well;

THENCE, S 01°11'23" E, a distance of **2,428.19 FEET**, to a point for the Southeast corner hereof;

THENCE, S 89°36'57" W, a distance of **10,373.11 FEET**, to a point for the Southwest corner hereof;

THENCE, N 00°26'16" W, a distance of **2,348.13 FEET**, to a point for the Northwest corner hereof;

THENCE, N 89°10'24" E, a distance of **10,341.47 FEET**, to the **POINT OF BEGINNING** and containing 567.81 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



**SHEET 1 OF 2**
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.34-13\22131.34-13.doc

# www.howlandcompanies.com

7615 N. Bartlett Avenue  :  P.O. Box 451128 {78045}  .  Laredo, TX 78041 P. 956.722.4411  :  F. 956.722.5414
TBPE Firm Registration No. F-4097  ;  TBPLS Firm Registration No. 100464-00



SURVEY 273
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1141

SURVEY 26
R.O. BARNESLEY
ABSTRACT 2133

VAQUILLAS RANCH H No. 162

VAQUILLAS RANCH H No. 115

VAQUILLAS RANCH H No. 226

SURVEY 51
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1045

POINT OF BEGINNING

N 89°10'24" E ~ 10,341.47'          SURVEY/UNIT LINE

N 34°45'22" E
820.70'

SURVEY 227
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1133

N 00°26'16" W ~ 2,348.13'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 567.81 ACRE UNIT

VAQUILLAS RANCH A-4 No. 167 (9HL)

VAQUILLAS RANCH A-4 No. 227

VAQUILLAS RANCH A-4 No. 167 (SHL)

VAQUILLAS RANCH A-4 No. 150

667'

482'

S 01°11'23" E ~ 2,428.19'

SURVEY 25
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1042
WEBB COUNTY, TEXAS

SURVEY 988
J.H. FULLER
ABSTRACT 2593

SURVEY 987
J. POITEVENT
ABSTRACT 2061

SURVEY/UNIT LINE

S 89°36'57" W ~ 10,373.11'

VAQUILLAS RANCH A-4 No. 173

VAQUILLAS RANCH A-12 No. 168 (BHL)

SURVEY 232
C.J. BERGSTROM
ABSTRACT 2148

VAQUILLAS RANCH A-12 No. 168 (SHL)

VAQUILLAS RANCH A-4 No. 121

VAQUILLAS RANCH A-4 No. 151

SURVEY 24
R.O. BARNESLEY
ABSTRACT 2134

GRAPHIC SCALE
500   0   250  500      1000                    2000
( IN FEET )
1 inch = 1000 ft.

**HOWLAND**
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

EXHIBIT "A-31"

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 31
(VAQUILLAS RANCH A-4 WELLS No. 150, No. 167 & No. 227)
567.81 ACRES
WEBB COUNTY, TEXAS

| LEGEND | | Revision | Date |
|---|---|---|---|
| ⬠ = HORIZONTAL WELL SURFACE LOCATION | | 1 | 04-09-13 |
| ☼ = WELL | | 2 | 05-17-13 |
| —— = UNIT LINE | | 3 | 06-06-13 |
| —X— = FENCE LINE | | 4 | 10-18-13 |
| ------ = TIES | | | |
| — - — = SURVEY LINE | | | |

| FIELD DATE | BOOK | PAGE(s) | DRAWN BY: L.A.F./S.I.M. |
|---|---|---|---|
| N/A | N/A | N/A | CHECKED BY: J.S. |
| | | | JOB No. 22131.34-13 |
| | | | SHEET: 2 OF 2 |

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.34-13\22131.34-13.dwg, 1/8/2014 1:21:59 PM, Adobe PDF


**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-32"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 32
(VAQUILLAS RANCH C WELLS No. 84, No. 103, No. 160, & No. 246 ST)
460.44 ACRES

A TRACT OF LAND CONTAINING 460.44 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 232, C.J. Bergstrom, Abstract 2148, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears S 25°59'31" W, a distance of 2,521.75 feet, from the Vaquillas Ranch C No. 84 Well;

THENCE, N 00°08'17" W, a distance of 1,437.56 FEET, to a point for a deflection left;

THENCE, N 00°30'00" W, a distance of 5,218.37 FEET, to a point for the Northwest corner hereof;

THENCE, N 89°36'57" E, a distance of 131.54 FEET, to a point for the northernmost Northeast corner hereof;

THENCE, S 00°28'50" E, a distance of 2,901.83 FEET, to a point for an interior corner hereof;

THENCE, N 89°56'18" E, a distance of 5,133.27 FEET, to a point for the southernmost Northeast corner hereof;

THENCE, S 00°43'00" E, a distance of 3,709.15 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°26'29" W, a distance of 5,286.78 FEET, to the POINT OF BEGINNING, containing 460.44 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.35-13\22131.35-13.doc

www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-32"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 32
### (VAQUILLAS RANCH C WELLS No. 84, No. 103, No. 160, & No. 246 ST)
### 460.44 ACRES
#### WEBB COUNTY, TEXAS

SURVEY 273
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1141

N 89°36'57" E
131.54'

VAQUILLAS
RANCH
A-4 No. 173

SURVEY 25
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1042

VAQUILLAS
RANCH
A-12 No. 168
(BHL)

VAQUILLAS
RANCH
A-12 No. 168
(SHL)

VAQUILLAS
RANCH
A-4 No. 151

VAQUILLAS
RANCH
A-4 No. 121

VAQUILLAS
RANCH
A-4 No. 247
(SHL)

VAQUILLAS
RANCH
A-4 No. 247
(BHL)

N 89°58'18" E ~ 5,133.27'

S 00°28'50" E ~ 2,901.83'

N 00°30'00" W ~ 5,218.37'

SURVEY 24
R.O. BARNESLEY
ABSTRACT 2134

NORTH

SURVEY 987
J. POITEVENT
ABSTRACT 2061

VAQUILLAS
RANCH
C No. 160

SURVEY 232
C.J. BERGSTROM
ABSTRACT 2148
WEBB COUNTY, TEXAS

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 460.44 ACRE UNIT

1,116'

VAQUILLAS
RANCH
C No. 84

S 25°59'31" W ~ 2,521.75'

2,255'

VAQUILLAS
RANCH
C No. 103

VAQUILLAS
RANCH
C No. 246 ST
(SHL)

VAQUILLAS
RANCH
C No. 246 ST
(BHL)

N 00°08'17" W
1,437.56'

S 00°43'00" E ~ 3,709.15'

SURVEY 233
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1117

VAQUILLAS
RANCH
B-1 No. 23

VAQUILLAS
RANCH
A-10 No. 81

SURVEY 230
W.R. ALLDREDGE
ABSTRACT 2523

S 89°26'29" W ~ 5,288.78'

POINT OF
BEGINNING

SURVEY 231
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1116

SURVEY 234
C.J. BERGSTROM
ABSTRACT 2146

GRAPHIC SCALE

500    0    250  500    1000              2000

( IN FEET )
1 inch = 1000 FT.

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. LP.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | | Revision | Date |
|---|---|---|---|
| ⬠ = HORIZONTAL WELL SURFACE LOCATION | | 1 | 04-09-13 |
| ☼ = WELL | | | |
| —x— = UNIT LINE / FENCE LINE | | | |
| = TIES | | | |
| — ·· — = SURVEY LINE | | | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F.
CHECKED BY: J.S.
JOB No. 22131.35-13
SHEET: 2 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.35-13\22131.35-13.dwg, 1/8/2024 1:26:35 PM, Adobe PDF



**HOWLAND**
ENGINEERING AND SURVEYING CO.

EXHIBIT "A-33"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
RETAINED TRACT 33
(VAQUILLAS RANCH WELL A-10 No. 81, VAQUILLAS RANCH
B-1 WELLS No. 23, & No. 120)
382.64 ACRES

A TRACT OF LAND CONTAINING 382.64 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 233, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1117, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 42°39'42" W, a distance of 1,797.35 feet, from the Vaquillas Ranch B-1 No. 23 Well;

THENCE, N 89°08'54" E, a distance of **4,485.02 FEET**, to a point under an existing fence line, for the Northeast corner hereof;

THENCE, S 00°19'51" E, along an existing fence line, a distance of **3,744.45 FEET**, to a point for the Southeast corner hereof;

THENCE, S 89°36'00" W, a distance of **4,459.86 FEET**, to a point for the Southwest corner hereof;

THENCE, N 00°43'00" W, a distance of **3,709.15 FEET**, to the POINT OF BEGINNING, containing 382.64 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.36-13\22131.36-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue . P.O. Box 451128 (78045) ¦ Laredo, TX 78041 P. 956.722.4411 ; F. 956.722.5414
TBPE Firm Registration No. F-4097 ! TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-33"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 33
### (VAQUILLAS RANCH A-10 WELL No. 81, VAQUILLAS RANCH B-1 WELLS No. 23, & No. 120)
### 382.64 ACRES
WEBB COUNTY, TEXAS

NORTH

SURVEY 24
R.O. BARNESLEY
ABSTRACT 2134

SURVEY 25
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1042

POINT OF BEGINNING

N 89°08'54" E ~ 4,485.02'

SURVEY 232
C.J. BERGSTROM
ABSTRACT 2148

N 42°39'42" W ~ 1,797.35'

1,340'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 382.64 ACRE UNIT

1,201'

VAQUILLAS RANCH
B-1 No. 23

N 00°43'00" W 3,708.15'

S 00°19'51" E ~ 3,744.45'

SURVEY 271
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1136

VAQUILLAS RANCH C
No. 246 ST
(SHL)

VAQUILLAS RANCH
C No. 246 ST
(BHL)

SURVEY 233
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1117
WEBB COUNTY, TEXAS

VAQUILLAS RANCH
B-1 No. 120

VAQUILLAS RANCH
A-10 No. 81

S 89°36'00" W ~ 4,459.88'

SURVEY 231
C.C.S.D. & R.G.N.G.
R.R. CO.
ABSTRACT 1116

SURVEY 234
C.J. BERGSTROM
ABSTRACT 2146

### GRAPHIC SCALE
500    0   250  500    1000         2000

( IN FEET )
1 inch = 1000 ft.

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7815 N. Bartlett Avenue  Laredo, TX, 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Central Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR BURLINGTON RESOURCES O&G CO. LP. COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | Revision | Date |
|---|---|---|
| ⬠ = HORIZONTAL WELL SURFACE LOCATION | 1 | 04-09-13 |
| ☼ = WELL | | |
| ——— = UNIT LINE | | |
| —x— = FENCE LINE | | |
| - - - - - = TIES | | |
| — — — — = SURVEY LINE | | |

| FIELD DATE | BOOK | PAGE(s) | |
|---|---|---|---|
| N/A | N/A | N/A | DRAWN BY: L.A.F. |
| | | | CHECKED BY: J.S. |
| | | | JOB No. 22131.36-13 |
| | | | SHEET: 2 OF 2 |



**HOWLAND**
ENGINEERING AND SURVEYING CO.

## EXHIBIT "A-34"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 34
### (VAQUILLAS RANCH A-8 WELLS No. 59, No. 66, &
### VAQUILLAS RANCH A No. 86)
### 606.84 ACRES

A TRACT OF LAND CONTAINING 606.84 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1649, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1110, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 38°23'35" E, a distance of 2,217.27 feet, from the Vaquillas Ranch A-8 No. 59 Well;

THENCE, S 00°17'51" W, a distance of 5,027.60 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°24'12" W, a distance of 5,177.16 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°30'01" W, a distance of 5,115.58 FEET, to a point for the Northwest corner hereof;

THENCE, S 89°37'46" E, a distance of 5,247.75 FEET, to the POINT OF BEGINNING, containing 606.84 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



### SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.37-13\22131.37-13.doc

## www.howlandcompanies.com
7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-34"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 34
### (VAQUILLAS RANCH A-8 WELLS No. 59, No. 66, & VAQUILLAS RANCH A No. 86)
### 606.84 ACRES
WEBB COUNTY, TEXAS

NORTH

SURVEY 1648
O.A. & F.A. SITZ
ABSTRACT 3301

SURVEY 1648
C.M. SAWYER
ABSTRACT 2441

POINT OF BEGINNING

S 89°37'46" E ~ 5,247.75'

SURVEY 1927
T.M.R.R. CO.
ABSTRACT 1808

N 38°23'35" E ~ 2,217.27'

1,747'

N 00°30'01" W ~ 5,115.58'

S 00°17'51" W ~ 5,027.60'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 606.84 ACRE UNIT

VAQUILLAS RANCH A-8 No. 59

1,368'

SURVEY 1850
C.M. SAWYER
ABSTRACT 2444

SURVEY 1649
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1110
WEBB COUNTY, TEXAS

VAQUILLAS RANCH A-8 No. 66

SURVEY 1926
T.M.R.R. CO.
ABSTRACT 992

VAQUILLAS RANCH A No. 86

S 89°24'12" W ~ 5,177.16'

SURVEY 1906
T.T. R.R. CO.
ABSTRACT 3103

SURVEY 1853
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1099

GRAPHIC SCALE

500    0    250  500    1000              2000

( IN FEET )
1 inch = 1000 ft.

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| — — — | = TIES |
| — - — - | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| | |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |
| | | |

DRAWN BY: L.A.F.
CHECKED BY: J.S.
JOB No. 22131.37-13
SHEET: 2 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131_37-13\22131.37-13.dwg, 1/8/2014 1:30:50 PM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

## EXHIBIT "A-35"

### FIELD NOTES
### FOR
### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001
### RETAINED TRACT 35
### (VAQUILLAS RANCH A-11 WELLS No. 55, No. 58, No. 79 & No. 147)
### 640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 1651, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1112, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 46°43'15" W, a distance of 799.66 feet, from the Vaquillas Ranch A-11 No. 79 Well;

THENCE, EAST, a distance of 5,173.18 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°01'12" E, a distance of 5,422.60 FEET, to a point for the Southeast corner hereof;

THENCE, WEST, a distance of 5,077.78 FEET, to a point for the Southwest corner hereof;

THENCE, N 01°30'06" W, a distance of 3,788.66 FEET, to a point for a deflection right;

THENCE, N 00°04'11" E, a distance of 1,635.25 FEET, to the POINT OF BEGINNING and containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



### SHEET 1 OF 2
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.38-13\22131.38-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-35"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 35
### (VAQUILLAS RANCH A-11 WELLS No. 55, No. 58, No. 79, & No. 147)
### 640.00 ACRES
#### WEBB COUNTY, TEXAS

SURVEY 1647
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1101

SURVEY 1646
BLAS PENA
ABSTRACT 2396

**POINT OF BEGINNING**

N 46°43'15" W
799.66'

546'

EAST ~ 5,173.18'

583'

VAQUILLAS RANCH
A-11 No. 79

N 00°04'11" E ~ 1,635.25'

SURVEY 1664
W.H. TAYLOR
ABSTRACT 2877

VAQUILLAS RANCH
A-11 No. 55

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
**RETAINED 640.00 ACRE UNIT**

VAQUILLAS RANCH
A-11 No. 58

S 00°01'12" E ~ 5,422.60'

SURVEY 1651
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1112
WEBB COUNTY, TEXAS

N 01°30'06" W ~ 3,788.66'

VAQUILLAS RANCH
A-11 No. 147

SURVEY 1650
C.M. SAWYER
ABSTRACT 2444

WEST ~ 5,077.78'

SURVEY 1663
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1123

SURVEY 1652
W.H. TAYLOR
ABSTRACT 2876

VAQUILLAS RANCH
L No. 196

### GRAPHIC SCALE

500  0  250  500  1000  2000

( IN FEET )
1 inch = 1000 ft.

# HOWLAND
## ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### LEGEND

| | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| | = TIES |
| | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| 2 | 05-17-13 |
| 3 | 06-06-13 |
| 4 | 10-18-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: L.A.F./S.I.M.
CHECKED BY: J.S.
JOB No. 22131.38-13
SHEET: 2 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22131.38-13\22131.38-13.dwg, 1/8/2014 1:34:38 PM, Adobe PDF



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-36"

## FIELD NOTES
## FOR
## CONOCOPHILLIPS COMPANY
## VAQUILLAS RANCH LEASE 199129-001
## RETAINED TRACT 36
## (VAQUILLAS RANCH A-4 WELLS No. 121, No. 151, No. 173 & No. 247)
## 367.60 ACRES

A TRACT OF LAND CONTAINING 367.60 ACRES, more or less, being out of the Vaquillas Ranch Lease 199129-001, 26,622.79 Acres (Called), situated in Survey 25, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1042, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 72°18'31" W, a distance of 1,190.94 feet, from the Vaquillas Ranch A-4 No. 173 Well;

THENCE, N 89°36'57" E, a distance of 5,471.02 FEET, to a point for the Northeast corner hereof;

THENCE, S 01°11'25" E, a distance of 2,927.97 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°08'54" W, a distance of 374.16 FEET, to a point for a deflection right;

THENCE, S 89°56'18" W, a distance of 5,133.27 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°28'50" W, a distance of 2,901.83 FEET, to the POINT OF BEGINNING and containing 367.60 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



## www.howlandcompanies.com

7615 N. Bartlett Avenue  i  P.O. Box 451128 (78045)  :  Laredo, TX 78041 P. 956.722.4411  :  F. 956.722.5414
TBPE Firm Registration No. F-4097  I  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-36"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 199129-001 ~ RETAINED TRACT 36
### (VAQUILLAS RANCH A-4 WELLS No. 121, No. 151, No. 173, & No. 247)
### 367.60 ACRES
#### WEBB COUNTY, TEXAS

SURVEY 273
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1141

VAQUILLAS RANCH H No. 226

VAQUILLAS RANCH A-4 No. 167 (BHL)

VAQUILLAS RANCH A-4 No. 227

VAQUILLAS RANCH A-4 No. 150

VAQUILLAS RANCH A-4 No. 167 (SHL)

SURVEY 25
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1042
WEBB COUNTY, TEXAS

SURVEY 24
R.O. BARNESLEY
ABSTRACT 2134

POINT OF BEGINNING

N 72°18'31" W
1,190.94'

N 89°36'57" E ~ 5,471.02'

VAQUILLAS RANCH A-4 No. 173

370'

1,132'

VAQUILLAS RANCH A-12 No. 168 (BHL)

VAQUILLAS RANCH A-12 No. 168 (SHL)

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 199129-001
26,622.79 ACRES (CALLED)
RETAINED 367.60 ACRE UNIT

N 00°28'50" W ~ 2,901.83'

S 01°11'25" E ~ 2,927.97'

VAQUILLAS RANCH A-4 No. 121

VAQUILLAS RANCH A-4 No. 151

VAQUILLAS RANCH A-4 No. 247 (SHL)

VAQUILLAS RANCH A-4 No. 247 (BHL)

S 89°56'18" W ~ 5,133.27'

S 89°08'54" W
374.16'

SURVEY 987
J. POITEVENT
ABSTRACT 2061

VAQUILLAS RANCH C No. 160

SURVEY 232
C.J. BERGSTROM
ABSTRACT 2148

VAQUILLAS RANCH C No. 84

SURVEY 233
C.C.S.D. & R.G.N.G.R.R. CO.
ABSTRACT 1117
SURVEYED OCTOBER 7, 1894

VAQUILLAS RANCH C No. 246 (BHL)

VAQUILLAS RANCH C No. 246 & No. 246 ST1 (SHL)

VAQUILLAS RANCH C No. 103

VAQUILLAS RANCH C No. 246 ST1 (BHL)

VAQUILLAS RANCH A-10 No. 81

### GRAPHIC SCALE

500  0  250  500  1000  2000

( IN FEET )
1 Inch = 1000 FT.

# HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

**WARNING:** BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x— | = FENCE LINE |
| - - - - | = TIES |
| — · · — | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 10-18-13 |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: S.I.M.
CHECKED BY: J.S.
JOB No. 22131.39-13
SHEET: 2 OF 2

# EXHIBIT D

# PARTIAL RELEASE OF OIL AND GAS LEASE

STATE OF TEXAS      §
                         §
COUNTY OF WEBB    §

       **WHEREAS** on January 9, 1988, Vaquillas Ranch Company, Ltd., Vaquillas Unproven Mineral Trust and Vaquillas Proven Mineral Trust acting therein through its general partners, J.O. Walker, Jr., Gene S. Walker, Evan B. Quiros and E. Walker Quiros, as Lessors, and Conoco Inc., as Lessee, entered into an Oil, Gas and Mineral Lease dated November 1, 1987, covering 6,740 acres of land, more or less, hereinafter referred to as "the Lease," and;

       **WHEREAS** the Lease description was amended May 31, 1988, by deleting the acreage covered from 6,740 acres, more or less, to include a revised total of 4,800 acres, more or less, as evidenced by Memorandum of Oil and Gas Lease, dated June 16, 1988; recorded in Volume 1303, Page 886 of the Real Property Records of Webb County, Texas.

       **WHEREAS** the Lease has also been amended from time to time, as reflected in the Public Records of Webb County, Texas, and all references to the Lease herein shall be to the Lease as amended.

       **NOW THEREFORE**, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, **ConocoPhillips Company**, does hereby **RELEASE, RELINQUISH and SURRENDER** unto the Lessor, all of its right, title and interest and estate in the Lease **SAVE AND EXCEPT THOSE LANDS AS MORE PARTICULARLY DESCRIBED ON THE EXHIBIT "A," AND FURTHER DESCRIBED ON EXHIBITS A-1 THROUGH A-5 ATTACHED HERETO AND MADE A PART HEREOF.**

Provided, however, Lessee shall have and retain full rights of access and all easements of ingress and egress over and across those lands covered by the Lease, including the lands which are hereby released, for the production of oil and gas and operations in the acreage not hereby released, and Lessee shall not be required to remove or relocate any pipelines, utilities, roads, tank batteries, or other surface equipment or installations from any portion of the Lease or lands herein released for so long as same continues to be used for the exploration, development or operation of such portions of the Lease that continue in force and effect.

This instrument is binding upon and inures to the benefit of the parties hereto, their heirs, successors and assigns.

Executed this \_\_\_\_17th\_\_\_\_ day of \_\_February\_\_, 2014.

Volume: 3577 Page: 440 - 453
Doc # 1194187
Doc Type: PARTIAL RELEASE OF OIL & GAS LEASE
Record Date: 2/25/2014 11:28:17 AM Record By: MIC
Fees $78.00
Margie Ramirez Ibarra, Webb County Clerk

**LESSEE:**

ConocoPhillips Company

By: _____
Michael P. Rose
Attorney-In-Fact

257577-001

L-157577-001

## ACKNOWLEDGEMENT

**STATE OF TEXAS**            §
                             §
**COUNTY OF HARRIS**         §


    ACKNOWLEDGED BEFORE ME, this __17th__ day of __February_____, 2014, by Michael P. Rose, Attorney-in-Fact for ConocoPhillips Company, a Delaware Corporation, on behalf of said corporation.

 

_____
Notary Public in and for the State of Texas

SHELLY L. SCOTT
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
6-19-2017

257577-001

# OVERALL EXHIBIT "A"

### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH RETAINED TRACTS 1-5
### CONTAINING A TOTAL OF 2,379.77 ACRES



A-1
328.36 Acres

A-2
172.43 Acres

A-3
640.00 Acres

A-5
640.00 Acres

A-4
598.98 Acres

NORTH

GRAPHIC SCALE

3000   0  1500 3000   5000           10000

( IN FEET )
1 inch = 6000 ft.

## HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH RETAINED
### TRACTS BASE MAP
### LEASE 257577-001
WEBB COUNTY, TEXAS

| FIELD DATE | BOOK | PAGE(s) | Revision | Date |
|---|---|---|---|---|
| N/A | N/A | N/A | 1 | 10-11-13 |
| | | | | |
| | | | | |
| | | | | |

DRAWN BY:  L.A.F./S.I.M.
CHECKED BY:  J.S.
JOB No.  22160-13
SHEET:  1 OF 1



**ENGINEERING AND SURVEYING CO.**

EXHIBIT "A-1"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
RETAINED TRACT 1
(VAQUILLAS RANCH L-6 WELL No. 211)
328.36 ACRES

A TRACT OF LAND CONTAINING 328.36 ACRES, more or less, being out of the Vaquillas Ranch Lease 257577-001, 6,740.00 Acres (Called), situated in Survey 1956, H.E. Brock, Abstract 2560, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a found monument at fence corner, which bears N 70°15'08" W, a distance of 1,699.67 feet, from the Vaquillas Ranch L-6 No. 211 Well;

THENCE, N 89°20'09" E, along an existing fence line, a distance of 3,112.47 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°38'14" E, a distance of 4,600.71 FEET, to a point under an existing fence, for the Southeast corner hereof;

THENCE, S 89°30'49" W, along an existing fence line, a distance of 1,416.19 FEET, to a point for a deflection right;

THENCE, S 89°35'52" W, continuing along said existing fence line, a distance of 1,696.63 FEET, to a found 60 D nail at fence corner, for the Southwest corner hereof;

THENCE, N 00°37'59" W, continuing along an existing fence line, a distance of 4,588.56 FEET, to the POINT OF BEGINNING, containing 328.36 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27



SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22160.1-13\22160.1-13.doc

www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-1"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 257577-001
### RETAINED TRACT 1
### (VAQUILLAS RANCH L-6 WELL No. 211)
### 328.36 ACRES
WEBB COUNTY, TEXAS

SURVEY 2098
D.C. FANNING
ABSTRACT 2228

POINT OF BEGINNING

N 89°20'09" E ~ 3,112.47'

Found Monument
@ Fence Corner

N 70°15'08" W
1,699.67'

1,593'

593'

VAQUILLAS RANCH
L-6 No. 211

SURVEY 1955
G.C. & S.F. R.R. CO.
ABSTRACT 1328

NORTH

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
6,740.00 ACRES (CALLED)
RETAINED 328.36 ACRE UNIT

N 00°37'59" W ~ 4,588.56'

S 00°38'14" E ~ 4,800.71'

VAQUILLAS RANCH
A-3 No. 200 (BHL)

SURVEY 1956
D.C. FANNING
ABSTRACT 2591

SURVEY 1956
H.E. BROCK
ABSTRACT 2560
WEBB COUNTY, TEXAS

VAQUILLAS RANCH
A-3 No. 200 (SHL)

Found 60 D
Nail @ Fence Corner

S 89°35'52" W
1,695.83'

S 89°30'49" W
1,416.19'

SURVEY 2057
C.T. & M.C. R.R. CO.
ABSTRACT 985

SURVEY 2058
C.T. & M.C. R.R. CO.
ABSTRACT 2880

VAQUILLAS RANCH
A-5 No. 205
(SHL)

VAQUILLAS RANCH
A-5 No. 205
(BHL)

VAQUILLAS
RANCH
A-5 No. 166

GRAPHIC SCALE

500   0   250  500        1000                    2000

( IN FEET )
1 inch = 1000 FT.

VAQUILLAS RANCH
A-5 No. 230
(SHL)

# HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097   TBPLS Firm Registration No. 100484-00
7615 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | | |
|---|---|---|
| ⬠ | ≈ | HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = | WELL |
| | = | UNIT LINE |
| x | = | FENCE LINE |
| | = | TIES |
| | = | SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-10-13 |
| | |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: A.L.C.
CHECKED BY: J.S.
JOB No. 22160.1-13
SHEET: 2 OF 2



**ENGINEERING AND SURVEYING CO.**

## EXHIBIT "A-2"

## FIELD NOTES
## FOR
## CONOCOPHILLIPS COMPANY
## VAQUILLAS RANCH LEASE 257577-001
## RETAINED TRACT 2
## (VAQUILLAS RANCH L-4 WELLS No. 95 & No. 105)
## 172.43 ACRES

A TRACT OF LAND CONTAINING 172.43 ACRES, more or less, being out of the Vaquillas Ranch Lease 257577-001, 6,740.00 Acres (Called), situated in SE ¼ of Survey 2060, C.C. Marshall, Abstract 3329, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 50°34'35" W, a distance of 490.36 feet, from the Vaquillas Ranch L-4 No. 95 Well;

THENCE, N 89°18'10" E, a distance of 1,350.57 FEET, to a point for a deflection right;

THENCE, S 89°39'06" E, a distance of 1,338.93 FEET, to a point on an existing fence line, for the Northeast corner hereof;

THENCE, S 00°18'08" E, along an existing fence line, a distance of 2,765.12 FEET, to a found fence corner post, for the Southeast corner hereof;

THENCE, S 89°15'36" W, along said existing fence line, a distance of 2,691.33 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°48'19" W, a distance of 1,517.91 FEET, to a point for a deflection right;

THENCE, N 00°22'53" E, a distance of 1,273.82 FEET, to the POINT OF BEGINNING, containing 172.43 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

SHEET 1 OF 2

## www.howlandcompanies.com

7615 N. Bartlett Avenue    P.O. Box 451128 (78045)  :  Laredo, TX 78041 P. 956.722.4411  :  F. 956.722.5414
TBPE Firm Registration No. F-4097  ;  TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-2"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 257577-001
### RETAINED TRACT 2
### (VAQUILLAS RANCH L-4 WELLS No. 95 & No. 105)
### 172.43 ACRES
WEBB COUNTY, TEXAS

VAQUILLAS RANCH
A-5 No. 126

SURVEY 2058
C.T. & M.C. R.R. CO.
A-2880

NORTH

VAQUILLAS RANCH
A-5 No. 118

VAQUILLAS
A-5 No. 101

SURVEY 2060
C.T. & M.C. R.R. CO.
ABSTRACT 3330

SURVEY 2060
C.T. & M.C. R.R. CO.
ABSTRACT 2941

VAQUILLAS RANCH
A-5 No. 40

SURVEY 2060
R.D. GUINN
ABSTRACT 3331

POINT OF BEGINNING

N 89°18'10" E
1,350.57'

S 89°39'06" E
1,338.93'

SURVEY 1884
M.E. WIDEMAN
ABSTRACT 2501

N 50°34'35" W—
490.36'

N 00°22'53" E
1,273.82'

318'
381'

VAQUILLAS RANCH
L-4 No. 95
(SHL)

VAQUILLAS RANCH
L-4 No. 95
(BHL)

SURVEY 2060
R.D. GUINN
ABSTRACT 3332

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
6,740.00 ACRES (CALLED)
RETAINED 172.43 ACRE UNIT

S 00°18'08" E ~ 2,785.12'

SURVEY 2060
R.D. GUINN
ABSTRACT 3331

N 00°48'19" W
1,517.91'

VAQUILLAS RANCH
L-4 No. 105

SE 1/4 OF
SURVEY 2060
C.C. MARSHALL
ABSTRACT 3329
WEBB COUNTY, TEXAS

S 89°15'36" W ~ 2,691.33'

Found Fence
Corner Post

NORTH 1/2 SURVEY 1838
P.K. CONNOWAY
ABSTRACT 2187

SURVEY 260
MARY E. WIDEMAN
ABSTRACT 2504

### GRAPHIC SCALE
500  0  250  500  1000  2000

( IN FEET )
1 Inch = 1000 FT.

SOUTH HALF
SURVEY 1838
FRANK BARRETT
ABSTRACT 2137

## HOWLAND
### ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7818 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS. NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| | = UNIT LINE |
| —x—x— | = FENCE LINE |
| ------- | = TIES |
| —··—··— | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| 2 | 11-27-13 |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: A.L.C.
CHECKED BY: J.S.
JOB No. 22160.2-13
SHEET: 2 OF 2



ENGINEERING AND SURVEYING CO.

EXHIBIT "A-3"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
RETAINED TRACT 3
(VAQUILLAS RANCH L WELLS No. 129, No. 137, No. 171, No. 135 & No. 196)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 257577-001, 6,740.00 Acres (Called), situated in Survey 1661, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1122; and Survey 1663, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1123, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears N 52°37'00" E, a distance of 1,377.16 feet, from the Vaquillas Ranch L No. 137 Well;

THENCE, S 00°36'33" W, a distance of 4,858.64 FEET, to a point for a deflection left;

THENCE, S 00°31'54" W, a distance of 355.21 FEET, to a point for the Southeast corner hereof;

THENCE, WEST, a distance of 5,314.75 FEET, to a point for the Southwest corner hereof;

THENCE, N 00°07'00" W, a distance of 5,213.52 FEET, to a point for the Northwest corner hereof;

THENCE, N 89°59'58" E, a distance of 5,380.33 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

SHEET 1 OF 2
H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22160.3-13\22160.3-13.doc

## www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) ! Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 : TBPLS Firm Registration No. 100464-00





# EXHIBIT "A-3"

## CONOCOPHILLIPS COMPANY
## VAQUILLAS RANCH LEASE 257577-001
## RETAINED TRACT 3
### (VAQUILLAS RANCH L WELLS No. 129, No. 137, No. 171, No. 135 & No. 196)
### 640.00 ACRES
WEBB COUNTY, TEXAS

SURVEY 1651
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1112

SURVEY 1664
W.H. TAYLOR
ABSTRACT 2877

SURVEY 1665
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1124

POINT OF BEGINNING

N 89°59'58" E ~ 5,380.33'

VAQUILLAS
RANCH
A-11 No. 147

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
6,740.00 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

835'

N 52°37'00" E
1,377.16'

VAQUILLAS
RANCH
L No. 137

1,085'

NORTH

N 00°07'00" W  5,213.52'

VAQUILLAS
RANCH
L No. 196

S 00°38'33" W  4,858.64'

SURVEY 1663
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1123
WEBB COUNTY, TEXAS

VAQUILLAS
RANCH
L No. 129

SURVEY 1652
W.H. TAYLOR
ABSTRACT 2876

VAQUILLAS
RANCH
L No. 171

VAQUILLAS
RANCH
L No. 135

S 00°31'54" W
355.21'

WEST ~ 5,314.75'

SURVEY 1661
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1122

VAQUILLAS
RANCH
L No. 190

VAQUILLAS
RANCH
L No. 136

SURVEY 1668
Y. VERGARA
ABSTRACT 2490

GRAPHIC SCALE

500    0    250  500    1000              2000

( IN FEET )
1 inch = 1000 ft.

VAQUILLAS
RANCH
L No. 134

## HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

**WARNING:** BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### LEGEND

| Symbol | Meaning |
|---|---|
| ⬠ | HORIZONTAL WELL SURFACE LOCATION |
| ☼ | WELL |
| ——— | UNIT LINE |
| —x— | FENCE LINE |
| — · — · — | TIES |
| ▪ ▪ ▪ | SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 05-20-13 |
| 2 | 08-05-13 |
| 3 | 06-06-13 |
| 4 | 10-11-13 |
| 5 | 11-27-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: A.L.C./S.I.M.
CHECKED BY: J.S.
JOB No. 22160.3-13
SHEET: 2 OF 2



**HOWLAND**
ENGINEERING AND SURVEYING CO.

EXHIBIT "A-4"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
RETAINED TRACT 4
(VAQUILLAS RANCH L WELLS No. 134, No. 136, No. 140, & No. 190)
598.98 ACRES

A TRACT OF LAND CONTAINING 598.98 ACRES, more or less, being out of the Vaquillas Ranch Lease 257577-001, 6,740.00 Acres (Called), situated in Survey 1661, C.C.S.D. & R.G.N.G. R.R. CO., Abstract 1122, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears S 69°30'42" W, a distance of 936.29 feet, from the Vaquillas Ranch L No. 140 Well;

THENCE, N 00°00'04" E, a distance of 3,136.05 FEET, to a point for an exterior corner hereof;

THENCE, EAST, a distance of 611.10 FEET, to a point for an interior corner hereof;

THENCE, N 00°07'00" W, a distance of 1,238.25 FEET, to a point for the Northwest corner hereof;

THENCE, EAST, a distance of 5,314.75 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°31'54" W, a distance of 4,353.62 FEET, to a point for the Southeast corner hereof;

THENCE, S 89°31'54" W, a distance of 2,354.96 FEET, to a point for an interior corner hereof;

THENCE, S 00°28'06" E, a distance of 597.66 FEET, to a point for the South corner hereof;

THENCE, N 80°25'28" W, a distance of 3,582.90 FEET, to the POINT OF BEGINNING, containing 598.98 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

SHEET 1 OF 2

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22160.4-13\22160.4-13.doc

www.howlandcompanies.com

7615 N. Bartlett Avenue     P.O. Box 451128 (78045)   :   Laredo, TX 78041 P. 956.722.4411   :   F. 956.722.5414
TBPE Firm Registration No. F-4097   :   TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-4"

## CONOCOPHILLIPS COMPANY
### VAQUILLAS RANCH LEASE 257577-001
### RETAINED TRACT 4
(VAQUILLAS RANCH L WELLS No. 134, No. 136, No. 140, & No. 190)
### 598.98 ACRES
WEBB COUNTY, TEXAS

SURVEY 1663
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1123

VAQUILLAS RANCH L No. 129

VAQUILLAS RANCH L No. 171

VAQUILLAS RANCH L No. 135

SURVEY 1852
W.H. TAYLOR
ABSTRACT 2876

SURVEY 1668
Y. VERGARA
ABSTRACT 2490

EAST ~ 5,314.75'

N 00°07'00" W
1,238.25'

SURVEY 1661
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 1122
WEBB COUNTY, TEXAS

EAST
611.10'

VAQUILLAS RANCH L No. 190

VAQUILLAS RANCH L No. 136

S 00°31'54" W ~ 4,353.62'

SURVEY 1662
A.F. CARROLL
ABSTRACT 3094

N 00°00'04" E ~ 3,136.05'

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
6,740.00 ACRES (CALLED)
RETAINED 598.98 ACRE UNIT

VAQUILLAS RANCH L No. 134

VAQUILLAS RANCH L No. 140

.877'

S 69°30'42" W
936.29'

.469'

N 80°25'28" W ~ 3,582.90'

POINT OF BEGINNING

S 89°31'54" W ~ 2,354.96'

S 00°28'06" E
597.66'

SURVEY 374
L. AYALA
ABSTRACT 2125

SURVEY 1660
C.C.S.D. & R.G.N.G. R.R. CO.
ABSTRACT 2229

## GRAPHIC SCALE

500    0   250  500    1000              2000

( IN FEET )
1 inch = 1000 FL

## HOWLAND
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097  TBPLS Firm Registration No. 100484-00
7815 N. Bartlett Avenue  Laredo, TX 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.

THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

### LEGEND

| Symbol | Description |
|---|---|
| ⬡ | = HORIZONTAL WELL SURFACE LOCATION |
| ☼ | = WELL |
| —— | = UNIT LINE |
| —x— | = FENCE LINE |
| ———— | = TIES |
| —··—··— | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-11-13 |
| 2 | 05-12-13 |
| 2 | 06-05-13 |
| 2 | 10-22-13 |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |

DRAWN BY: A.L.C./S.I.N.
CHECKED BY: J.S.
JOB No. 22160.4-13
SHEET: 2 OF 2



**HOW LAND**
ENGINEERING AND SURVEYING CO.

EXHIBIT "A-5"

FIELD NOTES
FOR
CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH LEASE 257577-001
RETAINED TRACT 5
(VAQUILLAS RANCH L WELLS No. 138, No. 139, No. 133 & No. 188 ST)
640.00 ACRES

A TRACT OF LAND CONTAINING 640.00 ACRES, more or less, being out of the Vaquillas Ranch Lease 257577-001, 6,740.00 Acres (Called), situated in the West ½ of Survey 1662, R.E. Farr, Abstract 2230; and Survey 1652, W.H. Taylor, Abstract 2876, Webb County, Texas, and being more particularly described as follows:

BEGINNING at a point which bears S 41°48'58" E, a distance of 782.90 feet, from the Vaquillas Ranch L No. 138 Well;

THENCE, N 80°01'00" W, a distance of 1,834.72 FEET, to a point for the Southwest corner hereof;

THENCE, NORTH, a distance of 1,133.33 FEET, to a point for an exterior corner hereof;

THENCE, EAST, a distance of 97.22 FEET, to a point for an interior corner hereof;

THENCE, NORTH, a distance of 5,125.38 FEET, to a point for the Northwest corner hereof;

THENCE, S 89°33'23" E, a distance of 5,644.97 FEET, to a point for the Northeast corner hereof;

THENCE, S 00°07'00" E, a distance of 4,247.26 FEET, to a point for an exterior corner hereof;

THENCE, WEST, a distance of 3,943.78 FEET, to a point for an interior corner hereof;

THENCE, S 00°00'05" E, a distance of 2,285.82 FEET, to the POINT OF BEGINNING, containing 640.00 acres of land, more or less.

Basis of Bearing: G.P.S., TX. South Zone, NAD-27

H:\HOWLAND\SURVEYING DEPARTMENT\Jobs\2013\22160.5-13\22160.5-13.doc

www.howlandcompanies.com

7615 N. Bartlett Avenue : P.O. Box 451128 (78045) : Laredo, TX 78041 P. 956.722.4411 : F. 956.722.5414
TBPE Firm Registration No. F-4097 ; TBPLS Firm Registration No. 100464-00

# EXHIBIT "A-5"

## CONOCOPHILLIPS COMPANY
## VAQUILLAS RANCH LEASE 257577-001
## RETAINED TRACT 5
### (VAQUILLAS RANCH L WELLS No. 133, No. 138, No. 139 & No. 188 ST)
### 640.00 ACRES
WEBB COUNTY, TEXAS

SURVEY 1650
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 2444

S 89°33'23" E ~ 5,644.97'

SURVEY 1653
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 1099

SURVEY 1652
W.H. TAYLOR
ABSTRACT 2876

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH
LEASE 257577-001
6,740.00 ACRES (CALLED)
RETAINED 640.00 ACRE UNIT

VAQUILLAS RANCH
L No. 133

VAQUILLAS RANCH
L No. 188 ST
(BHL)

S 00°07'00" E ~ 4,247.26'

NORTH ~ 5,125.38'

VAQUILLAS
RANCH
L No. 139

WEST ½
SURVEY 1662
R.E. FARR
ABSTRACT 2230
WEBB COUNTY, TEXAS

VAQUILLAS RANCH
L No. 188 ST
(SHL)

WEST ~ 3,943.78'

EAST
97.22'

NORTH ~ 1,133.33'

S 00°00'05" E ~ 2,285.82'

SURVEY 1662
A.F. CARROLL
ABSTRACT 3094

VAQUILLAS
RANCH
L No. 138

522'

484'

S 41°48'58" E
782.90'

SURVEY 1654
C.C.S.D. &
R.G.N.G. R.R. CO.
ABSTRACT 3104

N 80°01'00" W ~ 1,834.72'

POINT OF
BEGINNING

GRAPHIC SCALE

500    0    250  500    1000              2000

( IN FEET )
1 Inch = 1000 Ft.

SURVEY 373
S. & M.
ABSTRACT 1718

NORTH

# HOWLAND
## ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097   TBPLS Firm Registration No. 100464-00
7815 N. Bartlett Avenue  Laredo, TX. 78041  P. 956.722.4411
www.howlandcompanies.com

WARNING: BASIS OF BEARING: G.P.S. Tx. South Zone, N.A.D.-27.
THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. HOWLAND ENGINEERING
AND SURVEYING CO., INC. ASSUMES NO RESPONSIBILITY TO LOCATE PIPELINE OR CABLE CROSSINGS.
NO CLAIM IS HEREBY MADE REGARDING CURRENT OR ACTUAL SURFACE/MINERAL FEE OWNERSHIP OR
LESSOR. THIS DRAWING MADE EXCLUSIVELY FOR CONOCOPHILLIPS COMPANY.
COPYRIGHT HOWLAND ENGINEERING AND SURVEYING CO., INC. 2013 ©

| LEGEND | |
|---|---|
| ⬠ | = HORIZONTAL WELL SURFACE LOCATION |
| ☆ | = WELL |
| —— | = UNIT LINE |
| —x— | = FENCE LINE |
| ----- | = TIES |
| —·—·— | = SURVEY LINE |

| Revision | Date |
|---|---|
| 1 | 04-12-13 |
| 2 | 10-18-13 |
| | |
| | |

| FIELD DATE | BOOK | PAGE(s) |
|---|---|---|
| N/A | N/A | N/A |
| | | |
| | | |

DRAWN BY: A.L.C./S.I.M.
CHECKED BY: J.S.
JOB No. 22160.5-13
SHEET: 2 OF 2

# TAB 2

RAILROAD COMMISSION OF TEXAS
OFFICE OF GENERAL COUNSEL

OIL AND GAS DOCKET
NO. 04-0265630

IN THE VAQUILLAS RANCH (LOBO
CONS.) FIELD, WEBB COUNTY, TEXAS

FINAL ORDER
AMENDING FIELD RULES FOR THE
VAQUILLAS RANCH (LOBO CONS.) FIELD
WEBB COUNTY, TEXAS

The Commission finds that after statutory notice in the above-numbered docket heard on September 23, 2010, the presiding examiner has made and filed a report and recommendation containing findings of fact and conclusions of law, for which service was not required; that the proposed application is in compliance with all statutory requirements; and that this proceeding was duly submitted to the Railroad Commission of Texas at conference held in its offices in Austin, Texas.

The Commission, after review and due consideration of the examiner's report and recommendation, the findings of fact and conclusions of law contained therein, hereby adopts as its own the findings of fact and conclusions of law contained therein, and incorporates said findings of fact and conclusions of law as if fully set out and separately stated herein.

Therefore, it is ordered by the Railroad Commission of Texas that Rule 2 of the field rules adopted in Final Order No. 04-0217435, effective February 24, 1998, for the Vaquillas Ranch (Lobo Cons.) Field, Webb County, Texas, is amended as hereafter set out:

RULE 2: No well shall hereafter be drilled nearer than FOUR HUNDRED SIXTY SEVEN (467) feet to any property line, lease line or subdivision line and no well shall be drilled nearer than ONE THOUSAND TWO HUNDRED (1,200) feet to any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract. Provided, however, there is no minimum between-well spacing requirement between a well being permitted at least 660 feet from the nearest property line, lease line or subdivision line, and the other wells permitted, drilled or completed on the same lease, pooled unit or unitized tract. A well being permitted at a distance less than SIX HUNDRED SIXTY (660) feet from the nearest property line, lease line or subdivision line must be a minimum of ONE THOUSAND TWO HUNDRED (1,200) feet from any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract, or an exception to Rule 37 must be obtained.

The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the other rules to follow are for the purpose of permitting only one well to each drilling and proration unit. Provided however, that the Commission will grant exceptions to permit drilling within shorter distances and drilling more wells than herein prescribed whenever the Commission shall

have determined that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exception to these rules is desired, application therefore shall be filed and will be acted upon in accordance with the provisions of Commission Statewide Rule 37 and 38, which applicable provisions of said rule are incorporated herein by reference. Provided however, that persons who are presumed to be affected by a request for an exception to the between-well spacing requirement shall be limited to the operators and owners/lessees of tracts, lease or units within one mile or less of the proposed well.

In applying this rule the general order of the Commission with relation to the subdivision of property shall be observed.

Done this 2nd day of November, 2010.

RAILROAD COMMISSION OF TEXAS

(Order approved and signatures affixed by OGC Unprotested Master Order dated November 2, 2010)

RAILROAD COMMISSION OF TEXAS
OFFICE OF GENERAL COUNSEL

OIL AND GAS DOCKET
NO. 04-0217435

FINAL ORDER
CONSOLIDATING VARIOUS FIELDS INTO A NEW FIELD CALLED
THE VAQUILLAS RANCH (LOBO CONS.) FIELD AND
ADOPTING FIELD RULES FOR THE
VAQUILLAS RANCH (LOBO CONS.) FIELD
WEBB COUNTY, TEXAS

The Commission finds that after statutory notice in the above-numbered docket heard on October 8, 1997, the presiding examiner has made and filed a report and recommendation containing findings of fact and conclusions of law, for which service was not required; that the proposed application is in compliance with all statutory requirements; and that this proceeding was duly submitted to the Railroad Commission of Texas at conference held in its offices in Austin, Texas.

The Commission, after review and due consideration of the examiner's report and recommendation, the findings of fact and conclusions of law contained therein, hereby adopts as its own the findings of fact and conclusions of law contained therein, and incorporates said findings of fact and conclusions of law as if fully set out and separately stated herein.

Therefore, it is ordered by the Railroad Commission of Texas that the following fields located in Webb County, Texas, are hereby combined into a new field called the Vaquillas Ranch (Lobo Cons.) Field (No. __93215 400__):

| | |
|---|---|
| BALTAZAR (LOBO 6 10470) FIELD | 05357 400 |
| BARNSLEY (LOBO 10900) FIELD | 05791 800 |
| BARNSLEY (LOBO) FIELD | 05791 400 |
| BONEBRAKE (LOBO 6) FIELD | 10419 500 |
| BONEBRAKE (UPPER LOBO) FIELD | 10419 800 |
| CALICHE CREEK (LOBO) FIELD | 14735 225 |
| CARR (LOBO 10100) FIELD | 15874 350 |
| CARR (LOBO 8300) FIELD | 15874 235 |
| CARR (LOBO 8600) FIELD | 15874 250 |
| CARR (LOBO 8700) FIELD | 15874 275 |
| CARR (LOBO) FIELD | 15874 200 |
| CARR (WILCOX 8200) FIELD | 15874 600 |
| CARR (WILCOX 8300) FIELD | 15874 700 |
| CARR (WILCOX) FIELD | 15874 500 |
| CATTO (LOBO 9900) FIELD | 16405 400 |
| CATTO (LOBO 10200) FIELD | 16405 500 |

| | |
|---|---|
| DESPARADO (LOBO 6) FIELD | 24394 500 |
| DIAMONDBACK (LOBO 3) FIELD | 24574 400 |
| GATO CREEK (9800) FIELD | 34238 400 |
| GATO CREEK (LOBO 1) FIELD | 34238 300 |
| GATO CREEK (LOBO 1-SEGA) FIELD | 34238 325 |
| GATO CREEK (LOBO 3) FIELD | 34238 350 |
| GATO CREEK (LOBO 6 SEGMENT A) FIELD | 34238 375 |
| GATO CREEK, SE (9800) FIELD | 34242 980 |
| GATO CREEK, SE (LOBO 1) FIELD | 34242 500 |
| GATO CREEK, SE (UP. LOBO STRAY) FIELD | 34242 750 |
| HIRSCH (LOBO 9746) FIELD | 41659 075 |
| JURASCHEK (LOBO) FIELD | 47740 500 |
| JURASCHEK (WILCOX 11600) FIELD | 47740 600 |
| LUNDELL (LOBO 9200) FIELD | 55755 180 |
| LUNDELL (LOBO) FIELD | 55755 175 |
| MCLEAN (LOBO) FIELD | 59725 500 |
| MUJERES CREEK (LOBO 1) FIELD | 63668 300 |
| MUJERES CREEK (LOBO 3) FIELD | 63668 400 |
| MUJERES CREEK (LOBO 6) FIELD | 63668 500 |
| MUJERES CREEK (LOBO) FIELD | 63668 250 |
| MUJERES CREEK, SOUTH (LOBO) FIELD | 63670 500 |
| NICHOLSON (LOBO 3) FIELD | 65469 020 |
| NORDAN (LOBO) FIELD | 65934 500 |
| POZO (LOBO) FIELD | 72838 500 |
| RANCHO VIEJO, S. (LOBO 6) FIELD | 74570 100 |
| RANCHO VIEJO (LOBO 3) FIELD | 74570 680 |
| RANCHO VIEJO (LOBO 6) FIELD | 74568 700 |
| VAQUILLAS RANCH (LOBO 8100) FIELD | 93215 680 |
| VAQUILLAS RANCH (UP. LOBO STRAY) FIELD | 93215 600 |
| VAQUILLAS RANCH (WALKER 8300) FIELD | 93215 680 |
| VAQUILLAS RANCH (WALKER 8600) FIELD | 93215 690 |
| VAQUILLAS RANCH (WALKER, N.) FIELD | 93215 670 |
| VAQUILLAS RANCH (WILCOX 11,100) FIELD | 93215 700 |
| VAQUILLAS RANCH (WILCOX 11,600) FIELD | 93215 750 |
| VAQUILLAS RANCH (WILCOX 11,900) FIELD | 93215 725 |
| VAQUILLAS RANCH (YARSA) FIELD | 93258 900 |
| VENADA (9800) FIELD | 93438 800 |
| VENADA (LOBO) FIELD | 93438 300 |
| VERGARA (LOBO 9300) FIELD | 93537 750 |
| VERGARA (LOBO) FIELD | 93537 500 |

It is further ordered that the following rules are adopted for the Vaquillas Ranch (Lobo Cons.) Field:



RULE 1: The entire Lobo Formation from the Lobo Unconformity to the top of the Wills Point (Midway Shale) and including the above listed fields in Webb County, Texas, shall be designated as a single reservoir for proration purposes and be designated as the Vaquillas Ranch (Lobo Cons.) Field.

RULE 2: No gas well shall hereafter be drilled nearer than FOUR HUNDRED SIXTY SEVEN (467) feet to any property line, lease line or subdivision line and no well shall be drilled nearer than ONE THOUSAND TWO HUNDRED (1,200) feet to any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract. The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the other rules to follow are for the purpose of permitting only one well to each drilling and proration unit. Provided however, that the Commission will grant exceptions to permit drilling within shorter distances and drilling more wells than herein prescribed whenever the Commission shall have determined that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exception to these rules is desired, application therefore shall be filed and will be acted upon in accordance with the provisions of Commission Statewide Rule 37 and 38, which applicable provisions of said rule are incorporated herein by reference. Provided however, that persons who are presumed to be affected by a request for an exception to the between-well spacing requirement shall be limited to the operators and owners/lessees of tracts, lease or units within one mile or less of the proposed well.

In applying this rule the general order of the Commission with relation to the subdivision of property shall be observed.

RULE 3: The daily allowable production of gas from individual wells completed in the subject field shall be determined by allocating the allowable production, after deductions have been made for wells which are incapable of producing their gas allowables, among the individual wells in the following manner:

TEN percent (10%) of the total field allowable shall be allocated equally among the individual wells producing from this field.

NINETY percent (90%) of the total field allowable shall be allocated among the individual wells in the proportion that the deliverability of such well, as evidenced by the most recent G-10 test filed with the Railroad Commission bears to the summation of the deliverability of all proratable wells producing from this field.

It is further ordered by the Railroad Commission of Texas that the allocation formula for the Vaquillas Ranch (Lobo Cons.) Field be suspended. The allocation formula may be reinstated administratively if the market demand for gas in the Vaquillas Ranch (Lobo Cons.) Field drops below 100% of deliverability. If the market demand for gas in the Vaquillas Ranch (Lobo Cons.) Field drops below 100% of deliverability while the allocation formula is suspended, the operator shall immediately notify the Commission and the allocation formula shall be immediately



reinstated. Failure to give such notice to the Commission may result in a fine (as provided for in Tex. Nat. Res. Code §86.222) for each day the operators fail to give notice to the Commission.

Effective this 24th day of February, 1998.

RAILROAD COMMISSION OF TEXAS

CHAIRMAN

COMMISSIONER

COMMISSIONER

ATTEST:

Secretary

# TAB 3

OIL AND GAS DOCKET
NO. 04-0231407

IN THE BIG REEF (EDWARDS) FIELD,
WEBB COUNTY, TEXAS

## FINAL ORDER
### ADOPTING TEMPORARY RULES AND REGULATIONS
### FOR THE BIG REEF (EDWARDS) FIELD
### WEBB COUNTY, TEXAS

The Commission finds that after statutory notice in the above-numbered docket heard on June 3, 2002, the presiding examiner has made and filed a report and recommendation containing findings of fact and conclusions of law, for which service was not required; that the proposed application is in compliance with all statutory requirements; and that this proceeding was duly submitted to the Railroad Commission of Texas at conference held in its offices in Austin, Texas.

The Commission, after review and due consideration of the examiner's report and recommendation, the findings of fact and conclusions of law contained therein, hereby adopts as its own the findings of fact and conclusions of law contained therein, and incorporates said findings of fact and conclusions of law as if fully set out and separately stated herein.

Therefore, it is ORDERED by the Railroad Commission of Texas that the following temporary rules shall be adopted for the Big Reef (Edwards) Field, Webb County, Texas.

RULE 1: The entire correlative interval from 9365' TVD to 9815' TVD as shown on the Array Induction Gamma Ray Neutron log of the Lewis Petro Properties W.V. Booth Jr. et al 2292 Lease Well No. 3-B, Joaquin Galan Survey, Webb County, Texas, shall be designated as a single reservoir for proration purposes and be designated as the Big Reef (Edwards) Field.

RULE 2: No well for gas shall hereafter be drilled nearer than FOUR HUNDRED SIXTY-SEVEN (467) feet to any property line, lease line or subdivision line and no well shall be drilled nearer than NINE HUNDRED THIRTY-THREE (933) feet any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract. The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the other rules to follow are for the purpose of permitting only one well to each drilling and proration unit. Provided however, that the Commission will grant exceptions to permit drilling within shorter distances and drilling more wells than herein prescribed whenever the Commission shall have determined that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exception to these rules is desired, application therefor shall be filed and will be acted upon in accordance with the provisions of Commission Statewide Rules 37 and 38, which applicable provisions of said rules are incorporated herein by reference.

In applying this rule the general order of the Commission with relation to the subdivision of property shall be observed.

RULE 3: The acreage assigned to the individual gas well for the purpose of allocating allowable gas production thereto shall be known as a proration unit. The standard drilling and proration units are established hereby to be ONE HUNDRED SIXTY (160) acres. No proration unit shall consist of more than ONE HUNDRED SIXTY (160) acres; provided that, tolerance acreage of ten (10) percent shall be allowed for each standard proration unit so that an amount



not to exceed a maximum of ONE HUNDRED SEVENTY-SIX (176) acres may be assigned. The two farthermost points in any proration unit shall not be in excess of FOUR THOUSAND FIVE HUNDRED (4500) feet removed from each other. Each proration unit containing less than ONE HUNDRED SIXTY (160) acres shall be a fractional proration unit. All proration units shall consist of continuous and contiguous acreage which can reasonably be considered to be productive of gas. No double assignment of acreage will be accepted.

An operator, at his option, shall be permitted to form optional drilling units of FORTY (40) acres. A proportional acreage allowable credit will be given for a well on a fractional proration unit. The two farthermost points of a FORTY (40) acre fractional proration unit shall not be greater than TWO THOUSAND ONE HUNDRED (2100) feet apart.

Operators shall file with the Commission certified plats of their properties in said field, which plats shall set out distinctly all of those things pertinent to the determination of the acreage credit claimed for each well; provided that if the acreage assigned to any proration unit has been pooled, the operator shall furnish the Commission with such proof as it may require as evidence that interests in and under such proration unit have been so pooled.

RULE 4: The daily allowable production of gas from individual wells completed in a non-associated gas reservoir of the subject field shall be determined by allocating the allowable production, after deductions have been made for wells which are incapable of producing their gas allowables, among the individual wells in the following manner:

FIVE percent (5%) of the total field allowable shall be allocated equally among the individual proratable wells producing from this field.

NINETY-FIVE percent (95%) of the total field allowable shall be allocated among the individual wells in the proportion that the deliverability of such well, as evidenced by the most recent G-10 test filed with the Railroad Commission bears to the summation of the deliverability of all proratable wells producing from this field.

It is further ORDERED that these rules are temporary and effective until January 1, 2004, or until Commission staff evaluates appropriate data after notice and opportunity for hearing as offered by the Commission prior to the expiration of the rules. After this notice and opportunity for hearing, should the evidence evaluated during review be insufficient to sustain spacing or proration unit rules, these temporary rules, on the Commission's own motion, will be terminated and the field will revert to Statewide spacing and density rules.

Done this twenty-fifty day of June, 2002.

RAILROAD COMMISSION OF TEXAS

Chairman Michael L. Williams

Commissioner Charles R. Matthews

Commissioner Tony Garza

ATTEST

Secretary

# Tab 3

Filed
9/8/2014 4:12:20 PM
Esther Degollado
District Clerk
Webb District
2014 CVQ000 438 D4

CAUSE NO. 2014 CVQ000 438 D4

| | | |
|---|---|---|
| VAQUILLAS UNPROVEN MINERALS, LTD., | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | WEBB COUNTY, TEXAS |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | |
| Defendant | § | 406th JUDICIAL DISTRICT |

**PLAINTIFF'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.   SUMMARY ............................................................................................................. 3

II.  SUMMARY JUDGMENT STANDARD ........................................................... 6

III. BACKGROUND .................................................................................................. 7

A.  The purpose of an oil and gas lease, as well as a retained acreage clause, is to develop property to produce minerals. ..................................................... 7

B.  Spacing, density, and proration units. ........................................................ 8

C.  The Leases contain a retained acreage clause limiting the amount of acreage Conoco was allowed to retain for each well. ................................................ 10

D.  The Railroad Commission adopted spacing rules for the Vaquillas Ranch (Lobo Cons.) Field. ...................................................................................... 12

IV.  ARGUMENT AND AUTHORITIES ................................................................ 13

A.  Under the plain language of the Leases, Conoco is entitled to retain no more than the 40-acre units per well established by the Railroad Commission. ....................................... 13

B.  Conoco's contention that the field rules for the Vaquillas Ranch (Lobo Cons.) field do not establish 40-acre units requires the Court to disregard or to add words to the Leases. ........................................................................................... 16

C.  *Jones v. Killingsworth*, cited by Conoco, supports Vaquillas's position that the field rules "establish" or "prescribe" 40-acre units, and operators are only "permitted" to form larger units. ........................................................................................ 19

D.  Conoco's interpretation ignores the inherent role of drilling units as specifying the minimum acreage required to drill wells, and thereby renders the word "spacing" in Paragraph 18's agreed exception meaningless. ......................................... 22

E.  Conoco's argument regarding a presumption against a "limitation on the grant" is not relevant to the question of whether Conoco is obligated to execute a formal release of the Reverted Minerals. Further, the presumption does not apply in the context of Paragraph 18's clear condition. ........................................................................ 24

V.   CONCLUSION .................................................................................................. 25

VI.  SUMMARY JUDGMENT EVIDENCE .......................................................... 26

VI.  PRAYER ........................................................................................................... 28

CAUSE NO. 2014 CVQ000 438 D4

| | | |
|---|---|---|
| VAQUILLAS UNPROVEN MINERALS, LTD., Plaintiff, | § § § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | WEBB COUNTY, TEXAS |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | |
| Defendant | § | 406th JUDICIAL DISTRICT |

**PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Vaquillas Unproven Minerals, Ltd. ("Vaquillas") moves for partial summary judgment against Defendant ConocoPhillips Company ("Conoco"), and urges the denial of Conoco's motion for summary judgment, and in support respectfully shows:

## I.   SUMMARY

Vaquillas seeks a partial summary judgment holding that Conoco retains only 40 acres for each producing and shut-in gas well drilled by Conoco on the oil and gas leases that are the subject of this lawsuit. Vaquillas also seeks denial of Conoco's motion for summary judgment.

The central issue in this case is the legal interpretation of a retained acreage clause that is identical in two oil and gas leases between Vaquillas, as lessor, and Conoco, as lessee. Under both leases, Conoco was entitled to retain acreage for each producing or shut-in gas well capable of producing in paying quantities upon the expiration of its continuous drilling program. For each gas well Conoco drilled, it was entitled to retain acreage equal to the size of units established by the spacing provided in the rules adopted

by the Railroad Commission for the field of production, here 40 acres per well. Had the Commission not adopted such rules, Conoco would have been entitled to retain 640 acres per gas well. But that is not the case. Conoco did not drill the additional wells to develop the leasehold acreage to the density provided by the Railroad Commission rules. Accordingly, the leases terminated as to all but the 40 acres retained for each well, and the remaining acreage reverted to Vaquillas.

The key language is in Paragraph 18 of both Leases:

> …Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, **except that in case any rule adopted by the Railroad Commission of Texas** . . . **for any field on this lease provides for a spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned…**

(Emphasis added).[1]

Some 33,363 acres were leased to Conoco. As reflected in Conoco's written releases, 208 wells were drilled under the leases prior to the expiration of the continuous drilling program.[2] As it was entitled to retain 40 acres for each well, Conoco was entitled to retain a total of up to 8,320 acres (208 x 40).[3] The remaining 25,043 acres reverted to Vaquillas (the "Reverted Minerals").

---

[1] 26,622.79 Acre Lease at ¶ 18 (Ex. B-2 to Smith Aff.); 6,740 Acre Lease at ¶ 18 (Ex. B-3 to Smith Aff.).
[2] Conoco's Motion for Summary Judgment ("Conoco MSJ") at Exs. C and D.
[3] This, of course, is assuming that each of the 208 wells is producing or capable of producing in paying quantities. That issue is not before the Court in this motion.

Summary judgment evidence establishes the following as a matter of law or uncontested fact:

- The Railroad Commission of Texas adopted special field rules for the Vaquillas Ranch (Lobo Cons.) Field.[4]

- Those field rules apply to the wells drilled by Conoco under the two Vaquillas Leases.[5]

- The spacing provided for in the special field rules established units of acreage for gas wells.[6]

- Those units were different than 640 acres.[7]

- The units established were 40 acres per well.[8]

- Conoco ended its continuous drilling program on or about June 21, 2012 (90 days after the completion date of Conoco's Vaquillas Ranch A-7 No. 249 Well (API No. 42-479-41635), which is the last well drilled under the continuous drilling program).[9]

- The leases terminated for all but 40 acres for each producing or shut-in gas well capable of producing in paying quantities on June 21, 2012 (90 days after completion of the above-referenced well), and the acreage thereby reverted to Vaquillas.[10]

- Conoco was required to execute a formal release for the Reverted Minerals, but has not done so as to most of the acreage that comprises the Reverted Minerals.[11]

Conoco acknowledges that it was not entitled to retain all the leasehold acreage, but claims that it is entitled to retain significantly more than 40 acres per well, for a total

---

[4] Ex. A-1 to Ringuet Aff., accord Conoco MSJ at 4.
[5] Id.
[6] 16 TAC § 3.38(b)(2)(A) (Ex. A-2 to Ringuet Aff.).
[7] Id.
[8] Id.
[9] Conoco's Resp. to Interrogs. Nos. 16 & 17 at p. 8. (Ex. A-3 to Ringuet Aff.).
[10] Ex. B-2 & B-3 to Smith Aff.
[11] Ex. B-2 & B-3 to Smith Aff.; Exs. C & D to Conoco Motion.

of 23,671.63 acres.[12]  This stands in sharp contrast to the 8,320 acres retainable on the basis of 40 acres per well.  Conoco thus wrongfully claims title to 15,351.63 acres of the Reverted Minerals.  Conoco's wrongful claim of title to these disputed minerals forced Vaquillas to file this case.

In support of its argument that it is entitled to retain 640 acres per well, Conoco argues that the Commission did not "establish" 40-acre units because the units established by the special field rule for the Vaquillas Ranch (Lobo Cons.) Field only set out the minimum amount of acreage for drilling units required to drill a well.  Conoco also suggests that the 40-acre units established by the special field rules for the Vaquillas Ranch (Lobo Cons.) Field do not trigger the exception set forth in Paragraph 18 because they are not different than the 40-acre units established by the statewide rules.  Each contention misses the point and requires that certain language be ignored and that other words be added to the Leases, contrary to accepted rules of contract instruction.

## II.    SUMMARY JUDGMENT STANDARD

This is a "traditional" motion for summary judgment, filed pursuant to Rule 166a(c), as to certain of Vaquillas's claims against Conoco.  "[T]here is no genuine issue as to any material fact and [Vaquillas is] entitled to judgment as a matter of law on the issues expressly set out in the motion."[13]

---

[12] Conoco MSJ at Exs. C and D.
[13] Tex. R. Civ. P. 166a(c).

## III. BACKGROUND

### A. The purpose of an oil and gas lease, as well as a retained acreage clause, is to develop property to produce minerals.

An oil and gas lease is, at its core, a bargain struck by a landowner/lessor to have developed the hydrocarbons beneath his land with another who has the experience and capability to do so by undertaking the complex process of drilling and producing those hydrocarbons.[14] The landowner/lessor wants the mineral value of the land developed; the oil and gas company/lessee wants the opportunity to make a profit. In order to have their minerals developed, landowners/lessors generally must transfer the rights to explore, drill, produce, and market the minerals to an oil and gas company with the skill and financial ability to do so, such as Conoco.[15] The oil and gas lease is the instrument that is almost invariably used to transfer these rights to the oil and gas company.[16] In return for the risk assumed by the oil and gas company, it receives the lion's share of the profit derived from production and a generous time period (typically so long as production is obtained and maintained in paying quantities) within which to continue operations on the lease.

Absent an express limitation in the lease, a lessee's rights under an oil and gas lease may continue, as to the entire property, for an indefinitely long period of time. This is the case because leases are typically structured so that if oil or gas in paying quantities is found during the lease's primary term, the oil and gas company's rights to operate will

---

[14] 1 Ernest E. Smith and Jacqueline Lang Weaver, *Texas Law of Oil and Gas* § 4.1(B) (2014).
[15] *Id.*
[16] *Id.*

continue for so long thereafter as any well is producing oil or gas in paying quantities on the leased property.[17]

Oil and gas leases frequently contain a retained acreage clause that provides operators with the choice and flexibility to develop the acreage to a specified density, or to not do so and have acreage revert to the landowners/lessors. The retained acreage clause also helps the landowners/lessors ensure that his property is fully developed within a reasonable period of time, by allowing development of reverted acreage by another lessee.[18] In specifying the density for development, the clause may provide for reference to Railroad Commission rules.[19]

## B. Spacing, density, and proration units.

The Railroad Commission is responsible for preventing waste of the state's oil and gas natural resources and protecting the correlative rights of mineral owners, and it adopts statewide rules and special field rules as means to accomplish this end.[20] Special field rules for a given field (reservoir) are commonly referred to simply as "field rules."

Field rules typically address, among other things, spacing requirements. The Railroad Commission's spacing requirements typically establish the minimum distance a well can be located to the nearest lease line, property line, or subdivision line, and to other wells on the same lease completed in the same reservoir.[21] Spacing in effect

---

[17] *Id.*
[18] 1 Smith & Weaver § 5.2(B)(3).
[19] 1 Smith & Weaver § 5.2(B)(3) (citing *ConocoPhillips Co. v. Ramirez*, 2006 WL 1748584 (Tex. App.— San Antonio 2006, no pet.) (mem. op.).
[20] *R.R. Com'n of Texas v. WBD Oil & Gas Co.*, 104 S.W.3d 69 (Tex. 2003).
[21] 16 TAC § 3.37.

mandates that a certain number of acres be allotted to a given well, and is intertwined with "density."

The Railroad Commission's "density" requirements govern the number of wells that may be drilled on a given amount of acreage in a reservoir.[22] The density requirement does so by prescribing the minimum required size of the "drilling unit" – the minimum number of acres the operator must have to drill a well.[23] This is the essential nature of the drilling unit. The "drilling unit" is on occasion also referred to as a "spacing unit" or a "development unit."[24] Such units are by their nature minimum-sized units, because they prescribe the minimum acreage required to obtain a Railroad Commission permit to drill a well. An operator may always drill a well with more acreage than the minimum.

The Railroad Commission also regulates production levels to prevent waste and protect correlative rights. One way this is done is through specification of "prescribed" "proration units" for a field. These units are often confused with drilling units, though they are very different. A prescribed proration unit does not address the number of acres necessary to drill a well.[25] It simply specifies the maximum amount of acres that an operator may assign to a well as the proration unit for that well. In turn, the Commission uses the well proration units designated by operators for the purpose of assigning

---

[22] 16 TAC § 3.38. (Ex. A-2 to Ringuet Aff.)
[23] 16 TAC § 3.38(a)(2), (d)(1). (Ex. A-2 to Ringuet Aff.)
[24] 2 Smith & Weaver § 10.1(B)(2).
[25] *See* 2 Smith & Weaver § 10.1(B)(2).

production allowables that allocate total field production among individual wells.[26] Prescribed proration units are by their nature maximum-sized units, because they prescribe the maximum acreage that an operator may assign to a well as a proration unit for production allowable purposes. An operator may always assign fewer acres to its proration unit than the maximum.

**C. The Leases contain a retained acreage clause limiting the amount of acreage Conoco was allowed to retain for each well.**

The properties that are the subject of this lawsuit are a 26,622.79-acre tract[27] and a 6,740-acre tract,[28] both located in Webb County, Texas. Vaquillas is the successor-in-interest to the original lessor(s) under both the 26,622.79-acre lease and the 6,740-acre lease (the "Leases").[29] Defendant Conoco is a successor-in-interest to the original lessee(s).

The Leases have been amended and supplemented a number of times. On or about November 1, 1987, the 26,622.79-acre lease was amended to include Paragraph 18.[30] On the same date, the 6,740-acre lease was entered into, containing the same Paragraph 18. This paragraph provides for the release of acreage at the end of the continuous drilling

---

[26] 16 TAC § 3.38(a)(3). (Ex. A-2 to Ringuet Aff.)

[27] 26,622.79 acres of land, more or less, situated in Webb County, Texas more fully described in the Oil, Gas and Mineral Lease dated June 15, 1974 (as amended) between Vaquillas Ranch Company, Ltd. et al., as Lessor, and Conoco Inc., as Lessee, a copy of which is recorded in Volume 460, Pages 324-330 of the Webb County Deed Records (hereinafter the "**26,622.79-acre lease**"). (Ex. B-2 to Smith Aff.).

[28] 6,740 acres of land, more or less, situated in Webb County, Texas more fully described in the Oil, Gas and Mineral Lease, dated effective November 1, 1987, and entered into by and between Vaquillas Ranch Company, Ltd., Vaquillas Unproven Mineral Trust, and Vaquillas Proven Mineral Trust, as Lessor, and Conoco Inc., as Lessee, a Memorandum of which is recorded in Volume 1303, Pages 886 et seq. of the Webb County Real Property Records (hereinafter the "**6,740-acre lease**"). (Ex. B-3 to Smith Aff.).

[29] *See* Ex. B Smith Aff.

[30] The retained acreage clause found in Paragraph 18 was also in the original 26,622.79-acre lease. In the original 1974 lease, the clause was found in section 12(g). (Ex. B-2 to VAQ Aff.).

program. In order to be engaged in a continuous drilling program, after the end of the primary term, Conoco must commence the drilling of a new well within 90 days after the completion of each well. At the end of the continuous drilling program (i.e., when Conoco elects to cease commencement of the drilling of new wells within the 90 day period(s)), the Leases are maintained *only* as to an amount of acreage for each producing or shut-in gas well that is capable of producing in paying quantities. The Leases go on to require Conoco to execute and deliver to Vaquillas a written release of any acreage not retained.

Paragraph 18 states in pertinent part:

> … Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, **except** that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease **provides for a spacing <u>or</u> proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned.**

(Emphasis added).[31]

Conoco and Vaquillas thus agreed to an exception to Conoco's otherwise-existing right to retain 640 acres for each gas well. If the Commission adopts a rule for the field providing for spacing or proration that establishes units of acreage different than 40 acres [oil wells] or 640 acres [gas wells], Paragraph 18's "except" provision is triggered and Conoco therefore retains only the amount of acreage per well established by the spacing provided in the Railroad Commission's rules for the field. The expressed intent of the

---

[31] Exs. B-2 & B-3 to Smith Aff. at ¶ 18.

parties' agreed exception is clear. In lieu of the default 640 acres, the units established by the Railroad Commission's rules for the field were to determine the amount of acreage that would be retained for each well.

## D. The Railroad Commission adopted spacing rules for the Vaquillas Ranch (Lobo Cons.) Field.

The Railroad Commission of Texas adopted spacing rules in its special field rules for the Vaquillas Ranch (Lobo Cons.) Field.[32] Each of the wells drilled under the Leases is in the Vaquillas Ranch (Lobo Cons.) Field.[33]

After the November 1, 1987, amendment to the Leases, at Conoco's request, the Railroad Commission adopted rules specifically for the Vaquillas Ranch (Lobo Cons.) Field. These field rules, which were initially adopted on February 24, 1998, contained spacing rules providing that no well could be drilled nearer than 467 feet to any property line, lease line, or subdivision line (the "lease-line spacing" requirement), and that no well could be drilled nearer than 1,200 feet from any other well (the "between-well spacing" requirement).[34] Under such rules, the established spacing unit (i.e., drilling unit) was a minimum of 40 acres per well.

On or about November 2, 2010, and again at Conoco's request, the Railroad Commission held a field rule hearing for the Vaquillas Ranch (Lobo Cons.) Field. Following the hearing, the Commission amended the rules for the field, leaving the 40-

---

[32] Conoco MSJ at 4.

[33] *Id.*

[34] The 467 foot lease-line spacing and 1,200 foot between-well spacing requirements happen to be identical to the requirements set out in Statewide Rule 37, which would apply in the absence of field rules. The Commission, through its adoption of special field rules for the field, considered the evidence presented and in its expertise concluded that this was the appropriate spacing rule for development in this particular field. (Ex. A-4 to Ringuet Aff.).

acre drilling unit requirement intact.[35] The 1998 field rules, as amended, remain in effect today.

The amended field rules continue to provide for lease-line spacing of 467 feet, and between-well spacing of 1,200 feet, with one exception. As has become common for certain types of fields, in the 2010 amendments to the field rules, the Commission eliminated the minimum between-well spacing requirement for wells located at least 660 feet from the nearest property line, lease line, or subdivision line. This gave the operators in the field greater flexibility in locating wells.[36] The 40-acre established drilling unit requirement continued to apply for all wells drilled in the field.[37]

## IV. ARGUMENT AND AUTHORITIES

### A. Under the plain language of the Leases, Conoco is entitled to retain no more than the 40-acre units per well established by the Railroad Commission.

Paragraph 18 of the Leases unambiguously provides that when the Railroad Commission adopts field rules that provide for spacing "establishing different units of

---

[35] Ex. A-5 to Ringuet Aff.

[36] Conoco sought to eliminate the between-well spacing requirement for interior wells because the area is highly faulted. Because of the complexity of the geology, the difficulty of developing the many separate fault blocks in the field, and the desire to ensure all the "sweet spots" were produced, the between-well spacing requirement for interior wells was eliminated. *See* Ex. A-5 to Ringuet Aff.

[37] Importantly, while the field rules were amended in 2010 to remove the between-well spacing requirement for interior wells, the amendments did not affect the density requirement for any wells drilled on the Subject Property. As discussed above, the purpose of the elimination of the between-well spacing requirement for interior wells was to promote production in a tight formation and deal with structural anomalies. The effect was not to amend or remove the density requirement. The Commission did not amend or eliminate the acreage requirement for drilling wells, including interior wells, in the field. Where field rules are amended, but the amendments do not expressly amend, eliminate, or address an already-existing portion of the field rule, that section of the rule is unaffected by the amendments. After the 2010 amendments, the Commission continued to require standard drilling units of 40 acres per well. *See, e.g.,* "Field Rules Display" for the field on the Commission's website. (Ex. A-1 to Ringuet Aff.). Further, the 40-acre standard drilling unit requirement is consistent with Conoco's W-1 drilling permits. E.g., W-1 for API No. 42-479-41635. (Ex. A-6 to Ringuet Aff.).

acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 [for oil wells] and 640-acre [for gas wells] units above mentioned."[38]   The Railroad Commission did adopt field rules providing for spacing that established 40-acre units for the Vaquillas Ranch (Lobo Cons.) Field.  Conoco, therefore, may retain no more than 40 acres per gas well.

In Paragraph 18, the parties agreed to an exception to Conoco's otherwise existing right to retain 640 acres for gas wells.  The exception is triggered by the Railroad Commission's adoption of **spacing** or proration **establishing** "… **different units of acreage per well** …" (the "agreed exception").  Thus, the parties clearly contemplated that <u>spacing</u> rules (as well as proration rules) trigger the agreed exception, if the units of acreage thereby established are different than 640 acres for gas wells.  When triggered, the agreed exception allowed Conoco to retain only those units of acreage per well established by the spacing provided in the Railroad Commission rules, thus reducing the acreage Conoco could retain.  This is precisely what occurred here.  It is undisputed that the Railroad Commission, through its special field rules, provided spacing rules for the Vaquillas Ranch (Lobo Cons.) Field.[39]  As discussed below, these spacing rules in turn establish 40-acre units per well.

In situations such as this one, in which the Commission adopts rules for a field providing for spacing, but where the field rules do not explicitly set out the required density (minimum acres required to drill a well), Railroad Commission Rule 38 operates

---

[38] Exs. B-2 & B-3 to Smith Aff. at ¶ 18.
[39] Conoco MSJ at 4.

to prescribe the units of acreage established by the spacing provided in the rules for the field. 16 TEX. ADMIN. CODE § 3.38 ("Rule 38").[40] Rule 38 provides in pertinent part:

> The standard drilling unit for all oil, gas, and geothermal resource fields wherein **only spacing rules… are applicable is hereby *prescribed* to be the following**.

| Spacing Rule | Acreage Requirement |
|---|---|
| (1) 150 - 300 | 2 |
| (2) 200 - 400 | 4 |
| (3) 330 - 660 | 10 |
| (4) 330 - 933 | 20 |
| (5) 467 - 933 | 20 |
| **(6) 467 - 1200** | **40** |
| (7) 660 - 1320 | 40 |

16 TEX. ADMIN. CODE § 3.38(b)(2)(A) (emphasis added).[41]

The Commission's special field rules provide a spacing rule – 467 feet lease-line spacing and 1,200 feet between-well spacing – for the Vaquillas Ranch (Lobo Cons.) Field. As is contemplated by Rule 38, these special field rules did not contain a density rule. Nevertheless, as shown on the above table, the special field rules' designation of

---

[40] Ex. A-2 to Ringuet Aff.
[41] Ex. A-2 to Ringuet Aff.

spacing operated to *prescribe* and *establish* 40-acre drilling units for each oil or gas well in the Vaquillas Ranch (Lobo C.) Field.[42]

The agreed exception was triggered by the adoption of the Vaquillas Ranch (Lobo Cons.) special field rules, which included spacing that established 40 acre units. Conoco was therefore entitled to retain no more than 40 acres for each of the gas wells it drilled on the Subject Property. Consistent with the fundamental purpose of the oil and gas lease – to develop and produce the minerals – this allows Conoco to continue to produce the minerals from the wells that it has drilled on the acreage that it has developed. The remaining undeveloped acreage reverts to Vaquillas, allowing Vaquillas or another party to develop the undeveloped reverted acreage and produce the minerals underlying that acreage.

**B. Conoco's contention that the field rules for the Vaquillas Ranch (Lobo Cons.) field do not establish 40-acre units requires the Court to disregard or to add words to the Leases.**

Conoco argues that the established 40 acre spacing/drilling units are not "established" because they constitute a minimum (with no maximum) acreage requirement for drilling each well. In advancing this argument, Conoco would have the Court ignore well-settled rules of contract construction in order to fulfill Conoco's quest

---

[42] Prior to 1955, the Commission relied upon spacing rules alone to govern the density of drilling. Observing that on tracts of irregular size and shape, wells could be drilled with less acreage per well (i.e., to a greater density), as compared to regularly-shaped tracts, i.e., square tracts, in 1955, the Commission first adopted the chart found in Rule 38. The chart was adopted to prescribe the required minimum number of acres per well based on the applicable spacing to remedy this "disadvantage" for regularly-shaped tracts. The chart remains the same to this date. (Exs. A-2, A-7 of Ringuet Aff.). The chart in Rule 38 effectively serves as a backstop or gap-filler when only spacing is provided for in the special field rules.

to retain 640 acres for each well drilled under the Leases.[43]  Conoco's reading is at odds with the plain language of the Leases.

Paragraph 18's agreed exception to Conoco's otherwise existing right to retain 640 acres for gas wells is triggered by the Railroad Commission's field rules providing for spacing or proration establishing "…**different units of acreage per well**…."  It does not use the words establishing "…maximum units of acreage per well…."  The units are no less "established" or "prescribed" because they operate as minimums.  Acceptance of Conoco's argument that because the 40 acre units are only minimums, Paragraph 18's agreed exception is not triggered, would require that the court add words to the language chosen by the parties, contrary to accepted rules of contract interpretation.[44]

To the extent that Conoco means to imply that because the 40-acre units established by the spacing provided in the field rules for the Vaquillas Ranch (Lobo Cons.) Field are the same as the statewide rules (which apply if field rules have not been established), the exception provision of Paragraph 18 is not triggered, Conoco is incorrect.[45]

Where the language of Paragraph 18 refers to the Railroad Commission's adoption of "spacing … establishing … **different units** of acreage per well …," the word "different" refers back to the 40 acres for each oil well and 640 acres for each producing

---

[43] *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) (courts "may neither rewrite the parties' contract nor add to its language," but rather, must interpret unambiguous contract language as written).

[44] *Id*.

[45] Conoco MSJ at 8.

or shut-in gas well earlier in the sentence.[46] The word "different" here does not, as Conoco suggests, mean different from the "statewide rules" for well density; had it meant that, the parties would have referenced the statewide rules.[47] Conoco's effort to add words to the contract must again be rejected.

Conoco also appears to take the position that the reference to "units of acreage per well" refers only to "proration units" and does not include "drilling units."[48] The parties chose the broader term "units of acreage," and specified that spacing rules *or* proration rules could trigger the exception. Thus the provision cannot be limited to proration units, but must include both drilling units and proration units. This is consistent with the language of Paragraph 18's agreed exception referring to "…spacing or proration establishing different **units** of acreage per well."

In addition, Conoco references the pooling clause in the Leases.[49] Under the Leases, however, the pooling clause has nothing to do with or effect on the acreage limitation in the retained acreage clause. Conoco's statement that the pooling clause somehow establishes the "normal and completely authorized block of acreage" under the Leases would render meaningless the agreed exception.[50]

---

[46] Indeed, Conoco acknowledges this on page 11 of its Motion for Summary Judgment, when it states that before Paragraph 18's exception is triggered, "the Railroad Commission must 'establish' units for gas wells of a different size than 640 acres."

[47] Notably, there is no reference to statewide rules in Paragraph 18.

[48] *Id.* at 4.

[49] Conoco MSJ at 6.

[50] Conoco MSJ at 7.

The Commission has, through the spacing rules adopted for the field, established a 40-acre spacing/drilling unit requirement. Paragraph 18's condition was thus triggered. Conoco is entitled to retain no more than 40 acres per well.

**C.** ***Jones v. Killingsworth,*** **cited by Conoco, supports Vaquillas's position that the field rules "establish" or "prescribe" 40-acre units, and operators are only "permitted" to form larger units.**

*Jones v. Killingsworth*, 403 S.W.2d 325 (Tex. 1965), dealt with a pooling clause and proration units prescribed by the Railroad Commission, not a retained acreage clause. Nonetheless, the case is instructive and supports Vaquillas's position that the Commission's field rules for the Vaquillas Ranch (Lobo Cons.) Field "establish" 40-acre units.

*Jones* involved a lessee's attempt to create a pooled unit for oil of 160 acres rather than an 80-acre unit, which the lessor believed to be the maximum size allowed under the pooling clause of the parties' oil and gas lease. Similar to the retained acreage clause in this case, the pooling provision in *Jones* also created an exception to the default maximum pooled unit size when a different one was *prescribed* by a governmental authority.

> Units pooled for oil hereunder shall not substantially exceed 40 acres each plus a tolerance of 10% thereof, provided that should governmental authority having jurisdiction *prescribe* or *permit* the creation of units larger than those specified, units thereafter created may conform substantially in size with those *prescribed* by governmental regulations.

*Id*. at 327 (emphasis added).

The lessee in *Jones* argued that because rules adopted by the Railroad Commission *prescribed* oil proration units of not less than 80 acres but merely *permitted* up to 160 acres for each oil unit, that by reading these rules into the lease's pooling provision the lease would read: "the size of the units thereafter created may not be substantially less than 80 acres nor substantially more than 160 acres. *Id*. at 327. The Supreme Court disagreed with this construction, writing:

> The lessors did not consent to enlarge an oil proration unit to any size *permitted* by governmental regulations. They gave their consent to enlarge a unit of substantially 40 acres, but only to the extent of the size of units *prescribed* by the regulatory authority. The fact that the Railroad Commission may *permit* a much larger unit cannot be read into the lease contract when, as here, the authority to create larger units is **expressly limited to units the size *prescribed*** by the Railroad Commission. The Commission *prescribed* a unit of 80 acres. The field rules clearly say that there *must* be a proration unit of at least 80 acres, and there may be larger units of not more than [160] acres. **The parties obviously knew when the lease contract was executed that a *permitted* oil proration unit could conceivably be much larger in area than one *prescribed* by governmental authority. To say that a lessee can pool lessor's land with units of any size *permitted* by the Railroad Commission would defeat the intention of the parties to restrict the size of the units to a size *prescribed* by governmental authority.**

*Id*. at 327-28 (boldface added; italics in original).

*Jones* stands for the proposition that when an oil and gas lease provision references acreage *prescribed* by a Railroad Commission rule as a marker that will restrict or limit the size of the units that the lessee is otherwise allowed to retain, the unit size *prescribed* by the Commission rule controls over a larger-sized unit that is merely *permitted* or allowed by such Commission rule.

Like *Jones,* here the Vaquillas retained acreage clause clearly contemplated a restriction in the size of the otherwise allowed 40- or 640-acre units to the size prescribed by Railroad Commission field rules. The parties knew when the Leases were executed that field rules could be adopted for a field on the Vaquillas Ranch providing for spacing that established units different than 640 acres per gas well. That is what happened. The 467-1200 spacing in the field rules established the 40-acre drilling unit requirement.

> The standard drilling unit for all oil, gas, and geothermal resource fields **wherein only spacing rules**… **are applicable is hereby** *prescribed* **to be the following.**
>
> | Spacing Rule | Acreage *Requirement* |
> |---|---|
> | . . . | . . . |
> | **(6) 467 – 1200** | **40** |
> | . . . | . . . |

16 TEX. ADMIN. CODE § 3.38(b)(2)(A) (emphasis supplied). [51] The field rules provide for spacing establishing 40 acre units. In the *Jones* pooling provision, the limiting word was "prescribed." In the Vaquillas Leases, the word of limitation is "established." As Conoco's motion correctly states, Black's Law Dictionary defines "Establish" as "To settle, make or fix firmly; place on a permanent footing; found; create; put beyond doubt or dispute; prove; convince."[52] Black's also defines "Prescribe" with an equivalent meaning: "Prescribe"- "To dictate, ordain, or direct; to **establish** authoritatively (as a rule or guideline)."[53] (emphasis added). The applicable rules for the field include

---

[51] Ex. A-2 to Ringuet Aff.
[52] Conoco MSJ at 11.
[53] Black's Legal Directory at 1373 (10th ed. 2014). Likewise, Webster's Dictionary defines "prescribe" to include "to establish rules, laws, or directions." Webster's II New College Dictionary at 874 (Houghton Mifflin Company 1999).

spacing rules that clearly "establish" or "prescribe" 40-acre units for the Vaquillas Ranch (Lobo Cons.) Field.

Conoco argues that because the prescribed density rule sets out only a minimum amount of acreage required for a drilling unit (*i.e.*, to drill a well) rather than a fixed acreage or the maximum acreage, that this somehow means the spacing rules provided in the special field rules do not establish units of acreage different than 640 acres.[54] This is incorrect. The units are no less "prescribed" and "established" because they are minimums. And, the prescribed and established 40-acre units are unarguably <u>different</u> than 640-acre units. Conoco's argument tracks the argument made (and lost) by the lessee in *Jones*. That argument was rejected by the Texas Supreme Court, and it should be rejected by this Court.

**D. Conoco's interpretation ignores the inherent role of drilling units as specifying the minimum acreage required to drill wells, and thereby renders the word "spacing" in Paragraph 18's agreed exception meaningless.**

Conoco's erroneous interpretation of Paragraph 18 also fails because it would render Paragraph 18's "except" clause meaningless as it relates to spacing.

The Texas Supreme Court has held that in construing an oil and gas lease, one must "examine *the entire document* and consider *each part* with every other part so that the effect and meaning of one part on any other part may be determined."[55] This is because the court presumes "that the parties to a contract *intend every clause to have*

---

[54] Conoco MSJ at 4, 8, 11-12.
[55] *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (emphasis added).

*some effect.*"[56]  And in construing the language of a contract, the court should consider the surrounding circumstances as part of determining whether the language can be given a definite meaning.  *E.g.*, *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).

Conoco argues that spacing provided in the Railroad Commission's field rules do not "establish" 40-acre units, because they "permit operators to drill wells on a *minimum* of 40 acres."[57]  By their very nature, because of their purpose, the Railroad Commission's density requirements establish only a minimum acreage requirement – they *establish* the minimum amount of acreage required for drilling a well.[58]   Conoco's construction, whereby the exception applies only when the Commission establishes a precise and fixed drilling unit size or proration unit size, ignores the fact that by their nature, prescribed drilling units are minimum requirements.[59]   The agreed exception of Paragraph 18, however, unquestionably indicates that the parties contemplated that special field rules that provide for spacing could trigger the retained acreage clause's exception, and thereby reduce the number of acres that Conoco could otherwise retain.[60]

---

[56] *Id.* (emphasis added).

[57] Conoco MSJ at 11.

[58] This, of course, is because any other requirement would lead to absurd results (*e.g.*, an operator with a 45 acre tract being denied a drilling permit, where the established density is 40 acres) and because the Commission's concern in establishing drilling units is to prevent waste caused by excessively dense drilling.

[59] This motion concerns drilling/spacing units, and *not* proration units. Conoco's reference to proration units in footnote 4, page 5 of its Motion for Summary Judgment ignores this distinction and the lease language that speaks to "spacing *or* proration establishing … units." As noted above, proration units serve an entirely different purpose than drilling units, and establish the *maximum* amount of acreage that an operator may assign to a well for proration purposes.

[60] It is settled law that contracts are presumed to incorporate regulations and laws existing at the time of execution. *Amarillo Oil Co. v. Energy-Agri Products, Inc.*, 794 S.W.2d 20, 22-25 (Tex. 1990); *Houston Lighting & Power Co. v. R.R. Comm'n*, 529 S.W.2d 763, 766 (Tex.1975).

If Conoco were correct that the Commission-established 40-acre units do not apply because the required drilling units are always only the minimum acreage required to drill a well, then there would be no circumstances under which the agreed "except" provision of Paragraph 18 could apply where field rules provide for spacing alone. Thus, Conoco's reading would render the reference to "spacing" in the parties' agreed exception meaningless and violate the rules of construction that every provision in a contract be given effect and that it be construed in light of the surrounding circumstances. For this reason also, Conoco's argument fails.

**E. Conoco's argument regarding a presumption against a "limitation on the grant" is not relevant to the question of whether Conoco is obligated to execute a formal release of the Reverted Minerals. Further, the presumption does not apply in the context of Paragraph 18's clear condition.**

Whether the agreed exception constitutes a covenant or a condition is not relevant to the issue of whether Conoco is required to execute a formal release for all acreage in excess of 40 acres for each producing and shut-in natural gas well capable of producing in paying quantities.

Nonetheless, the cases cited by Conoco in support of its argument regarding a presumption against a limitation do not apply in this case because Paragraph 18 contains a clear limitation or condition. A distinction is generally drawn between covenants and conditions in oil and gas leases. *See, e.g., Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex. 1989). Breach of a condition results in automatic termination of the leasehold estate upon the happening of stipulated events. *Id.* Breach of a covenant does

not automatically terminate the estate, but instead subjects the breaching party to liability for damages, or the remedy of a decree of cancellation. *Id.*

Paragraph 18 specifies the acreage that "shall be held" by Conoco, thus necessarily also providing for the acreage that shall not be held (*i.e.*, shall revert to Vaquillas). The agreed exception and the phrase "shall be held" cannot be construed to be anything other than a condition, breach of which results in termination of the leasehold estate as to the Reverted Minerals.[61]

## V.    CONCLUSION

Conoco has drilled some 208 wells on the leases and retains up to 40 acres for each well capable of producing in paying quantities. This acreage allows Conoco to operate these wells and produce them at maximum potential. This case concerns the remaining 25,000+ acres that Conoco has not developed to the density provided by Railroad Commission rules for the field. Yet, Conoco wants to hold that acreage and thereby prevent Vaquillas from having it developed by another operator.

The Leases unequivocally provide in Paragraph 18 that Conoco retains only that acreage for each well equal to the acreage per unit established by the Railroad Commission's spacing rules for the field if those units are different than 640 acres for gas wells. Conoco does not dispute that the applicable drilling/spacing units – the minimum amount of acres required to drill a well – established by the Commission field rules are 40 acres per well. Instead, Conoco makes a number of arguments that simply do not fit with the language of the Leases and would have this Court rewrite that language.

---

[61] *See, e.g., Freeman v. Magnolia Petroleum Co.,* 171 S.W.2d 339, 340 (Tex. 1943).

Conoco has refused to acknowledge that the undeveloped acres that it elected not to earn by drilling additional wells has reverted to Vaquillas. And, consistent with this refusal, Conoco has not provided the formal releases required by the Leases. Vaquillas simply asks this Court to rectify this situation.

## VI.    SUMMARY JUDGMENT EVIDENCE

In support of this Motion, Vaquillas relies on the following summary judgment evidence, which is filed with the Motion and is hereby incorporated as part of this Motion:

Exhibit A:    Affidavit of Alicia R. Ringuet.

Exhibit A-1: Field Rules Display for the Vaquillas Ranch (Lobo Cons.) Field.

Exhibit A-2: Railroad Commission Rule 38 (16 TAC §3.38).

Exhibit A-3: Defendant ConocoPhillips Company's Response to Numbers 16 and 17 of Plaintiff Vaquillas Unproven Minerals, Ltd.'s First Set of Interrogatories in the above-captioned case.

Exhibit A-4: Proposal For Decision and Final Order in the Texas Railroad Commission, Oil and Gas Docket No. 04-0217435.

Exhibit A-5: Proposal For Decision and Final Order in the Texas Railroad Commission, Oil and Gas Docket No. 04-0265630.

Exhibit A-6: Form W-1 filed with Texas Railroad Commission for API No. 42-479-41635.

Exhibit A-7: Special Order Pertaining to Density Development in All Fields Where Standard Proration Units Have Not Been Adopted, Oil and Gas Docket Nos. 108, 124, 125, 126, 128, 129 and 146, August 15, 1955.

Exhibit B:    Affidavit of Dino O. Smith.

Exhibit B-1:  June 15, 1974 Oil, Gas and Mineral Lease between Vaquillas Ranch Company, Ltd., a limited partnership acting herein through its general partners, J.O. Walker, Jr., Gene S. Walker, Evan B. Quiros and E. Walker Quiros (a/k/a Mary Elizabeth Quiros) and Continental Oil Company for 26,622.79 acres of land, more or less, situated in Webb County, Texas.

Exhibit B-2:  November 1, 1987 Oil, Gas and Mineral Lease Amending Oil, Gas and Mineral Lease dated June 15, 1974 (As Amended) between Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven Mineral Trust; acting by and through its general partners, J. O. Walker, Jr., E. Walker Quiros, Gene S. Walker and Evan B. Quiros, and Conoco, Inc., Lessee for 26,622.79 acres, more or less, situated in Webb County, Texas.

Exhibit B-3:  November 1, 1987 Oil, Gas and Mineral Lease between Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven Mineral Trust; acting by and through its general partners, J.O. Walker, Jr., E. Walker Quiros, Gene S. walker and Evan B. Quiros and Conoco Inc. for 6,740 acres, more or less, situated in Webb County, Texas.

Exhibit B-4:  December 19, 1984 Mineral Deed from Vaquillas Ranch Co., Ltd. to J. O. Walker, Jr., et al. a copy of which is recorded in Volume 1097, Pages 66 et seq. of the Deed Records of Webb County, Texas.

Exhibit B-5:  December 19, 1984, Mineral Deed from J.O. Walker, Jr., et al. to J.O. Walker et al., as Trustees of the Vaquillas Unproven Minerals Trust, a copy of which is recorded in Volume 1097, Pages 101 et seq. of the Deed Records of Webb County, Texas.

Exhibit B-6:  Effective December 31, 1996, Mineral Deed from the Trustees of the Vaquillas Unproven Minerals Trust to Vaquillas Unproven Minerals, Ltd. a copy of which is recorded in Volume 471, Pages 711 et seq. of the Official Public Records of Webb County, Texas.

Pursuant to Rules 201 and 204 of the Texas Rules of Evidence, Vaquillas requests that the Court take judicial notice of the following:

Exhibit A-2: Railroad Commission Rule 38 (16 TAC §3.38).

Exhibit A-4: Proposal For Decision and Final Order in the Texas Railroad Commission, Oil and Gas Docket No. 04-0217435.

Exhibit A-5: Proposal For Decision and Final Order in the Texas Railroad Commission, Oil and Gas Docket No. 04-0265630.

Exhibit A-7: Special Order Pertaining to Density Development in All Fields Where Standard Proration Units Have Not Been Adopted, Oil and Gas Docket Nos. 108, 124, 125, 126, 128, 129 and 146, August 15, 1955.

## VI. PRAYER

For these reasons, Plaintiff Vaquillas Unproven Minerals, Ltd. asks for judgment against Defendant ConocoPhillips Company for the following:

A.  Judgment granting Vaquillas's cross-motion for partial summary judgment;

B.  Judgment that Conoco has breached the Leases by failing to release all acreage in excess of 40 acres for each producing and shut-in natural gas well capable of producing in paying quantities;

C.  Judgment denying Conoco's motion for summary judgment;

D.  All other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,


By:    /s/Gregg Owens
        Gregg Owens

Gregg Owens, SBN 15383500
gregg.owens@haysowens.com
John R. Hays, Jr., SBN 09303300
john.hays@haysowens.com
Alicia R. Ringuet, SBN 24074958
alicia.ringuet@haysowens.com
HAYS & OWENS L.L.P.
807 Brazos Street, Suite 500
Austin, Texas 78701
(512) 472-3993
(512) 472-3883 *Facsimile*

Michael Jung, SBN 11054600
michael.jung@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas  75202-3794
(214) 651-4724
(214) 651-4330 *Facsimile*

Armando X. Lopez, SBN 12562400
mandox@rio.bravo.net
LAW OFFICES OF ARMANDO X. LOPEZ
1510 Calle Del Norte, Suite 16
Laredo, Texas 78041
(956) 726-0722
(956) 726-6049 *Facsimile*

Raul Leal, SBN 24032657
rleal@rl-lawfirm.com
RAUL LEAL INCORPORATED
5810 San Bernardo, Suite 390
Laredo, Texas 78041
(956) 727-0039
(956) 727-0369 *Facsimile*

**ATTORNEYS FOR VAQUILLAS
UNPROVEN MINERALS, LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document is being served on the following persons by the means shown on this the 8th day of September, 2014.

By:   /s/Gregg Owens
         Gregg Owens


Mr. Michael V. Powell                                *via Electronic Mail*
mpowell@lockelord.com
Ms. Elizabeth L. Tiblets
etiblets@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776

Mr. Adolfo Campero                                    *via Electronic Mail*
acampero@camperolaw.com
CAMPERO & ASSOCIATES, P.C.
315 Calle Del Norte, Suite 207
Laredo, Texas 78041

**ATTORNEYS FOR DEFENDANT
CONOCOPHILLIPS COMPANY**

Filed
9/8/2014 4:12:20 PM
Esther Degollado
District Clerk
Webb District
2014 CVQ000 438 D4

CAUSE NO. 2014 CVQ000 438 D4

| | | |
|---|---|---|
| VAQUILLAS UNPROVEN MINERALS, LTD., | § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | WEBB COUNTY, TEXAS |
| v. | § | |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | 406th JUDICIAL DISTRICT |
| Defendant | | |

## AFFIDAVIT OF ALICIA R. RINGUET

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned authority, on this day personally appeared Alicia R. Ringuet, who, after being placed by me under oath, stated the following:

1. "My name is Alicia R. Ringuet. I am an attorney for Vaquillas Unproven Minerals, Ltd., in the above-captioned case. I am over eighteen years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. The attached are true and correct copies of the following documents:

Exhibit A-1: a true and correct certified copy of a printout made by me on August 20, 2014 from the website of the Texas Railroad Commission including the field rules for Vaquillas Ranch (Lobo Cons.) Field.

Exhibit A-2: a true and correct copy of a printout made by me on September 8, 2014 from the website of the Texas Secretary of State including 16 TAC §3.38.

Exhibit A-3: a true and correct copy of Defendant ConocoPhillips Company's Response to Plaintiff Vaquillas Unproven Minerals, Ltd.'s First Set of Interrogatories in the above-captioned case.

Exhibit A-4: a true and correct certified copy of the Proposal For Decision and Final Order in the Texas Railroad Commission, Oil and Gas Docket No. 04-0217435.

> **EXHIBIT**
>
> **A**

**AFFIDAVIT OF ALICIA R. RINGUET** PAGE 1

Exhibit A-5: a true and correct certified copy of the Proposal For Decision and Final Order in the Texas Railroad Commission, Oil and Gas Docket No. 04-0265630.

Exhibit A-6: a true and correct certified copy of the Form W-1 filed with the Texas Railroad Commission for API No. 42-479-41635.

Exhibit A-7: a true and correct copy of the Special Order Pertaining to Density Development in All Fields Where Standard Proration Units Have Not Been Adopted, Oil and Gas Docket Nos. 108, 124, 125, 126, 128, 129 and 146, August 15, 1955.

Exhibit A-8: Resume of Alicia R. Ringuet."

Further affiant sayeth not.

_____
Alicia R. Ringuet

Subscribed and sworn to before me on this 8ᵗʰ day of September, 2014.

JENNIFER ROGERS
Notary Public, State of Texas
My Commission Expires
March 28, 2015

_____
Notary Public in and for
the State of Texas
My commission expires: 28 March 2015

**RRC ONLINE SYSTEM**

# Field Rules Display

Field Query  Previous Query  Results

## Field Rules for Field: VAQUILLAS RANCH (LOBO CONS.)
## Field Number: 93215400     District Name: 04

### Oil Field Rules:

**County Regular:** N  **Salt Dome:** N  **Field Location:** LAND  **Don't Permit:** N
**Schedule Remarks:** UNITIZED TRACT.
**Comments:** SEE REMARKS FOR OPTIONAL RULES

| Rule Type | Depth | Lease Spacing | Well Spacing | Acres per Unit | Tolerance Acres | Diagonal Code | Diagonal Max Length |
|---|---|---|---|---|---|---|---|
| Special Rules | All Depths | 467 | 1200 | 40.0 | 0.0 | Corner to Corner | 1200 |

### Gas Field Rules:

**County Regular:** N  **Salt Dome:** N  **Field Location:** LAND  **Don't Permit:** N
**Schedule Remarks:** NO P-15 OR PLAT REQUIRED.
**Comments:** SEE REMARKS

| Rule Type | Depth | Lease Spacing | Well Spacing | Acres per Unit | Tolerance Acres | Diagonal Code | Diagonal Max Length |
|---|---|---|---|---|---|---|---|
| Special Rules | All Depths | 467 | 1200 | 40.0 | 0.0 | | 0 |

Cancel

Disclaimer | RRC Online Home | RRC Home | Contact

RAILROAD COMMISSION OF TEXAS
STATE OF TEXAS
COUNTY OF TRAVIS
I hereby certify that the information on the
reverse side hereof is a true and correct copy of a document on
file with the Railroad Commission of Texas, and I further certify that
I am the Legal Custodian of the records, files and seal of the Railroad
Commission of Texas.

EXHIBIT

A-1

CERTIFICATION NO.

I 05676 AUG 25 14

Railroad COMMISSION
OF TEXAS

**RAILROAD COMMISSION OF TEXAS**
**STATE OF TEXAS**
**COUNTY OF TRAVIS**

      I hereby certify that the information on the reverse side hereof is a true and correct copy of a document on file with the Railroad Commission of Texas, and I further certify that I am the legal Custodian of the records, files and seal of the Railroad Commission of Texas.

Date: 08/25/14      Carmen Caldero

           Deputy

<<Prev Rule          **Texas Administrative Code**          Next Rule>>

|  | |
|---|---|
| **TITLE 16** | ECONOMIC REGULATION |
| **PART 1** | RAILROAD COMMISSION OF TEXAS |
| **CHAPTER 3** | OIL AND GAS DIVISION |
| **RULE §3.38** | **Well Densities** |

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

  (1) Commission designee--Director of the Oil and Gas Division or any Commission employee designated in writing by the director or the Commission.

  (2) Drilling unit--The acreage assigned to a well for drilling purposes.

  (3) Proration unit--The acreage assigned to a well for the purpose of assigning allowables and allocating allowable production to the well.

  (4) Substandard acreage--Less acreage than the smallest amount established for standard or optional drilling units.

  (5) Surplus acreage--Substandard acreage within a lease, pooled unit, or unitized tract that remains unassigned after the assignment of acreage to each applied for, permitted, or completed well in a field, in an amount equaling or exceeding the amount established for standard or optional drilling units. Surplus acreage is distinguished from the term "tolerance acreage,"in that tolerance acreage is defined in context with proration regulation, while surplus acreage is defined by this rule only in context with well density regulation.

  (6) Tolerance acreage--Acreage within a lease, pooled unit, or unitized tract that may be assigned to a well for proration purposes pursuant to special field rules in addition to the amount established for a prescribed or optional proration unit.

(b) Density requirements.

  (1) General prohibition. No well shall be drilled on substandard acreage except as hereinafter provided.

  (2) Standard units.

    (A) The standard drilling unit for all oil, gas, and geothermal resource fields wherein only spacing rules, either special, country regular, or statewide, are applicable is hereby prescribed to be the following.

Attached Graphic

    (B) The spacing rules listed in subparagraph (A) of this paragraph are not exclusive. If any spacing rule not listed in subparagraph (A) of this subsection is brought to the attention of the commission, it will be given an appropriate acreage assignment.

> **EXHIBIT**
>
> __A-2__

(c) Development to final density. An application to drill a well for oil, gas, or geothermal resource on a drilling unit composed of surplus acreage, commonly referred to as the "tolerance well," may be granted as

regular when the operator seeking such permit certifies to the commission in a prescribed form the necessary data to show that such permit is needed to develop a lease, pooled unit, or unitized tract to final density, and only in the following circumstances:

(1) when the amount of surplus acreage equals or exceeds the maximum amount provided for tolerance acreage by special or county regular rules for the field, provided that this paragraph does not apply for a lease, pooled unit, or unitized tract that is completely developed with optional units and the special or county regular rules for the field do not have a tolerance provisions expressly made applicable to optional proration units;

(2) if the special or county regular rules for the field do not have a tolerance provision expressly made applicable to optional proration units, when the amount of surplus acreage equals or exceeds one-half of the smallest amount established for an optional drilling unit; or

(3) if the applicable rules for the field do not have a tolerance provision for the standard drilling or proration unit, when the amount of surplus acreage equals or exceeds one-half the amount prescribed for the standard unit.

(d) Applications involving the voluntary subdivision rule.

(1) Density exception not required. An exception to the minimum density provision is not required for the first well in a field on a lease, pooled unit, or unitized tract composed of substandard acreage, when the leases, or the drillsite tract of a pooled unit or unitized tract:

(A) took its present size and shape prior to the date of attachment of the voluntary subdivision rule (§3.37(g) of this title (relating to Statewide Spacing Rule)); or

(B) took its present size and shape after the date of attachment of the voluntary subdivision rule (§3.37(g) of this title (relating to Statewide Spacing Rule)) and was not composed of substandard acreage in the field according to the density rules in effect at the time it took its present size and shape.

(2) Density exception required. An exception to the density provision is required, and may be granted only to prevent waste, for a well on a lease, pooled unit, or unitized tract that is composed of substandard acreage and that:

(A) took its present size and shape after the date of attachment of the voluntary subdivision rule (§3.37(g) of this title (relating to the Statewide Spacing Rule)); and

(B) was composed of substandard acreage in the field according to the density rules in effect at the time it took its present size and shape.

(3) Unit dissolution.

(A) If two or more separate tracts are joined to form a unit for oil or gas development, the unit is accepted by the Commission, and the unit has produced hydrocarbons in the preceding twenty (20) years, the unit may not thereafter be dissolved into the separate tracts with the rules of the commission applicable to each separate tract if the dissolution results in any tract composed of substandard acreage for the field from which the unit produced, unless the Commission approves such dissolution.

(B) The Commission shall grant approval only after application, notice, and an opportunity for hearing.

The applicant seeking the unit dissolution shall provide a list of the names and addresses of all current lessees and unleased mineral interest owners of each tract within the joined or unitized tract at the time the application is filed. The Commission shall give notice of the application to all current lessees and unleased mineral interest owners of each tract within the joined or unitized tract. Additionally, if one or more wells on the unitized tract has produced from the field within the 12-month period prior to the application, the applicant shall include on the list all affected persons described in subsection (h)(1)(A) of this section, and the Commission shall give notice of the application to these affected persons.

   (C) A Commission designee may grant administrative approval if the Commission designee determines that granting the application will not result in the circumvention of the density restrictions of this section or other Commission rules, and if either:

   (i) written waivers are filed by all affected persons; or

   (ii) no protest is filed within the time set forth in the notice of application.

(e) Application involving unitized areas with entity for density orders. An exception to the minimum density provision is not required for a well in a unitized area for which the commission has granted an entity for density order, if the sum of all applied for, permitted, or completed producing wells in the field within the unitized area, multiplied by the applicable density provision, does not exceed the total number of acres in the unitized area. The operator must indicate the docket number of the entity for density order on the application form.

(f) Exceptions to density provisions authorized. The Commission, or Commission designee, in order to prevent waste or, except as provided in subsection (d)(2) of this section, to prevent the confiscation of property, may grant exceptions to the density provisions set forth in this section. Such an exception may be granted only after notice and an opportunity for hearing.

(g) Filing requirements.

   (1) Application. An application for permit to drill shall include the fees required in §3.78 of this title (relating to Fees and Financial Security Requirements) and shall be certified by a person acquainted with the facts, stating that all information in the application is true and complete to the best of that person's knowledge.

   (2) Plat. When filing an application for an exception to the density requirements of this section, in addition to the plat requirements in §3.5 of this title (relating to Application to Drill, Deepen, Reenter, or Plug Back) (Statewide Rule 5), the applicant shall attach to each copy of the application a plat that:

   (A) depicts the lease, pooled unit, or unitized tract, showing thereon the acreage assigned to the drilling unit for the proposed well and the acreage assigned to all current applied for, permitted, or completed oil, gas, or oil and gas wells in the same field or reservoir which are located within the lease, pooled unit, or unitized tract;

   (B) on large leases, pooled units, or unitized tracts, if the established density is not exceeded as shown on the face of the application, outlines the acreage assigned to the well for which the permit is sought and the immediately adjacent wells on the lease, pooled unit, or unitized tract;

   (C) on leases, pooled units, or unitized tracts from which production is secured from more than one field, outlines the acreage assigned to the wells in each field that is the subject of the current application;

(D) corresponds to the listing required under subsection (g)(1)(A) of this section.

(E) is certified by a person acquainted with the facts pertinent to the application that the plat is accurately drawn to scale and correctly reflects all pertinent and required data.

(3) Substandard acreage. An application for a permit to drill on a lease, pooled unit, or unitized tract composed of substandard acreage must include a certification in a prescribed form indicating the date the lease, or the drillsite tract of a pooled unit or unitized tract, took its present size and shape.

(4) Surplus acreage. An application for permit to drill on surplus acreage pursuant to subsection (c) of this section must include a certification in a prescribed form indicating the date the lease, pooled unit, or unitized tract took its present size and shape.

(5) Certifications. Certifications required under paragraphs (3) and (4) of this subsection shall be filed on Form W-1A, Substandard Acreage Certification.

(A) The operator shall file the Form W-1A with the drilling permit application and shall indicate the purpose of filing. The operator shall accurately complete all information required on the form in accordance with instructions on the form.

(B) The operator shall list the field or fields for which the substandard acreage certification applies in the designated area on the form. If there are more than three fields for which the certification applies, the operator shall attach additional Forms W-1A and shall number the additional pages in sequence.

(C) The operator shall file the original Form W-1A with the Commission's Austin office and a copy with the appropriate district office, unless the operator files electronically through the Commission's Electronic Compliance and Approval Process (ECAP) system.

(D) The operator or the operator's agent shall certify the information provided on the Form W-1A is true, complete, and correct by signing and dating the form, and listing the requested identification and contact information.

(E) Failure to timely file the required information on the appropriate form may result in the dismissal of the application.

(h) Procedure for obtaining exceptions to the density provisions.

(1) Filing requirements. If a permit to drill requires an exception to the applicable density provision, the operator must file, in addition to the items required by subsection (g) of this section:

(A) a list of the names and addresses of all affected persons. For the purpose of giving notice of application, the Commission presumes that affected persons include the operators and unleased mineral interest owners of all adjacent offset tracts, and the operators and unleased mineral interest owners of all tracts nearer to the proposed well than the prescribed minimum lease-line spacing distance. The Commission designee may determine that such a person is not affected only upon written request and a showing by the applicant that:

(i) competent, convincing geological or engineering data indicate that drainage of hydrocarbons from the particular tracts subject to the request will not occur due to production from the proposed well; and

    (ii) notice to the particular operators and unleased mineral interest owners would be unduly burdensome or expensive;

    (B) engineering and/or geological data, including a written explanation of each exhibit, showing that the drilling of a well on substandard acreage is necessary to prevent waste or to prevent the confiscation of property;

    (C) additional data requested by the Commission designee.

  (2) Notice of application. Upon receipt of a complete application, the Commission will give notice of the application by mail to all affected persons for whom signed waivers have not been submitted.

  (3) Approval without hearing. If the Commission designee determines, based on the data submitted, that a permit requiring an exception to the applicable density provision is justified according to subsection (f) of this section, then the Commission designee may issue the exception permit administratively if:

    (A) signed waivers from all affected persons were submitted with the application; or

    (B) notice of application was given in accordance with paragraph (2) of this subsection and no protest was filed within 21 days of the notice; or

    (C) no person appeared to protest the application at a hearing scheduled pursuant to paragraph (4)(A) of this subsection.

  (4) Hearing on the application.

    (A) If a written protest is filed within 21 days after the notice of application is given in accordance with paragraph (2) of this subsection, the application will be set for hearing.

    (B) If the application is not protested and the Commission designee determines that a permit requiring an exception to the applicable density provision is not justified according to subsection (f) of this section, the operator may request a hearing to consider the application.

(i) Duration. A permit is issued as an exception to the applicable density provision shall expire two years from the effective date of the permit; unless drilling operations are commenced in good faith within the two year period.

---

**Source Note:** The provisions of this §3.38 adopted to be effective November 1, 1989, 14 TexReg 5255; amended to be effective April 21, 1997, 22 TexReg 3404; amended to be effective July 10, 2000, 25 TexReg 6487; amended to be effective June 11, 2001, 26 TexReg 4088; amended to be effective February 13, 2002, 27 TexReg 906; amended to be effective September 1, 2004, 29 TexReg 8271

Next Page          Previous Page

List of Titles          Back to List

HOME | TEXAS REGISTER | TEXAS ADMINISTRATIVE CODE | OPEN MEETINGS | HELP |

Figure: 16 TAC §3.38(b)(2)(A)

| Spacing Rule | Acreage Requirement |
|---|---|
| (1) 150 - 300 | 2 |
| (2) 200 - 400 | 4 |
| (3) 330 - 660 | 10 |
| (4) 330 - 933 | 20 |
| (5) 467 - 933 | 20 |
| (6) 467 - 1200 | 40 |
| (7) 660 - 1320 | 40 |

| VAQUILLAS UNPROVEN MINERALS, LTD, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| Plaintiff, | § § § | |
| v. | § § | WEBB COUNTY, TEXAS |
| CONOCOPHILLIPS COMPANY, | § § | |
| Defendant. | § § | 406TH JUDICIAL DISTRICT |

**DEFENDANT CONOCOPHILLIPS COMPANY'S RESPONSE TO PLAINTIFF
VAQUILLAS UNPROVEN MINERALS, LTD.'S FIRST SET OF INTERROGATORIES**

Defendant ConocoPhillips Company, acting pursuant to Tex. R. Civ. P. 197, responds to Plaintiff's First Set of Interrogatories as shown on the attached pages.

By Rule 11 agreement between counsel for Plaintiff and Defendant, ConocoPhillips' time for responding to these interrogatories was extended to and including July 7, 2014.

ConocoPhillips objects to the "Definitions" set forth on pages 4-5 of Plaintiff's First Set of Interrogatories as follows:

1.     ConocoPhillips objects to the twenty-one "Definitions" in their entirety for the reason that they consist mainly of boilerplate "definitions," not tailored to Plaintiff's First Set of Interrogatories. For example, they include instructions "to produce" documents, which is not the proper function of interrogatories. As another example, the definitions include many words never used in Plaintiff's interrogatories. ConocoPhillips declines to attempt to comply with Plaintiff's boilerplate definitions, but instead will comply with the requirements of Tex. R. Civ. P. 195.

2.     ConocoPhillips objects to the definitions of "documents" and "records." This "definition" was obviously not written to be used with interrogatories because it talks about

EXHIBIT
A-3

which it relies established units of different sizes from 40 acres for oil wells and 640 acres for gas wells, then that is wrong, and ConocoPhillips denies it.

14. Identify by the Well name(s) used in the Partial Releases and the corresponding API Number each Well you contend entitles you to any Retained Acreage pursuant to the Vaquillas Leases.

ANSWER: Objection: ConocoPhillips objects to this interrogatory because it is vague and ambiguous.

Subject to the foregoing objection, the Partial Releases described in Plaintiff's Definition 19 provide well names and numbers, and ConocoPhillips does not understand what more Plaintiff wants other than API numbers. The API numbers are equally available to Plaintiff from public sources as they are available to ConocoPhillips; but ConocoPhillips will attach, as Exhibit A to these Answers to Interrogatories, a map from which Plaintiff's counsel may derive API numbers.

15. Identify by API Number any Wells located on the acreage covered by the Vaquillas Leases that were not drilled by or for Conoco under the Vaquillas Leases but in which Conoco owns an interest.

ANSWER: Objection: ConocoPhillips objects to this interrogatory because it is incomprehensible, vague, and ambiguous. It asks about "Wells," which Plaintiff defines in its Definition 16 as "wells drilled by or for Conoco," but this interrogatory purports to inquire of wells "not drilled by or for Conoco," so the interrogatory contradicts itself. The interrogatory also appears to ask whether ConocoPhillips owns an interest in Wells on acreage covered by the Vaquillas Leases, but that are not subject to the Vaquillas Leases, yet Plaintiff's definition of "Wells" states they were drilled under the terms of the Vaquillas Leases. ConocoPhillips cannot be required to guess or speculate what Plaintiff is asking.

16. Identify by API Number and rig release date the Final Well completed or abandoned during Conoco's drilling and reworking operations engaged in on and after November 1, 1990 on the 26,622.79 Acre Lease.

ANSWER: The well was the Vaquillas A-7 249, API No. 42-479-41635.

17. State the date you contend to be the 90th day after completion or abandonment of the Final Well at which time a written release of acreage was to be provided pursuant to Paragraph 18 of the 26,622.79 Acre Lease.

ANSWER: ConocoPhillips believes the relevant date was June 21, 2012.

18. Identify by API Number and rig release date the Final Well completed or abandoned during Conoco's drilling and reworking operations engaged in on and after November 1, 1990 on the 6,740 Acre Lease.

Dated: July 7, 2014

Respectfully submitted,

_Michael Powell_
Michael V. Powell
  State Bar No. 16204400
Email: mpowell@lockelord.com
Elizabeth L. Tiblets
  State Bar No. 24066194
Email: etiblets@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Tel:    214-740-8520
Fax:    214-740-8800

Adolfo Campero
  State Bar No. 00793454
CAMPERO & ASSOCIATES, P.C.
315 Calle Del Norte, Suite 207
Laredo, Texas 78041
Tel:    956-796-0330
Fax:    956-796-0399
Email: acampero@camperolaw.com

**ATTORNEYS FOR DEFENDANT
CONOCOPHILLIPS COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant's Response to Plaintiff's First Set of Interrogatories was served via email on the following counsel of record for Plaintiff as stated on this 7th day of July 2014:

Gregg Owens
Email: gregg.owens@haysowens.com
Robert G. Hargrove
Email: rob.hargrove@haysowens.com
Hays & Owens L.L.P.
807 Brazos Street, Suite 500
Austin, Texas 78701
Tel:     512.472.3993
Fax:     512.472.3883

Raul Leal
Raul Leal Incorporated
5810 San Bernardo, Suite 390
Laredo, Texas 78041
Tel:     956.727.0039
Fax:     956.727.0369
Email: rleal@rl-lawfirm.com

Michael Jung
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Tel:     214.651.4724
Fax:     214.651.4330 (main)
Fax:     214.659.4022 (direct)
Email: michael.jung@strasburger.com

Armando X. Lopez
1510 Calle Del Norte, Suite 16
Laredo, Texas 78041
Tel: (956) 726-0722
Fax: (956) 726-6049
mandox@rio.bravo.net

*Counsel for Vaquillas Unproven Minerals, Ltd.*


_____
Michael V. Powell

**OIL AND GAS DOCKET**
**NO. 04-0217435**

## FINAL ORDER
### CONSOLIDATING VARIOUS FIELDS INTO A NEW FIELD CALLED THE VAQUILLAS RANCH (LOBO CONS.) FIELD AND ADOPTING FIELD RULES FOR THE VAQUILLAS RANCH (LOBO CONS.) FIELD WEBB COUNTY, TEXAS

The Commission finds that after statutory notice in the above-numbered docket heard on October 8, 1997, the presiding examiner has made and filed a report and recommendation containing findings of fact and conclusions of law, for which service was not required; that the proposed application is in compliance with all statutory requirements; and that this proceeding was duly submitted to the Railroad Commission of Texas at conference held in its offices in Austin, Texas.

The Commission, after review and due consideration of the examiner's report and recommendation, the findings of fact and conclusions of law contained therein, hereby adopts as its own the findings of fact and conclusions of law contained therein, and incorporates said findings of fact and conclusions of law as if fully set out and separately stated herein.

Therefore, it is ordered by the Railroad Commission of Texas that the following fields located in Webb County, Texas, are hereby combined into a new field called the Vaquillas Ranch (Lobo Cons.) Field (No. _93215 400_ ):

| | |
|---|---|
| BALTAZAR (LOBO 6 10470) FIELD | 05357 400 |
| BARNSLEY (LOBO 10900) FIELD | 05791 800 |
| BARNSLEY (LOBO) FIELD | 05791 400 |
| BONEBRAKE (LOBO 6) FIELD | 10419 500 |
| BONEBRAKE (UPPER LOBO) FIELD | 10419 800 |
| CALICHE CREEK (LOBO) FIELD | 14735 225 |
| CARR (LOBO 10100) FIELD | 15874 350 |
| CARR (LOBO 8300) FIELD | 15874 235 |
| CARR (LOBO 8600) FIELD | 15874 250 |
| CARR (LOBO 8700) FIELD | 15874 275 |
| CARR (LOBO) FIELD | 15874 200 |
| CARR (WILCOX 8200) FIELD | 15874 600 |
| CARR (WILCOX 8300) FIELD | 15874 700 |
| CARR (WILCOX) FIELD | 15874 500 |
| CATTO (LOBO 9900) FIELD | 16405 400 |
| CATTO (LOBO 10200) FIELD | 16405 500 |

**EXHIBIT**

A-4

| Field | | |
|---|---|---|
| DESPARADO (LOBO 6) FIELD | 24394 | 500 |
| DIAMONDBACK (LOBO 3) FIELD | 24574 | 400 |
| GATO CREEK (9800) FIELD | 34238 | 400 |
| GATO CREEK (LOBO 1) FIELD | 34238 | 300 |
| GATO CREEK (LOBO 1-SEGA) FIELD | 34238 | 325 |
| GATO CREEK (LOBO 3) FIELD | 34238 | 350 |
| GATO CREEK (LOBO 6 SEGMENT A) FIELD | 34238 | 375 |
| GATO CREEK, SE (9800) FIELD | 34242 | 980 |
| GATO CREEK, SE (LOBO 1) FIELD | 34242 | 500 |
| GATO CREEK, SE (UP. LOBO STRAY) FIELD | 34242 | 750 |
| HIRSCH (LOBO 9746) FIELD | 41659 | 075 |
| JURASCHEK (LOBO) FIELD | 47740 | 500 |
| JURASCHEK (WILCOX 11600) FIELD | 47740 | 600 |
| LUNDELL (LOBO 9200) FIELD | 55755 | 180 |
| LUNDELL (LOBO) FIELD | 55755 | 175 |
| MCLEAN (LOBO) FIELD | 59725 | 500 |
| MUJERES CREEK (LOBO 1) FIELD | 63668 | 300 |
| MUJERES CREEK (LOBO 3) FIELD | 63668 | 400 |
| MUJERES CREEK (LOBO 6) FIELD | 63668 | 500 |
| MUJERES CREEK (LOBO) FIELD | 63668 | 250 |
| MUJERES CREEK, SOUTH (LOBO) FIELD | 63670 | 500 |
| NICHOLSON (LOBO 3) FIELD | 65469 | 020 |
| NORDAN (LOBO) FIELD | 65934 | 500 |
| POZO (LOBO) FIELD | 72838 | 500 |
| RANCHO VIEJO, S. (LOBO 6) FIELD | 74570 | 100 |
| RANCHO VIEJO (LOBO 3) FIELD | 74568 | 680 |
| RANCHO VIEJO (LOBO 6) FIELD | 74568 | 700 |
| VAQUILLAS RANCH (LOBO 8100) FIELD | 93215 | 450 |
| VAQUILLAS RANCH (UP. LOBO STRAY) FIELD | 93215 | 600 |
| VAQUILLAS RANCH (WALKER 8300) FIELD | 93215 | 680 |
| VAQUILLAS RANCH (WALKER 8600) FIELD | 93215 | 690 |
| VAQUILLAS RANCH (WALKER, N.) FIELD | 93215 | 670 |
| VAQUILLAS RANCH (WILCOX 11,100) FIELD | 93215 | 700 |
| VAQUILLAS RANCH (WILCOX 11,600) FIELD | 93258 | 750 |
| VAQUILLAS RANCH (WILCOX 11,900) FIELD | 93215 | 725 |
| VAQUILLAS RANCH (YARSA) FIELD | 93258 | 900 |
| VENADA (9800) FIELD | 93436 | 800 |
| VENADA (LOBO) FIELD | 93436 | 300 |
| VERGARA (LOBO 9300) FIELD | 93537 | 750 |
| VERGARA (LOBO) FIELD | 93537 | 500 |

It is further ordered that the following rules are adopted for the Vaquillas Ranch (Lobo Cons.) Field:

RULE 1:      The entire Lobo Formation from the Lobo Unconformity to the top of the Wills Point (Midway Shale) and including the above listed fields in Webb County, Texas, shall be designated as a single reservoir for proration purposes and be designated as the Vaquillas Ranch (Lobo Cons.) Field.

RULE 2:  No gas well shall hereafter be drilled nearer than FOUR HUNDRED SIXTY SEVEN (467) feet to any property line, lease line or subdivision line and no well shall be drilled nearer than ONE THOUSAND TWO HUNDRED (1,200) feet to any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract.  The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the other rules to follow are for the purpose of permitting only one well to each drilling and proration unit.  Provided however, that the Commission will grant exceptions to permit drilling within shorter distances and drilling more wells than herein prescribed whenever the Commission shall have determined that such exceptions are necessary either to prevent waste or to prevent the confiscation of property.  When exception to these rules is desired, application therefore shall be filed and will be acted upon in accordance with the provisions of Commission Statewide Rule 37 and 38, which applicable provisions of said rule are incorporated herein by reference.  Provided however, that persons who are presumed to be affected by a request for an exception to the between-well spacing requirement shall be limited to the operators and owners/lessees of tracts, lease or units within one mile or less of the proposed well.

In applying this rule the general order of the Commission with relation to the subdivision of property shall be observed.

RULE 3:  The daily allowable production of gas from individual wells completed in the subject field shall be determined by allocating the allowable production, after deductions have been made for wells which are incapable of producing their gas allowables, among the individual wells in the following manner:

TEN percent (10%) of the total field allowable shall be allocated equally among the individual wells producing from this field.

NINETY percent (90%) of the total field allowable shall be allocated among the individual wells in the proportion that the deliverability of such well, as evidenced by the most recent G-10 test filed with the Railroad Commission bears to the summation of the deliverability of all proratable wells producing from this field.

It is further ordered by the Railroad Commission of Texas that the allocation formula for the Vaquillas Ranch (Lobo Cons.) Field be suspended.  The allocation formula may be reinstated administratively if the market demand for gas in the Vaquillas Ranch (Lobo Cons.) Field drops below 100% of deliverability.  If the market demand for gas in the Vaquillas Ranch (Lobo Cons.) Field drops below 100% of deliverability while the allocation formula is suspended, the operator shall immediately notify the Commission and the allocation formula shall be immediately

reinstated.  Failure to give such notice to the Commission may result in a fine (as provided for in Tex. Nat. Res. Code §86.222) for each day the operators fail to give notice to the Commission.

Effective this 24th day of February _____, 1998.

RAILROAD COMMISSION OF TEXAS

CHAIRMAN

COMMISSIONER

COMMISSIONER

ATTEST:

Secretary

RAILROAD COMMISSION OF TEXAS

STATE OF TEXAS

COUNTY OF TRAVIS

I hereby certify that the information on the reverse side hereof, and on the securely attached additional 3 pages identified by certification # 105376 are true and correct copies of documents on file with Railroad Commission of Texas, and I further certify that I am the legal custodian of the records, files and seal of the Railroad Commission of Texas.

august 5 2014

SECRETARY

CERTIFICATION NO.
105376 AUG -5 14

Railroad Commission
OF TEXAS

CHARLES R. MATTHEWS, *CHAIRMAN*
BARRY WILLIAMSON, *COMMISSIONER*
CAROLE KEETON RYLANDER, *COMMISSIONER*

LINDIL C. FOWLER, JR., *GENERAL COUNSEL*
LARRY BORELLA, *ASST. DIRECTOR*
OIL & GAS SECTION



# RAILROAD COMMISSION OF TEXAS
## OFFICE OF GENERAL COUNSEL

February 24, 1998

## OIL AND GAS DOCKET NO. 04-0217435

---

## THE APPLICATION OF CONOCO INC. TO CONSIDER CONSOLIDATION OF VARIOUS FIELDS INTO A NEW FIELD CALLED THE VAQUILLAS RANCH (LOBO CONS.) FIELD, WEBB COUNTY

---

**Heard by:** Donna K. Chandler on October 8, 1997

**Appearances:**

| Appearances: | Representing: |
|---|---|
| Ron Schultz | Conoco Inc. |
| Gary Compton | |
| Kerry Pollard | |
| Oracio Estrada | |
| | |
| James Doherty | Sonat Exploration Co.-Houston |
| | |
| Don Rhodes | Hurd Enterprises LTD |

### EXAMINER'S REPORT AND RECOMMENDATION

### STATEMENT OF THE CASE

Conoco Inc. requests that 56 fields be consolidated into a new field to be called the Vaquillas Ranch (Lobo Cons.) Field. Conoco further requests that the following rules be adopted for the new field:

1.  Designation of the Vaquillas Ranch (Lobo Cons.) Field as the entire Lobo Formation described as the interval from the Lobo unconformity to the Wills Point (Midway Shale);

2.  Well spacing a minimum of 467 feet from lease lines and 1,200 feet between wells.

3.  Allocation based on 90% deliverability and 10% per well.

Conoco also requests that the allocation formula in the consolidated field be suspended.

1701 NORTH CONGRESS AVENUE ★ POST OFFICE BOX 12967 ★ AUSTIN, TEXAS 78711-2967 ★ PHONE: 512/463-6924 FAX: 512/463-6989
TDD 800-735-2989 OR TDY 512-463-7284     AN EQUAL OPPORTUNITY EMPLOYER     http://www.rrc.state.tx.us

At the hearing, Conoco amended its application to include 4 fields which had not been included in the Notice of Hearing and delete 4 fields which had been included in the Notice of Hearing.

After the hearing, Conoco requested that, in conjunction with the proposed 467 f-1,200' well spacing rule, that persons presumed to be affected by a between-well spacing exception be limited to operators and owners/lessees of tracts, leases or units within one mile or less of the proposed well. Notice of this request was given to all operators in the fields and no objections were received. The examiner recommends approval of the field consolidation, adoption of the proposed field rules and suspension of the allocation formula.

## DISCUSSION OF THE EVIDENCE

The fields proposed for consolidation into the Vaquillas Ranch (Lobo Cons.) Field were all discovered after 1981. All are Lobo gas reservoirs and most operate under Statewide rules. The allocation formula in each field is currently suspended.

There are currently more than 600 active wells in the 56 fields. Current average production is 320 MCFD per well, with a range from less than 50 MCFD to over 1,200 MCFD. Cumulative production from the fields is over 1 TCF of gas.

It is proposed that the consolidated field interval include the entire Lobo Formation from the base of the Lobo Unconformity to the top of the Wills Point (Midway Shale). The depth interval is generally approximately 7,200 feet to 9,700 feet.

With consolidation, wells can be produced to a lower economic limit. Conoco estimates that incremental recovery per new well will be a minimum of 25 MMCF. Conoco plans to drill approximately 400 new wells in this area, resulting in additional recovery of 10,000 MMCF.

Because the proposed consolidated field consists of numerous productive zones, a two-factor allocation formula is necessary. The proposed two-factor allocation formula based on 10% per well and 90% deliverability satisfies this requirement.

The allocation formula in each field is currently suspended. It is therefore appropriate to suspend the allocation formula in the consolidated field.

## FINDINGS OF FACT

1.      Notice of this hearing was sent to all affected persons in the subject area field at least ten (10) days prior to the subject hearing.

2.      The 56 fields proposed for consolidation into the Vaquillas Ranch (Lobo Cons.) Field were all discovered after 1980 and are all non-associated Lobo gas reservoirs.

3. There are currently more than 600 active wells in the 56 fields and current average production is 320 MCFD per well. Cumulative production from the 56 fields is over 1 TCF of gas.

4. The Lobo Formation in this area is found from approximately 7,200 feet to approximately 9,600 feet.

5. It is estimated that a minimum incremental recovery of 25 MMCF per new well will result from the consolidation and approximately 400 new wells are planned for this area.

6. The proposed two-factor allocation formula based on 10% per well and 90% deliverability is a reasonable formula which will protect the correlative rights of mineral owners in the fields.

7. The allocation formula in each field is currently suspended.

## CONCLUSIONS OF LAW

1. Proper notice was given to all parties as set out in the provisions of all applicable codes and regulatory statutes.

2. All things have occurred and been accomplished to give the Commission jurisdiction in this matter.

3. Approval of the proposed field consolidation, adoption of the proposed field rules and suspension of the allocation formula will prevent waste and will not harm correlative rights.

## EXAMINER'S RECOMMENDATION

Based on the above findings and conclusions of law, the examiner recommends approval of the field consolidation and adoption of the field rules for the Vaquillas Ranch (Lobo Cons.) Field. It is further recommended that the allocation formula in the consolidated field be suspended.

Respectfully submitted,

Donna K. Chandler
Technical Examiner

RAILROAD COMMISSION OF TEXAS

STATE OF TEXAS
COUNTY OF TRAVIS

   I hereby certify that the information on the reverse side hereof, and on the securely attached additional pages identified by certification # _105375_ are true and correct copies of documents on file with Railroad Commission of Texas, and I further certify that I am the legal custodian of the records, files and seal of the Railroad Commission of Texas.

Date: august 5, 2014

CERTIFICATION NO.

105375 AUG -5-14

RAILROAD COMMISSION
OF TEXAS

# RAILROAD COMMISSION OF TEXAS
## OFFICE OF GENERAL COUNSEL

**OIL AND GAS DOCKET**
**NO. 04-0265630**

**IN THE VAQUILLAS RANCH (LOBO CONS.) FIELD, WEBB COUNTY, TEXAS**

## FINAL ORDER
## AMENDING FIELD RULES FOR THE
## VAQUILLAS RANCH (LOBO CONS.) FIELD
## WEBB COUNTY, TEXAS

The Commission finds that after statutory notice in the above-numbered docket heard on September 23, 2010, the presiding examiner has made and filed a report and recommendation containing findings of fact and conclusions of law, for which service was not required; that the proposed application is in compliance with all statutory requirements; and that this proceeding was duly submitted to the Railroad Commission of Texas at conference held in its offices in Austin, Texas.

The Commission, after review and due consideration of the examiner's report and recommendation, the findings of fact and conclusions of law contained therein, hereby adopts as its own the findings of fact and conclusions of law contained therein, and incorporates said findings of fact and conclusions of law as if fully set out and separately stated herein.

Therefore, it is ordered by the Railroad Commission of Texas that Rule 2 of the field rules adopted in Final Order No. 04-0217435, effective February 24, 1998, for the Vaquillas Ranch (Lobo Cons.) Field, Webb County, Texas, is amended as hereafter set out:

**RULE 2**: No well shall hereafter be drilled nearer than FOUR HUNDRED SIXTY SEVEN (467) feet to any property line, lease line or subdivision line and no well shall be drilled nearer than ONE THOUSAND TWO HUNDRED (1,200) feet to any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract. Provided, however, there is no minimum between-well spacing requirement between a well being permitted at least 660 feet from the nearest property line, lease line or subdivision line, and the other wells permitted, drilled or completed on the same lease, pooled unit or unitized tract. A well being permitted at a distance less than SIX HUNDRED SIXTY (660) feet from the nearest property line, lease line or subdivision line must be a minimum of ONE THOUSAND TWO HUNDRED (1,200) feet from any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract, or an exception to Rule 37 must be obtained.

The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the other rules to follow are for the purpose of permitting only one well to each drilling and proration unit. Provided however, that the Commission will grant exceptions to permit drilling within

shorter distances and drilling more wells than herein prescribed whenever the Commission shall have determined that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exception to these rules is desired, application therefore shall be filed and will be acted upon in accordance with the provisions of Commission Statewide Rule 37 and 38, which applicable provisions of said rule are incorporated herein by reference. Provided however, that persons who are presumed to be affected by a request for an exception to the between-well spacing requirement shall be limited to the operators and owners/lessees of tracts, lease or units within one mile or less of the proposed well.

In applying this rule the general order of the Commission with relation to the subdivision of property shall be observed.

Done this 2nd day of November, 2010.

**RAILROAD COMMISSION OF TEXAS**

**(Order approved and signatures affixed by OGC Unprotested Master Order dated November 2, 2010)**

# RAILROAD COMMISSION OF TEXAS
## OFFICE OF GENERAL COUNSEL
## HEARINGS SECTION

## OGC UNPROTESTED MASTER ORDER

## NOVEMBER 2, 2010

At a public conference held at its offices in Austin, Texas, the Commission finds that after statutory notice, the below referenced proceedings were heard by the examiners and that no party appeared in protest to the requested relief. The Final Orders for each of the below referenced dockets are incorporated by reference into this order, and by signing this Master Order, the Commission approves each of the Final Orders and adopts the provisions contained therein.

| DOCKET NO. | APPLICANT | LEASE, WELL, OR SITE | ORDER TERMS |
|---|---|---|---|
| **Field Rules** | | | |
| 04-0265617 04-0265619 04-0265620 04-0265621 04-0265623 04-0265624 04-0265626 04-0265627 04-0265628 04-0265629 04-0265630 <br><br>(Donna Chandler) | ConocoPhillips | B.M.T. (Lobo Cons.) Field; Benavides (Lobo Cons.) Field; Big Cowboy (Lobo) Field; Dix Ranch (Lower Wilcox Lobo) Field; Exsun (Lobo Cons.) Field; Jennings Ranch (Lobo Cons.) Field; Charco (9900) Field; La Perla (Lobo Cons.) Field, Roleta (7483) Field; Roleta (Wilcox Consolidated) Field; and the Vaquillas Ranch (Lobo Cons.) Field; Webb and Zapata Counties, Texas | Adopt/Amend field rules for the subject fields |
| 08-0267630 (Donna Chandler) | Fasken Oil and Ranch, Ltd. | Lowe, West (Strawn) Field, Andrews County, Texas | Adopt field rules |
| 8A-0267391 (Donna Chandler) | Halliburton Operating Company | Hal-Long (Tannehill) Field, Kent County, Texas | Adopt field rules |
| 06-0267394 (Donna Chandler) | Jamex, Inc. | Starville, East (Travis Peak) Field, Smith County, Texas | Amend filed rules |

| DOCKET NO. | APPLICANT | LEASE, WELL, OR SITE | ORDER TERMS |
|---|---|---|---|
| **Field Rules (Continued)** | | | |
| 06-0267029 (Richard Atkins) | Penn Virginia Oil & Gas, LP | Woodlawn, SW. (Cotton Valley) Field, Harrison County, Texas | Amend field rule No. 2 and adopt field rule No. 5 |
| 06-0267028 (Andy Trevino) | Penn Virginia Oil & Gas L.P. | Woodlawn (Cotton Valley) Field, Harrison and Marion Counties, Texas | Approve field rules |
| 06-0266648 (Andy Trevino) | 3-T Exploration, Inc. | Three T Harris Creek (Paluxy) Field, Smith County, Texas | Approve temporary field rules for 18 months subject to revision. |
| 8A-0267196 (Richard Atkins) | John M. Clark, Inc. | Dust Devil (Silurian) Field, Gaines County, Texas | Approve Temporary Field rules, subject to review in 18 months |
| 04-0267027 (Richard Atkins) | EOG Resources, Inc. | Indian Point (Cheyenne) Field, Nueces County, Texas | Amend the field rules |
| 7C-0267392 (Andy Trevino) | Paint Rock Operating, L.L.C. | Danny Mae (Lower Cisco "A") Field, Menard County, Texas | Approve adopted field rules |
| 10-0267193 (Andy Trevino) | Forest Oil Corporation | Buffalo Wallow (Granite Wash) Field, Hemphill and Wheeler Counties, Texas | Amend field rules |
| 01-0267032 (Andy Trevino) | Newfield Exploration Company | Briscoe Ranch (Eagleford) Field, Dimmit, Maverick, Webb and Zavala Counties, Texas | Amend rules to provide for increased the top allowable from 172 BOPD to 800 BOPD and have unlimited casinghead gas limit |

| DOCKET NO. | APPLICANT | LEASE, WELL, OR SITE | ORDER TERMS |
|---|---|---|---|
| **Field Consolidation and Field Rules** | | | |
| 04-0267026 (Richard Atkins) | EOG Resources, Inc. | Indian Point (Frio Cons.) Field, Nueces and San Patricio Counties, Texas | Approve field consolidation, adopt field rules, and suspend the allocation formula |
| 02-0267115 (Andy Trevino) | Geosouthern Energy Corporation | De Witt (Eagle Ford Shale) Field, De Witt County, Texas | Approve consolidation and temporary field rules |
| **Net-GOR and MER Authority** | | | |
| 09-0267015 (Donna Chandler) | Best Petroleum Explorations, Inc. | Cozart Lease, Well No. 1, Lost Valley (Caddo) Field, Jack County, Texas | Approve MER of 100 BOPD for the Cozart No. 1 and cancel overproduction |
| 06-0267114 (Richard Atkins) | Samson Lone Star, LLC | Huxley (Fredicksburg) Field, Shelby County, Texas | Approve increased Net-GOR authority, and cancel overproduction in the field |
| **Statewide Rule 36** | | | |
| 08-0267194 (Richard Atkins) | Legado Permian, LLC | Goldsmith-Landreth San Andres Unit, Goldsmith Field, Ector County, Texas | Approve Rule 36 authority |
| 8A-0267116 (Andy Trevino) | Sandridge Tertiary, LLC | South Mallet Unit, Slaughter Field, Hockley and Cochran Counties, Texas | Approve Rule 36 authority |
| 05-0267398 (Andy Trevino) | O'Ryan Oil and Gas | Burnett-Sloan Unit, Well No. B2, Trooper (Smackover) Field, Navarro County, Texas | Approve Rule 36 authority |

| DOCKET NO. | APPLICANT | LEASE, WELL, OR SITE | ORDER TERMS |
|---|---|---|---|
| **Unitization and Secondary Recovery Authority** | | | |
| 06-0266709 (Richard Atkins) | Culver & Cain Production LLC | Crow Upper Rodessa Waterflood Unit, Crow (Rodessa, Up.) Field, Wood County, Texas | Approve unitization and secondary recovery authority |
| 05-0266628 (Andy Trevino) | XTO Energy Inc. | Red Oak (Woodbine Dexter) Unit, Red Oak (Dexter) Field, Leon County, Texas | Approve unitization and secondary recovery authority |
| **Supercede** | | | |
| 03-0267263 (James Doherty) | Stonegate Operators, Inc. | Campbell (10085) Lease, Well No. 3, Muscadine (Wilcox 8400) Field, Tyler County, Texas | Supercede the plug only requirements of the Final Order in Enforcement Docket No. 03-0260491 and approve a change of operator |

CERTIFICATION NO.

105386 AUG-7 14

RAILROAD COMMISSION
OF TEXAS

RAILROAD COMMISSION OF TEXAS
STATE OF TEXAS
COUNTY OF TRAVIS

     I hereby certify that the information on the reverse side hereof, and on the securely attached additional 3 pages identified by certification # 105386 are true and correct copies of documents on file with Railroad Commission of Texas, and I further certify that I am the legal custodian of the records, files and seal of the Railroad Commission of Texas.

Date: august 7, 2014

SECRETARY

VICTOR G. CARRILLO, *CHAIRMAN*
ELIZABETH A. JONES, *COMMISSIONER*
MICHAEL L. WILLIAMS, *COMMISSIONER*

LINDIL C. FOWLER, JR., *GENERAL COUNSEL*
COLIN K. LINEBERRY, *DIRECTOR*
*HEARINGS SECTION*



# RAILROAD COMMISSION OF TEXAS

## OFFICE OF GENERAL COUNSEL

**OIL AND GAS DOCKET NO. 04-0265630**

---

**THE APPLICATION OF CONOCOPHILLIPS COMPANY TO AMEND THE FIELD RULES FOR THE VAQUILLAS RANCH (LOBO CONS.) FIELD, WEBB COUNTY, TEXAS**

---

**Heard by:** Donna K. Chandler on September 23, 2010

**Appearances:**                                    **Representing:**

Jamie Nielson                                        ConocoPhillips Company
Greg Cloud
Tod Lippincott

Glenn Johnson                                       Chesapeake Operating, Inc.

## EXAMINER'S REPORT AND RECOMMENDATION

### STATEMENT OF THE CASE

Field rules for the Vaquillas Ranch (Lobo Cons.) Field were adopted on February 24, 1998 in Docket No. 04-0217435. The rules in effect for the field are summarized as follows:

1.  Designation of the field as the correlative interval from the top of the Lobo Unconformity to the top of the Wills Point (Midway Shale);

2.  467'-1,200 well spacing;

3.  Allocation based on 90% deliverability and 10% per well.

ConocoPhillips requests that the spacing rule be amended to eliminate the between-well spacing requirement, as long as the well to be permitted is at least 660 feet from a lease line. If the well to be permitted is less than 660 feet from a lease line, then the well must be 1,200 feet from the nearest well on the lease, or a Rule 37 exception must be obtained.

This application was unprotested and the examiner recommends approval of the requested field rule change.

1701 NORTH CONGRESS AVENUE  ★  POST OFFICE BOX 12967  ★  AUSTIN, TEXAS 78711-2967  ★  PHONE: 512/463-6924  FAX: 512/463-6989
TDD 800-735-2989 OR TDY 512-463-7284                    AN EQUAL OPPORTUNITY EMPLOYER

## DISCUSSION OF THE EVIDENCE

The Vaquillas Ranch (Lobo Cons.) Field was formed in 1998 with the consolidation of numerous fields. The field is classified as associated-prorated with AOF status. There are 593 gas wells on the current schedule and no oil wells.

The subject field is one of 11 fields in the Wilcox Lobo trend in Webb and Zapata Counties for which a change in spacing rule is being requested. The Wilcox throughout the area is highly faulted and as a result of the very complex geology, it is difficult to develop the many separate fault blocks which comprise the various fields. Recent infill wells are encountering fault blocks which have virgin pressure.

Several fields in the area have already adopted a spacing rule which eliminates the between-well spacing requirement. ConocoPhillips is proposing a between-well spacing rule which is more restrictive. The proposed rule eliminates a between-well spacing requirement as long as the well to be permitted is at lease 660 feet from lease lines. If the proposed well is less than 660 feet from lease lines, then the well would require a Rule 37 exception if it is less than 1,200 feet from the nearest well. This rule would allow operators to exploit interior portions of their leases, while still giving notice of a between-well spacing exception to offsetting operators if the proposed location is less than 660 feet from the lease line. Offset operators will be given an opportunity to protest an application if they believe that such location would encounter a fault block which may extend to their property.

## FINDINGS OF FACT

1.  Notice of this hearing was given to all persons entitled to notice at least ten days prior to the date of hearing.

2.  Field rules for the Vaquillas Ranch (Lobo Cons.) Field provide for a designated interval, 467'-1,200' well spacing and allocation based on 90% deliverability and 10% per well.

3.  The Vaquillas Ranch (Lobo Cons.) Field is classified as associated-prorated with AOF status. There are 593 gas wells on the current schedule and no oil wells.

4.  The Wilcox throughout the area of Webb and Zapata Counties is highly faulted. As a result of the very complex geology, it is difficult to develop the many separate fault blocks which comprise the various fields.

5.  Many fields in the Wilcox Lobo trend in Webb and Zapata Counties have rules which eliminate the between-well spacing requirement.

6. The spacing rule proposed by ConocoPhillips eliminates a between-well spacing requirement as long as the well to be permitted is at lease 660 feet from lease lines. The proposed rule will provide for ease of development of interior portions of leases.

## CONCLUSIONS OF LAW

1. Proper notice of this hearing was given to all persons legally entitled to notice.

2. All things have occurred or been accomplished to give the Railroad Commission jurisdiction in this matter.

3. Amending the spacing rule for the Vaquillas Ranch (Lobo Cons.) Field is necessary to prevent waste and protect correlative rights.

## EXAMINER'S RECOMMENDATION

Based on the above findings and conclusions, the examiner recommends that the spacing rule for the Vaquillas Ranch (Lobo Cons.) Field be amended as proposed by ConocoPhillips.

Respectfully submitted,

Donna K. Chandler
Technical Examiner

CERTIFICATION NO.

105384 AUG-7 14

RAILROAD COMMISSION
OF TEXAS

RAILROAD COMMISSION OF TEXAS
STATE OF TEXAS
COUNTY OF TRAVIS

I hereby certify that the information on the reverse side hereof, and on the securely attached additional 2 pages identified by certification # 105384 are true and correct copies of documents on file with Railroad Commission of Texas, and I further certify that I am the legal custodian of the records, files and seal of the Railroad Commission of Texas.

Date: august 7, 2014

SECRETARY

| API No. 42-479-41635 | RAILROAD COMMISSION OF TEXAS | FORM W-1 07/2004 |
|---|---|---|
| Drilling Permit # 730240 | OIL & GAS DIVISION | Permit Status: Approved |
| SWR Exception Case/Docket No. | APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER | |

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

| 1. RRC Operator No. 172232 | 2. Operator's Name (as shown on form P-5, Organization Report) CONOCOPHILLIPS COMPANY | 3. Operator Address (include street, city, state, zip): |
|---|---|---|
| 4. Lease Name VAQUILLAS RANCH A7 | 5. Well No. 249 | |

## GENERAL INFORMATION

6. Purpose of filing (mark ALL appropriate boxes): [X] New Drill   [ ] Recompletion   [ ] Reclass   [ ] Field Transfer   [ ] Re-Enter
[ ] Amended   [ ] Amended as Drilled (BHL) (Also File Form W-1D)

7. Wellbore Profile (mark ALL appropriate boxes): [ ] Vertical   [ ] Horizontal (Also File Form W-1H)   [X] Directional (Also File Form W-1D)   [ ] Sidetrack

*EXHIBIT A-6*

| 8. Total Depth 12150 | 9. Do you have the right to develop the minerals under any right-of-way? [X] Yes [ ] No | 10. Is this well subject to Statewide Rule 36 (Hydrogen sulfide area)? [ ] Yes [X] No |
|---|---|---|

## SURFACE LOCATION AND ACREAGE INFORMATION

| 11. RRC District No. 04 | 12. County WEBB | 13. Surface Location [X] Land [ ] Bay/Estuary [ ] Inland Waterway [ ] Offshore |
|---|---|---|

14. This well is to be located ___10.9___ miles in a ___NE___ direction from ___Aguilares___ which is the nearest town in the county of the well site.

| 15. Section 259 | 16. Block | 17. Survey CCSD&RGNG RR CO | 18. Abstract No. A-1137 | 19. Distance to nearest lease line: 1066 ft. | 20. Number of contiguous acres in lease, pooled unit, or unitized tract: 640 |
|---|---|---|---|---|---|

21. Lease Perpendiculars: ___1166___ ft from the ___WEST___ line and ___1480___ ft from the ___NORTH___ line.

22. Survey Perpendiculars: ___1166___ ft from the ___WEST___ line and ___1480___ ft from the ___NORTH___ line.

23. Is this a pooled unit? [ ] Yes [X] No   24. Unitization Docket No:   25. Are you applying for Substandard Acreage Field? [ ] Yes (attach Form W-1A) [X] No

## FIELD INFORMATION   List all fields of anticipated completion including Wildcat. List one zone per line.

| 26. RRC District No. | 27. Field No. | 28. Field Name (exactly as shown in RRC records) | 29. Well Type | 30. Completion Depth | 31. Distance to Nearest Well in this Reservoir | 32. Number of Wells on this lease in this Reservoir |
|---|---|---|---|---|---|---|
| 04 | 93215400 | VAQUILLAS RANCH (LOBO CONS.) | Oil or Gas Well | 10650 | 0.00 | 1 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

BOTTOMHOLE LOCATION INFORMATION is required for DIRECTIONAL, HORIZONTAL, AND AMENDED AS DRILLED PERMIT APPLICATIONS   (see W-1D attachment)

**Remarks**
[RRC STAFF Dec 21, 2011 4:40 PM]: Manual review ok for density.

**Certificate:**
I certify that information stated in this application is true and complete, to the best of my knowledge.

Christina Gustartis, Sr. Regulatory Specialist     Dec 19, 2011
Name of filer      Date submitted

| RRC Use Only   Data Validation Time Stamp:   Dec 21, 2011 4:44 PM( 'As Approved' Version ) | (832)4862463 Phone | christina.gustartis@conocophillips.com E-mail Address (OPTIONAL) |
|---|---|---|

| Permit Status: | Approved |
| --- | --- |

The RRC has not approved this application. Duplication or distribution of information is at the user's own risk.

**RAILROAD COMMISSION OF TEXAS**
**OIL & GAS DIVISION**

**APPLICATION FOR PERMIT TO DRILL, RECOMPLETE, OR RE-ENTER**

*This facsimile W-1 was generated electronically from data submitted to the RRC.*
*A certification of the automated data is available in the RRC's Austin office.*

**Form W-1D**          07/2004
Supplemental Directional Well Information

| Permit # | 730240 |
| --- | --- |

Approved Date: Dec 21, 2011

| 1. RRC Operator No. | 2. Operator's Name (exactly as shown on form P-5, Organization Report) | 3. Lease Name | 4. Well No. |
| --- | --- | --- | --- |
| 172232 | CONOCOPHILLIPS COMPANY | VAQUILLAS RANCH A7 | 249 |

**Lateral Drainhole Location Information**

5. Field as shown on Form W-1    VAQUILLAS RANCH (LOBO CONS.)  (Field # 93215400, RRC District  04)

| 6. Section | 7. Block | 8. Survey | 9. Abstract | 10. County of BHL |
| --- | --- | --- | --- | --- |
| 259 | | CCSD&RGNG RR CO | 1137 | WEBB |

11. Botton hole  Lease Line  Perpendiculars

_____1066_____ ft. from the _____West_____ line. and _____1478_____ ft. from the _____North_____ line

12. Bottom hole Survey Line Perpendiculars #

_____1066_____ ft. from the _____West_____ line. and _____1478_____ ft. from the _____North_____ line



SURVEY 36
C.C.S.D. & R.G.N.G.R.R.CO.
ABSTRACT 1036
SURVEYED OCTOBER 20, 1879

SURVEY 18
D.F. FELPS
ABSTRACT 2727
SURVEYED OCTOBER 17, 1879

1,478' FNL LEASE
1,478'± FNL SURVEY
1,480' FNL LEASE
1,480'± FNL SURVEY

PROPOSED SURFACE LOCATION IS
N 33'25' E ~ 10.9 MILES
FROM (AGUILARES, TEXAS)

1,166' FWL LEASE
1,166'± FWL SURVEY

1,320'

Vaquillas Ranch
A7 249 (PSHL)

1,320'

1,066' FWL LEASE
1,066'± FWL SURVEY

87'

SEE
DETAIL

40 AC.
DRLG.
UNIT

Vaquillas Ranch
A7 249 (PBHL)

CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH A7 249
640.00 ACRES (CALLED)

SURVEY 33
C.C.S.D. & R.G.N.G.R.R.CO.
ABSTRACT 1044
SURVEYED OCTOBER 18, 1879

SURVEY 259
C.C.S.D. & R.G.N.G.R.R.CO.
ABSTRACT 1137
SURVEYED AUGUST 25, 1885

SURVEY 264
G.C. & S.F.R.R.Co.
ABSTRACT 3302
SURVEYED NOVEMBER 10, 1964

LEASE LINE

LEASE LINE

DETAIL: NOT TO SCALE

100'

Vaquillas Ranch
A7 249 (PBHL)

Vaquillas Ranch
A7 249 (PSHL)

NORTH HALF SURVEY 34
R.O. BARNESLEY
ABSTRACT 2816
SURVEYED JULY 12, 1922

SURVEY 260
ERNEST C. GASSER
ABSTRACT 2607
CORRECTED
SURVEYED JULY 3, 1964

| Revision | Date |
|----------|----------|
| 1 | 12-07-11 |
| 2 | |
| 3 | |
| 4 | |

GRAPHIC SCALE
500    0   250  500      1000                    2000
( IN FEET )
1 inch = 1000 FT.

## VAQUILLAS RANCH A7 249
STATE PLANE COORDINATES – TEXAS SOUTH ZONE – NAD 1927:
### PROPOSED SURFACE LOCATION (PSHL)
N: 697090          E: 1841121

GEOGRAPHIC NAD 27:    Lat.: 27'35'01"    Long.: 98'59'26"
GEOGRAPHIC NAD 83:    Lat.: 27'35'02"    Long.: 98'59'27"
ELEVATION: 674'
LEASE: 1,166' FWL & 1,480 FNL SURVEY: 1,166'± FWL & 1,480'± FNL

WARNING: THIS PLAT MAY NOT SHOW ALL CROSSINGS OF PIPELINES OR CABLES. USE THE TEXAS ONE CALL SYSTEM BEFORE EXCAVATION ON THIS PROPERTY.

### PROPOSED BOTTOM HOLE (PBHL)
N: 697090          E: 1841021
LEASE: 1,066' FWL & 1,478' FNL SURVEY: 1,066'± FWL & 1,478'± FNL

LEGEND
///////// = LEASE LINE
———— = SURVEY LINE
— — — = PERPENDICULAR TIES

## HOWLAND ENGINEERING AND SURVEYING CO., INC.
7615 N. Bartlett Avenue, Laredo, Texas 78041
OFFICE: (956) 722-4411 FAX: (956) 728-8417
T8PE Firm Registration No. F-4097      TBPLS Firm Registration No. 100161-00

This Plat represents a WELL LOCATION survey reported from on on the ground survey, deeds and other available information. This is NOT intended to be a boundary survey, but for the sole purpose of filing with the Texas Railroad Commission for a drilling permit. This plat is for the exclusive use of CONOCOPHILLIPS COMPANY.

R.P.L.S. No. 5726 –TEXAS

### CONOCOPHILLIPS COMPANY
VAQUILLAS RANCH A7 249 LEASE
640.00 ACRES (CALLED)
SITUATED IN
SURVEY 259, C.C.S.D. & R.G.N.G.R.R. CO., ABSTRACT 1137
WEBB COUNTY, TEXAS

| FIELD DATE | BOOK | PAGE(s) |
|------------|------|---------|
| 11–29–11 | 771 | 01–02 |
| | | |
| | | |

| DRAWN BY: | L.A.F. |
|-----------|--------|
| JOB No. | 20832–11 |
| SCALE: | 1"=1000' |
| QUAD NAME: | Mills Bennett SW |

CERTIFICATION NO.

I 0 5 6 8 I   AUG 25 14

RAILROAD COMMISSION
OF TEXAS

RAILROAD COMMISSION OF TEXAS
STATE OF TEXAS
COUNTY OF TRAVIS

     I hereby certify that the information on the reverse side hereof, and on the securely attached additional _2_ pages identified by certification # _I 0 5 6 8 I_ are true and correct copies of documents on file with Railroad Commission of Texas, and I further certify that I am the legal custodian of the records, files and seal of the Railroad Commission of Texas.

Date: _08/25/14_ _Carmen Caldera_
_deputy_

OIL AND GAS DOCKET NOS. 104,
124, 125, 126, 128, 129, and
140

IN RE: CONSERVATION AND PREVENTION OF
WASTE OF CRUDE PETROLEUM AND
NATURAL GAS IN THE STATE OF
T E X A S

20 - *31,866*

Austin, Texas

*August 15,* 1955

SPECIAL ORDER
PERTAINING TO DENSITY OF DEVELOPMENT IN ALL FIELDS
WHERE STANDARD PRORATION UNITS HAVE NOT BEEN ADOPTED,
STATE OF TEXAS

WHEREAS, The Commission has, from time to time, held hearings and from evidence adduced therefrom, promulgated and adopted certain spacing rules with varying distances for various fields. The Commission has also established a certain spacing rule in its Conservation Rules of Statewide Application applicable to and governing the spacing of wells in fields prior to the adoption of special rules therefor, and also governing fields which, due to their advanced stage of development without specific regulation, have been allowed to operate under the Statewide Rules; and

WHEREAS, In the above described fields it has been the practice of the Commission to restrict development to the regular spacing pattern established so that such development would be orderly and in the best interest of prevention of waste and conservation of oil and gas, and further, so that all parties subjected to such spacing pattern, as near as it was possible to do so, would be given equal opportunity to develop each separate tract without undue advantage accruing to any of said parties; and

WHEREAS, The Commission has recognized that spacing rules alone do not assure the orderly development of a field; that, generally, said spacing rules operate with proper effect only where all the separate tracts are large enough to provide regular development with locations for wells to be made in the center of square units; that any deviation from a square unit, because of the size and shape of a separate tract provides a means for an operator to drill regular locations on less than the acreage requirements for the regular shaped tracts; that such an advantage to the irregular shape tracts provides for disproportionate production from some tracts which should in all reasonableness not exist; that a disadvantage is caused to the regularly shaped units by the unequal application of the spacing rule merely because of the irregularity in size and shape of certain separate tracts; and

WHEREAS, The Commission is of the opinion that regularity in development of the various oil and gas fields in the State of Texas, and the protection of the parties placed at a disadvantage by the Commission's spacing requirements makes it necessary to establish a density pattern for each of such fields for which no standard proration unit has been adopted.

NOW, THEREFORE, IT IS ORDERED That effective August 15, 1955, that no well shall be drilled on less acreage than that hereafter prescribed as the proper amount for all oil and gas fields in Texas wherein only spacing rules, either Special or Statewide, are applicable.

| Spacing Rule | Acreage Requirement |
| --- | --- |
| (1) 150 - 300 | 2 |
| (2) 200 - 400 | 4 |
| (3) 330 - 660 | 10 |
| (4) 330 - 933 | 20 |
| (5) 467 - 933 | 20 |
| (6) 467 - 1200 | 40 |
| (7) 660 - 1320 | 40 |

EXHIBIT

A-7

IT IS FURTHER ORDERED That the provisions of this order are not limited to the spacing and acreage determinations as set out above, but that any other spacing not mentioned, if and when it is brought to the attention of the Commission, will be given an appropriate acreage assignment.

IT IS FURTHER ORDERED That in addition to the assignment of acreage as required above, when a tract, after full development, has remaining unassigned acreage in an amount less than one-half (1/2) the prescribed amount, no well will be authorized, on such acreage, unless approved as an exception to this order after notice and hearing.

IT IS FURTHER ORDERED That a Form 1 (Notice of Intention to Drill or Deepen) shall be accompanied by a certified basic lease or unitized tract plat showing thereon the acreage dedicated to the proposed well, and also showing thereon the acreage previously dedicated to all Commission approved well locations on said basic lease or unitized tract, and further, that a permit to drill any well for oil or gas will not be granted until such plat has been attached to and made a part of such Form 1. Each operator seeking a permit to drill on a basic lease or unitized tract containing insufficient acreage must file with and as a part of his Form 1, the names and addresses of all offsetting property owners, and must attest thereon that such basic lease or unitized tract has not been subdivided from any other tract. If further proof is desired by the Commission, a hearing may be called.

IT IS PROVIDED HOWEVER, That the Commission, in order to prevent waste or to prevent the confiscation of property, may grant exceptions to the density provisions as stated above. Such an exception will be granted only after notice and hearing.

IT IS FURTHER ORDERED That this cause be held open on the docket for such other and further orders as may be necessary.

RAILROAD COMMISSION OF TEXAS

Chairman

Commissioner

Commissioner

ATTEST:

Secretary

jr:ds

CERTIFICATION NO.

105720 SEP-4 14

RAILROAD COMMISSION
OF TEXAS

RAILROAD COMMISSION OF TEXAS
STATE OF TEXAS
COUNTY OF TRAVIS

I hereby certify that the information on the reverse side hereof, and on the securely attached additional pages identified by certification # 105720 are true and correct copies of documents on file with Railroad Commission of Texas, and I further certify that I am the legal custodian of the records, files and seal of the Railroad Commission of Texas.

Date: September 4, 2014

SECRETARY

# Alicia R. Ringuet

807 Brazos Street, Ste. 500, Austin, Texas 78701 • 512-472-3993 • alicia.ringuet@haysowens.com

**ADMISSIONS**  Admitted to the Texas Bar in 2010

**EDUCATION**  **The University of Texas School of Law**, Austin, TX
J.D., with honors, received May 2010 • GPA: 3.81
- Order of the Coif
- TEXAS LAW REVIEW, member

**Louisiana State University**, Baton Rouge, LA
B.A. *summa cum laude* in Political Science received May 2007 • GPA: 4.00

**EXPERIENCE**  **Hays & Owens, LLP**, Austin, TX
**Attorney**, December 2011 – March 2012
**Associate**, April 2012 – Present
Practice primarily consists of oil and gas regulatory work, oil and gas transactional work, and civil litigation, primarily in the oil and gas area.

**Kelly Hart & Hallman, LLP,** Austin, TX
**Associate,** September 2010 – November 2011
Worked in the Environmental and Administrative Law section.
Practice was focused on energy and environmental regulatory work and civil litigation.

**Latham & Watkins, LLP** Los Angeles, CA
**Summer Associate**, May – July 2009
Worked in the Environment, Land, & Resources section

**Balch & Bingham, LLP,** Birmingham, AL
**Summer Associate**, July – August 2008
Worked in the Corporate, Environmental, and Litigation sections

**EXHIBIT**

__A-8__

*Date Prepared: April 14, 2014*

Filed
9/8/2014 4:12:20 PM
Esther Degollado
District Clerk
Webb District
2014 CVQ000 438 D4

CAUSE NO. 2014 CVQ000 438 D4

| | | |
|---|---|---|
| VAQUILLAS UNPROVEN MINERALS, LTD., | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | WEBB COUNTY, TEXAS |
| v. | § | |
| | § | |
| CONOCOPHILLIPS COMPANY, | § | 406th JUDICIAL DISTRICT |
| Defendant | | |

### AFFIDAVIT OF DINO O. SMITH

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF WEBB | § | |

Before me, the undersigned authority, on this day personally appeared Dino O. Smith, who, after being placed by me under oath, stated the following:

1. "My name is Dino O. Smith. I am over eighteen years of age, am of sound mind, have never been convicted of a felony or a crime involving moral turpitude, and I am fully competent to make this Affidavit. I have personal knowledge of the facts stated in this Affidavit, and they are true and correct.

2. I am a member Management Committee of Vaquillas LLC. ("Managing Member"), the general partner of Vaquillas Unproven Minerals, Ltd. ("Vaquillas"). I have served on this board since January 2012. I am involved in various aspects of the operations of Vaquillas, including the day to day management of the various mineral interests owned by Vaquillas. These responsibilities include, but are not limited to:
   a. planning and directing of Vaquillas Energy department activities, policies, objectives, and initiatives according to the mission of the organization,
   b. ensuring the department meets budgeted financial goals and objectives,
   c. negotiating leases, easements, surface use agreements, and other contracts,
   d. reviewing /analyzing existing agreements, contracts, abstracts and title opinions, and
   e. developing and maintaining a functional on-line energy library.
   In order to carry out these responsibilities, I have had to become familiar with the business records and record keeping practices of Vaquillas.

3. Except as to royalty interests in production from certain wellbores, Vaquillas Unproven Minerals, Ltd. is the successor to the entities that were original lessors

**AFFIDAVIT OF DINO O. SMITH**

EXHIBIT

B

PAGE 1

to Continental Oil Company and Conoco, Inc. of the oil and gas leases set out below.

## BUSINESS RECORDS AFFIDAVIT

4. As a member of the board of Vaquillas LLC and in my capacity of manager of mineral interests of Vaquillas, I have personal knowledge regarding the records and recordkeeping practices of the company and am qualified to attest to the authenticity of the companies' business records.

5. The documents listed below and attached as exhibits to this Affidavit are records from Vaquillas. These records are kept by Vaquillas in the regular course of business, and it was the regular course of business of this company for an employee or representative of the company, with knowledge of the act, event or opinion that was recorded, to make this record or to transmit the information to be included in these records. These records were made at or near the time or reasonably soon after the act, event, condition, opinion, or diagnosis that was recorded. These records are exact duplicates of the originals."

Exhibit B-1: June 15, 1974 Oil, Gas and Mineral Lease between Vaquillas Ranch Company, Ltd., a limited partnership acting herein through its general partners, J.O. Walker, Jr., Gene S. Walker, Evan B. Quiros and E. Walker Quiros (a/k/a Mary Elizabeth Quiros) and Continental Oil Company for 26,622.79 acres of land, more or less, situated in Webb County, Texas.

Exhibit B-2: November 1, 1987 Oil, Gas and Mineral Lease Amending Oil, Gas and Mineral Lease dated June 15, 1974 (As Amended) between Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven Mineral Trust; acting by and through its general partners, J. O. Walker, Jr., E. Walker Quiros, Gene S. Walker and Evan B. Quiros, and Conoco, Inc., Lessee for 26,622.79 acres, more or less, situated in Webb County, Texas.

Exhibit B-3: November 1, 1987 Oil, Gas and Mineral Lease between Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven Mineral Trust; acting by and through its general partners, J.O. Walker, Jr., E. Walker Quiros, Gene S. walker and Evan B. Quiros and Conoco Inc. for 6,740 acres, more or less, situated in Webb County, Texas.

Exhibit B-4: December 19, 1984, Mineral Deed from Vaquillas Ranch Company, Ltd. to J.O. Walker, Jr., et al. a copy of which is recorded in Volume 1097, Pages 66 et seq. of the Deed Records of Webb County, Texas.

Exhibit B-5: December 19, 1984, Mineral Deed from J.O. Walker, Jr., et al. to J.O. Walker et al., as Trustees of the Vaquillas Unproven Minerals Trust, a copy of which is recorded in Volume 1097, Pages 101 et seq. of the Deed Records of Webb County, Texas.

Exhibit B-6: Effective December 31, 1996, Mineral Deed from the Trustees of the Vaquillas Unproven Minerals Trust to Vaquillas Unproven Minerals, Ltd., a copy of which is recorded in Volume 471, Pages 711 et seq. of the Official Public Records of Webb County, Texas.

Further affiant sayeth not.

_____
Dino O. Smith


Subscribed and sworn to before me on this 5th day of September, 2014.


JESSICA MAYELA DEHOYOS
MY COMMISSION EXPIRES
July 7, 2015

_____
Notary Public in and for the State of Texas

Producers 88 (7-66)
With 640 Acres Pooling Provision

202259

Pound Printing & Stationery Co., Houston, Texas

# OIL, GAS AND MINERAL LEASE VOL 460 PAGE 324

THIS AGREEMENT made this       15th   day of   June,                    19 74 . between

VAQUILLAS RANCH COMPANY, LTD., a limited partnership acting herein
through its general partners, J. O. WALKER, JR., GENE S. WALKER,
EVAN B. QUIROS and E. WALKER QUIROS (a/k/a Mary Elizabeth Quiros)

Lessor (whether one or more), whose address is:  P. O. Box 1086, Laredo, Texas 78040

and CONTINENTAL OIL COMPANY                                          . Lessee. WITNESSETH:

1. Lessor in consideration of TEN DOLLARS & OTHER GOOD & VALUABLE CONSIDERATION

($ 10.00        ), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants,
leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and
all other minerals, conducting exploration, geologic and geophysical surveys by seismograph, core test, gravity and magnetic methods, injecting
gas, water and other fluids, and air into subsurface strata, laying pipe lines, building roads, tanks, power stations, telephone lines and other struc-
tures thereon and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto, to produce, save, take care of, treat,

transport and own said products, and housing its employees, the following described land in        Webb              County, Texas, to-wit:

26,622.79   acres of land, more or less, situated in Webb
County, Texas, more fully described in Exhibit "A" annexed
hereto and made a part of this lease for all relevant pur-
poses, including limitations upon warranty as specifically
set out therein.

~~This lease is for review and includes all land owned or claimed by Lessor adjacent or contiguous to the land particularly described or above, whether the same be in said survey or surveys or in adjacent surveys although not included within the boundaries of the land particularly described above.~~ For the purpose of calculating the rental payments hereinafter provided for, said land is estimated to comprise
26,622.79   acres, whether it actually comprises more or less.                     Five (5)

2. Subject to the other provisions herein contained, this lease shall be for a term of Ten/years from this date (called "primary term")
and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.

3. The royalties to be paid by Lessee are: (a) on oil, 1/6th of that produced and saved from said land, the same to be delivered at the
wells or to the credit of Lessor into the pipelines to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its
possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) on gas, including casinghead gas
or other gaseous substance, produced from said land and sold or used off the premises or for the extraction of gasoline or other product there-
from, the market value at the well of 1/6th of the gas so sold or used, ~~provided that on gas sold at the wells the royalty shall be one-sixth of the amount realized from such sale;~~ while there is a gas well on this lease or on acreage pooled therewith but gas is not being sold or
used, Lessee may pay as royalty, on or before ninety (90) days after the date on which (1) said well is shut in, or (2) the land covered hereby or
any portion thereof is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein,
whichever is the later date, and thereafter at annual intervals on or before the anniversary of the date the first payment is made, a sum equal to
the amount of the annual rental payable in lieu of drilling operations during the primary term on the number of acres subject to this lease at
the time such payment is made, and if such payment is made or tendered, this lease shall not terminate, and it will be considered that gas is being
produced from this lease in paying quantities, and (c) on all other minerals mined and marketed, 1/6th either in kind or value at the well or
mine, at Lessee's election, ~~except that on sulphur mined and marketed the royalty shall be fifty cents (50c) per long ton.~~ Lessee shall have free use
of oil, gas,      and water from said land, except water from Lessor's wells, for all operations hereunder, and the royalty on oil and gas
shall be computed after deducting any so used.                            and tanks

EXHIBIT
B-1

4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof as to oil and gas, or either of them, with any other land covered by this lease, and/or with any other land, lease or leases in the immediate vicinity thereof to the extent hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. Units pooled for oil hereunder shall not substantially exceed 40 acres each in area, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of ten percent (10%) thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, for the drilling or operation of a well at a regular location or for obtaining maximum allowable from any well to be drilled, drilling or already drilled, units thereafter created may conform substantially in size with those prescribed or permitted by governmental regulations. Lessee under the provisions hereof may pool or combine acreage covered by this lease or any portion thereof as above provided as to oil in any one or more strata and as to gas in any one or more strata. The units formed by pooling as to any stratum or strata need not conform in size or area with the unit or units into which the lease is pooled or combined as to any other stratum or strata, and oil units need not conform as to area with gas units. The pooling in one or more instances shall not exhaust the rights of the Lessee hereunder to pool this lease or portions thereof into other units. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit; and upon such recordation the unit shall be effective as to all parties hereto, their heirs, successors, and assigns, irrespective of whether or not the unit is likewise effective as to all other owners of surface, mineral, royalty, or other rights in land included in such unit. Lessee may at its election exercise its pooling option before or after commencing operations for or completing an oil or gas well on the leased premises, and the pooled unit may include, but it is not required to include, land or leases upon which a well capable of producing oil or gas in paying quantities has theretofore been completed or upon which operations for the drilling of a well for oil or gas have theretofore been commenced. In the event of operations for drilling on or production of oil or gas from any part of a pooled unit which includes all or a portion of the land covered by this lease, regardless of whether such operations for drilling were commenced or such production was secured before or after the execution of this instrument or the instrument designating the pooled unit, such operations shall be considered as operations for drilling on or production of oil or gas from land covered by this lease whether or not the well or wells be located on the premises covered by this lease and in such event operations for drilling shall be deemed to have been commenced on said land within the meaning of paragraph 5 of this lease; and the entire acreage constituting such unit or units, as to oil and gas, or either of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease. For the purpose of computing the royalties to which owners of royalties and payments out of production and each of them shall be entitled on production from the pooled unit, there shall be allocated to the land covered by this lease and included in said unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) a pro rata portion of the oil and gas, or either of them, produced from the pooled unit after deducting that used for operations on the pooled unit. Such allocation shall be on an acreage basis—that is to say, there shall be allocated to the acreage covered by this lease and included in the pooled unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that pro rata portion of the oil and gas, or either of them, produced from the pooled unit which the number of surface acres covered by this lease (or in each such separate tract) and included in the pooled unit bears to the total number of surface acres included in the pooled unit. Royalties hereunder shall be computed on the portion of such production, whether it be oil and gas, or either of them, so allocated to the land covered by this lease and included in the unit just as though such production were from such land. The production from an oil well will be considered as production from the lease or oil pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit. The formation of any unit hereunder shall not have the effect of changing the ownership of any delay rental or shut-in production royalty which may become payable under this lease. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interest as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but Lessee shall nevertheless have the right to pool as provided above with consequent allocation of production as above provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender (or shall make a bona fide attempt to pay or tender, as hereinafter stated) to Lessor or to the credit of Lessor in Union National Bank of Laredo Bank at Laredo ..................., Texas, (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of Forty-eight Thousand Eight Hundred Eleven and 26/100 Dollars ($ 48,811.26 ), (herein called rentals), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental under this paragraph and of royalty under paragraph 3 on any gas well from which gas is not being sold or used may be made by the check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment. If such bank (or any successor bank) should fail, liquidate or be succeeded by another bank, or for any reason fail or refuse to accept rental, Lessee shall not be held in default for failure to make such payment or tender of rental until thirty (30) days after Lessor shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payments or tenders. If Lessee shall, on or before any anniversary date, make a bona fide attempt to pay or deposit rental to a Lessor entitled thereto according to Lessee's records or to a Lessor, who, prior to such attempted payment or deposit, has given Lessee notice, in accordance with subsequent provisions of this lease, of his right to receive rental, and if such payment or deposit shall be ineffective or erroneous in any regard, Lessee shall be unconditionally obligated to pay to such Lessor the rental properly payable for the rental period involved, and this lease shall not terminate but shall be maintained in the same manner as if such erroneous or ineffective rental payment or deposit had been properly made, provided that the erroneous or ineffective rental payment or deposit be corrected within 30 days after receipt by Lessee of written notice from such Lessor of such error accompanied by such instruments as are necessary to enable Lessee to make proper payment. The down cash payment is consideration for this lease according to its terms and shall not be allocated as a mere rental for a period. Lessee may at any time or times execute and deliver to Lessor or to the depository above named or place of record a release or releases of this lease as to all or any part of the above-described premises, or of any mineral or horizon under all or any part thereof, and thereby be relieved of all obligations as to the released land or interest. If this lease is released as to all minerals and horizons under a portion of the land covered by this lease, the rentals and other payments computed in accordance therewith shall thereupon be reduced in the proportion that the number of surface acres within such released portion bears to the total number of surface acres which was covered by this lease immediately prior to such release.

6. If prior to discovery and production of oil, gas or other mineral on said land or on acreage pooled therewith, Lessee should drill a dry hole or holes thereon, or if after discovery and production of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter or if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days from date of completion of dry hole or cessation of production. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep the lease in force during the remainder of the primary term. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith. Any pooled unit designated by Lessee in accordance with the terms hereof may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land ~~and ~~ and draining the leased premises, or acreage pooled therewith, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

8. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U. S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to rentals hereunder, Lessee may pay or tender such rentals to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualification of an executor or administrator of the estate, or if there be none, then until Lessee is furnished with evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more persons be entitled to participate in the rental payable hereunder, Lessee may pay or tender said rental jointly to such persons or to their joint credit in the depository named herein; or, at Lessee's election, the proportionate part of said rentals to which each participant is entitled may be paid or tendered to him separately or to his separate credit in said depository; ~~and payment or tender to any participant of his portion of the rentals hereunder shall maintain this lease as to such participant.~~ In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, but in discharging this obligation it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil in paying quantities and one well per 640 acres (an acreage tolerance not to exceed 10% of 640 acres of the area retained hereunder and capable of producing gas or other mineral in paying quantities.

10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and in event Lessee does so, it shall be subrogated to such lien with right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties, ~~rentals and other moneys~~ accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. Should any one or more of the parties named above as Lessors fail to execute this lease, it shall nevertheless be binding upon the party or parties executing the same. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of force majeure, any Federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises; and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

12. It is mutually agreed, notwithstanding any other provision herein contained, as follows:

(a) Should Lessee be prevented from complying with covenants of this lease by reason of conditions or acts set forth in paragraph '11' hereof, then Lessee agrees annually to pay to Lessor an amount equal to the delay rentals herein provided for during such period of prevention, whether same be during or subsequent to the primary term, and such payment shall be made at the end of each year of prevention either to Lessor or to the depository above named for credit to the account of Lessor.

(b) This lease does not cover or include any right or privilege of hunting or fishing on any part of the above described land, and Lessee agrees with Lessor that neither he nor his assigns or agents or employees of his assigns, will bring firearms or dogs upon the leased premises, and should this provision against hunting and fishing be violated by any agents, servants, employees or contractors of Lessee's assigns, any such person so violating same shall have no further right to enter upon the leased premises, and such person shall be regarded as and shall be a trespasser on the premises of Lessor and be subject to the penalties imposed upon trespassers under the laws of the State of Texas.

(c) It is expressly agreed and understood that after production of oil and gas in commercial quantities is obtained from the leased premises, the minimum annual income to Lessor from payment of rentals, shut-in royalty and royalty on production shall be a sum of not less than Two ($2.00) Dollars per acre on the total acreage retained and then covered by this lease, but this provision shall not impair the right and privilege of Lessee, his successors and assigns, to release and surrender any part of the above described leased premises as herein provided. Lessee, his successors and assigns, shall determine within 90 days from the expiration of any lease year during which royalties have been paid on actual production the amount of any deficiency, and shall within said 90-day period pay such deficiency to Lessor or deposit same to Lessor's credit at the depository hereinabove designated. Default in the payment of such deficiency shall not operate to terminate this lease or any part hereof, but Lessee, his successors and assigns, agrees to personally pay such deficiency to Lessor at Laredo in Webb County, Texas, together with any reasonable cost, including attorney's fees, incurred by Lessor in collecting such deficiency if not paid within the 90-day period hereinabove provided for.

(d)   Notwithstanding any other provision herein contained, this oil, gas and mineral lease is limited to oil, gas and sulphur and minerals produced with oil and gas, and does not include minerals other than oil, gas and sulphur and minerals produced with oil and gas, as Lessor herein excludes from the leasehold estate herein granted, and reserves unto himself, his heirs and assigns, all minerals other than oil oil, gas and sulphur and minerals that may be produced with oil and gas, but it is expressly agreed that 'gas' as used herein includes gas, condensate, distillate or any other gaseous substance or any other mineral produced with oil and gas, including sulphur.

(e)   The right to pool under paragraph '4' of this oil, gas and mineral lease shall be limited to lease or leases on land belonging to Lessor herein, or in which Lessor owns an interest in the oil, gas and other minerals.

(f)   Commencement of operations for drilling of a well for oil or gas to a depth of 5,000 feet or less shall entitle Lessee to a credit on the rentals required under paragraph '5' hereof only in the amount of $1,280.00, but if operations for drilling are conducted to a depth below 5,000 feet, such credit shall be increased from $1,280.00 to $2,560.00 and Lessee shall, by an instrument to be filed for record in the office of the County Clerk of Webb County, select and describe 640 contiguous acres as to which rentals are to be credited if the well is drilled to a depth of 5,000 feet or less, or select and describe 1,280 contiguous acres to which rentals are to be credited if a well is drilled below depth of 5,000 feet, and payment of delay rentals or production of oil, gas and other minerals is to be required in order to continue the lease in force and effect as to the remaining acreage, and such payment or production shall eliminate requirement to select acres in accordance with above provisions.

(g)   At the end of the primary term hereof, Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease provides for a spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned; provided, however, that if at such date lessee is engaged in drilling or reworking operations the date for the execution and delivery of such release shall be postponed and the entire lease shall remain in force so long as operations on said well or wells are prosecuted with reasonable diligence, and if, after the completion or abandonment of any such well Lessee commences the drilling of an additional well within Ninety (90) days from the completion or abandonment of the preceding well, or continuously conducts drilling operations in good faith and with reasonable diligence on said lease without any cessation for longer than Ninety (90) days, said lease shall remain in full force and effect during such drilling operations and until the end of Ninety (90) days after the completion or abandonment of the final well, at which time Lessee shall execute and deliver to Lessor said written release, releasing all portions of the lease not then so developed.

(h)   It is agreed that where the Lessee hereunder enters into a gas purchase contract with a third party calling for a price at the wellhead at least equal to the then best obtainable price for gas of the same or similar B.T.U. content at the wellhead in Webb County, that the gas price so provided for in such contract shall be considered to be the market value of the gas for the purposes of computing the royalty on gas hereunder; provided Lessee shall not enter into any gas purchase with a third party during the term of this lease except and unless such gas purchase contract contains specific provision for redetermination of price consistent with the first sentence in this paragraph, being the then best obtainable price for gas at the wellhead in the area and that such gas purchase contract shall provide that redetermination be made at intervals no greater than two (2) years apart.

(i)   Lessee agrees to fill all slush pits and level the same when they have ceased to be used and to restore the land to as near its original state as is practicable and to pay for damages to the surface of the land and the improvements, water wells, growing crops and live-stock thereon, and to any other personal property of Lessor, Vaquillas

VOL 460 PAGE 328

Ranch Company, Ltd., occasioned by, arising out of, or resulting from operations by Lessee, his agents, employees or independent contractors on the land hereby leased to Lessee. Lessee also agrees, when requested in writing by Lessor, to divulge to Lessor true and correct information as requested by Lessor as to all drilling, producing and marketing operations conducted under this lease and to furnish to Lessor copies of all electric well logs taken hereunder; provided, however, Lessee shall not be obligated to release such information until it has been released to the industry.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

VAQUILLAS RANCH COMPANY, LTD.

BY: _J. O. Walker Jr._
J. O. WALKER, JR., a general partner

BY: _Gene S. Walker_
GENE S. WALKER, a general partner

BY: _Evan B. Quiros_
EVAN B. QUIROS, a general partner

BY: _E. Walker Quiros_
E. WALKER QUIROS, a general partner

STATE OF TEXAS ⅃

COUNTY OF WEBB ⅃

BEFORE ME, the undersigned authority, on this day personally appeared J. O. WALKER, JR., EVAN B. QUIROS and E. WALKER QUIROS, members of the partnership firm of VAQUILLAS RANCH COMPANY, LTD., known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same as the act of VAQUILLAS RANCH COMPANY, LTD., a limited partnership, for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 18th day of June, 1974.

_____
Notary Public, Webb County, Texas

STATE OF TEXAS ⅃

COUNTY OF WEBB ⅃

BEFORE ME, the undersigned authority, on this day personally appeared GENE S. WALKER, a member of the partnership firm of VAQUILLAS RANCH COMPANY, LTD., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same as the act of VAQUILLAS RANCH COMPANY, LTD., a limited partnership, for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 20th day of June, 1974.

_____
Notary Public, Webb County, Texas

## EXHIBIT "A"

| SURVEY | ABSTRACT | CERTIFICATE | GRANTEE | ACRES |
|---|---|---|---|---|
| 1649 | 1110 | 1158 | CCSD & RGNG | 640.0 |
| 1651 | 1112 | 1159 | CCSD & RGNG | 640.0 |
| 1652 | 2876 | 1159 | W. H. Taylor | 640.0 |
| 1661 | 1122 | 1164 | CCSD & RGNG | 640.0 |
| 1663 | 1123 | 1165 | CCSD & RGNG | 640.0 |
| 1633 | 1323 | 4/808 | GC & SF | 640.0 |
| 1634 | 2252 | 4/808 | GC & SF | 659.96 |
| 1665 | 1124 | 1166 | CCSD & RGNG | 640.0 |
| S.1/2 1666 | 2253 | 1166 | CCSD & RGNG | 328.75 |
| N.1/2 1666 | 3142 | 1166 | CCSD & RGNG | 328.79 |
| 468 | 2255 | 236 | AB & M | 659.14 |
| 467 | 799 | 236 | AB & M | 640.0 |
| 1635 | 1797 | 17 | TC Ry. | 640.0 |
| 865 | 1438 | 12/2541 | H & GN | 640.0 |
| 1683 | 1115 | 1175 | CCSD & RGNG | 640.0 |
| 1691 | 1267 | 5446 | GC & SF | 640.0 |
| 1696 | 2418 | 5448 | GC & SF | 640.0 |
| 1695 | 1268 | 5448 | GC & SF | 640.0 |
| 279 (pt. only) | 1353 | 3702 | GC & SF | 458.2 |
| 1004 | 2421 | 2/105 | J. Poitevent | 634.58 |
| 1692 | 2419 | 5446 | GC & SF | 613.04 |
| 1693 | 1269 | 5447 | GC& SF | 640.0 |
| 2112 | 2420 & 1925 | 631 | B. F. James | 627.12 |
| 276 | 2552 | 3700 | GC & SF | 640.23 |
| 228 | 2550 | 1344 | CCSD & RGNG | 636.93 |
| 227 | 1133 | 1344 | CCSD & RGNG | 640.0 |
| 988 | 2593 | 2/103 | J. Poitevent | 637.10 |
| 987* | 2061 | 2/103 | J. Poitevent | 640.0 |
| 273* | 1141 | 1349 | CCSD & RGNG | 640.0 |
| 275* | 1336 | 3700 | GC & SF | 640.0 |
| 277* | 1337 | 3701 | CCSD & RGNG | 640.0 |
| S.1/2 31, Block 2 | 1043 | 453 | CCSD & RGNG | 320.0 |
| 25, Block 2 | 1042 | 452 | CCSD & RGNG | 640.0 |
| 232* | 2148 | 1346 | CCSD & RGNG | 462.70 |
| 233* | 1117 | 1347 | CCSD & RGNG | 455.9 |
| N.1/2 51, Block 2 | 1045 | 460 | CCSD & RGNG | 320.0 |
| 259 (pt. only) | 1137 | 1074 | CCSD & RGNG | 600.0 |
| 1955 | 1328 | 4526 | GC & SF | 640.0 |
| 2057 | 985 | 302 | CCSD & RGNG | 652.25 |
| 2060 (pt. only) | 3329-30 | 303 | CT & M | 440.0 |
| E.1/2 2059 | 984 | 303 | CT& M | 320.0 |
| E.1/2 1953* | 1329 | 4527 | GC& SF | 320.0 |
| 1627 (pt. only) | 1324 | 4683 | GC & SF | 160.0 |
| 1629 (pt. only) | 1275 | 4682 | GC & SF | 292.65 |
| W.1/2 1662 | 2230 | 1164 | CCSD & RGNG | 329.3 |
| E.1/2 1648 | 2441 | 1157 | CCSD & RGNG | 325.75 |
| W.1/2 1648 | 3301 | 1157 | CCSD & RGNG | 325.75 |
| 26, Block 2* | | 452 | R. O. Barnsley | 640.0 |
| 2335 | 3025 | School | W. Brown | 27.3 |
| E.1/2 1956* | 2560 | 4526 | GC & SF | 327.34 |

Lessor's warranty hereunder as to all of Surveys 987, 273, 275, 277, 26, the E.1/2 of 1953, E.1/2 of 1956 and 401.9 acres out of Survey 233 (all except 54 acres out of SW corner of said Sur. 233) is expressly limited to 1/2 of the executive rights in the oil and gas rights in and under said lands, and as to all of Survey 232 is expressly limited to 4/5 of the executive rights in the oil and gas rights.

The following parts of surveys are expressly excluded herefrom, viz.:

(1) The SE 1/4 of SW 1/4, SW 1/4 of NE 1/4 (80 acs.) and N 1/2 of SW 1/4 and SW 1/4 of SW 1/4 (120 acs.) of CT&M Survey 2060.

(2) The W. 3/4 of GC&SF Survey 1627 described in O&G Lse. to Daniel A. Pedrotti dated September 24, 1973, as amended.

(3) Any part of a survey listed herein not included within any specific fractional reference preceding the survey reference.

(4) The NE 160 acres of GC&SF Survey 279.

(5) Block 11 as per the E.D. Claggett Subdivision of record 2 Plat Records 29, Webb County, containing 40 acres, being the NW 1/4 of SE 1/4 of CCSD & RGNG Survey 259.

(6) All of the W. 320 acres of Survey 1629 described and included in O&G Lse. to Daniel A. Pedrotti dated September 24, 1973, as amended.

Pof Printing & Stationery Co., Houston, Texas

# OIL, GAS AND MINERAL LEASE AMENDING OIL, GAS AND MINERAL
## LEASE DATED JUNE 15, 1974 (AS AMENDED) BETWEEN LESSOR AND LESSEE HEREIN

THIS AGREEMENT made this _____1_____ day of _____November_____ 19 87, between

Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven
Mineral Trust; acting by and through its general partners, J. O. Walker, Jr.,
E. Walker Quiros, Gene S. Walker and Evan B. Quiros.

Lessor (whether one or more), whose address is: **P. O. Box 1086, Laredo, Texas 78040**
and **Conoco Inc., P. O. Box 2197, Houston, Texas 77252**, Lessee, WITNESSETH:

1. Lessor in consideration of **Ten Dollars and Other Good and Valuable Consideration** Dollars
($ 10.00), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, conducting exploration, geologic and geophysical surveys by seismograph, core test, gravity and magnetic methods, injecting gas, water and other fluids, and air into subsurface strata, laying pipe-lines, building roads, tanks, power stations, telephone lines and other structures thereon and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto, to produce, save, take care of, treat, transport and own said products, and housing its employees, the following described land in _____Webb_____ County, Texas, to-wit:

26,622.79 acres of land, more or less, situated in Webb County, Texas more
fully described in Exhibit "A" attached hereto and made a part of this Lease
for all relevant purposes, including limitations upon warranty as specifically
set out therein.

~~This lease also covers and includes all land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not included within the boundaries of the land particularly described~~ above. For the purpose of calculating the rental payments hereinafter provided for, said land is estimated to comprise _____26,622.79_____ _____ acres, whether it actually comprises more or less.

2. Subject to the other provisions herein contained, this lease shall be for a term of ~~ten~~ **five** years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder. where the term one-eighth is used in this paragraph it is changed to one-sixth

3. The royalties to be paid by Lessee are: (a) on oil, one-eighth of that produced and saved from said land to be delivered at the wells or to the credit of Lessor into the pipelines to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) ~~...~~ and tanks, gas ~~...~~

4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof as to oil and gas, or either of them, with any other land covered by this lease, and/or with any other land, lease or leases in the immediate vicinity thereof to the extent hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so, in order properly to explore, or to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. Units pooled for oil hereunder shall not substantially exceed 40 acres each in area, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of ten percent (10%) thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, for the drilling or operation of a well at a regular location or for obtaining maximum allowable from any well to be drilled, drilling or already drilled, units thereafter created may conform substantially in size with those prescribed or permitted by governmental regulations. ...

5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender (or shall make a bona fide attempt to pay or tender, as hereinafter stated) to Lessor or to the credit of Lessor in _____South Texas National Bank_____

~~Bank~~ at _____Laredo_____ , Texas, (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of _____Forty-Eight_____ Thousand Eight Hundred Eleven and 26/100 Dollars ($ 48,811.26 ), (herein called rentals), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. ...

COPY 00121441

EXHIBIT
B-2

Original Lease 199129-001   DMI JUL 18 88   199129-001

6. If prior to discovery and production of oil, gas or other mineral on said land or on acreage pooled therewith, Lessee should drill a dry hole or holes thereon, or if after discovery and production of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter or if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days from date of completion of dry hole or cessation of production. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep the lease in force during the remainder of the primary term. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith. Any pooled unit designated by Lessee in accordance with the terms hereof may be dissolved by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within three hundred thirty (330) feet of and draining the leased premises, or acreage pooled therewith, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

8. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U. S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to rentals hereunder, Lessee may pay or tender such rentals to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualification of an executor or administrator of the estate, or if there be none, then until Lessee is furnished with evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more persons be entitled to participate in the rental payable hereunder, Lessee may pay or tender said rental jointly to such persons or to their joint credit in the depository named herein; or, at Lessee's election, the proportionate part of said rentals to which each participant is entitled may be paid or tendered to him separately or to his separate credit in said depository; and payment or tender to any participant of his portion of the rentals hereunder shall maintain this lease as to such participant. In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, but in discharging this obligation it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil in paying quantities and one well per six hundred and forty (640) acres plus an average tolerance not to exceed 10% of 640 acres of the area retained hereunder and capable of producing gas or other mineral in paying quantities.

10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and in event Lessee does so, it shall be subrogated to such lien with right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties, delay rental, and other monies accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. Should any one or more of the parties named above as Lessors fail to execute this lease, it shall nevertheless be binding upon the party or parties executing the same. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of force majeure, any Federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises; and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

The attached addendum dated November 1, 1987, is attached hereto and made a part hereof for all intents and purposes.

STATE OF..................................}

COUNTY OF...............................}

TEXAS SINGLE ACKNOWLEDGMENT

Before me, the undersigned authority, a Notary Public in and for said County and State, on this day

personally appeared...............................................................................................................

known to me to be the person whose name.......................subscribed to the foregoing instrument, and acknowledged to me that ....he.... executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this the.............day of...................................., A. D. 19.........

Notary Public in and for...................................County, ...................................

STATE OF..................................}

COUNTY OF...............................}

TEXAS JOINT ACKNOWLEDGMENT

Before me, the undersigned, a Notary Public in and for said County and State, on this day personally

appeared...........................................................and...........................................................
husband and wife, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed. And the said wife, having been examined by me privily and apart from her husband, and having had said instrument fully explained to her, she, the said wife, acknowledged the same to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office, this the.............day of...................................., A. D. 19.........

Notary Public in and for...................................County, ...................................

Oil, Gas and Mineral Lease

No.

FROM

TO

Producers 88 (7-69)
With 640 Acres Pooling Provision

This instrument was filed for record on the .............. day of .............. 19...... o'clock ...... M. and duly recorded in .............. Book ...... Part ...... of the .............. records of this office.

.............. County Clerk

By .............. Deputy

When recorded return to

Pound Printing & Stationery Co., Houston, Texas

Term

No. Acres

Dated

County, Texas

12. Should Lessee be prevented from complying with covenants of this lease by reason of conditions or acts set forth in Paragraph '11' hereof, then Lessee agrees annually to pay to Lessor an amount equal to the delay rentals herein provided for during such period of prevention, whether same be during or subsequent to the primary term, and such payment shall be made at the end of each year of prevention either to Lessor or to the depository above named for credit to the account of Lessor.

13. This lease does not cover or include any right or privilege of hunting or fishing on any part of the above described land, and Lessee agrees with Lessor that neither he nor his assigns or agents or employees of his assigns, will bring firearms or dogs upon the leased premises, and should this provision against hunting and fishing be violated by any agents, servants, employees or contractors of Lessee's assigns, any such person so violating same shall have no further right to enter upon the leased premises, and such person shall be regarded as and shall be a trespasser on the premises of Lessor and be subject to the penalties imposed upon trespassers under the laws of the State of Texas.

14. It is expressly agreed and understood that after production of oil and gas in commercial quantities is obtained from the leased premises, the minimum annual income to Lessor from payment of rentals, shut-in royalty and royalty on production shall be sum of not less than Two ($2.00) Dollars per acre on the total acreage retained and then covered by this lease, but this provision shall not impair the right and privilege of Lessee, his successors and assigns, to release and surrender any part of the above described leased premises as herein provided. Lessee, his successors and assigns, shall determine within 90 days from the expiration of any lease year during which royalties have been paid on actual production the amount of any deficiency, and shall within said 90-day period pay such deficiency to Lessor or deposit same to Lessor's credit at

|COP 0012146 |

-1-

GWB2/dm 130(1)

the depository hereinabove designated. Default in the payment of such deficiency shall not operate to terminate this lease or any part hereof, but Lessee, his successors and assigns, agrees to personally pay such deficiency to Lessor at Laredo in Webb County, Texas, together with any reasonable cost, including attorney's fees, incurred by Lessor in collecting such deficiency if not paid within the 90-day period hereinabove provided for.

15. Nothwithstanding any other provision herein contained, this oil, gas and mineral lease is limited to oil, gas and sulphur and minerals produced with oil and gas, and does not include minerals other than oil, gas and sulphur and minerals produced with oil and gas, as Lessor herein excludes from the leasehold estate herein granted, and reserves unto himself, his heirs and assigns, all minerals other than oil, gas and sulphur and minerals that may be produced with oil and gas, but it is expressly agreed that 'gas' as used herein includes gas, condensate, distillate or any other gaseous substance or any other mineral produced with oil and gas, including sulphur.

16. The right to pool under Paragraph '4' of this oil, gas and mineral lease shall be limited to lease or leases on land belonging to Lessor herein, or in which Lessor owns an interest in the oil, gas and other minerals.

17. For the purposes of the annual rental payments due under paragraph 5, Lessor and Lessee agree that said payments have been timely paid and received, and that this Lease is perpetuated, without the necessity of further delay rental payments, until the expiration of the primary term.

18. On November 1, 1990, Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease provides for a

-2-

|COP 0012147 |

GWB2/dm 130(1)

spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned; provided, however, that if at such date lessee is engaged in drilling or reworking operations the date for the execution and delivery of such release shall be postponed and the entire lease shall remain in force so long as operations on said well or wells are prosecuted with reasonable diligence, and if, after the completion or abandonment of any such well Lessee commences the drilling of an additional well within Ninety (90) days from the completion or abandonment of the preceding well, or continuously conducts drilling operations in good faith and with reasonable diligence on said lease without any cessation for longer than Ninety (90) days, said lease shall remain in full force and effect during such drilling operations and until the end of Ninety (90) days after the completion or abandonment of the final well, at which time Lessee shall execute and deliver to Lessor said written release, releasing all portions of the lease not then so developed. Each retained unit shall contain at least one (1) well producing or capable of producing oil or gas in paying quantities, and the acreage within a unit shall be contiguous.

If, after the date the partial release called for under this Paragraph 18 takes affect, all production from a retained unit around a well or wells cease to produce oil or gas in commercial or in paying quantities, Lessee shall have one hundred eighty (180) days thereafter within which to commence operations to establish or re-establish production therein in commercial or paying quantities, whether such production be from the same wellbore or other wellbore. If such operations result in commercial production, then this lease, as it applies to such unit shall continue until such commercial or paying production again ceases. However, if such operations do not result in commercial production, then Lessee shall have ninety (90) days after completion of such operations within which to commence drilling or reworking operations within such unit, and this lease, as it applies to said unit, shall remain in force so long as operations on said well or for drilling or reworking of any additional well therein are prosecuted with no cessation of more than ninety (90) consecutive days, and if they result in the production of oil or gas therein, so long thereafter

|COP 0012148 |

-3-

GWB2/dm 130(1)

as oil or gas is produced from said unit. As to any unit upon which commercial production may periodically terminate, the above right to timely resume operations and continue this lease as to such unit shall be reoccurring right.

The stipulation above as to the size of retained tracts around wells shall never be construed as a satisfaction of Lessee's right, duty and obligation to reasonably develop the leasehold held by Conoco or its successors or assigns. After November 1, 1990, Lessee agrees to drill such additional wells on the leased premises or such portions thereof as may be in force and effect from time to time, as may be necessary to reasonable develop the same for the production of oil and/or gas as a reasonable prudent operator.

19. A portion of paragraph 3 has been deleted and the following is in lieu thereof.

(b) on gas, including casinghead gas or other gaseous substances, produced from said land, the Lessors royalty shall be calculated and paid as follows:

a) Sales To Non-Affiliated Third Parties:
In the event Lessee enters into a gas sales contract with a non-affiliated third party, Lessor's royalty shall be one-sixth (1/6) of the gross proceeds received by Lessee from the sale of such gas.

b) Sales To Related Or Affiliated Entities For Resale:
In the event Lessee enters into a gas sales contract to sell gas to a related or affiliated entity, then Lessor's royalty shall be computed on the greater of the following:
1. One-sixth (1/6) of the gross proceeds received by Lessee or any affiliate or related entity from the sale of such gas to the first non-affiliated entity, or

2. One-sixth (1/6) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the

-4-

|COP 0012149 |

GWB2/dm 130(1)

east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

In this regard, it is understood that the "highest price reasonably obtainable" may be equal to, but is not necessarily, the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

c) Taking, Selling Or Delivery Of Gas To Lessee Or Its Related Or Affiliated Entities For Use (Not For Resale):

In the event Lessee takes gas for its own use, or sells or transfers gas to a related or affiliated entity for use, then Lessor's royalty shall be computed on the greater of the following:

1. One-sixth (1/6) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

In this regard, it is understood that the "highest price reasonably obtainable" may be equal to but is not necessarily the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity, or

2. One-sixth (1/6) of the quarterly weighted average of the prices being paid by "purchasers" (as hereinafter defined) in the east one-fourth of Webb County, Texas, who are purchasing gas of like kind and quality. For the purposes of calculating the average price under this Paragraph c2, prices paid shall be those as reported in the Energy Planning Book publication or as reported to the State of

-5-

GWB2/dm 130(1)

| COP 0012150 |

Texas for severence tax purposes. "Purchasers" shall mean the three largest purchasers based on volume of gas purchased for such calendar quarter, in the east one-fourth of Webb County, Texas. For an example of the calculation of the quarterly weighted average of such price, see Exhibit "B".

Lessor and Lessee shall meet within eleven (11) months after the end of each calander year. At least thirty (30) days prior to such meeting, Lessee should furnish to Lessor a statement or other documentation of the basis upon which royalties accrued to Lessor under the terms of the Lease for the previous calender year. Any additional royalties calculated by Lessee to be due, if any, shall be paid at such meeting. Within one (1) year from delivery of the above referred to statement or other documentation, Lessor shall notify Lessee of any discrepancies. Failure to notify Lessee timely of any discrepancies shall constitute final acceptance of royalty payments as covered by such statements or other documentation. The first period for which Lessee shall prepare such statements or other documentation shall begin on April 1, 1988 and end on December 31, 1988. Nothing in this paragraph shall preclude Lessor from claiming any royalty which Lessor is entitled to as a result of mistake in computation, oversight in computation, or error in computation of royalty or which may result from the subsequent disclosure of a discrepancy.

LESSOR'S royalty shall be without deduction for any costs, such as, but not limited to, costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and otherwise making the oil, gas and associated substances ready for sale or use, except for a) severance and related taxes, and b) reasonable transportation expenses which may be necessary to be paid to non-affiliated third parties or entities to get Lessor's gas to a market or point of sale off the leased premises and which sale or sales will result in a net price equal to or higher than if said gas had been sold at the wellhead.

LESSOR'S royalty on all production from depths below the stratigraphic equivalent of the top of the Cretaceous System as seen at 12,810 feet

|COP 0012151 |

-6-

GWB2/dm 130(1)

in the electric log of the Vaquillas #7 Well located 260' FNL and 1,700' FWL of Survey 987, A2061, Webb County, Texas, under the lands now held by Lessee under this Lease shall be one-fifth (1/5) instead of one-sixth (1/6).

LESSEE may submit a copy of a proposed gas sales contract to Lessor which is acceptable to Lessee and request that Lessor approve same for royalty computation purposes. Lessor shall have thirty (30) days after receipt of a gas contract to approve same. If Lessor approves same or does not timely decline to do so, then Lessor's royalty on gas sold under such gas sales contract shall be based on the gross proceeds received under said contract.

GAS contracts with a term in excess of three (3) years shall contain a provision for price redetermination no later than the end of the 3rd year and subsequent price redeterminations thereafter at intervals no greater than two (2) years apart.

20. Lessee agrees to fill all slush pits and level the same when they have ceased to be used and to restore the land to as near its original state as is practicable and to pay for damages to the surface of the land and the improvements, water wells, growing crops and livestock thereon, and to any other personal property of Lessor, Vaquillas Ranch Company, Ltd., occasioned by, arising out of, or resulting from operations by Lessee, his agents, employees or independent contractors on the land hereby leased to Lessee. Lessee also agrees, when requested in writing by Lessor, to divulge to Lessor true and correct information as requested by Lessor as to all drilling, producing and marketing operations conducted under this lease and to furnish to Lessor copies of all electric well logs taken hereunder; provided, however, Lessee shall not be obligated to release such information until it has been released to the industry.

21. Lessee hereby agrees to ensure that the two exit gates on F.M. 2895 (Forest Gate and Reynolds Gate) are guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Lessee and Lessor. As to the exit

-7-

| COP 0012152 |

GWB2/dm 130(1)

gate on the north side of U.S. Highway 59, Lessee agrees to use its best efforts to work out an arrangement with other exploration companies using such gate to ensure that it is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and other times as mutually agreed to by Conoco and Lessor. Further, Lessee agrees to use its best efforts to work out an arrangement with TransAmerican Natural Gas Corporation or its successors or assigns to ensure that the exit gate located 9 miles north of Aguilares, Texas, on F.M. 2895 is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Lessee and Lessor. In regard to gates used by Lessee and other exploration companies, Lessee agrees to pay its share of the cost of guarding such gates when such gate guards are required under this agreement. Lessee shall not be obligated to furnish a gate guard on any gate which has been abandoned or is not being used by Lessee.

22. Lessee agrees that before abandoning any well drilled on said lease for oil or gas purposes, it will notify the owner or the surface estate in person or by telephone of its intention to do so, and it will allow said owner of the surface estate a reasonable time, not exceeding twenty-four (24) hours thereafter, within which to elect to take over the hole for the purpose of attempting to make and complete a water well. Lessee agrees to consult with such surface owner as to the location of a potential water zone, without any liability or warranty for such consultation. Upon the owner of the surface estate election, within the specified time, to attempt to complete the well as a water well and complying with all rules and regulations of the Railroad Commission of Texas and applicable statutes, Lessee will, at its expense, set all plugs to just below the designated water sand as may be required by the Railroad Commission and thereafter deliver the well to said owner of the surface estate, leaving in such well all surface casing and such intermediate casing as may have been run and set to at least the depth of the designated water sand and thereafter the owner of the surface state shall own the well and shall be responsible for all subsequent matters in connection with the well and for compliance with the applicable statutes and regulations of all regulatory agencies having jurisdiction. Lessee shall have no liability to

-8-

|COP 0012153 |

Lessor in connection with any of the operations which may be conducted by the owner of the surface estate who shall thereafter bear all responsibility and liability with respect thereto. It is expressly understood that Lessee shall not be required to furnish any additional casing or other equipment for any well plugged back at the request of the owner of the surface estate under this paragraph. Should the owner of the surface estate elect not to attempt to make a producing water well out of any such hole, Lessee shall plug the well in accordance with all applicable rules, regulations and statutes.

23. It is expressly agreed and understood that for the purposes of this lease the following definitions shall apply:

"Commences" – A well shall be deemed commenced on the date which the drilling bit enters the earth for the drilling of a well.

"Abandoned" – A well shall be deemed abandoned on the day when it is finally plugged as a dry hole.

"Completed" – A well shall be deemed completed thirty (30) days after the day the Lessee sets production casing.

24. Lessor and Lessee agree to limit the commencement of actual drilling during deer hunting season to 1) those wells drilled in areas which would not disturb deer hunting, and 2) offset wells. If Lessee must commence a well during deer hunting season to perpetuate said lease, then Lessor will either a) not object to the drilling of such well during deer hunting season or b) agree to extend the commencement date for such well to a mutually agreeable date after deer hunting season ends. For the purposes of this paragraph "deer hunting season" shall be that period defined by State law.

25. Nothwithstanding anything contained herein to the contrary, the Lessor at any time and from time to time, upon not less than ninety (90) days notice to the holder of this lease, may elect to require the payment of any royalties accruing to such royalty owner under this lease to be made in kind; provided that any expenses incident to the exercise of such election shall be borne by Lessor and such election shall be for periods of not less than twelve (12) months. Lessor shall only be allowed to take in

-9-

| COP 0012154 |

GW82/dm 130(1)

kind when Lessee is producing for his own account. In the event of such an election by Lessor, Lessee shall cooperate fully with Lessor in allowing Lessor to take their royalty in kind, including permitting Lessor to use Lessee's wellhead equipment and, to the extent that Lessee has assignable rights, the use of Lessee's purchaser's transportation facilities in good faith and not to exceed prevailing charges for similar services in the industry at the time if Lessee or its affiliates are transporting the gas, but if Lessee has a third party contract for the transport of said gas, Lessor will be bound by said contract. Should Lessee desire to enter into a gas purchase contract having a term of more than one (1) year, then (a) Lessee shall include in such contract a provision that allows Lessor to elect to take its gas in kind and be released from such contract one hundred twenty (120) days after notice, or (b) Lessor may approve of such contract in writing, in which event, Lessor may elect to take its gas in kind either at the end of such gas contact or one (1) year after notice to Lessee, whichever happens sooner. Any equipment installed by Lessor necessary to take in kind must be approved by Lessee and maintained according to Lessee's specifications.

If Lessee is unable to obtain a more favorable gas contract because of Lessor's reservation of this election to take in kind, then Lessee may elect to give notice of its intention to sign a gas contract acceptable to Lessee and request that Lessor join in signing same, and if Lessor elects to sign same, then Lessor's royalty share of revenue shall be bound by such contract and Lessor may not elect to take its royalty in kind during the term of such gas purchase contract.

26. This Amendment is applicable to only that leasehold interest presently owned and held by Conoco Inc. Nothing contained herein shall in any way inure to the benefit of or be applicable to third parties who hold or claim any interest in said 26,622.79 acre lease or who claim an undivided interest therin either jointly or separately with Conoco. Nothing herein shall in any way prejudice any claim, demand or cause of action which Vaquillas may have or assert against third parties holding any leasehold interests in Vaquillas lands. Nothing herein shall be construed as a release or modification of any right, claim or cause of action which

-10-

GWB2/dm 130(1)

COP 0012155

Vaquillas may have against third parties who claim any interest in said 26,622.79 acre lease or any other Vaquillas lease.

27. Lessor does further RATIFY, CONFIRM and ADOPT all of the terms, provisions and conditions of said June 15, 1974 Lease, as amended and as it applies to those rights held by Conoco Inc. thereunder, and that such lease, as amended and as it applies to Conoco Inc. is in full force and effect as of this date. Further, nothing contained herein shall in any way inure to the benefit of or be applicable to any interest held by third parties in and to the June 15, 1974 Oil and Gas lease.

DATED this 9th day of January, 1988.

VAQUILLAS RANCH COMPANY, LTD.

By: _____
J. O. Walker, Jr.

By: _____
E. Walker Quiros

By: _____
Gene S. Walker

By: _____
Evan B. Quiros

VAQUILLAS UNPROVEN MINERAL TRUST

By: _____
J. O. Walker, Jr., Trustee

By: _____
E. Walker Quiros, Trustee

By: _____
Gene S. Walker, Trustee

By: _____
Evan B. Quiros, Trustee

VAQUILLAS PROVEN MINERAL TRUST

By: _____
J. O. Walker, Jr., Trustee

By: _____
E. Walker Quiros, Trustee

By: _____
Gene S. Walker, Trustee

By: _____
Evan B. Quiros, Trustee

CONOCO INC.

By: _____
Attorney-In-Fact

|COP 0012156 |

-11-

GWB2/dm 130(1)

| SURVEY | ABSTRACT | CERTIFICATE | GRANTEE | ACRES |
|---|---|---|---|---|
| 1649 | 1110 | 1158 | CCSD & RGNG | 640.0 |
| 1651 | 1112 | 1159 | CCSD & RGNG | 640.0 |
| 1652 | 2876 | 1159 | W. H. Taylor | 640.0 |
| 1661 | 1122 | 1164 | CCSD & RGNG | 640.0 |
| 1663 | 1123 | 1165 | CCSD & RGNG | 640.0 |
| 1633 | 1323 | 4/808 | GC & SF | 640.0 |
| 1634 | 2252 | 4/808 | GC & SF | 659.96 |
| 1665 | 1124 | 1166 | CCSD & RGNG | 640.0 |
| S.1/2 1666 | 2253 | 1166 | CCSD & RGNG | 328.75 |
| N.1/2 1666 | 3142 | 1166 | CCSD & RGNG | 328.79 |
| 468 | 2255 | 236 | AB & M | 659.14 |
| 467 | 799 | 236 | AB & M | 640.0 |
| 1635 | 1797 | 17 | TC Ry. | 640.0 |
| 865 | 1438 | 12/2541 | H & GN | 640.0 |
| 1683 | 1115 | 1175 | CCSD & RGNG | 640.0 |
| 1691 | 1267 | 5446 | GC & SF | 640.0 |
| 1696 | 2418 | 5448 | GC & SF | 640.0 |
| 1695 | 1268 | 5448 | GC & SF | 640.0 |
| 279 (pt. only) | 1353 | 3702 | GC & SF | 458.2 |
| 1004 | 2421 | 2/105 | J. Poitevent | 634.58 |
| 1692 | 2419 | 5446 | GC & SF | 613.04 |
| 1693 | 1269 | 5447 | GC& SF | 640.0 |
| 2112 | 2420 & 1925 | 631 | B. F. James | 627.12 |
| 276 | 2552 | 3700 | GC & SF | 640.23 |
| 228 | 2550 | 1344 | CCSD & RGNG | 636.93 |
| 227 | 1133 | 1344 | CCSD & RGNG | 640.0 |
| 988 | 2593 | 2/103 | J. Poitevent | 637.10 |
| 987* | 2061 | 2/103 | J. Poitevent | 640.0 |
| 273* | 1141 | 1349 | CCSD & RGNG | 640.0 |
| 275* | 1336 | 3700 | GC & SF | 640.0 |
| 277* | 1337 | 3701 | CCSD & RGNG | 640.0 |
| S.1/2 31, Block 2 | 1043 | 453 | CCSD & RGNG | 320.0 |
| 25, Block 2 | 1042 | 452 | CCSD & RGNG | 640.0 |
| 232* | 2148 | 1346 | CCSD & RGNG | 462.70 |
| 233* | 1117 | 1347 | CCSD & RGNG | 455.9 |
| N.1/2 51, Block 2 | 1045 | 460 | CCSD & RGNG | 320.0 |
| 259 (pt. only) | 1137 | 1074 | CCSD & RGNG | 600.0 |
| 1955 | 1328 | 4526 | GC & SF | 640.0 |
| 2057 | 985 | 302 | CCSD & RGNG | 652.25 |
| 2060 (pt. only) | 3329-30 | 303 | CT & M | 440.0 |
| E.1/2 2059 | 984 | 303 | CT& M | 320.0 |
| E.1/2 1953* | 1329 | 4527 | GC& SF | 320.0 |
| 1627 (pt. only) | 1324 | 4683 | GC & SF | 160.0 |
| 1629 (pt. only) | 1275 | 4682 | GC & SF | 292.65 |
| W.1/2 1662 | 2230 | 1164 | CCSD & RGNG | 329.31 |
| E.1/2 1648 | 2441 | 1157 | CCSD & RGNG | 325.75 |
| W.1/2 1648 | 3301 | 1157 | CCSD & RGNG | 325.75 |
| 26, Block 2* | | 452 | R. O. Barnsley | 640.0 |
| 2335 | 3025 | School | W. Brown | 27.3 |
| E.1/2 1956* | 2560 | 4526 | GC & SF | 327.34 |

Lessor's warranty hereunder as to all of Surveys 987, 273, 275, 277, 26, the E.1/2 of 1953, E.1/2 of 1956 and 401.9 acres out of Survey 233 (all except 54 acres out of SW corner of said Sur. 233) is expressly limited to 1/2 of the executive rights in the oil and gas rights in and under said lands, and as to all of Survey 232 is expressly limited to 4/5 of the executive rights in the oil and gas rights.

The following parts of surveys are expressly excluded herefrom, viz.:

(1) The SE 1/4 of SW 1/4, SW 1/4 of NE 1/4 (80 acs.) and N 1/2 of SW 1/4 and SW 1/4 of SW 1/4 (120 acs.) of CT&M Survey 2060.

(2) The W. 3/4 of GC&SF Survey 1627 described in O&G Lse. to Daniel A. Pedrotti dated September 24, 1973, as amended.

(3) Any part of a survey listed herein not included within any specific fractional reference preceding the survey reference.

(4) The NE 160 acres of GC&SF Survey 279.

(5) Block 11 as per the E.D.Claggett Subdivision of record 2 Plat Records 29, Webb County, containing 40 acres, being the NW 1/4 of SE 1/4 of CCSD & RGNG Survey 259.

(6) All of the W. 320 acres of Survey 1629 described and included in O&G Lse. to Daniel A. Pedrotti dated September 24, 1973, as amended.

CBP 0012157

Calculation of royalty to be paid on gas delivered to Lessee or Affiliates for use (and not for resale) in accordance with paragraph 19.

Principal: Pay Lessor royalty based on the greater of the weighted average price paid by the three largest volumetric purchasers for the calendar quarter in the east quarter of Webb County or the weighted average of the prices used by the Lessor for royalty payment purposes:

Calculation: Determine additional royalty payments, if any.

Data Source: Energy Planning Book publication or as reported to the State of Texas for severance tax purposes.

Step 1. Calculate the weighted average price for the month for each of the three largest volume purchases for the quarter from the tax records.

### Month-January 1988

| Purchases from Company A | MCFD | $/MCF | $ |
|---|---|---|---|
| Lease 1 | 100,000 | 2.00 | 200,863 |
| Unit 16 | 80,000 | 1.51 | 120,800 |

| Purchases from Company B | | | |
|---|---|---|---|
| Well 42 | 180,821 | 1.62 | 291,733 |

| TOTAL United Texas Transmission | 360,821 | Calculate | 613,396 |
|---|---|---|---|

Monthly Weighted Average Price    613,396/360,821 = $1.70/MMBtu

Repeat procedure for remaining two months for this purchaser and for remaining two purchasers.

Step 2. Calculate the weighted average price of the three largest volumetric purchasers for the quarter using monthly values from Step 1.

| Purchaser | Month-January 1988 | | | Month - February 1988 | | | Month - March 1988 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| United Texas Transmission | 360,821 | 1.70 | 613,396 | 397,130 | 1.58 | 627,465 | 320,306 | 1.58 | 506,083 |
| UTRADE | 400,223 | 1.55 | 620,346 | 350,723 | 1.60 | 561,157 | 500,126 | 1.55 | 775,195 |
| South Gulf | 375,000 | 1.60 | 600,000 | 299,156 | 1.62 | 484,633 | 301,000 | 1.58 | 475,580 |
| Totals | 1,136,044 | ·· | 1,833,742 | 1,047,009 | ·· | 1,673,255 | 1,121,432 | ·· | 1,756,858 |

| | Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|---|
| Totals | 3,304,485 | 5,263,855 | 1.59 |

Step 3. Calculate weighted average price used by Lessee to calculate royalty payments on gas delivered to Lessee or affiliates and not for resale.

| Month-January 1988 | | | Month-February 1988 | | | Month-March 1988 | | |
|---|---|---|---|---|---|---|---|---|
| Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| 155,000 | 1.60 | 248,000 | 140,000 | 1.62 | 226,800 | 155,000 | 1.58 | 244,900 |

| Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|
| 450,000 | 719,700 | 1.60 |

Step 4. Compare weighted average price calculated in Step 2 to the weighted average Lessee price calculated in Step 3.

$1.60/MCF is greater than $1.59/MCF so no additional royalty payments are required for this quarter.

Note: Volumes and prices used in this example are used for illustration and may not be reflective of actual conditions.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by J. O. WALKER, JR., General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by E. WALKER QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by GENE S. WALKER, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the _9th_ day of January, 1988, by EVAN B. QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires _7-3-89_

_LAURA BALLEW_
Printed/stamped    name    of    Notary.

-12-

GWB2/dm 130(1)

THE STATE OF TEXAS   §
                      §
COUNTY OF WEBB     §

    This instrument was acknowledged before me on the _____9th_____ day of January, 1988, by J. O. WALKER, JR., Trustee for The Vaquillas Unproven Mineral Trust.

_____
Notary Public in and for
The State of Texas.
My Commission Expires: ___7-3-89___

_____
LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS   §
                      §
COUNTY OF WEBB     §

    This instrument was acknowledged before me on the _____9th_____ day of January, 1988, by E. WALKER QUIROS, Trustee for the Vaquillas Unproven Mineral Trust.

_____
Notary Public in and for
The State of Texas.
My Commission Expires:___7-3-89___

_____
LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS   §
                      §
COUNTY OF WEBB     §

    This instrument was acknowledged before me on the _____9th_____ day of January, 1988, by GENE S. WALKER, Trustee of the Vaquillas Unproven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: ___7-3-89___

_____
LAURA BALLEW
Printed/stamped name of Notary.


THE STATE OF TEXAS §
                      §
COUNTY OF WEBB     §

    This instrument was acknowledged before me on the _____9th_____ day of January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Unproven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: ___7-3-89___

_____
LAURA BALLEW
Printed/stamped name of Notary.


-13-

GWB2/dm 130(1)

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9 th day of January, 1988, by J. O. WALKER, JR., Trustee of Vaquillas Proven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

LAURA  BALLEW
_____
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9 th day of January, 1988, by E. WALKER QUIROS, Trustee of Vaquillas Proven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

LAURA  BALLEW
_____
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9 th day of January, 1988, by GENE S.WALKER, Trustee of Vaquillas Proven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

LAURA  BALLEW
_____
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9 th day of January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Proven Mineral Trust.

_____
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

LAURA  BALLEW
_____
Printed/stamped name of Notary.


-14-

GWB2/dm 130(1)

THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

    This instrument was acknowledged before me on the __8th__ day of January, 1988, by ___H. C. Sager___, Attorney-in-Fact for CONOCO INC., a Delaware corporation, on behalf of said corporation.

<br>

DELLA MARKERT
Notary Public, State of Texas
My Commission Expires Sep. 18, 1988.

Notary Public in and for
The State of Texas
My Commission Expires: _9-18-88_

_Della Markert_
Printed/stamped name of Notary.

GWB2/dm 130(1)



# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this __1st__ day of __November__ 19__87__, between
**Vaquillas Ranch Company, Ltd.; Vaquillas Unproven Mineral Trust; Vaquillas Proven Mineral Trust; acting by and through its general partners, J. O. Walker, Jr., E. Walker Quiros, Gene S. Walker and Evan B. Quiros.**

Lessor (whether one or more), whose address is: __P. O. Box 1086, Laredo Texas 78040__
and __Conoco Inc., P. O. Box 2197, Houston, Texas 77252__, Lessee, WITNESSETH:

1. Lessor in consideration of __Ten Dollars and Other Good and Valuable Consideration__ Dollars
($ __10.00__ ), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, conducting exploration, geologic and geophysical surveys by seismograph, core test, gravity and magnetic methods, injecting gas, water and other fluids, and air into subsurface strata, laying pipe lines, building roads, tanks, power stations, telephone lines and other structures thereon and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto, to produce, save, take care of, treat, transport and own said products, and housing its employees, the following described land in __Webb__ County, Texas, to-wit:

6,740 acres of land, more or less, situated in Webb County, Texas, more fully described in Exhibit "A" attached hereto and made a part of this Lease for all relevant purposes, including limitations upon warranty as specifically set out therein.

~~This lease also covers and includes all land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys, although not included within the boundaries of the land particularly described~~ above. For the purpose of calculating the rental payments hereinafter provided for, said land is estimated to comprise __6,740__ acres, whether it actually comprises more or less.

2. Subject to the other provisions herein contained, this lease shall be for a term of __three~~ years~~__ years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.
Where the term one-eight is used in this paragraph 3, it is changed to one-fifth.
3. The royalties to be paid by Lessee are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipelines to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase; (b) ~~on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale;~~ while there is a gas well on this lease or on acreage pooled therewith but gas is not being sold or used, Lessee may pay as royalty, on or before ninety (90) days after the date on which (1) said well is shut in, or (2) the land covered hereby or any portion thereof is included in a pooled unit on which a well is located, or (3) this lease ceases to be otherwise maintained as provided herein, whichever is the later date, and thereafter at annual intervals on or before the anniversary of the date the first payment is made, a sum equal to the amount of the annual rental payable in lieu of drilling operations during the primary term on the number of acres subject to this lease at the time such payment is made, and if such payment is made or tendered, this lease shall not terminate, and it will be considered that gas is being produced from this lease in paying quantities; and (c) on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined and marketed the royalty shall be fifty cents (50¢) per long ton. Lessee shall have free use of oil, gas, coal, and water from said land, except water from Lessor's wells, for all operations hereunder, and the royalty on oil, ~~gas~~ and ~~coal~~ gas and tanks shall be computed after deducting any so used.

4. Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof as to oil and gas, or either of them, with any other land covered by this lease, and/or with any other land, lease or leases in the immediate vicinity thereof to the extent hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas in and under and that may be produced from said premises. Units pooled for oil hereunder shall not substantially exceed 40 acres each in area, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of ten percent (10%) thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, for the drilling or operation of a well at a regular location or for obtaining maximum allowable from any well to be drilled, drilling or already drilled, units thereafter created may conform substantially in size with those prescribed or permitted by governmental regulations. Lessee under the provisions hereof may pool or combine acreage covered by this lease or any portion thereof as above provided as to oil in any one or more strata and as to gas in any one or more strata. The units formed by pooling as to any stratum or strata need not conform in size or area with the unit or units into which the lease is pooled or combined as to any other stratum or strata, and oil units need not conform as to area with gas units. The pooling in one or more instances shall not exhaust the rights of the Lessee hereunder to pool this lease or portions thereof into other units. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit; and upon such recordation the unit shall be effective as to all parties hereto, their heirs, successors, and assigns, irrespective of whether or not the unit is likewise effective as to all other owners of surface, mineral, royalty, or other rights in such land. Lessee may at its election exercise its pooling option before or after commencing operations for or completing an oil or gas well on the leased premises, and the pooled unit may include, but it is not required to include, land or leases upon which a well capable of producing oil or gas in paying quantities has theretofore been completed or upon which operations for drilling were commenced or such production was secured before or after the execution of this instrument or the instrument designating the pooled unit, such operations shall be considered as operations for drilling on or production of oil or gas from land covered by this lease whether or not the well or wells be located on the premises covered by this lease and in such event operations for drilling shall be deemed to have been commenced on said land within the meaning of paragraph 5 of this lease; and the entire acreage constituting such unit or units, as to oil and gas, or either of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease. For the purpose of computing the royalties to which owners of royalties and payments out of production and each of them shall be entitled on production of oil and gas, or either of them, from the pooled unit, there shall be allocated to the land covered by this lease and included in said unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) a pro rata portion of the oil and gas, or either of them, produced from the pooled unit after deducting that used for operations on the pooled unit. Such allocation shall be on an acreage basis—that is to say, there shall be allocated to the acreage covered by this lease and included in the pooled unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that pro rata portion of the oil and gas, or either of them, produced from the pooled unit which the number of surface acres covered by this lease (or in each such separate tract) and included in the pooled unit bears to the total number of surface acres included in the pooled unit. Royalties hereunder shall be computed on the portion of such production, whether it be oil and gas, or either of them, so allocated to the land covered by this lease and included in the unit just as though such production were from such land. The production from an oil well will be considered as production from the lease or oil pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit. The formation of any unit hereunder shall not have the effect of changing the ownership of any delay rental or shut-in production royalty which may become payable under this lease. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interest as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but Lessee shall nevertheless have the right to pool as provided above with consequent allocation of production as above provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender (or shall make a bona fide attempt to pay or tender, as hereinafter stated) to Lessor or to the credit of Lessor in __South Texas National Bank__
~~Bank~~ at __Laredo__, Texas, (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of __Thirteen__ Thousand and __Four Hundred Eighty and NO/100__ Dollars ($ __13,480.00__ ), (herein called rentals), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental under this paragraph and of royalty under paragraph 3 on any gas well from which gas is not being sold or used may be made by the check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment. If such bank (or any successor bank) should fail, liquidate or be succeeded by another bank, or for any reason fail or refuse to accept rental, Lessee shall not be held in default for failure to make such payment or tender of rental until thirty (30) days after Lessor shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payments or tenders. If Lessee shall, on or before any anniversary date, make a bona fide attempt to pay or deposit rental to a Lessor entitled thereto according to Lessee's records or to a Lessor, who, prior to such attempted payment or deposit, has given Lessee notice, in accordance with subsequent provisions of this lease, of his right to receive rental, and if such payment or deposit shall be ineffective or erroneous in any regard, Lessee shall be unconditionally obligated to pay to such Lessor the rental properly payable for the rental period involved, and this lease shall not terminate but shall be maintained in the same manner as if such erroneous or ineffective rental payment or deposit had been properly made, provided that the erroneous or ineffective rental payment or deposit be corrected within 90 days after receipt by Lessee of written notice from such Lessor of such error accompanied by such instruments as are necessary to enable Lessee to make proper payment. The down cash payment is consideration for this lease according to its terms and shall not be allocated as a mere rental for a period. Lessee may at any time or times execute and deliver to Lessor or to the depository above named or place of record a release or releases of this lease as to all or any part of the above-described premises, or of any mineral or horizon under all or any part thereof, and thereby be relieved of all obligations as to the released land or interest. If this lease is released as to all minerals and horizons under a portion of the land covered by this lease, the rentals and other payments computed in accordance therewith shall thereupon be reduced in the proportion that the number of surface acres within such released portion bears to the total number of surface acres which was covered by this lease immediately prior to such release.

25757-001   DML JUL 1 4 '88

6. If prior to discovery and production of oil, gas or other mineral on said land or on acreage pooled therewith, Lessee should drill a dry hole or holes thereon, or if after discovery and production of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter or if it be within the primary term, commences or resumes the payment or tender of rentals or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty days from date of completion of dry hole or cessation of production. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep the lease in force during the remainder of the primary term. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith. Any pooled unit designated by Lessee in accordance with the terms hereof may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after the completion of a dry hole or the cessation of production on said unit. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land ................................................ and draining the leased premises, or acreage pooled therewith, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

8. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee; and no change or division in such ownership shall be binding on Lessee until thirty (30) days after Lessee shall have been furnished by registered U. S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to rentals hereunder, Lessee may pay or tender such rentals to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualification of an executor or administrator of the estate, or if there be none, then until Lessee is furnished with evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more persons be entitled to participate in the rental payable hereunder, Lessee may pay or tender said rental jointly to such persons or to their joint credit in the depository named herein; or, at Lessee's election, the proportionate part of said rentals to which each participant is entitled may be paid or tendered to him separately or to his separate credit in said depository; and ................................................ In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, but in discharging this obligation ................................................

10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and in event Lessee does so, it shall be subrogated to such lien with right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether Lessor's interest is herein specified or not), or no interest therein, then the royalties, delay rental and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by Lessor) shall be paid out of the royalty herein provided. Should any one or more of the parties named above as Lessors fail to execute this lease, it shall nevertheless be binding upon the party or parties executing the same. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of force majeure, any Federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises; and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

The attached addendum dated November 1, 1987, is attached hereto and made a part hereof for all intents and purposes.

---

STATE OF .................... }
COUNTY OF .................... }

**TEXAS SINGLE ACKNOWLEDGMENT**

Before me, the undersigned authority, a Notary Public in and for said County and State, on this day

personally appeared ................................................

Known to me to be the person.. whose name ................................ subscribed to the foregoing instrument, and acknowledged to me that ..he.. executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this the .......... day of .................................... A. D. 19..........

Notary Public in and for .................... County, ....................

STATE OF .................... }
COUNTY OF .................... }

**TEXAS JOINT ACKNOWLEDGMENT**

Before me, the undersigned, a Notary Public in and for said County and State, on this day personally

appeared ................................ and ................................
husband and wife, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed. And the said wife, having been examined by me privily and apart from her husband, and having had said instrument fully explained to her, she, the said wife, acknowledged the same to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office, this the .......... day of .................................... A. D. 19..........

Notary Public in and for .................... County, ....................

ADDENDUM TO OIL AND GAS LEASE

From Vaquillas Ranch Co., Ltd. et al

To Conoco Inc., Dated November 1, 1987

12. Should Lessee be prevented from complying with covenants of this lease by reason of conditions or acts set forth in Paragraph '11' hereof, then Lessee agrees annually to pay to Lessor an amount equal to the delay rentals herein provided for during such period of prevention, whether same be during or subsequent to the primary term, and such payment shall be made at the end of each year of prevention either to Lessor or to the depository above named for credit to the account of Lessor.

13. This lease does not cover or include any right or privilege of hunting or fishing on any part of the above described land, and Lessee agrees with Lessor that neither he nor his assigns or agents or employees of his assigns, will bring firearms or dogs upon the leased premises, and should this provision against hunting and fishing be violated by any agents, servants, employees or contractors of Lessee's assigns, any such person so violating same shall have no further right to enter upon the leased premises, and such person shall be regarded as and shall be a trespasser on the premises of Lessor and be subject to the penalties imposed upon trespassers under the laws of the State of Texas.

14. It is expressly agreed and understood that after production of oil and gas in commercial quantities is obtained from the leased premises, the minimum annual income to Lessor from payment of rentals, shut-in royalty and royalty on production shall be sum of not less than Two ($2.00) Dollars per acre on the total acreage retained and then covered by this lease, but this provision shall not impair the right and privilege of Lessee, his successors and assigns, to release and surrender any part of the above described leased premises as herein provided. Lessee, his successors and assigns, shall determine within 90 days from the expiration of any lease year during which royalties have been paid on actual production the amount of any deficiency, and shall within said 90-day period pay such deficiency to Lessor or deposit same to Lessor's credit at

GWB2/dm 124(7)

the depository hereinabove designated. Default in the payment of such deficiency shall not operate to terminate this lease or any part hereof, but Lessee, his successors and assigns, agrees to personally pay such deficiency to Lessor at Laredo in Webb County, Texas, together with any reasonable cost, including attorney's fees, incurred by Lessor in collecting such deficiency if not paid within the 90-day period hereinabove provided for.

15. Nothwithstanding any other provision herein contained, this oil, gas and mineral lease is limited to oil, gas and sulphur and minerals produced with oil and gas, and does not include minerals other than oil, gas and sulphur and minerals produced with oil and gas, as Lessor herein excludes from the leasehold estate herein granted, and reserves unto himself, his heirs and assigns, all minerals other than oil, gas and sulphur and minerals that may be produced with oil and gas, but it is expressly agreed that 'gas' as used herein includes gas, condensate, distillate or any other gaseous substance or any other mineral produced with oil and gas, including sulphur.

16. The right to pool under Paragraph '4' of this oil, gas and mineral lease shall be limited to lease or leases on land belonging to Lessor herein, or in which Lessor owns an interest in the oil, gas and other minerals.

17. For the purposes of the annual rental payments due under paragraph 5, Lessor and Lessee agree that said payments have been timely paid and received, and that this Lease is perpetuated, without the necessity of further delay rental payments, until the expiration of the primary term.

18. At the end of the primary term hereof, Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this

lease provides for a spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned; provided, however, that if at such date lessee is engaged in drilling or reworking operations the date for the execution and delivery of such release shall be postponed and the entire lease shall remain in force so long as operations on said well or wells are prosecuted with reasonable diligence, and if, after the completion or abandonment of any such well Lessee commences the drilling of an additional well within Ninety (90) days from the completion or abandonment of the preceding well, or continuously conducts drilling operations in good faith and with reasonable diligence on said lease without any cessation for longer than Ninety (90) days, said lease shall remain in full force and effect during such drilling operations and until the end of Ninety (90) days after the completion or abandonment of the final well, at which time Lessee shall execute and deliver to Lessor said written release, releasing all portions of the lease not then so developed. Each retained unit shall contain at least one (1) well producing or capable of producing oil or gas in paying quantities, and the acreage within a unit shall be contiguous.

If, after the date the partial release called for under this Paragraph 18 takes affect, all production from a retained unit around a well or wells cease to produce oil or gas in commercial or in paying quantities, Lessee shall have one hundred eighty (180) days thereafter within which to commence operations to establish or re-establish production therein in commercial or paying quantities, whether such production be from the same wellbore or other wellbore. If such operations result in commercial production, then this lease, as it applies to such unit shall continue until such commercial or paying production again ceases. However, if such operations do not result in commercial production, then Lessee shall have ninety (90) days after completion of such operations within which to commence drilling or reworking operations within such unit, and this lease, as it applies to said unit, shall remain in force so long as operations on said well or for drilling or reworking of any additional well therein are prosecuted with no cessation of more than ninety (90) consecutive days, and if they result in the production of oil or gas therein, so long thereafter

-3-

GWB2/dm 124(7)

as oil or gas is produced from said unit. As to any unit upon which commercial production may periodically terminate, the above right to timely resume operations and continue this lease as to such unit shall be reoccurring right.

The stipulation above as to the size of retained tracts around wells shall never be construed as a satisfaction of Lessee's right, duty and obligation to reasonably develop the leasehold held by Conoco or its successors or assigns. After November 1, 1990, Lessee agrees to drill such additional wells on the leased premises or such portions thereof as may be in force and effect from time to time, as may be necessary to reasonable develop the same for the production of oil and/or gas as a reasonable prudent operator.

19. A portion of paragraph 3 has been deleted and the following is in lieu thereof.

(b) on gas, including casinghead gas or other gaseous substances, produced from said land, the Lessors royalty shall be calculated and paid as follows:

a) Sales To Non-Affiliated Third Parties:
In the event Lessee enters into a gas sales contract with a non-affiliated third party, Lessor's royalty shall be one-fifth (1/5) of the gross proceeds received by Lessee from the sale of such gas.

b) Sales To Related Or Affiliated Entities For Resale:
In the event Lessee enters into a gas sales contract to sell gas to a related or affiliated entity, then Lessor's royalty shall be computed on the greater of the following:

1. One-fifth (1/5) of the gross proceeds received by Lessee or any affiliate or related entity from the sale of such gas to the first non-affiliated entity, or

2. One-fifth (1/5) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the

-4-

east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

In this regard, it is understood that the "highest price reasonably obtainable" may be equal to, but is not necessarily, the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

c) Taking, Selling Or Delivery Of Gas To Lessee Or Its Related Or Affiliated Entities For Use (Not For Resale):

In the event Lessee takes gas for its own use, or sells or transfers gas to a related or affiliated entity for use, then Lessor's royalty shall be computed on the greater of the following:

1. One-fifth (1/5) of the highest price reasonably obtainable for gas by Lessee and other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity.

   In this regard, it is understood that the "highest price reasonably obtainable" may be equal to but is not necessarily the highest price then being obtained by other producers or operators in the east one-fourth of Webb County, Texas, who are producing gas of like kind, quality and quantity, or

2. One-fifth (1/5) of the quarterly weighted average of the prices being paid by "purchasers" (as hereinafter defined) in the east one-fourth of Webb County, Texas, who are purchasing gas of like kind and quality. For the purposes of calculating the average price under this Paragraph c2, prices paid shall be those as reported in the Energy Planning Book publication or as reported to the State of

-5-

Texas for severance tax purposes. "Purchasers" shall mean the three largest purchasers based on volume of gas purchased for such calendar quarter, in the east one-fourth of Webb County, Texas. For an example of the calculation of the quarterly weighted average of such price, see Exhibit "B".

Lessor and Lessee shall meet within eleven (11) months after the end of each calander year. At least thirty (30) days prior to such meeting, Lessee should furnish to Lessor a statement or other documentation of the basis upon which royalties accrued to Lessor under the terms of the Lease for the previous calender year. Any additional royalties calculated by Lessee to be due, if any, shall be paid at such meeting. Within one (1) year from delivery of the above referred to statement or other documentation, Lessor shall notify Lessee of any discrepancies. Failure to notify Lessee timely of any discrepancies shall constitute final acceptance of royalty payments as covered by such statements or other documentation. The first period for which Lessee shall prepare such statements or other documentation shall begin on April 1, 1988 and end on December 31, 1988. Nothing in this paragraph shall preclude Lessor from claiming any royalty which Lessor is entitled to as a result of mistake in computation, oversight in computation, or error in computation of royalty or which may result from the subsequent disclosure of a discrepancy.

LESSOR'S royalty shall be without deduction for any costs, such as, but not limited to, costs of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting and otherwise making the oil, gas and associated substances ready for sale or use, except for a) severance and related taxes, and b) reasonable transportation expenses which may be necessary to be paid to non-affiliated third parties or entities to get Lessor's gas to a market or point of sale off the leased premises and which sale or sales will result in a net price equal to or higher than if said gas had been sold at the wellhead.

LESSEE may submit a copy of a proposed gas sales contract to Lessor which is acceptable to Lessee and request that Lessor approve same for

GWB2/dm 124(7)

royalty computation purposes. Lessor shall have thirty (30) days after receipt of a gas contract to approve same. If Lessor approves same or does not timely decline to do so, then Lessor's royalty on gas sold under such gas sales contract shall be based on the gross proceeds received under said contract.

GAS contracts with a term in excess of three (3) years shall contain a provision for price redetermination no later than the end of the 3rd year and subsequent price redeterminations thereafter at intervals no greater than two (2) years apart.

20. Lessee agrees to fill all slush pits and level the same when they have ceased to be used and to restore the land to as near its original state as is practicable and to pay for damages to the surface of the land and the improvements, water wells, growing crops and livestock thereon, and to any other personal property of Lessor, Vaquillas Ranch Company, Ltd., occasioned by, arising out of, or resulting from operations by Lessee, his agents, employees or independent contractors on the land hereby leased to Lessee. Lessee also agrees, when requested in writing by Lessor, to divulge to Lessor true and correct information as requested by Lessor as to all drilling, producing and marketing operations conducted under this lease and to furnish to Lessor copies of all electric well logs taken hereunder; provided, however, Lessee shall not be obligated to release such information until it has been released to the industry.

21. Lessee hereby agrees to ensure that the two exit gates on F.M. 2895 (Forest Gate and Reynolds Gate) are guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Lessee and Lessor. As to the exit gate on the north side of U.S. Highway 59, Lessee agrees to use its best efforts to work out an arrangement with other exploration companies using such gate to ensure that it is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and other times as mutually agreed to by Lessee and Lessor. Further, Lessee agrees to use its best efforts to work out an arrangement with TransAmerican Natural Gas Corporation or its successors or assigns to ensure that the exit gate

-7-

located 9 miles north of Aguilares, Texas, on F.M. 2895 is guarded in an efficient and prudent manner during drilling, reworking or plugging operations and at other times as mutually agreed to by Conoco and Lessor. In regard to gates used by Lessee and other exploration companies, Lessee agrees to pay its share of the cost of guarding such gates when such gate guards are required under this agreement. Lessee shall not be obligated to furnish a gate guard on any gate which has been abandoned or is not being used by Lessee.

22. Lessee agrees that before abandoning any well drilled on said lease for oil or gas purposes, it will notify the owner or the surface estate in person or by telephone of its intention to do so, and it will allow said owner of the surface estate a reasonable time, not exceeding twenty-four (24) hours thereafter, within which to elect to take over the hole for the purpose of attempting to make and complete a water well. Lessee agrees to consult with such surface owner as to the location of a potential water zone, without any liability or warranty for such consultation. Upon the owner of the surface estate election, within the specified time, to attempt to complete the well as a water well and complying with all rules and regulations of the Railroad Commission of Texas and applicable statutes, Lessee will, at its expense, set all plugs to just below the designated water sand as may be required by the Railroad Commission and thereafter deliver the well to said owner of the surface estate, leaving in such well all surface casing and such intermediate casing as may have been run and set to at least the depth of the designated water sand and thereafter the owner of the surface state shall own the well and shall be responsible for all subsequent matters in connection with the well and for compliance with the applicable statutes and regulations of all regulatory agencies having jurisdiction. Lessee shall have no liability to Lessor in connection with any of the operations which may be conducted by the owner of the surface estate who shall thereafter bear all responsibility and liability with respect thereto. It is expressly understood that Lessee shall not be required to furnish any additional casing or other equipment for any well plugged back at the request of the owner of the surface estate under this paragraph. Should the owner of the surface estate elect not to attempt to make a producing water well out of

-8-

any such hole, Lessee shall plug the well in accordance with all applicable rules, regulations and statutes.

23. It is expressly agreed and understood that for the purposes of this lease the following definitions shall apply:

"Commences" - A well shall be deemed commenced on the date which the drilling bit enters the earth for the drilling of a well.

"Abandoned" - A well shall be deemed abandoned on the day when it is finally plugged as a dry hole.

"Completed" - A well shall be deemed completed thirty (30) days after the day the Lessee sets production casing.

24. Lessor and Lessee agree to limit the commencement of actual drilling during deer hunting season to 1) those wells drilled in areas which would not disturb deer hunting, and 2) offset wells. If Lessee must commence a well during deer hunting season to perpetuate said lease, then Lessor will either a) not object to the drilling of such well during deer hunting season or b) agree to extend the commencement date for such well to a mutually agreeable date after deer hunting season ends. For the purposes of this paragraph "deer hunting season" shall be that period defined by State law.

25. Nothwithstanding anything contained herein to the contrary, the Lessor at any time and from time to time, upon not less than ninety (90) days notice to the holder of this lease, may elect to require the payment of any royalties accruing to such royalty owner under this lease to be made in kind; provided that any expenses incident to the exercise of such election shall be borne by Lessor and such election shall be for periods of not less than twelve (12) months. Lessor shall only be allowed to take in kind when Lessee is producing for his own account. In the event of such an election by Lessor, Lessee shall cooperate fully with Lessor in allowing Lessor to take their royalty in kind, including permitting Lessor to use Lessee's wellhead equipment and, to the extent that Lessee has assignable rights, the use of Lessee's purchaser's transportation facilities in good faith and not to exceed prevailing charges for similar services in the industry at the time if Lessee or its affiliates are transporting the gas,

-9-

but if Lessee has a third party contract for the transport of said gas, Lessor will be bound by said contract. Should Lessee desire to enter into a gas purchase contract having a term of more than one (1) year, then (a) Lessee shall include in such contract a provision that allows Lessor to elect to take its gas in kind and be released from such contract one hundred twenty (120) days after notice, or (b) Lessor may approve of such contract in writing, in which event, Lessor may elect to take its gas in kind either at the end of such gas contact or one (1) year after notice to Lessee, whichever happens sooner. Any equipment installed by Lessor necessary to take in kind must be approved by Lessee and maintained according to Lessee's specifications.

If Lessee is unable to obtain a more favorable gas contract because of Lessor's reservation of this election to take in kind, then Lessee may elect to give notice of its intention to sign a gas contract acceptable to Lessee and request that Lessor join in signing same, and if Lessor elects to sign same, then Lessor's royalty share of revenue shall be bound by such contract and Lessor may not elect to take its royalty in kind during the term of such gas purchase contract.

DATED this _9th_ day of January, 1988.

VAQUILLAS RANCH COMPANY, LTD.

By: _____
    J. O. Walker, Jr.

By: _____
    E. Walker Quiros

By: _____
    Gene S. Walker

By: _____
    Evan B. Quiros

VAQUILLAS UNPROVEN MINERAL TRUST

By: _____
    J. O. Walker, Jr., Trustee

By: _____
    E. Walker Quiros, Trustee

By: _____
    Gene S. Walker, Trustee

By: _____
    Evan B. Quiros, Trustee

-10-

GWB2/dm 124(7)

VAQUILLAS PROVEN MINERAL TRUST          CONOCO INC.

By: _____       By: _____
    J. O. Walker, Jr., Trustee                 Attorney-In-Fact

By: _____
    E. Walker Quiros, Trustee

By: _____
    Gene S. Walker, Trustee

By: _____
    Evan B. Quiros, Trustee

-11-

GWB2/dm 124(7)

| SURVEY | | ABSTRACT | CERTIFICATE | GRANTEE | ACRES |
|---|---|---|---|---|---|
| 1652 | | 2876 | 1159 | W. H. TAYLOR | 640.0 |
| 1661 | | 1122 | 1164 | CCSD & RGNG | 640.0 |
| 1663 | | 1123 | 1165 | CCSD & RGNG | 640.0 |
| 1633 | | 1323 | 4/808 | GC & SF | 640.0 |
| 1634 | | 2252 | 4/808 | GC & SF | 659.96 |
| 1665 | | 1124 | 1166 | CCSD & RGNG | 640.0 |
| 1635 | | 1797 | 17 | TC RY. | 640.0 |
| 2060 | (SE/4 only) | 3329-30 | 303 | CT & M | 160.0 |
| 1953 | (E 1/2) | 1329 | 4527 | GC & SF | 320.0 |
| 1627 | (pt. only) | 1324 | 4683 | GC & SF | 160.0 |
| 1629 | (pt. only) | 1275 | 4682 | GC & SF | 264.65 |
| 1662 | (W 1/2) | 2230 | 1164 | CCSD & RGNG | 329.31 |
| 1648 | (E 1/2) | 2441 | 1157 | CCSD & RGNG | 325.75 |
| 1648 | (W 1/2) | 3301 | 1157 | CCSD & RGNG | 325.75 |
| 2335 | | 3025 | SCHOOL | W. BROWN | 27.3 |
| 1956 | (E 1/2) | 2560 | 4526 | GC & SF | 327.34 |

The following parts of surveys are expressly excluded herefrom, viz.:

(1) The SE 1/4 of SW 1/4, SW 1/4 of NE 1/4 (80 acs.) and N 1/2 of SW 1/4 and SW 1/4 of SW 1/4 (120 acs.) of CT & M Survey 2060.

(2) The W. 3/4 of GC & SF Survey 1627 described in O&G Lease to Daniel A. Pedrotti dated September 24, 1973, as amended.

(3) All of the W. 320 acres of Survey 1629 described and included in O&G Lease to Daniel A. Pedrotti dated September 24, 1973, as amended.

Calculation of royalty to be paid on gas delivered to Lessee or Affiliates for use (and not for resale) in accordance with paragraph 19.

**Principal:** Pay Lessor royalty based on the greater of the weighted average price paid by the three largest volumetric purchasers for the calendar quarter in the east quarter of Webb County or the weighted average of the prices used by the Lessor for royalty payment purposes;

**Calculation:** Determine additional royalty payments, if any.

**Data Source:** Energy Planning Book publication or as reported to the State of Texas for severence tax purposes.

**Step 1.** Calculate the weighted average price for the month for each of the three largest volume purchases for the quarter from the tax records.

### Month-January 1988

| Purchases from Company A | MCFD | $/MCF | $ |
|---|---|---|---|
| Lease 1 | 100,000 | 2.00 | 200,863 |
| Unit 14 | 80,000 | 1.51 | 120,800 |
| **Purchases from Company B** | | | |
| Well 42 | 180,821 | 1.62 | 291,733 |
| **TOTAL United Texas Transmission** | 360,821 | Calculate | 613,396 |

Monthly Weighted Average Price    613,396/360,821 = $1.70/MMBtu

Repeat procedure for remaining two months for this purchaser and for remaining two purchasers.

**Step 2.** Calculate the weighted average price of the three largest volumetric purchasers for the quarter using monthly values from Step 1.

| Purchaser | Month-January 1988 | | | Month - February 1988 | | | Month - March 1988 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| United Texas Transmission | 360,821 | 1.70 | 613,396 | 397,130 | 1.58 | 627,465 | 320,306 | 1.58 | 506,083 |
| UTRADE | 400,223 | 1.55 | 620,346 | 350,723 | 1.60 | 561,157 | 500,126 | 1.35 | 775,195 |
| South Gulf | 375,000 | 1.60 | 600,000 | 299,156 | 1.62 | 484,633 | 301,000 | 1.58 | 475,580 |
| Totals | 1,136,044 | -- | 1,833,742 | 1,047,009 | -- | 1,673,255 | 1,121,432 | -- | 1,756,858 |

| | Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|---|
| Totals | 3,304,485 | 5,263,855 | 1.59 |

**Step 3.** Calculate weighted average price used by Lessee to calculate royalty payments on gas delivered to Lessee or affiliates and not for resale.

| Month-January 1988 | | | Month-February 1988 | | | Month-March 1988 | | |
|---|---|---|---|---|---|---|---|---|
| Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ | Volume MCF | Price $/MCF | Extension $ |
| 155,000 | 1.60 | 248,000 | 140,000 | 1.62 | 226,800 | 155,000 | 1.58 | 244,900 |

| Sum of Volumes | Sum of Extensions | Weighted Average Price |
|---|---|---|
| 650,000 | 719,700 | 1.60 |

**Step 4.** Compare weighted average price calculated in Step 2 to the weighted average Lessee price calculated in Step 3.

$1.60/MCF is greater than $1.59/MCF so no additional royalty payments are required for this quarter.

**Note:** Volumes and prices used in this example are used for illustration and may not be reflective of actual conditions.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by J. O. WALKER, JR., General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.



_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by E. WALKER QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by GENE S. WALKER, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the 9th day of January, 1988, by EVAN B. QUIROS, General Partner of Vaquillas Ranch Co., Ltd., A Texas Limited Partnership, on behalf of said partnership.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires 7-3-89

_LAURA BALLEW_
Printed/stamped name of Notary.

GWB2/dm 130(1)

-12-



THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by J. O. WALKER, JR., Trustee for The Vaquillas Unproven Mineral Trust.



_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires: 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by E. WALKER QUIROS, Trustee for the Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas.
My Commission Expires: 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by GENE S. WALKER, Trustee of the Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.

THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Unproven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: 7-3-89

LAURA BALLEW
Printed/stamped name of Notary.

-13-

GWB2/dm 130(1)



THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by J. O. WALKER, JR., Trustee of Vaquillas Proven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by E. WALKER QUIROS, Trustee of Vaquillas Proven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by GENE S.WALKER, Trustee of Vaquillas Proven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.


THE STATE OF TEXAS §
§
COUNTY OF WEBB §

This instrument was acknowledged before me on the ___9th___ day of January, 1988, by EVAN B. QUIROS, Trustee of Vaquillas Proven Mineral Trust.

_Laura Ballew_
Notary Public in and for
The State of Texas
My Commission Expires: _7-3-89_

_LAURA BALLEW_
Printed/stamped name of Notary.

-14-

GWB2/dm 130(1)









THE STATE OF TEXAS §
                    §
COUNTY OF WEBB      §

    This instrument was acknowledged before me on the _8th._ day of January, 1988, by _____ *H. C. Sager* _____, Attorney-in-Fact for CONOCO INC., a Delaware corporation, on behalf of said corporation.



Notary Public in and for
The State of Texas
My Commission Expires: _9-18-88_

*Della Markert*
Printed/stamped name of Notary.

DELLA MARKERT
Notary Public, State of Texas
My Commission Expires Sep. 18, 1988.

GWB2/dm 130(1)

330158

## MINERAL DEED

STATE OF TEXAS                    §
                                  § KNOW ALL MEN BY THESE PRESENTS:
COUNTIES OF STARR WEBB            §
    AND ZAPATA

THAT VAQUILLAS RANCH CO., LTD., a Texas Limited Partnership, for and in consideration of the sum of Ten Dollars ($10.00)) and other good and valuable consideration to it in hand paid by the grantees hereinafter named, does hereby BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY unto the following, to-wit:

J. O. WALKER, JR. an undivided .1628 interest;
JAMES D. WALKER an undivided .0853 interest;
NANCY J. WALKER BRICE an undivided .0853 interest;
EVAN B. QUIROS an undivided .0814 interest;
E. WALKER QUIROS an undivided .0814 interest;
EVAN J. QUIROS an undivided .05686 interest;
SADIE DIANE GYURKO an undivided .05686 interest;
QUINLAN QUIROS SMITH-SAAB an undivided .05686 interest;
GENE S. WALKER an undivided .1628 interest;
GENE S. WALKER, JR. an undivided .042605 interest;
JAMES PATRICK WALKER an undivided .042605 interest;
ELIZABETH WALKER an undivided .042605 interest; and
KATHLEEN WALKER an undivided .042605 interest,

in and to all of its right, title and interest in and to all of the oil, gas and other minerals in and under the following land: 100,403.93 acres of land, more or less, commonly known as the VAQUILLAS RANCH, in Webb and Zapata Counties, Texas, said land being fully described on Exhibit 1 which is attached hereto and incorporated herein for all purposes and 102.35 acres of land in Starr County, said land being fully described in Exhibit 2 which is attached hereto and incorporated herein for all purposes.

TO HAVE AND TO HOLD the respective interest hereby conveyed unto each of the said grantees, his or her heirs and assigns, forever. This assignment shall be effective as of November 1, 1984 at 7:00 A.M.

EXECUTED this _19th_ day of December, 1984.

VAQUILLAS RANCH CO., LTD.

By _____
   J. O. WALKER, JR.,
   General Partner

VOL 1097 PAGE 66

EXHIBIT
B-4

FILED
Feb 15 11 54 AM '85
HENRY FLORES, Co. Clerk
WEBB COUNTY, TEXAS
BY _____ DEPUTY

By: _Evan B. Quiros_
 　 EVAN B. QUIROS,
 　 General Partner

By: _E. Walker Quiros_
 　 E. WALKER QUIROS,
 　 General Partner

By: _Gene S. Walker_
 　 GENE S. WALKER,
 　 General Partner

The mailing address of each of the grantees is:

J. O. Walker, Jr.
P.O. Box 342
Laredo, TX  78040

James D. Walker
111 Inwood Road
Laredo, TX  78041

Nancy J. Walker Brice
P.O. Box 716
Hebbronville, TX  78361

Evan B. Quiros
2102 Galveston
Laredo, TX  78040

E. Walker Quiros
2102 Galveston
Laredo, TX  78040

Evan J. Quiros
2105 Galveston Street
Laredo, TX  78040

Sadie Diane Gyurko
2105 Galveston
Laredo, TX  78040

Quinlin Quiros Smith-Saab
8308 Winningham
Houston, TX  77055

Gene S. Walker
P.O. Box 5
Aguilares, TX  78369

Gene S. Walker, Jr.
P.O. Box 39
Mirando City, TX  78369

James Patrick Walker
P.O. Box 4
Aguilares, TX  78369

Elizabeth Walker
P.O. Box 5
Aguilares, TX  78369

Kathleen Walker
P.O. Box 5
Aguilares, TX  78369

STATE OF TEXAS 　 　 　 　 　 S

COUNTY OF _WEBB_ 　 　 　 　 S

　 　 This instrument was acknowledged before me on
_19th December  1984_ 　 　 by J. O. WALKER, JR.,

2

General Partner on behalf of VAQUILLAS RANCH CO., LTD.

Notary Public in and for
the State of Texas

(L.S.)

Martha V. Villarreal
Printed Name of Notary

My Commission Expires: 05-03-88

STATE OF TEXAS §

COUNTY OF __WEBB__ §

This instrument was acknowledged before me on
__19th December 1984__ by EVAN B. QUIROS,
General Partner on behalf of VAQUILLAS RANCH CO., LTD.

Notary Public in and for
the State of Texas

(L.S.)

Martha V. Villarreal
Printed Name of Notary

My Commission Expires: 05-03-84

STATE OF TEXAS §

COUNTY OF __WEBB__ §

This instrument was acknowledged before me on
__19th December 1984__ by E. WALKER QUIROS,
General Partner on behalf of VAQUILLAS RANCH CO., LTD.

Notary Public in and for
the State of Texas

(L.S.)

Martha V. Villarreal
Printed Name of Notary

My Commission Expires: 05-03-84

STATE OF TEXAS §

COUNTY OF __WEBB__ §

This instrument was acknowledged before me on
__19th December 1984__ by GENE S. WALKER,

3

General Partner on behalf of VAQUILLAS RANCH CO., LTD.

_Whitaural_

Notary Public in and for
the State of Texas

_Martha U. Villarreal_
Printed Name of Notary

My Commission Expires: 05-03-88

VOL 1097 PAGE 69

4

EXHIBIT 1

To Deed from Vaquillas Ranch Company, Ltd.
to J. O. Walker, Jr., et al.


100,403.93 acres, more or less, known as
The Vaquillas Ranch,
and being comprised of the following lands in
Webb and Zapata Counties, Texas:

| SURVEY # | ABSTR | ACRES | CERT. NAME |
|---|---|---|---|
| 9 | 3168 | 640.00 | H&GN |
| 10 | 477 | 646.67 | H&GN |
| 11 | 53 | 640.00 | HGNRR |
| 12 | 400 | 640.00 | P. BENAVIDES |
| 14 | 447 | 647.15 | HG&N |
| 16 | 525 | 640.00 | MR. PENA |
| 18 | 2136 | 640.00 | HG&N |
| 24 | 2134 | 647.40 | CCSD-RGNG |
| 25 | 1042 | 640.00 | CCSD&RGNG |
| 26 | 2133 | 640.00 | F.R. FEVILLE |
| N/2 31 | 1043 | 320.00 | CCSD&RGNG |
| S/2 31 | 1043 | 320.00 | CCSD&RGNG |
| 32 | 2582 | 640.00 | C.R. DAVIS |
| 33 | 1044 | 640.00 | CCSD&RGNORR |
| N/2 34 | 2186 | 326.00 | CCSD-RGNG |
| S/2 34 | 2605 | 335.48 | E.N. GASSER |
| N/2 51 | 1045 | 320.00 | CCSD-RGNG |
| S/2 51 | 1045 | 320.00 | CCSD-RGNG |
| 52 | 2606 | 640.00 | E.N. GASSER |
| 56 | 1224 | 157.00 | A. GARZA |
| 57 | 1211 | 188.60 | D. GAMBOA |
| 67 | 1834 | 319.71 | G.A. TEAL |
| 112 | 475 | 543.77 | J.H. GIBSON |
| 114 | 492 | 648.44 | J.H. GIBSON |
| 116 | 472 | 655.05 | J.H. GIBSON |
| 124 | 2180 | 643.84 | BS&F |
| 125 | 1748 | 598.00 | SK&K |
| 125 | 84 | 42.00 | SK&K |
| W/2 135 | 1774 | 320.00 | T&NO |
| E/2 135 | 1774 | 320.00 | T&NO |
| W/2 136 | 2322 | 320.00 | J. JUAREZ |
| E/2 136 | 2322 | 320.00 | J. JUAREZ |
| 182 | 490 | 640.00 | CC&FR CO. |
| E/S 197 | 563 | 8856.00 | J.V. BORREGO |
| W/S 197 | 209 | 8856.00 | J.V. BORREGO |
| W/V 197 | 563 | 320.00 | J.V. BORREGO |
| E/V 197 | 563 | 160.00 | J.V. BORREGO |
| V 197 | 563 | 5109.50 | J.V. BORREGO |
| P 197 | 563 | 1132.00 | J.V. BORREGO |
| P 197 | 563 | 722.22 | J.V. BORREGO |
| W/2 227 | 1133 | 320.00 | CCSD&RGNG |
| E/2 227 | 1133 | 320.00 | CCSD&RGNG |
| W/2 228 | 2550 | 318.47 | CCSD&RGNG |
| E/2 228 | 2550 | 318.48 | CCSD&RGNG |

VOL 1097 PAGE 70

| | | | | |
|---|---|---|---|---|
| | 232 | 2148 | 462.70 | CCSD&RGNG |
| | 232 | 2148 | *184.1* | CCSD&RGNG |
| | 233 | 1117 | *455.9* | CCSD&RGNG |
| | 233 | 1117 | *455.9* | CCSD&RGNG |
| | 233 | 1117 | 455.90 | CCSD&RGNG |
| | 259 | 1137 | 600.00 | CCSD&RGNG |
| Bk11 | 259 | 1137 | 40.00 | CCSD&RGNG |
| | 260 | 2607 | 640.00 | CCSD&RGNG |
| | 264 | 3302 | 482.30 | F.E. PROYOR |
| | 265 | 1142 | 618.80 | CCSD&RGNG |
| | 266 | 2948 | 154.80 | CCSD&RGNG |
| W/2 | 266 | 2131 | 318.35 | CCSD&RGNG |
| | 267 | 1134 | 553.60 | CCSD&RGNG |
| | 267 | 1134 | 40.00 | CCSD&RGNG |
| | 268 | 2132 | 605.49 | CCSD&RGNG |
| W/2 | 273 | 1141 | 320.00 | CCSD&RGNG |
| E/2 | 273 | 1141 | 320.00 | CCSD&RGNG |
| | 274 | 2551 | 640.00 | CCSD&RGNG |
| W/2 | 275 | 1336 | 320.00 | CCSD&RGNG |
| E/2 | 275 | 1336 | 320.00 | CCSD&RGNG |
| | 276 | 2552 | 640.23 | GC&SC |
| | 277 | 1337 | 640.00 | CCSD&RGNG |
| NE | 279 | 1353 | 160.00 | GC&GF |
| SW | 279 | 1353 | 463.65 | GC&GF |
| | 307 | 474 | 966.52 | F.M. McKING |
| | 309 | 1908 | 425.40 | J.J. WRIGHT |
| | 335 | 1424 | 63.92 | H&GN |
| W/2 | 461 | 1286 | 335.60 | GC&SF |
| E/2 | 461 | 1286 | 335.60 | GC&SF |
| | 462 | 2104 | 649.80 | GC&SF |
| | 464 | 1715 | 731.50 | HE&WT |
| | 467 | 799 | 640.00 | AB&M |
| | 468 | 2255 | 659.14 | GC&SF |
| | 469 | 1474 | 664.20 | HE&WT |
| | 470 | 2612 | 663.50 | HE&WT |
| | 471 | 1188 | 666.40 | ELRR |
| | 472 | 2613 | 655.20 | ELRR |
| | 475 | 972 | 622.40 | C&M |
| | 476 | 3132 | 650.95 | S&M |
| 542/2 | | 3131 | 330.17 | AB&M |
| | 575 | 910 | 648.17 | BS&F |
| | 576 | 2473 | 639.55 | RT |
| | 590 | 2599 | 573.40 | GC&SF |
| | 593 | 1484 | 468.00 | HE&WT |
| | 593 | 1484 | 40.00 | HE&WT |
| | 593 | 1484 | 107.56 | HE&WT |
| | 594 | 2611 | 666.90 | HE&WT |
| | 595 | 1189 | 642.10 | ELRR |
| | 596 | 2610 | 650.70 | ELRR |
| | 598 | 2598 | 649.30 | CCSD&RGNG |
| | 603 | 970 | 663.50 | C&M |
| | 604 | 2181 | 693.00 | C&M |
| N/2 | 613 | 422 | 622.84 | P. BENAVIDES |
| S/2 | 613 | 422 | 667.24 | MARTHA HALL |

|      | 733  | 1276 | 639.40  | GC&SF          |
|------|------|------|---------|----------------|
| N/2  | 734  | 1276 | 348.00  | GC&SF          |
| S/2  | 734  | 2901 | 352.00  | GC&SF          |
|      | 735  | 1322 | 238.60  | GC&SF          |
|      | 736  | 2233 | 642.00  | GC&SF          |
|      | 744  | 2595 | 639.84  | GC&SFR CO.     |
|      | 770  | 1959 | 893.40  | T.F. PICKETT   |
|      | 770  | 1959 | 320.00  | T.F. PICKETT   |
|      | 781  | 1361 | 211.50  | GS&SF          |
|      | 782  | 2997 | 209.30  | R. PENA        |
|      | 865  | 1438 | 640.00  | H&GN           |
| W/2  | 987  | 2061 | 320.00  | J. POITEVENT   |
| E/2  | 987  | 2061 | 320.00  | J. POITEVENT   |
| W/2  | 988  | 2593 | 318.50  | J. POITEVENT   |
| E/2  | 988  | 2593 | 318.50  | J. POITEVENT   |
|      | 1004 | 2421 | 634.58  | P.B. REYNOLDS  |
|      | 1011 | 1846 | 640.00  | CCSD&RGNG      |
|      | 1012 | 2489 | *40.00* | S.V. VELA      |
|      | 1012 | 2489 | 640.00  | S.V. VELA      |
|      | 1113 | 1407 | 79.99   | E.H.           |
|      | 1172 | 1405 | 160.00  | B. HERRERA     |
|      | 1184 | 1673 | 160.00  | R. ROYAL       |
|      | 1194 | 3207 | 682.30  | GC&SF          |
| W/2  | 1627 | 1324 | 320.00  | GC&SF          |
| W/E  | 1627 | 1324 | 160.00  | GC&SF          |
| E/E  | 1627 | 1324 | 160.00  | GC&SF          |
| W/2  | 1629 | 1275 | 306.32  | GC&SF          |
| E/2  | 1629 | 1275 | 306.33  | GC&SF          |
|      | 1630 | 2254 | 621.00  | GC&SF          |
| W/2  | 1631 | 1317 | 320.00  | GC&SF          |
| E/2  | 1631 | 1317 | 320.00  | GC&SF          |
|      | 1632 | 2140 | 92.00   | GC&SF          |
|      | 1633 | 1323 | 640.00  | GC&SF          |
|      | 1634 | 2252 | 640.00  | GC&SF          |
|      | 1635 | 1797 | 548.00  | TCRR           |
|      | 1643 | 1162 | 104.79  | JOSEFA CUELLAR |
|      | 1635 | 1797 | *92.00* | TCRR           |
| N/2  | 1645 | 1111 | 320.00  | CCSD&RGNG      |
| S/2  | 1645 | 1111 | 320.00  | CCSD&RGNG      |
|      | 1646 | 2396 | 640.00  | CCSD&RGNG      |
| W/2  | 1647 | 1101 | 320.00  | CCSD&RGNG      |
| E/2  | 1647 | 1101 | 320.00  | CCSD&RGNG      |
| W/2  | 1648 | 3301 | 325.75  | DA&FA          |
| E/2  | 1648 | 3301 | 325.75  | CCSD&RGNG      |
|      | 1649 | 1110 | 640.00  | CCSD&RGNG      |
|      | 1650 | 2444 | 609.95  | C.M. SAMYER    |
|      | 1651 | 1112 | 640.00  | CCSD&RGNG      |
|      | 1652 | 2876 | 640.00  | W.H. TAYLOR    |
|      | 1661 | 1122 | 640.00  | CCSD&RGNG      |
| W/2  | 1662 | 2230 | 329.31  | R.E. PARR      |
| E/2  | 1662 | 3094 | 320.00  | A.F. CARROLL   |
|      | 1663 | 1123 | 640.00  | CCSD&RGNG      |
|      | 1665 | 1124 | 640.00  | CCSD&RGNG      |
| N/2  | 1666 | 3142 | 328.79  | CCSD&RGNG      |

Exhibit 1, Page 3

| | | | | |
|---|---|---|---|---|
| S/2 | 1666 | 2253 | 328.75 | GC&SF |
| | 1683 | I115 | 640.00 | CCSD&RGNG |
| E | 1684 | 2910 | 160.00 | CCSD&RGNG |
| W | 1684 | 2910 | 400.00 | CCSD&RGNG |
| N | 1684 | 2698 | 80.00 | CCSD&RGNG |
| | 1691 | 1267 | 640.00 | GC&SF |
| | 1692 | 2419 | 613.04 | GC&SF |
| | 1693 | 1269 | 640.00 | CC&SF |
| | 1695 | 1268 | 640.00 | GC&SF |
| | 1696 | 2418 | 640.00 | GC&SF |
| | 1838 | 2187 | 67.00 | P.H. SUTTON |
| | 1928 | 2474 | 430.27 | TEX MEX |
| W/2 | 1953 | 1329 | 320.00 | GC&SF |
| E/2 | 1953 | 1329 | 320.00 | GC&SF |
| | 1955 | 1328 | 640.00 | GC&SF |
| | 1956 | 2560 | 327.34 | GC&SF |
| | 1987 | 1809 | 14.82 | TEX MEX |
| | 1988 | 2475 | 8.05 | TEX MEX |
| | 2057 | 985 | 652.25 | CCSD&RGNG |
| | 2058 | 2880 | 652.25 | CT&MC |
| W/2 | 2059 | 984 | 320.00 | C&MRR |
| E/2 | 2059 | 984 | 320.00 | C&MRR |
| | 2060 | 3210 | 200.00 | C&MCRR |
| | 2060 | 3329 | 160.00 | CT&MCRR |
| | 2060 | 2941 | 80.00 | CT&MCRR |
| | 2060 | 3332 | 120.00 | CT&MCRR |
| | 2060 | 3331 | 80.00 | S. SYNDER |
| | 2112 | 2420 | 672.12 | B.A. JAMES |
| | 2267 | 1888 | 53.30 | A. WARD |
| | 2335 | 3025 | 27.30 | W. BROWN |
| N/2 | 2336 | 3167 | 14.00 | W. BROWN |
| S/2 | 2336 | 3167 | 16.30 | W. BROWN |
| | 2342 | 3335 | 14.74 | FROST BANK |
| | 2367 | 3333 | 91.34 | F.R. FEVILLE |
| | 52/53 | P/80 | *52.35* | JO DeLaGARZA |

TOTAL       100403.93

EXHIBIT 2

DEED FROM VAQUILLAS RANCH COMPANY, LTD.
TO

J. O. WALKER, JR., ET AL

102.35 Acres, more or less, being comprised of the following land in Starr County, Texas:

Share No. 52 out of Porcion No. 80 as allocated to A. L. Shawl by Decree of the District Court of Starr County, Texas, in Cause No. 941, recorded in Volume G, page 205, of the Deed Records of Starr County, Texas.

FILED

FEB 15 11 54 AM '85

HENRY FLORES CO. CLERK.
WEBB COUNTY, TEXAS
BY_____DEPUTY

330161

## MINERAL DEED

STATE OF TEXAS         § 
                         § KNOW ALL MEN BY THESE PRESENTS:

COUNTIES OF STARR, WEBB  § 
AND ZAPATA

THAT J. O. WALKER, JR., JAMES PATRICK WALKER, NANCY J. WALKER BRICE, EVAN B. QUIROS, E. WALKER QUIROS, EVAN J. QUIROS, SADIE DIANE GYURKO, QUINLAN QUIROS SMITH-SAAB, GENE S. WALKER, GENE S. WALKER, JR., JAMES D. WALKER, ELIZABETH WALKER and KATHLEEN WALKER, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration in hand paid by the grantees hereinafter named, do hereby BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY unto J. O. WALKER, JR., EVAN B. QUIROS and GENE S. WALKER, TRUSTEES OF THE VAQUILLAS UNPROVEN TRUST, created by agreement entered into November 1, 1984, their successors and assigns, subject to the exception hereinafter made, all of their right, title and interest in and to all of the oil, gas and other minerals in and under the following land: 100,403.93 acres of land, more or less, commonly known as the Vaquillas Ranch, in Webb and Zapata Counties, Texas, said land being fully described on Exhibit 1 which is attached hereto and incorporated herein for all purposes and 102.35 acres of land, more or less, in Starr County, Texas, said land being fully described as Exhibit 2 which is incorporated herein for all purposes.

There is excepted from this conveyance, however, and not conveyed hereby, all of grantors' right, title and interest in and to all of the royalty from production of oil and gas from the wells described in certain assignments of even date herewith executed by J. O. WALKER, JR., JAMES D. WALKER, NANCY J. WALKER BRICE; EVAN B. QUIROS, E. WALKER QUIROS; EVAN J. QUIROS, SADIE DIANE GYURKO, QUINLAN QUIROS SMITH-SAAB, GENE S. WALKER, GENE S. WALKER, JR., JAMES PATRICK WALKER, ELIZABETH WALKER and KATHLEEN WALKER to J. O. WALKER, JR., EVAN B. QUIROS AND GENE S. WALKER, as TRUSTEES OF THE VAQUILLAS PROVEN MINERAL TRUST, created by instrument entered into November 1, 1984, such assignments and their record in Webb and Zapata Counties, Texas, being here referred to for all pertinent purposes, including the descriptions of the wells covered thereby.

TO HAVE AND TO HOLD the interest hereby conveyed unto the said J. O. WALKER, JR., EVAN B. QUIROS and GENE S. WALKER, TRUSTEES OF THE VAQUILLAS PROVEN MINERAL TRUST, created by agreement dated November 1, 1984, their successors and assigns

VOL 1097 PAGE 101

forever. This assignment shall be effective as of November 1, 1984 at 7:00 A.M.

Executed this _19th_ day of December, 1984.

_J. O. Walker, Jr._
J. O. WALKER, JR.

_James D. Walker_
JAMES D. WALKER

_Nancy J. Walker Brice_
NANCY J. WALKER BRICE

_Evan B. Quiros_
EVAN B. QUIROS

_E. Walker Quiros_
E. WALKER QUIROS

_Evan J._
EVAN J. QUIROS

_Sadie Diane Gyurko_
SADIE DIANE GYURKO

_Quinlan Quiros Smith-Saab_
QUINLAN QUIROS SMITH-SAAB

_Gene S. Walker_
GENE S. WALKER

_Gene S. Walker_
GENE S. WALKER, JR.

_James Patrick Walker_
JAMES PATRICK WALKER

_Elizabeth Walker_
ELIZABETH WALKER

_Kathleen Walker_
KATHLEEN WALKER

The mailing address of each of the grantees is:

c/o Vaquillas Ranch Co., Ltd.
   P.O. Box 1086
   Laredo, TX 78040

2

STATE OF TEXAS §

COUNTY OF _Webb_ §

This instrument was acknowledged before me on
_19th December 1984_ by J. O. WALKER, JR.

_B. Villarreal_
Notary Public in and for
the State of Texas

(L.S.)

_Martha V. Villarreal_
Printed Name of Notary

My Commission Expires: _05-03-88_

STATE OF TEXAS §

COUNTY OF _Webb_ §

This instrument was acknowledged before me on
_19th December 1984_ by JAMES D. WALKER.

_B. Villarreal_
Notary Public in and for
the State of Texas

(L.S.)

_Martha V. Villarreal_
Printed Name of Notary

My Commission Expires: _05-03-88_

STATE OF TEXAS §

COUNTY OF _Webb_ §

This instrument was acknowledged before me on
_19th December 1984_ by NANCY J. WALKER BRICE.

_B. Villarreal_
Notary Public in and for
the State of Texas

(L.S.)

_Martha V. Villarreal_
Printed Name of Notary

My Commission Expires: _05-03-88_

VOL 1097 PAGE 103

3

STATE OF TEXAS §

COUNTY OF Webb §

This instrument was acknowledged before me on
19th December 1984 by EVAN B. QUIROS.

_____
Notary Public in and for
the State of Texas

Martha U. Villorreal
Printed Name of Notary

My Commission Expires: 05-03-88

STATE OF TEXAS §

COUNTY OF Webb §

This instrument was acknowledged before me on
19th December 1984 by E. WALKER QUIROS.

_____
Notary Public in and for
the State of Texas

Martha U. Villorreal
Printed Name of Notary

My Commission Expires: 05-03-88

STATE OF TEXAS §

COUNTY OF Webb Co §

This instrument was acknowledged before me on
19th December 1984 by EVAN J. QUIROS.

_____
Notary Public in and for
the State of Texas

Martha U. Villorreal
Printed Name of Notary

My Commission Expires: 05-03-88

4

BEFORE THE AMERICAN CONSULATE     §

This instrument was acknowledged before me on
DEC 31 1984                         by SADIE DIANE GYURKO.

AMERICAN CONSULATE Marc E. Wortham
        Sapporo, Japan                JAPAN
                                      ( L.S. )

STATE OF TEXAS                     §

COUNTY OF __Webb__                 §

This instrument was acknowledged before me on
19th December 1984                 by QUINLAN QUIROS SMITH-SAAB.

Notary Public in and for
the State of Texas

Martha U. Villarreal
Printed Name of Notary

My Commission Expires: 05-03-88

( L.S. )

STATE OF TEXAS                     §

COUNTY OF __Webb__                 §

This instrument was acknowledged before me on
19th December 1984                 by GENE S. WALKER.

Notary Public in and for
the State of Texas

Martha U. Villarreal
Printed Name of Notary

My Commission Expires: 05-03-88

( L.S. )

VOL 1097 PAGE 105

5

STATE OF TEXAS                    §

COUNTY OF _Webb_                  §

    This instrument was acknowledged before me on
_19th December 1984_          by GENE S. WALKER, JR.

_____
Notary Public in and for
the State of Texas

(L.S.)      _Martha U. Villarreal_
            Printed Name of Notary

My Commission Expires: _05-03-88_


STATE OF TEXAS                    §

COUNTY OF _Webb_                  §

    This instrument was acknowledged before me on
_19th December 1984_          by JAMES PATRICK WALKER.

_____
Notary Public in and for
the State of Texas

(L.S.)      _Martha U Villarreal_
            Printed Name of Notary

My Commission Expires: _05-03-88_


STATE OF TEXAS                    §

COUNTY OF _Webb_                  §

    This instrument was acknowledged before me on
_19th December 1984_          by ELIZABETH WALKER.

_____
Notary Public in and for
the State of Texas

(L.S.)      _Martha U. Villarreal_
            Printed Name of Notary

My Commission Expires: _05-03-88_

VOL 1097 PAGE 106

6

STATE OF TEXAS          §

COUNTY OF _Webb_        §

This instrument was acknowledged before me on
19th December 1984     by KATHLEEN WALKER.

_[signature]_
Notary-Public in and for
the State of Texas

_Martha V. Villarreal_
Printed Name of Notary

( L·S· )               My Commission Expires: 05-03-88

# EXHIBIT 1

To Deed from J. O. Walker, Jr., et al.
to J. O. Walker, Jr., Evan B. Quiros
and Gene S. Walker, Trustees of the
Vaquillas Unproven Mineral Trust

100,403.93 acres, more or less, known as
The Vaquillas Ranch,
and being comprised of the following lands in
Webb and Zapata Counties, Texas:

| | SURVEY # | ABSTR | ACRES | CERT. NAME |
|---|---|---|---|---|
| | 9 | 3168 | 640.00 | H&GN |
| | 10 | 477 | 646.67 | H&GN |
| | 11 | 53 | 640.00 | HGNRR |
| | 12 | 400 | 640.00 | P. BENAVIDES |
| | 14 | 447 | 647.15 | HG&N |
| | 16 | 525 | 640.00 | MR. PENA |
| | 18 | 2136 | 640.00 | HG&N |
| | 24 | 2134 | 647.40 | CCSD-RGNG |
| | 25 | 1042 | 640.00 | CCSD&RGNG |
| | 26 | 2133 | 640.00 | F.R. FEVILLE |
| N/2 | 31 | 1043 | 320.00 | CCSD&RGNG |
| S/2 | 31 | 1043 | 320.00 | CCSD&RGNG |
| | 32 | 2582 | 640.00 | C.R. DAVIS |
| | 33 | 1044 | 640.00 | CCSD&RGNORR |
| N/2 | 34 | 2186 | 326.00 | CCSD-RGNG |
| S/2 | 34 | 2605 | 335.48 | E.N. GASSER |
| N/2 | 51 | 1045 | 320.00 | CCSD-RGNG |
| S/2 | 51 | 1045 | 320.00 | CCSD-RGNG |
| | 52 | 2606 | 640.00 | E.N. GASSER |
| | 56 | 1224 | 157.00 | A. GARZA |
| | 57 | 1211 | 188.60 | D. GAMBOA |
| | 67 | 1834 | 319.71 | G.A. TEAL |
| | 112 | 475 | 643.77 | J.H. GIBSON |
| | 114 | 492 | 648.44 | J.H. GIBSON |
| | 116 | 472 | 655.05 | J.H. GIBSON |
| | 124 | 2180 | 643.84 | BS&F |
| | 125 | 1748 | 598.00 | SK&K |
| | 125 | 84 | 42.00 | SK&K |
| W/2 | 135 | 1774 | 320.00 | T&NO |
| E/2 | 135 | 1774 | 320.00 | T&NO |
| W/2 | 136 | 2322 | 320.00 | J. JUAREZ |
| E/2 | 136 | 2322 | 320.00 | J. JUAREZ |
| | 182 | 490 | 640.00 | CC&FR CO. |
| E/S | 197 | 563 | 8856.00 | J.V. BORREGO |
| W/S | 197 | 209 | 8856.00 | J.V. BORREGO |
| W/V | 197 | 563 | 320.00 | J.V. BORREGO |
| E/V | 197 | 563 | 160.00 | J.V. BORREGO |
| V | 197 | 563 | 5109.50 | J.V. BORREGO |
| P | 197 | 563 | 1132.00 | J.V. BORREGO |
| P | 197 | 563 | 722.22 | J.V. BORREGO |
| W/2 | 227 | 1133 | 320.00 | CCSD&RGNG |
| E/2 | 227 | 1133 | 320.00 | CCSD&RGNG |
| W/2 | 228 | 2550 | 318.47 | CCSD&RGNG |
| E/2 | 228 | 2550 | 318.48 | CCSD&RGNG |

Exhibit 1, Page 1

|       |       |      |          |              |
|-------|-------|------|----------|--------------|
|       | 232   | 2148 | 462.70   | CCSD&RGNG    |
|       | 232   | 2148 | *184.1*  | CCSD&RGNG    |
|       | 233   | 1117 | *455.9*  | CCSD&RGNG    |
|       | 233   | 1117 | *455.9*  | CCSD&RGNG    |
|       | 233   | 1117 | 455.90   | CCSD&RGNG    |
|       | 259   | 1137 | 600.00   | CCSD&RGNG    |
| Bk11  | 259   | 1137 | 40.00    | CCSD&RGNG    |
|       | 260   | 2607 | 640.00   | CCSD&RGNG    |
|       | 264   | 3302 | 482.30   | F.E. PROYOR  |
|       | 265   | 1142 | 618.80   | CCSD&RGNG    |
|       | 266   | 2948 | 154.80   | CCSD&RGNG    |
| W/2   | 266   | 2131 | 318.35   | CCSD&RGNG    |
|       | 267   | 1134 | 553.60   | CCSD&RGNG    |
|       | 267   | 1134 | 40.00    | CCSD&RGNG    |
|       | 268   | 2132 | 605.49   | CCSD&RGNG    |
| W/2   | 273   | 1141 | 320.00   | CCSD&RGNG    |
| E/2   | 273   | 1141 | 320.00   | CCSD&RGNG    |
|       | 274   | 2551 | 640.00   | CCSD&RGNG    |
| W/2   | 275   | 1336 | 320.00   | CCSD&RGNG    |
| E/2   | 275   | 1336 | 320.00   | CCSD&RGNG    |
|       | 276   | 2552 | 640.23   | GC&SC        |
|       | 277   | 1337 | 640.00   | CCSD&RGNG    |
| NE    | 279   | 1353 | 160.00   | GC&GF        |
| SW    | 279   | 1353 | 463.65   | GC&GF        |
|       | 307   | 474  | 966.52   | F.M. McKING  |
|       | 309   | 1908 | 425.40   | J.J. WRIGHT  |
|       | 335   | 1424 | 63.92    | H&GN         |
| W/2   | 461   | 1286 | 335.60   | GC&SF        |
| E/2   | 461   | 1286 | 335.60   | GC&SF        |
|       | 462   | 2104 | 649.80   | GC&SF        |
|       | 464   | 1715 | 731.50   | HE&WT        |
|       | 467   | 799  | 640.00   | AB&M         |
|       | 468   | 2255 | 659.14   | GC&SF        |
|       | 469   | 1474 | 664.20   | HE&WT        |
|       | 470   | 2612 | 663.50   | HE&WT        |
|       | 471   | 1188 | 666.40   | ELRR         |
|       | 472   | 2613 | 655.20   | ELRR         |
|       | 475   | 972  | 622.40   | C&M          |
|       | 476   | 3132 | 650.95   | S&M          |
| 542/2 | 3131  |      | 330.17   | AB&M         |
|       | 575   | 910  | 648.17   | BS&F         |
|       | 576   | 2473 | 639.55   | RT           |
|       | 590   | 2599 | 573.40   | GC&SF        |
|       | 593   | 1484 | 468.00   | HE&WT        |
|       | 593   | 1484 | 40.00    | HE&WT        |
|       | 593   | 1484 | 107.56   | HE&WT        |
|       | 594   | 2611 | 666.90   | HE&WT        |
|       | 595   | 1189 | 642.10   | ELRR         |
|       | 596   | 2610 | 650.70   | ELRR         |
|       | 598   | 2598 | 649.30   | CCSD&RGNG    |
|       | 603   | 970  | 663.50   | C&M          |
|       | 604   | 2181 | 693.00   | C&M          |
| N/2   | 613   | 422  | 622.84   | P. BENAVIDES |
| S/2   | 613   | 422  | 667.24   | MARTHA HALL  |

Exhibit 1, Page 2

|       |      |      |         |                |
|-------|------|------|---------|----------------|
|       | 733  | 1276 | 639.40  | GC&SF          |
| N/2   | 734  | 1276 | 348.00  | GC&SF          |
| S/2   | 734  | 2901 | 352.00  | GC&SF          |
|       | 735  | 1322 | 238.60  | GC&SF          |
|       | 736  | 2233 | 642.00  | GC&SF          |
|       | 744  | 2595 | 639.84  | GC&SFR CO.     |
|       | 770  | 1959 | 893.40  | T.F. PICKETT   |
|       | 770  | 1959 | 320.00  | T.F. PICKETT   |
|       | 781  | 1361 | 211.50  | GS&SF          |
|       | 782  | 2997 | 209.30  | R. PENA        |
|       | 865  | 1438 | 640.00  | H&GN           |
| W/2   | 987  | 2061 | 320.00  | J. POITEVENT   |
| E/2   | 987  | 2061 | 320.00  | J. POITEVENT   |
| W/2   | 988  | 2593 | 318.50  | J. POITEVENT   |
| E/2   | 988  | 2593 | 318.50  | J. POITEVENT   |
|       | 1004 | 2421 | 634.58  | P.B. REYNOLDS  |
|       | 1011 | 1846 | 640.00  | CCSD&RGNG      |
|       | 1012 | 2489 | *40.00* | S.V. VELA      |
|       | 1012 | 2489 | 640.00  | S.V. VELA      |
|       | 1113 | 1407 | 79.99   | E.H.           |
|       | 1172 | 1405 | 160.00  | B. HERRERA     |
|       | 1184 | 1673 | 160.00  | R. ROYAL       |
|       | 1194 | 3207 | 682.30  | GC&SF          |
| W/2   | 1627 | 1324 | 320.00  | GC&SF          |
| W/E   | 1627 | 1324 | 160.00  | GC&SF          |
| E/E   | 1627 | 1324 | 160.00  | GC&SF          |
| W/2   | 1629 | 1275 | 306.32  | GC&SF          |
| E/2   | 1629 | 1275 | 306.33  | GC&SF          |
|       | 1630 | 2254 | 621.00  | GC&SF          |
| W/2   | 1631 | 1317 | 320.00  | GC&SF          |
| E/2   | 1631 | 1317 | 320.00  | GC&SF          |
|       | 1632 | 2140 | 92.00   | GC&SF          |
|       | 1633 | 1323 | 640.00  | GC&SF          |
|       | 1634 | 2252 | 640.00  | GC&SF          |
|       | 1635 | 1797 | 548.00  | TCRR           |
|       | 1643 | 1162 | 104.79  | JOSEFA CUELLAR |
|       | 1635 | 1797 | *92.00* | TCRR           |
| N/2   | 1645 | 1111 | 320.00  | CCSD&RGNG      |
| S/2   | 1645 | 1111 | 320.00  | CCSD&RGNG      |
|       | 1646 | 2396 | 640.00  | CCSD&RGNG      |
| W/2   | 1647 | 1101 | 320.00  | CCSD&RGNG      |
| E/2   | 1647 | 1101 | 320.00  | CCSD&RGNG      |
| W/2   | 1648 | 3301 | 325.75  | DA&FA          |
| E/2   | 1648 | 3301 | 325.75  | CCSD&RGNG      |
|       | 1649 | 1110 | 640.00  | CCSD&RGNG      |
|       | 1650 | 2444 | 609.95  | C.M. SAMYER    |
|       | 1651 | 1112 | 640.00  | CCSD&RGNG      |
|       | 1652 | 2876 | 640.00  | W.H. TAYLOR    |
|       | 1661 | 1122 | 640.00  | CCSD&RGNG      |
| W/2   | 1662 | 2230 | 329.31  | R.E. PARR      |
| E/2   | 1662 | 3094 | 320.00  | A.F. CARROLL   |
|       | 1663 | 1123 | 640.00  | CCSD&RGNG      |
|       | 1665 | 1124 | 640.00  | CCSD&RGNG      |
| N/2   | 1666 | 3142 | 328.79  | CCSD&RGNG      |

| | | | | |
|---|---|---|---|---|
| S/2 | 1666 | 2253 | 328.75 | GC&SF |
| | 1683 | 1115 | 640.00 | CCSD&RGNG |
| E | 1684 | 2910 | 160.00 | CCSD&RGNG |
| W | 1684 | 2910 | 400.00 | CCSD&RGNG |
| N | 1684 | 2698 | 80.00 | CCSD&RGNG |
| | 1691 | 1267 | 640.00 | GC&SF |
| | 1692 | 2419 | 613.04 | GC&SF |
| | 1693 | 1269 | 640.00 | CC&SF |
| | 1695 | 1268 | 640.00 | GC&SF |
| | 1696 | 2418 | 640.00 | GC&SF |
| | 1838 | 2187 | 67.00 | P.H. SUTTON |
| | 1928 | 2474 | 430.27 | TEX MEX |
| W/2 | 1953 | 1329 | 320.00 | GC&SF |
| E/2 | 1953 | 1329 | 320.00 | GC&SF |
| | 1955 | 1328 | 640.00 | GC&SF |
| | 1956 | 2560 | 327.34 | GC&SF |
| | 1987 | 1809 | 14.82 | TEX MEX |
| | 1988 | 2475 | 8.05 | TEX MEX |
| | 2057 | 985 | 652.25 | CCSD&RGNG |
| | 2058 | 2880 | 652.25 | CT&MC |
| W/2 | 2059 | 984 | 320.00 | C&MRR |
| E/2 | 2059 | 984 | 320.00 | C&MRR |
| | 2060 | 3210 | 200.00 | C&MCRR |
| | 2060 | 3329 | 160.00 | CT&MCRR |
| | 2060 | 2941 | 80.00 | CT&MCRR |
| | 2060 | 3332 | 120.00 | CT&MCRR |
| | 2060 | 3331 | 80.00 | S. SYNDER |
| | 2112 | 2420 | 672.12 | B.A. JAMES |
| | 2267 | 1888 | 53.30 | A. WARD |
| | 2335 | 3025 | 27.30 | W. BROWN |
| N/2 | 2336 | 3167 | 14.00 | W. BROWN |
| S/2 | 2336 | 3167 | 16.30 | W. BROWN |
| | 2342 | 3335 | 14.74 | FROST BANK |
| | 2367 | 3333 | 91.34 | F.R. FEVILLE |
| 52/53 | P/80 | | *52.35* | JO DeLaGARZA |

TOTAL          100403.93

EXHIBIT 2

DEED FROM J. O. WALKER, JR., ET AL

TO

J. O. WALKER, JR., EVAN B. QUIROS AND GENE S. WALKER,
TRUSTEES OF THE VAQUILLAS UNPROVEN MINERAL TRUST


102.35 Acres, more or less, being comprised of the following
land in Starr County, Texas:

Share No. 52 out of Porcion No. 80 as allocated to
A. L. Shawl by Decree of the District Court of Starr
County, Texas, in Cause No. 941, recorded in Volume G,
page 205, of the Deed Records of Starr County, Texas.

VOL 1097 PAGE 112

EXHIBIT
B-6

# MINERAL DEED

Webb County
590624

| | | |
|---|---|---|
| State of Texas | § | |
| | § | Know All Men By These Presents: |
| Counties of Webb, Zapata and Starr | § | |

That, the undersigned TRUSTEES OF THE VAQUILLAS UNPROVEN MINERALS TRUST, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the undersigned paid by the Grantee herein named, the receipt of which is hereby acknowledged, have GRANTED, SOLD AND CONVEYED, and by these presents DO GRANT, SELL AND CONVEY unto VAQUILLAS UNPROVEN MINERALS, LTD., a Texas limited partnership, all of the following described real property in Webb, Zapata, and Starr Counties, Texas, to wit:

> All of the right, title and interest owned by VAQUILLAS UNPROVEN MINERALS TRUST in and to all of the oil, gas and other minerals in and under the following land: 100,403.93 acres, more or less, commonly known as the Vaquillas Ranch in Webb and Zapata Counties, Texas, said land being fully described on Exhibit A which is attached hereto and incorporated herein for all purposes and 102.35 acres, more or less, in Starr County, Texas, said land being fully described as Exhibit B which is incorporated herein for all purposes.

This conveyance is made and accepted subject to all matters, conditions, restrictions, and reservations, if any, relating to the above described property which are recorded or apparent on said property, but only to the extent that the same are still in force and effect.

TO HAVE AND TO HOLD the above described mineral interests, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee, its successors and assigns forever; and Grantors do hereby bind themselves, their successors and assigns to WARRANT AND FOREVER DEFEND, all and singular, the said premises unto the said Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

EXECUTED to be effective the 31st day of December, 1996.

VAQUILLAS UNPROVEN MINERALS TRUST

By: _Gene S. Walker_
Gene S. Walker, Trustee

By: _James D. Walker - Trustee_
James D. Walker, Trustee

LAW OFFICES
BAYERN, PATERSON & AYCOCK
A PROFESSIONAL CORPORATION
112 EAST PECAN STREET, SUITE 2300
SAN ANTONIO, TEXAS 78205

By: _____
Evan J. Quiros, Trustee

Grantees' Address:

Vaquillas Unproven Minerals, Ltd.
5810 San Bernardo Avenue, Suite 490
Laredo, Texas 78041

STATE OF TEXAS                                §
                                              §
COUNTY OF WEBB, ZAPATA AND STARR              §

THIS INSTRUMENT WAS ACKNOWLEDGED before me on the _14th_ day of January, 1997, by GENE S. WALKER, Trustee of the Vaquillas Unproven Minerals Trust.

_____
Notary Public, State of Texas

KRISTI J. VETTER
Notary Public, State of Texas
My Commission Expires Mar. 11, 1999

Printed or Stamped Name of Notary,
with Date of Commission Expiration

-2-

STATE OF TEXAS                                §
                                             §
COUNTY OF WEBB, ZAPATA AND STARR             §

THIS INSTRUMENT WAS ACKNOWLEDGED before me on the _14th_ day of January, 1997, by JAMES D. WALKER, Trustee of the Vaquillas Unproven Minerals Trust.



Notary Public, State of Texas

KRISTI J. VETTER
Notary Public, State of Texas
My Commission Expires Mar. 11, 1998

Printed or Stamped Name of Notary,
with Date of Commission Expiration

STATE OF TEXAS                                §
                                             §
COUNTY OF WEBB, ZAPATA AND STARR             §

THIS INSTRUMENT WAS ACKNOWLEDGED before me on the _14th_ day of January, 1997, by EVAN J. QUIROS, Trustee of the Vaquillas Unproven Minerals Trust.



Notary Public, State of Texas

KRISTI J. VETTER
Notary Public, State of Texas
My Commission Expires Mar. 11, 1998

Printed or Stamped Name of Notary,
with Date of Commission Expiration

-3-

100,403.93 acres, more or less, known as
The Vaquillas Ranch,
and being comprised of the following lands in
Webb and Zapata Counties, Texas:

| | SURVEY # | ABSTR | ACRES | CERT. NAME |
|---|---|---|---|---|
| | 9 | 3168 | 640.00 | H&GN |
| | 10 | 477 | 646.67 | H&GN |
| | 11 | 53 | 640.00 | HGNRR |
| | 12 | 400 | 640.00 | P. BENAVIDES |
| | 14 | 447 | 647.15 | HG&N |
| | 16 | 525 | 640.00 | MR. PENA |
| | 18 | 2136 | 640.00 | HG&N |
| | 24 | 2134 | 647.40 | CCSD-RGNG |
| | 25 | 1042 | 640.00 | CCSD&RGNG |
| | 26 | 2133 | 640.00 | F.R. FEVILLE |
| N/2 | 31 | 1043 | 320.00 | CCSD&RGNG |
| S/2 | 31 | 1043 | 320.00 | CCSD&RGNG |
| | 32 | 2582 | 640.00 | C.R. DAVIS |
| | 33 | 1044 | 640.00 | CCSD&RGNORR |
| N/2 | 34 | 2186 | 326.00 | CCSD-RGNG |
| S/2 | 34 | 2605 | 335.48 | E.N. GASSER |
| N/2 | 51 | 1045 | 320.00 | CCSD-RGNG |
| S/2 | 51 | 1045 | 320.00 | CCSD-RGNG |
| | 52 | 2606 | 640.00 | E.N. GASSER |
| | 56 | 1224 | 157.00 | A. GARZA |
| | 57 | 1211 | 188.60 | D. GAMBOA |
| | 67 | 1834 | 319.71 | G.A. TEAL |
| | 112 | 475 | 643.77 | J.H. GIBSON |
| | 114 | 492 | 648.44 | J.H. GIBSON |
| | 116 | 472 | 655.05 | J.H. GIBSON |
| | 124 | 2180 | 643.84 | BS&F |
| | 125 | 1748 | 598.00 | SK&K |
| | 125 | 84 | 42.00 | SK&K |
| W/2 | 135 | 1774 | 320.00 | T&NO |
| E/2 | 135 | 1774 | 320.00 | T&NO |
| W/2 | 136 | 2322 | 320.00 | J. JUAREZ |
| E/2 | 136 | 2322 | 320.00 | J. JUAREZ |
| | 182 | 490 | 640.00 | CC&FR CO. |
| E/S | 197 | 563 | 8856.00 | J.V. BORREGO |
| W/S | 197 | 209 | 8856.00 | J.V. BORREGO |
| W/V | 197 | 563 | 320.00 | J.V. BORREGO |
| E/V | 197 | 563 | 160.00 | J.V. BORREGO |
| V | 197 | 563 | 5109.50 | J.V. BORREGO |
| P | 197 | 563 | 1132.00 | J.V. BORREGO |
| P | 197 | 563 | 722.22 | J.V. BORREGO |
| W/2 | 227 | 1133 | 320.00 | CCSD&RGNG |
| E/2 | 227 | 1133 | 320.00 | CCSD&RGNG |
| W/2 | 228 | 2550 | 318.47 | CCSD&RGNG |
| E/2 | 228 | 2550 | 318.48 | CCSD&RGNG |

**Exhibit "A"**
**Page 1 of 4**



| | | | |
|---|---|---|---|
| | 232 | 2148 | 462.70 | CCSD&RGNG |
| | 232 | 2148 | *184.1* | CCSD&RGNG |
| | 233 | 1117 | *455.9* | CCSD&RGNG |
| | 233 | 1117 | *455.9* | CCSD&RGNG |
| | 233 | 1117 | 455.90 | CCSD&RGNG |
| | 259 | 1137 | 600.00 | CCSD&RGNG |
| Bk11 | 259 | 1137 | 40.00 | CCSD&RGNG |
| | 260 | 2607 | 640.00 | CCSD&RGNG |
| | 264 | 3302 | 482.30 | F.E. PROYOR |
| | 265 | 1142 | 618.80 | CCSD&RGNG |
| | 266 | 2948 | 154.80 | CCSD&RGNG |
| W/2 | 266 | 2131 | 318.35 | CCSD&RGNG |
| | 267 | 1134 | 553.60 | CCSD&RGNG |
| | 267 | 1134 | 40.00 | CCSD&RGNG |
| | 268 | 2132 | 605.49 | CCSD&RGNG |
| W/2 | 273 | 1141 | 320.00 | CCSD&RGNG |
| E/2 | 273 | 1141 | 320.00 | CCSD&RGNG |
| | 274 | 2551 | 640.00 | CCSD&RGNG |
| W/2 | 275 | 1336 | 320.00 | CCSD&RGNG |
| E/2 | 275 | 1336 | 320.00 | CCSD&RGNG |
| | 276 | 2552 | 640.23 | GC&SC |
| | 277 | 1337 | 640.00 | CCSD&RGNG |
| NE | 279 | 1353 | 160.00 | GC&GF |
| SW | 279 | 1353 | 463.65 | GC&GF |
| | 307 | 474 | 966.52 | F.M. McKING |
| | 309 | 1908 | 425.40 | J.J. WRIGHT |
| | 335 | 1424 | 63.92 | H&GN |
| W/2 | 461 | 1286 | 335.60 | GC&SF |
| E/2 | 461 | 1286 | 335.60 | GC&SF |
| | 462 | 2104 | 649.80 | GC&SF |
| — | 464 | 1715 | 731.50 | HE&WT |
| | 467 | 799 | 640.00 | AB&M |
| | 468 | 2255 | 659.14 | GC&SF |
| | 469 | 1474 | 664.20 | HE&WT |
| | 470 | 2612 | 663.50 | HE&WT |
| | 471 | 1188 | 666.40 | ELRR |
| | 472 | 2613 | 655.20 | ELRR |
| | 475 | 972 | 622.40 | C&M |
| | 476 | 3132 | 650.95 | S&M |
| 542/2 | | 3131 | 330.17 | AB&M |
| | 575 | 910 | 648.17 | BS&F |
| | 576 | 2473 | 639.55 | RT |
| | 590 | 2599 | 573.40 | GC&SF |
| | 593 | 1484 | 468.00 | HE&WT |
| | 593 | 1484 | 40.00 | HE&WT |
| | 593 | 1484 | 107.56 | HE&WT |
| | 594 | 2611 | 666.90 | HE&WT |
| | 595 | 1189 | 642.10 | ELRR |
| | 596 | 2610 | 650.70 | ELRR |
| | 598 | 2598 | 649.30 | CCSD&RGNG |
| | 603 | 970 | 663.50 | C&M |
| | 604 | 2181 | 693.00 | C&M |
| N/2 | 613 | 422 | 622.84 | P. BENAVIDES |
| S/2 | 613 | 422 | 667.24 | MARTHA HALL |

**Exhibit "A"**
**Page 2 of 4**



|       | 733  | 1276 | 639.40  | GC&SF          |
| N/2   | 734  | 1276 | 348.00  | GC&SF          |
| S/2   | 734  | 2901 | 352.00  | GC&SF          |
|       | 735  | 1322 | 238.60  | GC&SF          |
|       | 736  | 2233 | 642.00  | GC&SF          |
|       | 744  | 2595 | 639.84  | GC&SFR CO.     |
|       | 770  | 1959 | 893.40  | T.F. PICKETT   |
|       | 770  | 1959 | 320.00  | T.F. PICKETT   |
|       | 781  | 1361 | 211.50  | GS&SF          |
|       | 782  | 2997 | 209.30  | R. PENA        |
|       | 865  | 1438 | 640.00  | H&GN           |
| W/2   | 987  | 2061 | 320.00  | J. POITEVENT   |
| E/2   | 987  | 2061 | 320.00  | J. POITEVENT   |
| W/2   | 988  | 2593 | 318.50  | J. POITEVENT   |
| E/2   | 988  | 2593 | 318.50  | J. POITEVENT   |
|       | 1004 | 2421 | 634.58  | P.B. REYNOLDS  |
|       | 1011 | 1846 | 640.00  | CCSD&RGNG      |
|       | 1012 | 2489 | *40.00* | S.V. VELA      |
|       | 1012 | 2489 | 640.00  | S.V. VELA      |
|       | 1113 | 1407 | 79.99   | E.H.           |
|       | 1172 | 1405 | 160.00  | B. HERRERA     |
|       | 1184 | 1673 | 160.00  | R. ROYAL       |
|       | 1194 | 3207 | 682.30  | GC&SF          |
| W/2   | 1627 | 1324 | 320.00  | GC&SF          |
| W/E   | 1627 | 1324 | 160.00  | GC&SF          |
| E/E   | 1627 | 1324 | 160.00  | GC&SF          |
| W/2   | 1629 | 1275 | 306.32  | GC&SF          |
| E/2   | 1629 | 1275 | 306.33  | GC&SF          |
|       | 1630 | 2254 | 621.00  | GC&SF          |
| W/2   | 1631 | 1317 | 320.00  | GC&SF          |
| E/2   | 1631 | 1317 | 320.00  | GC&SF          |
|       | 1632 | 2140 | 92.00   | GC&SF          |
|       | 1633 | 1323 | 640.00  | GC&SF          |
|       | 1634 | 2252 | 640.00  | GC&SF          |
|       | 1635 | 1797 | 548.00  | TCRR           |
|       | 1643 | 1162 | 104.79  | JOSEFA CUELLAR |
|       | 1635 | 1797 | *92.00* | TCRR           |
| N/2   | 1645 | 1111 | 320.00  | CCSD&RGNG      |
| S/2   | 1645 | 1111 | 320.00  | CCSD&RGNG      |
|       | 1646 | 2396 | 640.00  | CCSD&RGNG      |
| W/2   | 1647 | 1101 | 320.00  | CCSD&RGNG      |
| E/2   | 1647 | 1101 | 320.00  | CCSD&RGNG      |
| W/2   | 1648 | 3301 | 325.75  | DA&FA          |
| E/2   | 1648 | 3301 | 325.75  | CCSD&RGNG      |
|       | 1649 | 1110 | 640.00  | CCSD&RGNG      |
|       | 1650 | 2444 | 609.95  | C.M. SAMYER    |
|       | 1651 | 1112 | 640.00  | CCSD&RGNG      |
|       | 1652 | 2876 | 640.00  | W.H. TAYLOR    |
|       | 1661 | 1122 | 640.00  | CCSD&RGNG      |
| W/2   | 1662 | 2230 | 329.31  | R.E. PARR      |
| E/2   | 1662 | 3094 | 320.00  | A.F. CARROLL   |
|       | 1663 | 1123 | 640.00  | CCSD&RGNG      |
|       | 1665 | 1124 | 640.00  | CCSD&RGNG      |
| N/2   | 1666 | 3142 | 328.79  | CCSD&RGNG      |

471 716

**Exhibit "A"**
**Page 3 of 4**

```
S/2 1666   2253   328.75   GC&SF
    1683   1115   640.00   CCSD&RGNG
 E  1684   2910   160.00   CCSD&RGNG
 W  1684   2910   400.00   CCSD&RGNG
 N  1684   2698    80.00   CCSD&RGNG
    1691   1267   640.00   GC&SF
    1692   2419   613.04   GC&SF
    1693   1269   640.00   CC&SF
    1695   1268   640.00   GC&SF
    1696   2418   640.00   GC&SF
    1838   2187    67.00   P.H. SUTTON
    1928   2474   430.27   TEX MEX
W/2 1953   1329   320.00   GC&SF
E/2 1953   1329   320.00   GC&SF
    1955   1328   640.00   GC&SF
    1956   2560   327.34   GC&SF
    1987   1809    14.82   TEX MEX
    1988   2475     8.05   TEX MEX
    2057    985   652.25   CCSD&RGNG
    2058   2880   652.25   CT&MC
W/2 2059    984   320.00   C&MRR
E/2 2059    984   320.00   C&MRR
    2060   3210   200.00   C&MCRR
    2060   3329   160.00   CT&MCRR
    2060   2941    80.00   CT&MCRR
    2060   3332   120.00   CT&MCRR
    2060   3331    80.00   S. SYNDER
    2112   2420   672.12   B.A. JAMES
    2267   1888    53.30   A. WARD
    2335   3025    27.30   W. BROWN
N/2 2336   3167    14.00   W. BROWN
S/2 2336   3167    16.30   W. BROWN
    2342   3335    14.74   FROST BANK
    2367   3333    91.34   F.R. FEVILLE
    52/53  P/80   *52.35*  JO DeLaGARZA

TOTAL          100403.93
```

471 717

**Exhibit "A"**
**Page 4 of 4**

102.35 Acres, more or less, being comprised of the following land in Starr County, Texas:

Share No. 52 out of Porcion No. 80 as allocated to A. L. Shawl by Decree of the District Court of Starr County, Texas, in Cause No. 941, recorded in Volume G, page 205, of the Deed Records of Starr County, Texas.

**Exhibit "B"**
**Page 1 of 1**

# Tab 4

CAUSE NO. 2014CVQ 000438D4

| | | |
|---|---|---|
| VAQUILLAS UNPROVEN MINERALS, LTD, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | | |
| v. | § | WEBB COUNTY, TEXAS |
| CONOCOPHILLIPS COMPANY, Defendant | § § | 406th JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Vaquillas Unproven Minerals, Ltd. ("Vaquillas"), Plaintiff, complains of ConocoPhillips Company ("Conoco"), Defendant, and respectfully shows:

### I.
### DISCOVERY CONTROL PLAN

1. Plaintiff affirmatively pleads that discovery should be conducted in accordance with Texas Rule of Civil Procedure 190.4 (Level 3).

### II.
### PARTIES

2. Plaintiff Vaquillas is a Texas Limited Partnership with its principal place of business in Laredo, Webb County, Texas.

3. Defendant Conoco is a Delaware Corporation with its principal place of business in Houston, Texas. It may be served through its registered agent: United States Corporation Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. Service of process is requested at this time.

# III.
# JURISDICTION AND VENUE

4. The District Courts of the State of Texas have jurisdiction over these claims and these parties. Conoco's principal offices are in Houston, Texas, and its Texas oil and gas operations are the subject of this cause.

5. This suit involves a dispute over two oil and gas leases which relate to real property in Webb County, Texas. Venue is therefore proper (and mandatory) in Webb County, Texas, under Sections 15.002(a) (1) and 15.011 of the Texas Civil Practice & Remedies Code.

# IV.
# RELIEF SOUGHT

6. Vaquillas seeks a release of acreage previously the subject of an oil and gas lease, specific performance, and monetary relief over $1,000,000.

# V.
# FACTS

7. Conoco has violated a covenant and agreement between the parties by refusing to execute and deliver to Vaquillas a written release of the portions of certain leased property that reverted to Vaquillas as a matter of law.

8. The following properties (the "Subject Property") are the subject of this lawsuit:

> 26,622.79 acres of land, more or less, situated in Webb County, Texas more fully described in the Oil, Gas and Mineral Lease dated June 15, 1974 (as amended) between Vaquillas Ranch Company, Ltd. et al., as Lessor, and Conoco Inc., as Lessee, a copy of which is recorded in Volume 460, Pages

324-330 of the Webb County Deed Records (hereinafter the "26,622.79 acre lease"); and

6,740 acres of land, more or less, situated in Webb County, Texas more fully described in the Oil, Gas and Mineral Lease, dated effective November 1, 1987, and entered into by and between Vaquillas Ranch Company, Ltd., Vaquillas Unproven Mineral Trust, and Vaquillas Proven Mineral Trust, as Lessor, and Conoco Inc., as Lessee, a Memorandum of which is recorded in Volume 1303, Pages 886 et seq. of the Webb County Real Property Records (hereinafter the "6,740 acre lease").

9. Plaintiff Vaquillas is successor-in-interest to the Lessor(s) with respect to both oil and gas leases described above. Defendant Conoco is the successor-in-interest to the Lessee(s) with respect to both oil and gas leases described above.

10. Both leases described in Paragraph 8 above have been amended and supplemented a number of times. On or about November 1, 1987, both the 26,622.79 acre lease and the 6,740 acre lease were amended to include a Paragraph 18, which allows Conoco to postpone execution and delivery to Lessor of a written release of the portions of the lease not drilled to the required density by engaging in a continuous drilling program. In order to be engaged in a continuous drilling program, Conoco must commence the drilling of a new well within 90 days after the completion of each well. At the end of the continuous drilling program (i.e. when Conoco ceases to commence the drilling of new wells within the 90 day period(s)), Conoco is allowed to maintain its leases of the Subject Property only as to an amount of acreage surrounding each well it drilled. Both leases require Conoco to execute and deliver to Vaquillas a written release of any acreage not earned by drilling operations.

11. Under Paragraph 18 of both oil and gas leases, un-earned acreage reverted to Vaquillas 90 days after Conoco ceased drilling wells under the continuous drilling clause. In this case, that date occurred no later than June 30, 2012 ("Release Date"). This is the date ninety days after Conoco's Vaquillas Ranch A-7 No. 249 Well was completed. On information and belief, Conoco's Vaquillas Ranch A-7 No. 249 Well was the last well it drilled on the Subject Property.

12. Conoco takes the position that it is not obligated to release any acreage back to Vaquillas, as it claims to have earned 40 acres per oil well and 640 acres per gas well. Conoco's position is not correct as to gas wells because it disregards an important provision of both leases.

13. Paragraph 18 of both leases controls how much acreage surrounding each well Conoco is allowed to retain. Paragraph 18 states that if the Railroad Commission of Texas adopts a rule for the field that provides for a spacing establishing units of acreage per well different than 40 acres for oil wells or 640 acres for gas wells, Conoco may retain only the acreage provided by the units established by virtue of the spacing provided by the Commission's rule:

> ...Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, **except** that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease provides for a spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned. (Emphasis supplied).

14. After the November 1, 1987 amendment to the two leases, the Railroad Commission did adopt a rule for the Vaquillas Ranch (Lobo Cons.) Field that provided for spacing that established 40 acre units of acreage for each gas well rather than 640 acres. Therefore, Conoco is not allowed to retain more than 40 acres for each of the gas wells it drilled on the Subject Property. The acreage to be released will hereafter be referred to as the "Reverted Minerals."

15. Without waiver of its right to do so at a later time and retaining all of its rights under the two leases in question, Vaquillas does not challenge by this cause Conoco's rights or interest in the wells it drilled on the Subject Property and producing in paying quantities at the Release Date.

## VI.
## CAUSES OF ACTION

16. The foregoing Paragraphs 1 to 15, which are incorporated by reference herein as if recited verbatim, support the following causes of action and claims:

17. **Breach of Contract**: At the Release Date, the Reverted Minerals automatically reverted to Vaquillas. Conoco was required to provide Vaquillas with a fully executed and recordable release of Reverted Minerals under the 26,622.79 acre lease and the 6,740 acre lease, but Conoco has failed and refused to provide Vaquillas with this formal release. Vaquillas has suffered direct and foreseeable indirect or consequential damages from these breaches of contract in excess of the minimum jurisdictional amount.

18. **Specific Performance:** Conoco has failed to provide Vaquillas with a formal release of acreage as provided for in the leases. Conoco should be ordered to specifically perform this obligation to provide to Vaquillas such release of the Reverted Minerals.

19. **Alternatively, Removal of Cloud and Action to Quiet Title:** As is set out above, the 26,622.79 acre lease and the 6,740 acre lease terminated as of the Release Date as to the Reverted Minerals. Vaquillas would show that after making the oil and gas leases of the Subject Property it was the owner of the reversionary interest in the mineral estate in the Subject Property. On the Release Date, the mineral interest in the Reverted Minerals reverted to Vaquillas. By Conoco's refusal to provide the required written release of the Reverted Minerals, the two oil and gas leases constitute a cloud on Vaquillas' title to the Reverted Minerals, forcing Vaquillas to seek judicial confirmation of Vaquillas' interest in the Reverted Minerals and judgment quieting title to the Reverting Minerals in Vaquillas.

20. **Attorneys' Fees:** As set out above, Conoco has breached (and continues to breach) its obligation under the 26,622.79 acre lease and the 6,740 acre lease to execute and deliver to Vaquillas a written release of all portions of the Subject Property it did not earn through continuous drilling. Vaquillas' claims have been presented to Conoco and Conoco has failed to release the acreage in question within 30 days after presentment. Accordingly, Vaquillas is entitled to its reasonable and necessary attorneys' fees with respect to this action. TEX. CIV. PRAC. & REM. CODE §38.001.

21. **Conditions Precedent:** All conditions precedent to the bringing of these claims has been performed or has occurred.

## VII.
## REQUEST FOR DISCLOSURES

22. Pursuant to Texas Rule of Civil Procedure 194, Plaintiff request that Defendant disclose within 50 days of the service of this request the information and material required by Rule 194.2.

## PRAYER

23. For these reasons, Plaintiff Vaquillas Unproven Minerals, Ltd. asks for judgment against Defendant ConocoPhillips Company for the following:

    i.    judgment ordering Conoco to execute a written release of the Reverted Minerals;

    ii.    damages, both direct and indirect or consequential in excess of the minimum jurisdictional amount;

    iii.    judgment that the oil and gas leases in question have terminated as to all acreage described in such leases except 40 acres around the wellbore of each gas well drilled by Conoco;

    iv.    reasonable and necessary attorneys' fees;

    v.    prejudgment interest as provided by law;

    vi.    post-judgment interest as provided by law;

    vii.    costs of suit; and

    viii.    all other relief to which Plaintiff deems itself entitled.

Respectfully submitted,

By: _Gregg Owens_ (signature)
Gregg Owens

HAYS & OWENS L.L.P.
Gregg Owens, SBN 15383500
gregg.owens@haysowens.com
Robert G. Hargrove, SBN 24032391
rob.hargrove@haysowens.com
807 Brazos Street, Suite 500
Austin, Texas 78701
(512) 472-3993
(512) 472-3883 *Facsimile*

Raul Leal Incorporated
Attn: Raul Leal, SBN 24032657
rleal@rl-lawfirm.com
5810 San Bernardo, Suite 390
Laredo, Texas 78041
(956) 727-0039 – Phone
(956) 727-0369 – Fax

Michael Jung, SBN 11054600
Strasburger & Price, LLP
901 Main Street, Suite 4400
Dallas, TX 75202-3794
(214) 651-4724 – Phone
(214) 651 4330 fax

**ATTORNEYS FOR VAQUILLAS
UNPROVEN MINERALS, LTD.**